

1   DANIEL MAJOR EDSTROM
    2690 Brown Bear Court
2   Cool, CA 95614
    Tel.: 916/207-6706 | Fax.: 888/552-2503
3
    Plaintiff and Debtor-in-Possession
4

**13-02132-B**
COMPLAINT
PLAINTIFF: DANIEL EDSTROM
DEFENDANT: AUBURN LAKE TRAILS PROPER
JUDGE: HON. T. HOLMAN
RELATED CASE: 12-29353
------------------------------
FILED 4/18/13 - 2:45 PM
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION      Pdes
Document #: 1

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| **DANIEL MAJOR EDSTROM,** | **Chapter 11** |
| **Debtor-in-Possession.** | **Case No. 12-29353-B-11** |
| **DANIEL MAJOR EDSTROM, and all others similarly situated,** | **Adv. Pro. No:** |
| **Plaintiffs,** | **ADVERSARY COMPLAINT FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY PURSUANT TO 11 USC § 362(a), ADDITIONALLY AND ALTERNATIVELY WILLFUL CONTEMPT OF COURT PURSUANT TO 11 USC § 105; DISALLOWANCE OF CLAIM 4-1 PURSUANT TO F.R.B.P. § 3007 ADDITIONALLY AND ALTERNATIVELY TO SUBORDINATE CLAIM 4-1 PURSUANT TO 11 USC § 510(c)(2);** |
| v. | |
| **AUBURN LAKE TRAILS PROPERTY OWNERS ASSOCIATION A CALIFORNIA CORPORATION; ALLIED TRUSTEE SERVICES A CALIFORNIA CORPORATION, *a Fictitious or Ghost Entity*; G&P ENTERPRISES A CALIFORNIA LIMITED LIABILITY COMPANY; and DOES 1-100,** | |
| **Defendants.** | **BREACH OF CONTRACT; SPECIFIC PERFORMANCE; VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT; VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT; VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200; BREACH OF FIDUCIARY DUTY; FRAUDULENT MISREPRESENTATION; NEGLIGENCE; THREATENED TORTIOUS AND CONSTRUCTIVE SLANDER OF TITLE; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; NEGLIGENT INFLICTION OF EMOTIONAL** |

---

DISTRESS;
HARASSMENT;
BREACH OF THE COVENANT OF GOOD
FAITH & FAIR DEALING;
RESPONDEAT SUPERIOR;
INJUNCTIVE RELIEF;
CONSPIRACY;
INVASION OF PRIVACY, ADDITIONALLY
AND ALTERNATIVELY INTRUSION INTO
SECLUSION;
QUIET TITLE;
ACTUAL OR CONSTRUCTIVE EASEMENT;

**COMES NOW** Debtor-in-Possession and Plaintiff DANIEL MAJOR EDSTROM

("**Plaintiff**"), and respectfully states the following:

"Every person is bound, without contract, to abstain from injuring the person or property of

another, or infringing upon any of his or her rights." *California Civil Code § 1708.*

## JURISDICTION AND VENUE

1.     This adversary proceeding is brought pursuant to 11 U.S.C. § 362 and Federal Rule of

Bankruptcy Procedure § 7001.

2.     This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 151, 157

and 1334(b), as well as 11 U.S.C. § 502(a) and 15 U.S.C. § 1692k(d). Venue is proper pursuant to

28 U.S.C. § 1409.

3.     This adversary proceeding is a core proceeding as defined at 28 U.S.C. § 157(b)(2)(b) and

(b)(2)(K) in that it is an action for violation of 11 U.S.C. § 362(a) and/or 11 U.S.C. § 105, and the

allowance or disallowance of a claim. To the extent this proceeding is determined to be a non-core

proceeding, Plaintiff consents to the entry of final orders or judgment by the bankruptcy court.

## OTHERS SIMILARLY SITUATED

4.     Plaintiff brings this adversary proceeding on behalf of others similarly situated pursuant to

California Business and Professions Code § 17200, additionally and alternatively California Code

of Civil Procedure § 382. Additionally and alternatively Plaintiff brings this adversary proceeding

on behalf of others similarly situated pursuant to Fed. R. Civ. P. 23. The joinder of Plaintiffs in this

case is based on a common or general interest, each being a member of the Auburn Lake Trails

Property Owners Association (hereinafter "**ALT**" or "**ALTPOA**") through an ownership, lease or

rental interest in real property ("**ALT Member**"). Each ALT Member is any member of ALTPOA

beginning in 2007 through the date of the complaint. There are two classes of ALT Members: (i) every ALT Member during the specified period of time indirectly damaged by Defendants; and (ii) every ALT Member who has been damaged directly through the ALTPOA Collections Policy. The actual ALT Members in either category are known only to one or more of the Defendants.

5.    The class is so numerous that joinder of all members is impracticable.

6.    There are questions of law or fact common to the class(es).

7.    The claims of the representative parties are typical of the claims or defenses of the class.

8.    The representative parties will fairly and adequately protect the interest of the class.

9.    prosecuting separate actions by or against individual class members would create a risk of (i) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; and (ii) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

10.    Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## STATEMENT OF FACTS

11.    Attached to this adversary proceeding and incorporated by reference are Exhibits "1" through 14. Also attached to this adversary proceeding and incorporated by reference is Exhibit "A" which is a listing of all Exhibits numbered "1" through "14".

12.    Plaintiff is an individual, and debtor of the within captioned bankruptcy case, having filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 15, 2012 ("**the Bankruptcy Case**").

13.    Defendant Auburn Lake Trails Property Owners Association is a California Corporation registered with the California Secretary of State as Entity Number C0591204, originally filed on February 3, 1970. ALT's business address is 1400 American River Trail, Cool, California, 95614.

14.     Defendant G&P Enterprises, LLC ("**G&P**") is a California Limited Liability Company registered with the California Secretary of State as Entity Number 200700410276, originally filed on January 4, 2007. G&P Enterprises, LLC business address is 990 Reserve Drive, Suite 208, Roseville, California 95678.  Defendant G&P filed a Fictitious Business Name Statement with Placer County as Allied Trustee Services on March 1, 2007 ("**FBNS**").  The FBNS gives the fictitious business name of Allied Trustee Services.

15.     Fictitious Defendant Allied Trustee Services, Inc. was a California Corporation not currently registered with the Secretary of State.  Fictitious Defendant Allied Trustee Services, Inc. was previously registered with the California Secretary of State.  Fictitious Defendant Allied Trustee Services, Inc. was previously registered with the Nevada Secretary of State as a foreign corporation based out of California.  Fictitious Defendant Allied Trustee Services, Inc. does not exist and is not identifiable, except as impersonated by other Defendants, including Auburn Lake Trails Property Owners Association and G&P Enterprises, LLC.  Allied Trustee Services, Inc.'s business address is (as impersonated by ALT) 1400 American River Trail, Cool, California, 95614. Allied Trustee Services, Inc.'s business address is (as impersonated by G&P) 990 Reserve Drive, Suite 208, Roseville, California 95678.

16.     All references to Auburn Lake Trails Property Owners Association include both their individual capacity and in their capacity as impersonating Allied Trustee Services, Inc.

17.     All references to G&P Enterprises, LLC include both their individual capacity and in their capacity as impersonating Allied Trustee Services, Inc.

18.     All references to Allied Trustee Services, Inc. refer to both Allied Trustee Services, Inc. as impersonated by Auburn Lake Trails Property Owners Association and as impersonated by G&P Enterprises, LLC.

19.     Each member of the ALTPOA Board of Directors is currently unknown to Plaintiff. Plaintiff will seek leave to amend the complaint to add the name of each member of the ALTPOA Board of Directors when this information is known.  Each member of the ALTPOA Board of Directors would have served on the Board at any time from the elections held in 2007 to the present time (which may be after the date of this complaint).  Typically the Board of Directors consists of a

President, Vice President, Secretary, Treasurer and Member-at-large.  Plaintiff does not know if this has been consistent since the 2007 election of the ALTPOA Board of Directors.

20.    All Board members serving since the 2007 ALTPOA Board election are hereinafter referred to as "**The Board**".

21.    The Board causes its actions to be taken through the ALTPOA General Manager.  The current ALTPOA General Manager is Kevin D. Hubred.  Plaintiff does not know the name of the General Managers starting in 2007 up until the time Kevin D. Hubred became the General Manager for ALTPOA.

22.    At all times relevant each Defendant resided and conducted business in the State of California.

23.    Whenever reference is made in this Adversary Proceeding to any act of any Defendant(s), that allegation shall mean that each Defendant acted individually and jointly with the other Defendants.

24.    Any allegation about acts of any corporate, limited liability company, homeowners association, or other business means that the corporation, Limited Liability Company, homeowners association, or other business did the acts alleged through its officers, directors, managers, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

25.    At all times relevant, each Defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this Adversary Proceeding. Additionally, some or all of the Defendants acted as the agent of the other Defendants, and all of the Defendants acted within the scope of their agency if acting as an agent of the other.

26.    At all times relevant, each Defendant knew or realized that the other Defendants were engaging in or planned to engage in the violations of law alleged in this Adversary Proceeding. Knowing or realizing that the other Defendants were engaging in or planning to engage in unlawful conduct, each Defendant nevertheless facilitated the commission of those unlawful acts.  Each Defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

ADVERSARY COMPLAINT

27.     At all times relevant, each Defendant was the party seeking affirmative relief against Plaintiff.  The orientation of the parties in this adversary proceeding in no way confers that Plaintiff is the party seeking affirmative relief, but is in direct response to Defendant's actions seeking affirmative relief.  In all cases Defendants are attempting to make use of, and invoke the very statutes they themselves refuse to follow.  For example Plaintiffs first Cause of Action is in response to Defendants willful violation of the automatic stay and willful contempt of court and Plaintiffs second Cause of Action is an objection to Defendants filing of a Proof of Claim.

28.     Plaintiff is and at all times relevant herein the owner[1] and purchaser of real property located at 2690 Brown Bear Court, Cool, CA 95614 in the county of El Dorado with APN 073-141-03-100 (hereinafter "**SUBJECT PROPERTY**" or "**Property**") through a grant deed dated 8/10/2004 and recorded in the official records of the County of El Dorado Recorders Office as Document number 2004-0066953-00 (hereinafter "**Grant**").  The subject real property is more particularly described as follows:

> LOT 885, AS SHOWN ON THE "MAP OF AUBURN LAKE TRAILS
> UNIT 4", FILED MAY 8, 1970, IN BOOK E OF MAPS, PAGE 61, EL
> DORADO COUNTY RECORDS.
> ASSESSOR'S PARCEL NUMBER 073-141-03-100.

29.     Plaintiff accepted the offer to not only purchase the Property, but the corresponding offer of Auburn Lake Trails and the Auburn Lake Trails Property Owners Association to accept the WRITTEN terms of the covenants, conditions and restrictions, specifically titled "Second Restated Declaration of Covenants, Conditions and Restrictions of Auburn Lake Trails" recorded on September 12, 1990 with the Official Records of the El Dorado County Recorder's Office in BOOK 3425, PAGE 281 (hereinafter "**CC&R's**") which encumber the Property.  In consideration for the offer of to accept the CC&R's, Plaintiff paid a $200.00 transfer fee to ALT for purposes of taking over the previous owners rights under the CC&R's (the Grantor who disposed of her interest through the August 10, 2004 Grant), as evidenced in the closing documents for the August 10, 2004 loan closing.  Additionally Plaintiff, at the closing, paid: (i) $40.00 pro-rated Homeowners dues for the period 8/20/2004 to 8/31/2004; and (ii) $120.00 for September 2004 Homeowner

---

[1] Together with Debtors non-filing spouse

association dues. To Plaintiff's knowledge the CC&R's at that time represented a lawful, binding agreement to which Plaintiff obtained privity of contract on August 10, 2004. The CC&R's are a contract of adhesion and were not drafted by Plaintiff. The terms of the contract were known to ALT and Plaintiff on August 10, 2004.

30.      The CC&R's grant Plaintiff and his non-filing spouse a fractional, undivided interest in the common areas of the Planned Unit Development ("**PUD**") known as Auburn Lake Trails.

31.      Defendant G&P Enterprises, LLC is acting as alleged agent/affiliate of ALT. Allied Trustee Services, Inc. was registered with the California Secretary of State and presumably incorporated on or around 1997 or 1998 (or earlier). Allied Trustee Services, Inc. ceased to be registered in California as a corporation at some point on or before March 2007, at which time it ceased to exist lawfully as a corporation in California.

32.      State law applies to the bankruptcy claim in this instance because the underlying transaction was purely commercial (residential) in nature and there is little, if any, apparent federal interest, overriding or otherwise

33.      The Auburn Lake Trails Property Owners Association Board of Directors are voted in every year, and every year they ratify and publish a "STATEMENT OF SIGNIFICANT POLICIES", such as the latest one dated May 1, 2012 in the 2012-2113[2] BUDGET INSERT to the ALT Trail Views newsletter published by the ALT Property Owners Association on April 2012 Vol. XXXVIII No. 10 ("**May 2012 ALT Insert**"). The May 2012 ALT Insert shows the Collections Policy, titled "Delinquent Assessment Collection Policy Statement" (hereinafter "**Collections Policy**"). The Collections Policy is substantially the same for years 2007, 2008, 2009, 2010, 2011, 2012 and 2013. So far this year, as of the date of this adversary complaint, ALT is operating under the 2012-2013 Collections Policy. Further, the Collections Policy includes the following statement: "Therefore, the Board of Directors with regards to all delinquent assessment accounts has enacted the following procedures". Every year the Board of Directors, and each of them, ratifies the "Delinquent Assessment Collection Policy Statement". The "Delinquent Assessment Collection Policy Statement" states, inter alia, in paragraph 5: "If any portion of any such

---

[2] Note that the Collections Policy is for years 2012-2013. The years shown (2012-2113) are a scrivener's error.

assessment or late charge remains unpaid sixty (60) days after the original due date thereof, the account will be referred to collection, whereby Allied Trustee Services, Inc. ("**Allied**") will be presented with a Declaration of Default detailing the amounts then delinquent together with a $75 collection administration charge added." The condition precedent to any ALT member account referred to collection, including Plaintiff, is that Allied Trustee Services, Inc. "will be presented with a Declaration of Default detailing the amounts then delinquent together with a $75 collection administrative charge added." The initial material breach of contract happened when Allied Trustee Services, Inc. ceased to exist, and this material breach proceeded to cascade out of control when it was not proactively dealt with by the ALT Board of Directors or other ALT personnel.

34.    The continued use and incorporation of the non-existent Entity Allied Trustee Services, Inc. in the CC&R's Collections Policy[3], while at the same time using the name Allied Trustee Services is not only a standard and practice of the defendants, but a scheme and artifice[4] to defraud[5]. The continued use of the non-existent entity Allied Trustee Services, Inc. while at the same time using the name Allied Trustee Services (without any mention of G&P Enterprises, LLC), is an unfair and deceptive act or practice designed to have the appearance of inserting a separate entity into an existing contract. G&P Enterprises, LLC's use of the name Allied Trustee Services is likely to not only mislead the public, but to resemble Allied Trustee Services, Inc. so closely as to tend to deceive. Additionally ALT and the ALT Board of Directors continuing manifestation of Allied Trustee Services, Inc. is a façade. This pretense is cunningly deceitful and deliberately designed to confuse not only the least sophisticated consumer, but the average consumer into believing that Allied Trustee Services is in privity of contract with ALT. From the point at which Allied Trustee Services, Inc. ceased to exist forward Allied Trustee Services, Inc. was not of sound mind, nor capable of contracting. All actions taken or alleged to be taken from this point forward by Allied Trustee Services, Inc. are ultra vires. Any written contracts, verbal contracts, powers of attorney or

---

[3] See California Civil Code 1558, 1441 and 1442

[4] **Artifice**: Clever deception; The use of clever maneuvers or tricks; Subtle but base deception; Clever or cunning devices or expedients, esp. as used to trick or deceive others: "artifice and outright fakery".

[5] **Scheme and Artifice to Defraud**: A scheme or artifice to defraud is not capable of precise definition, but generally is a plan or trick to deprive another of the intangible right of honest services or obtain, by false or fraudulent pretenses, representations, or promises, money or property from someone. It is the deprivation of something of value by trick, chicane, or overreaching.

agency agreements are/were void and/or voidable, unenforceable, and in violation of California Civil Code 1558. Additionally, the ALT Collections Policy[6] is void and unenforceable.

35.    The insertion of G&P Enterprises, LLC as the "Trustee Service", agent, and debt collector for Auburn Lake Trails Property Owners Association is not authorized. No authorization or ratification has been given by the ALT Board of Directors, nor ALT members. Neither the ALT Board of Directors, ALT general manager, nor any ALT employee has been authorized to send any document, financial information or personal identifying information to G&P Enterprises, LLC.

36.    The FBNS filed by G&P Enterprises, LLC states "THE REGISTRANT(S) COMMENCED TO TRANSACTION BUSINESS UNDER THE FICTITIOUS BUSINESS NAME(S) LISTED ABOVE ON: (A FUTURE DATE IS NOT ALLOWED. PLEASE INSERT N/A IF DATE IS IN FUTURE)". The date for commencement to transact business is listed as March 1, 2007.

37.    In this adversary proceeding, the contract was breached over 6 years ago when Allied Trustee Services, Inc. ceased to exist and Defendants continued taking spurious enforcement actions (and omitted taking corrective action), instead electing to pay for damages resulting from Defendant's inaction and wrongful conduct. In fact the ALT Board of Directors ratified, authorized and published the repugnant ALT Collections Policy at least 5 times since Allied Trustee Services, Inc. ceased to exist.

38.    The mis-joinder of the Auburn Lake Trails Property Owners Association Board of Directors, the Auburn Lake Trails Property Owners Association, G&P Enterprises, LLC and the intentional usage of the fictitious entity Allied Trustee Services, Inc. was part of the joint venture or enterprise (hereinafter "**Joint Enterprise**"). At all times relevant hereto, each individual, individual officer, board member, director, manager or owner of each Defendant was the agent of each of the other Defendants and of the Auburn Lake Trails Property Owners Association, and was at all times acting within the course and scope of such agency. The Joint Enterprise and the inter-related agency between them is known as "**The Mis-Joined Enterprise**".

---

[6] The Collection Policy is defined in the next paragraph

39.    Auburn Lake Trails Property Owners Association General Manager is Kevin Hubred. Kevin Hubred became the General Manager on or around August 2011. Kevin Hubred is the instrument through which each of members of the ALT Board of Directors takes its actions. Kevin Hubred is a "Certified Community Association Manager" ("**CCAM**") and a "Professional Community Association Manager" ("**PCAM**"). These designations (CCAM and PCAM) are given through the California Association of Community Managers.

40.    Defendants are conducting a trust business in this state. Defendants are acting as, by or through a foreign corporation known as Allied Trustee Services, Inc. Allied Trustee Services, Inc. has not first qualified by registering with the California Secretary of State as a foreign corporation. Allied Trustee Services, Inc. has no articles of incorporation and none of the Defendants are a national banking association. Defendants are not authorized to conduct a trust business in California. Defendants are not registered as a Professional Fiduciary with the State of California. Defendants are not entering in to isolated transactions within the state of California, but have entered into repeated and successive transactions of their business within the state of California. Defendants have not obtained a license from the California State Banking Department at all times relevant.

41.    ALT and the ALT Board of Directors have procrastinated in taking necessary action to address the collections policy deficiencies in order to avoid the "unpleasantness" of the difficult decision that has confronted the board. Placing a lien on real property and initiating foreclosure on real property is a very serious legal action, which ALT and the ALT Board of Directors failed to review each year. California courts consider foreclosure as a "drastic sanction" and a "draconian remedy"[7], and that accordingly "[t]he statutory requirements [of section 2924] must be strictly complied with"[8]. A person seeking to exercise the power of sale in a deed of trust must slavishly adhere to the procedural requirements of the law governing nonjudicial foreclosures, and "a trustee's sale based on a statutorily deficient notice of default is invalid."[9] California Civil Code

---

[7] See Baypoint Mortgage Corp. v. Crest Premium Real Estate etc. Trust, supra, 168 Cal.App.3d at pp. 827, 830, 214 Cal.Rptr. 531
[8] See Miller v. Cote, supra, 127 Cal.App.3d at p. 894, 179 Cal.Rptr. 753
[9] See Anolik v. EMC Mortg. Corp., 128 Cal.App.4th 1581 (2005)

ADVERSARY COMPLAINT

1442 provides "A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created." The very condition of the CC&R's that refers a delinquent ALT member to Allied Trustee Services, Inc., renders that condition void. The statutory and contractual requirements leading up to a referral to a 3rd party debt collector, the placement of a lien and the non-judicial foreclosure are to be followed punctiliously.

42.     The ALT CC&R's, ALT Collection Policy and the ALT contract with Allied Trustee Services, Inc. provide that the trustee entitled to handle and perform recordation of documents and institute non-judicial foreclosures is Allied Trustee Services, Inc. The use of a different name, whether through a name change or a new entity, without authorization, justification or setting forth both names, results in any ALT recorded documents recorded by or through Allied Trustee Services (and not Allied Trustee Services, Inc.) from giving constructive notice of the contents thereof.

43.     As such, ALT and the ALT Board of Directors has not levied regular and special assessments sufficient to perform its obligations under, inter alia, the governing documents and the Davis-Stirling Act. ALT and the ALT Board of Directors have not relied on any committee, treasurers report, account study, reserve study, review of insurance requirements (for 3rd party providers such as Allied Trustee Services, Inc.), nor have they relied on a legal opinion or review from counsel who could have discovered easily (and early), inter alia: (i) that Allied Trustee Services, Inc. did not exist; (ii) that ALT, the ALT Board of Directors and ALT members were not covered by any type of insurance policy from Allied Trustee Services, Inc.; and (iii) the collection letters sent out by G&P Enterprises, LLC dba Allied Trustee Services contained, inter alia, an excessive amount of FDCPA violations.

44.     Each year since 2007 the balance sheet and accounting for ALT was incorrect and failed to identify funds that were acquired illicitly through ALT and the ALT Board of Directors wrongful actions. ALT, the ALT Board of Directors and G&P Enterprises, LLC have been unjustly enriched through the wrongful conversion of ALT members wrongful payments. Plaintiff and every ALT member have been damaged by each wrongful conversion of payments.

45.     The El Dorado County Recorder's Office reports from 2007 through January 28, 2013 that Auburn Lake Trails has recorded 102 Assessments, 42 Assessment Releases, 4 Certificates of Sale, 4 Trustees Deed's, 4 Mechanics Liens, 3 Release Liens and 1 Released Judgment.

46.     The El Dorado County Recorder's Office report from 2009 through 2012 that Allied Trustee Services has recorded 5 Certificates of Sale, 2 Certificate Redemption Bonds, 17 Notices of Trustee Sale and 5 Trustee Deeds.  Prior to 2009, Allied Trustee Services is not found referenced in the Books and Records at the El Dorado County Recorder's Office.

47.     As a standard and practice, the ALT Collections Policy is operating outside the authority of ALT and the ALT Board of Directors based on the omissions, and each wrong action, and the accumulation of wrongful actions and omissions.  The accumulation of wrongful actions and the failure to act is based on the fact that all actions taken against ALT members from the time Allied Trustee Services, Inc. ceased to exist to the present.  These wrongful actions and accumulated wrongful actions include, inter alia, any collection referral, dunning letter, pre-lien letter, lien, Notice of Default, Notice of Sale, Trustee's Deed Upon Sale, Certificate of Sale, and any Unlawful Detainer action.  Fees and charges for any or all of the above, or added to any or all of the above, are wrongful. ALT and the ALT Board of Directors (in their individual capacities and in their capacity as impersonating Allied Trustee Services, Inc.) need to be disgorged of any and all fees, interest, charges, collections, court action judgments and attorney's fees from any wrongful action while its Collections Policy was unenforceable.  Additionally all fees, interest, charges, collections, court action judgments, and attorney's fees taken by G&P Enterprises, LLC dba Allied Trustee Services against ALT members should be disgorged and returned to the rightful owners.

48.     The requirements for foreclosing non-judicially must be strictly interpreted against the party for whose benefit it is created.  Non-judicial foreclosures are looked on with disfavor by the courts. They are draconian in nature, specifically because they are done outside the purview of the court.

49.     Defendants, and each of them, are using, impersonating and/or misrepresenting themselves as the non-existent entity Allied Trustee Services, Inc. Each ALT Board member together with ALT general manager Hubred used ALT, Allied Trustee Services, Inc. and G&P Enterprises, LLC dba Allied Trustee Services as its alter ego specifically because each ALT board member and ALT

general manager Hubred: (i) directly ordered, authorized and/or participated in the wrongful actions

described in this adversary proceeding against Plaintiff; and (ii) directly omitted taking appropriate

actions that should have been taken. All Defendants, including each ALT board member and ALT

general manager Hubred has formed a conspiracy in order to further their acts of collusion. Intent

or a reckless disregard for the consequences has reared itself through notices provided by Plaintiff

in person and in writing each of which was sufficient to provide the Defendants a reason for

inquiry. The last time Plaintiff was denied entry in contempt of court was June 12, 2012. Since

this point in time Defendants have not taken any action or inquiry to mitigate any of their wrongful

actions. In fact Defendants filed Proof of Claim 4-1 on July 25, 2012. Even the performance of

this seemingly straight forward action was not in compliance with the Bankruptcy Code. Because

of this, Plaintiff is entitled to sanctions that: (i) preclude the holder from presenting the omitted

information, in any form, as evidence in any contested matter or adversary proceeding in the case,

unless the court determines that the failure was substantially justified or is harmless; or (ii) award

other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

50.    Defendants are all fiduciaries. This relationship not only imposes upon Defendants the duty

of acting in the highest good faith toward ALT members including Plaintiff, but precludes

Defendants from obtaining any advantage over ALT members including Plaintiff in any transaction

had by virtue of the fiduciary relationship.

51.    In many cases, especially in regards to insurance and mortgage loans, the insured or the

borrowers do not read and understand the complex documents presented for their signature and

agreement. They rely on mortgage brokers and insurance agents to give them the appropriate

material information necessary to understand the transaction. Oral or written information that

contains misleading information or material omissions is considered a breach of fiduciary duty by

the insurance agent or mortgage broker. These types of misrepresentations are actionable, not only

in the context of insurance policies and mortgage loans, but in the present case at hand where the

Defendants are proffering materially misleading, false and incomplete information. This is the case

despite the fact that the original CC&R's and collection policy accurately disclosed all terms.[10] It

---

[10] Glickman v. New York Life Ins. Co. (1940) 16 Cal.2d 626, 634 [107 P.2d

is well established in California that the existence of a confidential relationship may justify reliance upon oral (or written) misrepresentation of the terms of a contract.

52.     All of the Defendants were made aware of the wrongful actions including the failure to make inquiry and take corrective action through numerous communications from Plaintiff prior to and after the filing of Plaintiffs petition for bankruptcy relief on May 15, 2012. Defendants have all worked together to perform numerous wrongful acts which were done with knowledge of their unlawful purpose. The requisite concurrence and knowledge "may be inferred from the nature of the acts done, the relation of the parties, the interests of the conspirators, and other circumstances." Tacit consent as well as express approval suffices to hold all Defendants liable as coconspirators.

53.     Defendants are a tightly knit business operation under ALT general manager Hubred and the ALT Board of Directors close personal control. All Defendants were actively involved in the direction and management of the operations of the Enterprise during the time when the conspiracy came to a head against Plaintiff.

54.     ALT notices Plaintiff that all assessments and fees were to be paid to Auburn Lake Trails Property Owners Association at their Cool, California address, until Plaintiff received the Initial Communication which informed Plaintiff not to pay Auburn Lake Trails, but to pay "Allied Trustee Services" in Roseville, California. Further the Initial Communication, as previously described, included numerous fees and charges not authorized by contract or by the law for a 3rd party debt collector. The Initial Communication failed to disclose that the 3rd party debt collector was G&P Enterprises, LLC dba Allied Trustee Services and not Allied Trustee Services, Inc.

55.     When, as here, the underlying fraud is a continuing wrong, a convincing rationale exists for delaying the running of the statute of limitations. Just as the statute of limitations does not run against an action based on fraud so loan as the fraud remains concealed, so ought the statute to be tolled even after the fraud is discovered, for so long as the sheer economic duress or undue influence embedded in the fraud continues to hold Plaintiff (and other ALT members) in place.

56.     Plaintiff is ignorant of the true names and capacities of all Defendants sued herein, and therefore sues these Defendant by such fictitious names "DOES 1-100". Plaintiff will amend this

252, 131 A.L.R. 1292].

complaint to allege their true names and capacities when ascertained.  At all times mentioned

herein, Defendant DOES 1 through 100 inclusive, were the agents and/or employees of ALT and in

doing the things herein alleged were acting in the course and scope of such agency and/or

employment and with the permission and consent of their co-defendants.

57.     Plaintiff allegedly incurred financial obligations to the Auburn Lake Trails Property Owners

Association that were money, property, or their equivalent, which is due or owing, or alleged to be

due or owing, from a natural person to another person, specifically, property association fees or

assessments involving Plaintiffs personal home, and were therefore "debt(s)", and a "consumer

debt". These financial obligations were primarily for personal, family or household purposes and

are therefore "debt(s)".

58.     Sometime thereafter, Plaintiff experienced financial difficulties and elected to use the

financing included in the Auburn Lake Trails Default Collections policy and fell behind in the

payments allegedly owed on the alleged debt.  The ALT Collections Policy is generally authorized

by CC&R's Article IV Assessments, Section 9 Collection of assessments: Enforcement of Liens.

The ALT Collections Policy has been reduced to writing in multiple locations, including the 2012-

2113 Budget Insert, listing the Collections Policy as part of the Statement of Significant Policies

dated May 1, 2012.

59.     Subsequently, the alleged debt was assigned, placed or otherwise transferred to Defendants

for collection from the Plaintiffs.  According to the ALT Collections Policy, the debt would be

placed with Allied Trustee Services, Inc., but ALTPOA impersonated Allied Trustee Services, Inc..

60.     Plaintiff has performed all of the conditions of the contract that are required to be

performed by Plaintiff.  Plaintiff remains ready and willing to perform all terms of the agreement

applicable to Plaintiff.  To the extent any of Plaintiffs actions or inactions are determined to be in

breach of the CC&R's contract, Plaintiff is excused because of the first material breach of contract

by the Auburn Lake Trails Property Owners Association in that at some point in 2007 the Default

Collections Policy named an entity that does not exist and is not identifiable (Allied Trustee

Services, Inc.), and the collections contracts between ALT and Allied Trustee Services, Inc. ceased

ADVERSARY COMPLAINT

to be enforceable (hereinafter "**First Breach**"). The condition precedent to an enforceable Collections Policy was not met because of the First Breach.

61.     The CC&R's are a written contract specifying an interest in real property and are subject to the Statute of Frauds. Any contract relying on the CC&R's must be in writing pursuant to the Statute of Frauds. Any agency agreement relating to the CC&R's must be in writing pursuant to the Statute of Frauds.

62.     No written contract exists between Auburn Lake Trails Property Owners Association and G&P Enterprises, LLC. No written agency agreement in writing exists between Auburn Lake Trails Property Owners Association and G&P Enterprises, LLC.

63.     Plaintiff is a natural person who resides in the city of Cool, County of El Dorado, State of California.

64.     Plaintiff is a "consumer".

65.     Plaintiff is a "debtor".

66.     G&P Enterprises, LLC is a collection agency operating from 990 Reserve Drive, Suite 208, Roseville, California, County of Placer 95678.

67.     Auburn Lake Trails Property Owners Association is a collection agency operating from 1400 American River Trail, Cool, California, County of El Dorado 95614. Auburn Lake Trails Property Owners Association uses the name Allied Trustee Services, Inc. when it is attempting to collect a debt owed to Auburn Lake Trails Property Owners Association.

68.     Both Auburn Lake Trails Property Owners Association and G&P Enterprises, LLC impersonated and/or misrepresented themselves as fictitious entity Allied Trustee Services, Inc. Both Auburn Lake Trails Property Owners Association and G&P Enterprises, LLC continue to impersonate and/or misrepresent themselves as fictitious entity Allied Trustee Services, Inc. Stated differently, Auburn Lake Trails Property Owners Association and G&P Enterprises, LLC both are hiding behind the facade Allied Trustee Services, Inc. in the collection of Auburn Lake Trails Property Owners Association debts.

ADVERSARY COMPLAINT

69.     G&P Enterprises, LLC is a "debt collector". Auburn Lake Trails Property Owners Association is a "debt collector", as they are using the name Allied Trustee Services, Inc. in the collection of debts.

70.     G&P Enterprises, LLC is a "debt collector". Auburn Lake Trails Property Owners Association is a "debt collector", as they are using the name Allied Trustee Services, Inc. in the collection of debts.

71.     "Communication" as the "conveying of information regarding a debt directly or indirectly to any person through any medium."

72.     In each instance, G&P Enterprises, LLC and Auburn Lake Trails Property Owners Association (in using the name of, impersonating and/or misrepresenting themselves as Allied Trustee Services, Inc.) were engaged in the use of an instrumentality of interstate commerce or the mails in a business the principal purpose of which was the collection or attempted collection of consumers debts owed or due or asserted to be owed.

73.     The Plaintiff's home resides in a gated community named Auburn Lake Trails in Cool, California located in El Dorado County.

74.     The "initial communication" from G&P Enterprises and Auburn Lake Trails Property Owners Association (in using the name, impersonating and/or misrepresenting themselves as Allied Trustee Services, Inc.) to Plaintiff was through a dunning letter dated April 17, 2012 (hereinafter "**Initial Communication**") and received by Plaintiff shortly thereafter.

75.     The Initial Communication contained Plaintiff's personal identifying information.

76.     The transfer of Plaintiffs personal identifying information, including financial information to G&P Enterprises, LLC was not authorized by Plaintiff, nor was it authorized through the CC&R's or the ALT Collections Policy. Further, the transfer of personal identifying information itself was in breach of contract and unlawful. The use of Plaintiff's personal identifying information was used to send the dunning letter through instrumentalities of interstate commerce or the mails during the commission of one or more unlawful acts, inter alia, violation(s) of the FDCPA, violation(s) of the RFDCPA, violation(s) of California Business & Professions Code §17200, and other wrongful actions as specified in this adversary proceeding.

77.    The Initial Communication was a "communication" from G&P Enterprises, LLC and Auburn Lake Trails Property Owners Association (in using, impersonating and/or misrepresenting themselves as Allied Trustee Services, Inc.) and an "initial communication".

78.    Defendants failed within five days after this initial communication with Plaintiff, to provide written notification containing a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector, and failed within five days after the initial communication with Plaintiff to provide written notification of a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector, and that the debt collector will provide the consumer with the name and address of the original creditor.

79.    The Initial Communication included a written notice, which was not effectively communicated, the language of which overshadowed, weakened, confounded, diluted and/or failed to comply with notice requirements because it did not state all the rights available to Plaintiff because it would confuse the least sophisticated consumer into disregarding his or her rights under this validation notice, and were unfair and deceptive statements.

80.    This initial communication to the Plaintiffs by Defendants included a written notice, the language of which overshadowed, weakened, and failed to comply with statutory language because it stated on the first page the amount due in a combination of upper case and bold type as "THE FULL AMOUNT OF **$1,340.54** IS DUE NO LATER THAN 05-17-2012 BEFORE 4:30 PM. IF PAYMENT IS NOT RECEIVED BY THAT DATE, THE ASSOCIATION SHALL PURSUE RECOVERY AGAINST YOU BY CIVIL ACTION IN SMALL CLAIMS COURT, NON-JUDICIAL FORECLOSURE, JUDICIAL FORECLOSURE, AND/OR ANY OTHER AVAILABLE LEGAL REMEDIES, AND YOU WILL BE RESPONSIBLE FOR ANY AND ALL ADDITIONAL COSTS AND FEES." No indication was given that this amount was not the amount due on the date of the letter (April 17, 2012), nor at the time the letter was received. Defendants exaction was based on falsely representing the character, status and amount of the debt,

because the only amount shown (in bold) was not due until May 17, 2012. No other amount was given or indicated on the dunning letter itself, but on an itemized account listing included on page 3. Defendant's communication confuses the least sophisticated consumer into disregarding his or her rights under this validation notice.

81.     The Initial Communication failed to disclose that it was from G&P Enterprises, LLC or Auburn Lake Trails Property Owners Association (in using, impersonating and/or misrepresenting themselves as Allied Trustee Services, Inc.).

82.     The Initial Communication stated "Only Allied is authorized to accept payment until this demand is discharged. Therefore you should direct all communications relating to this matter to Allied." Plaintiff was left in the impossible position of not being able to pay ALT, and having no way to pay Allied Trustee Services, Inc., who is the only party authorized by contract to collect on the payment (who did not exist and could not be identified) as specified in the ALT Collections Policy. The Initial Communication stated "Thereafter, if the delinquency is not paid, the Association will authorize the recording of a lien against the property. Thirty days after recording, the lien may be enforced in any lawful manner permitted by the Association's governing documents and collection policy."

83.     After spending several days attempting to find the nexus between Allied Trustee Services, Inc. and G&P Enterprises, LLC dba Allied Trustee Services, Plaintiff was informed by ALT that the ALT Board of Directors had authorized the recording of a lien against Plaintiffs property. Defendant's actions resulted in Plaintiff being forced to file bankruptcy as no viable alternative was available to Plaintiff. Plaintiff denies that any consent was ever given to the ALT Board of Directors, ALT or their agents to record a non-consensual lien or encumbrance using the methods employed. Plaintiff never gave authority to the ALT Board of Directors, ALT or their agents to operate outside of their capacity as defined in the CC&R's and as expressly authorized by the CC&R's as ratified by the ALT Board of Directors who derive their power and authority from, among other things, ALT members, the CC&R's and Federal and State law.

84.     Absent the relief requested in this adversary proceeding, Defendants will likely continue to violate Federal and State laws as well as continue in their long standing state of breach of contract.

This is especially the case given that Defendants willfully violated the automatic stay and operated willfully in contempt of court, were put on notice of numerous wrongful acts, and elected to continue on their chosen path with a reckless disregard for the consequences.

85.    G&P Enterprises, LLC and Auburn Lake Trails Property Owners Association (in using, impersonating and/or misrepresenting themselves as Allied Trustee Services, Inc.) violated the FDCPA by using written communications which created a false sense of urgency and misrepresented the importance, cost, purpose and urgency of the communication.

86.    In direct violation of the FDCPA, G&P Enterprises, LLC and Auburn Lake Trails Property Owners Association (in using, impersonating and/or misrepresenting themselves as Allied Trustee Services, Inc.) failed to disclose the amount of the debt. The amount of the debt as stated by the Initial Communication as seen from the perspective of the least sophisticated consumer, was unfair and deceptive.

87.    G&P Enterprises, LLC and Auburn Lake Trails Property Owners Association (in using, impersonating and/or misrepresenting themselves as Allied Trustee Services, Inc.) contradicted or confused the statutorily required language clearly, thereby making Plaintiff uncertain as to what the mixed message meant in actuality.

88.    G&P Enterprises, LLC's and Auburn Lake Trails Property Owners Association (in using, impersonating and/or misrepresenting themselves as Allied Trustee Services, Inc.) Initial Communication to Plaintiff was intentionally frightening, and contained false threats and misrepresentations of fact.

89.    In the Initial Communication, Defendants stated that Plaintiff would be required to pay a SETUP FEE of $50.00. This required payment is not based in law and is unenforceable.

90.    In the Initial Communication, Defendants stated that Plaintiff would be required to pay a PRELIMINARY MAIL CHARGE of $36.00. This required payment is not based in law and is unenforceable.

91.    In the Initial Communication, Defendants stated that Plaintiff would be required to pay a PRE-LIEN FEE of $235.00. This required payment is not based in law and is unenforceable.

ADVERSARY COMPLAINT

92.     In the Initial Communication, Defendants stated that Plaintiff would be required to pay a VESTING VERIFICATION of $40.00. This required payment is not based in law and is unenforceable.

93.     G&P Enterprises, LLC and Auburn Lake Trails Property Owners Association (in using, impersonating and/or misrepresenting themselves as Allied Trustee Services, Inc.) willingly obtained Plaintiffs personal identifying information and used that information for an unlawful purpose, without Plaintiff's permission. Specifically the Defendants used Plaintiff's personal identifying information to send the Initial Communication through instrumentalities of Interstate Commerce or the mails, and this Initial Communication violated numerous Federal and State Laws. Additionally, Auburn Lake Trails Property Owners Association was not authorized to transfer Plaintiffs personal identifying information and financial information to G&P Enterprises, LLC.

94.     The Initial Communication was made to Plaintiff within one year of the filing of this lawsuit.

95.     At some point prior to Plaintiff's filing of the petition, ALT disabled Plaintiff's vehicle barcodes disallowing access to the automated gates 1, 2 and 3. This forced Plaintiff to always use gate one containing Auburn Lake Trails security personnel whereby Plaintiff was forced to ask for permission to enter. Plaintiff resides two miles from the second gate, as the first gates is not located near Plaintiff's Property. Additionally, Plaintiff makes use of the 3rd gate when traveling to the bank. While Plaintiff can exit the 3rd gate, the barcode on his vehicle was disabled forcing him to drive approximately 6 miles past the 3rd gate and enter at the first gate, then backtrack several miles to his residence. The purpose of shutting off automated gate access was because of the non-payment of a debt owed to ALT. Shutting off automated gate access was intended to degrade, humiliate, agitate, embarrass and distress Plaintiff as well as cost Plaintiff time and expense, in order to coerce payment from Plaintiff. Plaintiff was agitated, nervous, worried, fearful, stricken with grief, anxious, shocked, shamed, humiliated, distressed, suffered sleeplessness, embarrass, suffered nervous tension, loss of reputation, and a damaged sense of well being, and spent extra wear and tear on his vehicles, as well as extra fuel expenses in driving miles out of the way in order to enter the gated community through the first gate. There is a vast difference between blocking

Plaintiff from the use and enjoyment of the ALT pool and blocking Plaintiffs access to the automated barcode gates causing Plaintiff to drive eight miles in a large circle in order to access his Property.

96.    In a letter dated 5/15/2012 Plaintiff notified ALT that Allied Trustee Services, Inc. ceased to exist at some point in 2007 and that G&P Enterprises, LLC dba Allied Trustee Services initial communication contained numerous violations of the Fair Debt Collections Practices Act. Additionally the letter asked that ALT cease and desist from, inter alia, "Blocking access to ALT resources, such as the pool and the use of the automatic 1st, 2nd and 3rd gates"

97.    On May 15, 2012, Plaintiff hand delivered a copy of the first page of the Plaintiffs bankruptcy petition with the ALT front office at 1400 American River Trail, Cool, CA 95614.

98.    After May 15, 2012 (Plaintiff's petition date), Plaintiff checked the automated gates daily in anticipation they would be turned on and access would be resumed. They were not turned on, and every time Plaintiff exited the gates of the community, Plaintiff had to return through the first gate and ask for permission for re-entry. Plaintiff was continually humiliated and degraded on a daily basis, never knowing if the automated gates would work and if he would have to once again ask for permission to enter on to his own Property.

99.    On June 8, 2012 Plaintiff mailed a letter to ALT stating that as part of Plaintiffs Chapter 11 individual bankruptcy, post-petition payments due to ALT would be put into a new Debtor-in-Possession savings account pending further instructions from the court. The letter reiterated that ALT had so far refused to provide my family with full access to association benefits.

100.    On June 12, 2012 Plaintiff received a letter from Kevin Hubred acting for the Board of Directors of ALT stating, inter alia, that:

  a) My June 8, 2012 letter was received on June 11, 2012

  b) On May 23, 2012, ALT received notice that I filed bankruptcy, chapter 11, case number 12-29353-B-11

  c) The BK filing resulted in an "automatic stay" which immediately suspends all proceedings against me and the property

d)  ALT cannot currently take action – we can neither contact you (which would be construed as harassment in lieu of my pending bk) nor move forward with collections efforts until the BK case is closed – or, we would be in violation of the U.S. Bankruptcy Code.

e)  We will monitor the bankruptcy and will not move forward until we receive the courts decision and the BK is closed.

101.    On June 12, 2012 Plaintiff once again attempted automated gate access, to no avail.  ALT still refused to grant access.

102.    On June 13, 2012 Plaintiff checked the automated gate for access and it worked.  ALT restored to Plaintiff full gate access to automated gates 1, 2 and 3.  Four weeks after filing the petition, full automated gate access was restored to Plaintiff, finally allowing Plaintiff the use and enjoyment of the ALT common areas.  Plaintiff continues to be agitated, nervous, worried and fearful each time passing through the ALT automated barcode gates, never knowing if he will be allowed access to his own property.

103.    Plaintiff has no remedy at law against ALT's authorized agent, the non-existent entity Allied Trustee Services, Inc. as it does not exist, cannot be identified and cannot be served.

104.    The actions of ALT and the ALT Board of Directors were ultra vires based on, inter alia, the following:

a.  A material breach of contract by referring ALT member collections to Allied Trustee Services, Inc. in the ALT Collections Policy;

b.  A standard and practice of passing ALT members personal identifying information and financial information to G&P Enterprises, LLC dba Allied Trustee Services;

c.  The standard and practice of allowing G&P Enterprises, LLC dba Allied Trustee Services to appear in court and/or file pleadings, declarations, Proof of Claims and other items on behalf of ALT and the ALT Board of Directors when the CC&R's and/or the Collections Policy only authorized Allied Trustee Services, Inc.;

d.  The Standard and Practice of ALT and the ALT Board of Directors publishing and ratifying the Collections Policy each of the last six years since Allied Trustee Services, Inc. ceased to exist;

e. The Standard and Practice of ALT and the ALT Board of Directors filing or causing to be filed in state and federal courts, or in local land records offices, numerous affidavits or other real property related documents that were asserted to be based on personal knowledge when they were not based on personal knowledge;

f. The Standard and Practice of ALT and the ALT Board of Directors litigating foreclosure and/or collections proceedings and initiating non-judicial proceedings without ensuring that Allied Trustee Services, Inc. existed, could be identified and was a corporation in good standing with the California Secretary of State;

g. A Standard and Practice of ALT and the ALT Board of Directors failing to devote sufficient financial, staffing, legal, and managerial resources to ensure proper administration of its collections policy, including the placement of liens, and the initiation of non-judicial foreclosure proceedings;

h. A Standard and Practice of ALT and the ALT Board of Directors failing to devote to its collections processes adequate oversight, internal controls, policies, and procedures, compliance risk management, internal audit, third party management, and training;

i. A Standard and Practice of ALT and the ALT Board of Directors failing to sufficiently oversee outside counsel and other third-party providers handling collections and foreclosure-related services.

j. A Standard and Practice of ALT and the ALT Board of Directors failing to ensure that Allied Trustee Services, Inc. has valid insurance coverage to protect ALT, ALT members and the ALT Board of Directors from general liability, professional liability, and/or errors and omissions insurance or any other types of insurance required by the CC&R's, California law and/or ALT insurance carriers requirements.

k. ALT and the ALT Board of Directors has placed an unreasonable amount of reliance in the handling of complex legal issues, legal interpretations, legal opinions, and legal advice on ALT Board members, the ALT general manager and other personnel who are not adequately trained on, inter alia, federal law, bankruptcy law, contract law, common law,

California Civil Code, California Financial Code, California Corporations Code, California Business & Professions Code, and California Penal Code.

105.    Damages will not adequately compensate Plaintiff as Plaintiff has been damaged emotionally, as well as his reputation and credit. Defendants will suffer minimally if the Court disallows Defendants pre-petition claim and/or Defendants priority post-petition claim. As of the date of the adversary proceeding, the entire amounts alleged to be due and owing Defendants is less than $4,000.00. As previously stated, Plaintiff is ready, willing, and able to pay post-petition payments as these have been put into a Debtor-in-possession trust account for disbursement as ordered by the Court. Pre-petition payments cannot be paid except as authorized by the Court and to the extent they payments are part of an allowed claim, will be disbursed pursuant to Debtor's plan of reorganization. Defendant's errors, omissions and other wrongful actions cannot be "glossed over" any longer and the "bell cannot be un-rung". Defendants have not only failed to be pro-active in taking the initiative to cure the issues addressed in this complaint, but in fact once put on notice, Defendants retaliated against Plaintiff and have refused any inquiry or action to cure their breach and wrongful actions. In light of Defendants actions to date, it is highly unlikely Defendants will cure. The Defendants behavior shows not only that they have breached the implied covenant of good faith and fair dealing, but that they are acting in bad faith and unfair dealing.

106.    Wrongful use of power including blocking access to ALT common property and threatening and actually filing bogus liens are asserted to harass ALT members and deter them from the use and enjoyment of ALT common property as well as their residence, and as punishment and public humiliation until the targeted ALT member capitulates. The ALT Board of Directors, ALT General Manager Hubred and ALT employees employ these methods as weapons under color of authority from the CC&R's, ALT Collections Policy and California statutes. The liens and the threat of liens are calculated to molest, interrupt, hinder and impede ALT members in their use and enjoyment of the ALT common property as well as their own principal residence. No valid enforceable security agreement exists and Defendants unfounded threats to record a lien were a fraudulent misrepresentation to induce Plaintiff to take action.

107.    Based on Defendants actions, they have made a definite and unequivocal manifestation of intent not to perform, both prior to Plaintiffs bankruptcy filing and afterwards. After Plaintiffs bankruptcy was filed, and Defendants were put on actual notice of the filing, Defendants upped the ante and aggressively sought to coerce payment from Plaintiff in furtherance of prior breaches and wrongful actions. After incessantly harassing Plaintiff, Defendants finally relented at some point between June 12 and June 13, 2012. Defendants have willfully failed to investigate Plaintiff's actual notice of breach of contract and numerous unlawful acts as well as failed to take any proactive stance to mitigate any issues raised by Plaintiff.

108.    Since intentionally blocking access to ALT common areas to Plaintiff on June 12, 2012, the conspiracy has continued in operation by actively taking unlawful actions as well as omitting to take actions to mitigate damages or even to make inquiry despite numerous actual notices to ALT, the ALT Board of Directors and G&P Enterprises from Plaintiff. For example on January 9, 2013 ALT Board of Directors President Jody Gray published a letter of recommendation in the ALT Trail Views newsletter dated February 2013 Vol. XXXIX No. 8 for ALT General Manager Kevin D. Hubred ("**GM Recommendation**"). The GM Recommendation is an admission against interest revealing the unfounded reliance on complex legal issues with personnel who are not attorneys while at the same time cutting back usage of outside counsel – all done after receiving actual notice of very serious legal issues from Plaintiff. The Recommendation states that Hubred (i) "knows his job, rules, legislation regarding HOA's, saves us a great deal of money, collects on bad debt, he handles complaints superbly."; (ii) "spent a great deal of time saving the association money and stream lining many administrative jobs."; (iii) "We have eliminated outside contracts and accounting personnel because of his expertise in getting the job done effectively and efficiently with trained staff and quality programs."; (iv) "knowledge in fund balancing, collections, computer programs, legal issues and even our Reserve account and how it should be funded and used has saved our association so much money, we have been in the black both years that Kevin has been here."; (v) "shopped for and retained a better lawyer with excellent POA/HOA knowledge, has decreased the use of our lawyer, as he himself is well versed in HOA rules and legislation." and (vi) "was instrumental in updating our rules to be complete, accurate and not contradictory."

Additionally Gray states "Since Kevin has been General Manager, our collections have increased, accounts receivable decreased, morale, reputation and the bottom line has never been better." These overt actions were done despite a duty to inquire and take actions to mitigate past wrongful acts, but instead the ALT Board of Directors and ALT employees have moved in the opposite direction in an attempt to conceal and continue their wrongful actions.

109.    The ALT Board of Directors and ALT General Manager cannot rely on a representation if they know that it is false or its falsity is obvious to them.  Although Defendants (might) ordinarily have no duty to investigate the truth of a representation, Defendants cannot purport to rely on preposterous representations or close their eyes to avoid discovery of the truth.  Especially in light of Plaintiffs multiple notices, which laid on them a duty to make inquiry.

110.    By lack of compliance with statutory obligations or duties, Defendants never had a private right of enforcement *ab initio*.

111.    All of Defendants actions in this case were malicious and were not privileged.  There is no right to privilege when taking wrongful actions in violation of the law.

112.    These acts were all done while G&P Enterprises, LLC was in the scope of employment or agency of Auburn Lake Trails Property Owners Association, and while Auburn Lake Trails Property Owners Association and G&P Enterprises, LLC were impersonating or using the name Allied Trustee Services, Inc.  None of the actions taken by G&P Enterprises, LLC were privileged because they were not authorized by contract in the ALT Collections Policy, the actions were done with malice and/or a reckless disregard for the consequences, the use of false statements, willfully and recklessly violating Federal and State laws, and other actions described in this adversary complaint.

## FIRST CAUSE OF ACTION

### WILLFUL VIOLATION OF THE AUTOMATIC STAY, ADDITIONALLY AND ALTERNATIVELY WILLFUL CONTEMPT OF COURT

### 15 U.S.C. §362(a); 11 U.S.C. §105

113.    Plaintiff incorporates by reference all of the above and below paragraphs of this Adversary Proceeding as though fully stated herein and brings this cause of action against Defendants Auburn

Lake Trails Property Owners Association and DOES 1-100, for willful violation of the automatic stay, additionally and alternatively willful contempt of Court.

114.     The signature feature of bankruptcy is the automatic stay -- an automatic, universal, self-executing injunction against all actions to collect, enforce, commemorate, or advance claims against property of the bankruptcy estate. 11 U.S.C. § 362(a) (**"Automatic Stay"** or **"Stay"**). The Stay serves the dual purposes of safeguarding debtor peace of mind and maximizing value for unsecured creditors.

115.     Contempt of court is defined as any act which is calculated to embarrass, hinder, or obstruct a court in the administration of justice, or which is calculated to lessen the authority or dignity of a court.  Black's Law Dictionary 288 (5th ed. 1979).

116.     As established in this case, ALT was in privity of contract with Plaintiff and Debtor Daniel Major Edstrom at the time the petition was filed[11].  The CC&R's contract is an encumbrance on Plaintiff and Debtors real property located at 2690 Brown Bear Court, Cool, California, County of El Dorado, with APN# 073-141-03-100.  The CC&R's extend Plaintiffs property interest outside of the bounds of his residence and into the common areas of ALT to which Plaintiff retains a fractional, undivided real property interest (**"Common Property"**).  The Common Property is an interest in real property.

117.     Plaintiffs Property includes Plaintiffs ownership interest in the Common Property, as well as Plaintiffs right to use and enjoyment of the Common Property.  ALT and the ALT Board of Directors may in certain situations restrict ALT members use and enjoyment of the ALT common areas as part of the ALT Collections Policy until delinquent assessments, fees and costs have been paid in full.  This assumes of course that the ALT Collections Policy is enforceable in the first place.  Plaintiff specifically denies that the ALT Collections Policy was enforceable.

118.     Plaintiffs Property is scheduled in Plaintiff/Debtors petition as real property and is part of the above captioned bankruptcy estate.  The Property was part of the estate from the petition date. The Property address was listed as the street address on first page of the petition and the ALTPOA

---

[11] To the extent the contract was not void.

claim was listed as #1 on the "LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS" filed with the petition on May 15, 2012.

119.    ALT and the ALT Board of Directors were in the midst of a dispute with Plaintiff. ALT and the ALT Board of Directors were in breach of contract, taking wrongful and unlawful actions against Plaintiff, and threatening to slander Plaintiffs real property title and place a lien on Plaintiffs real property just prior to Plaintiff filing the petition. Because of each wrongful action of Defendants, as well as the combination of all of Defendants wrongful actions, including the imminent threat to slander Plaintiffs title and record a lien, Plaintiff was forced to seek a court order enjoining Defendants actions.

120.    ALT, the ALT Board of Directors and ALT General Manager Hubred are part of a well seasoned homeowners association that has existed for decades. Numerous ALT members have been through bankruptcy proceedings through the years and ALT is readily familiar with bankruptcy basics, including implications of the Automatic Stay. Additionally ALT General Manager Hubred has worked at numerous

121.    As indicated previously in this adversary proceeding, ALT and the ALT Board of Directors were served with actual notice of Plaintiff's petition within hours of the filing of the above captioned bankruptcy case. Prior to filing bankruptcy, ALT and the ALT Board of Directors had restricted Plaintiffs use and enjoyment of access to many ALT amenities, including automatic barcode access gates #1, #2 and #3, which prevented Plaintiff from unrestricted access to ALT Common Property until Plaintiffs alleged delinquency was paid in full. Pre-petition authority for ALT to restrict access is part of the ALT Collections Policy generally authorized by CC&R's Article IV Assessments, Section 9 Collection of assessments: Enforcement of Liens. Specifically section 6 of the Collections Policy states (emphasis added):

> In the event that any payment is not paid within sixty (60) days after the original
> due date thereof, the owner shall be notified of the delinquency and that the right
> of the use and enjoyment of the recreational common areas and common
> facilities, including rental/lease of Association facilities, by the owner, the
> owner's family members, tenants and guests shall be suspended until payment is

made so that no delinquency exists. The owner may request a hearing before the Auburn Lake Trails Board of Directors by delivering such a request, in writing to the Association within 15 days after the notice of delinquency is provided herein. The meeting will be held in executive session. Alternatively, the owner may file written explanation of their objections to the debt within 15 days after the notice of delinquency is provided herein to which the Board is obligated to respond in writing."

122.    Plaintiff had previously notified the association of a dispute in regards to amounts alleged to be due and owing by Plaintiff to ALT. The dispute was escalating to a peak because of Plaintiffs discovery of a cavalcade of unfair and deceptive acts by ALT, the ALT Board of Directors, and their agents. Directly in retaliation of Plaintiff's research and findings, with actual knowledge of Plaintiffs bankruptcy filing, and in willful contempt of Court, the ALT Board of Directors and ALT General Manager Hubred conspired to obstruct the orderly prosecution of Plaintiff/Debtors bankruptcy and attempted to coerce payment from Debtor by continuing to restrict access rights to ALT amenities, mainly by restricting Plaintiffs use and enjoyment of automatic gates #1, #2 and #3, which allows Plaintiff to come and go through the ALT common areas. The actions of ALT General Manager Hubred and the ALT Board of Directors in this case, in seeking to exercise control over property of the estate in an attempt to disrupt the orderly prosecution of Plaintiff/Debtors bankruptcy and attempting to coerce full payment from the Debtor/Plaintiff, constitute, inter alia, a gross violation of the automatic stay as set forth in 11 U.S.C. §362(a) and willful contempt of court as set forth in 11 U.S.C. §105.

123.    The actions in this case are particularly egregious because Plaintiff was a whistleblower and had identified unlawful actions taken by ALT, the ALT Board of Directors, and their agent, G&P Enterprises, LLC. Plaintiff had notified ALT general manager Kevin Hubred who had a duty to notify the ALT Board of Directors of Plaintiffs findings. Kevin Hubred is a Certified Community Association Manager, as well as a Professional Community Association Manager. Not only did ALT, ALT General Manager Hubred, and the ALT Board of Directors fail to make an inquiry, they retaliated against Plaintiff by removing Plaintiffs use and enjoyment of the ALT common areas and

access to the automatic gates #1, #2, and #3 thereby causing Plaintiff harm in added wear, tear and fuel costs, extra time, as well as being agitated, nervous, worried, fearful, stricken with grief, anxious, shocked, shamed, humiliated, distressed, sleeplessness, embarrassment, nervous tension, loss of reputation, damaged sense of well being and other damages as described in this adversary complaint.

124.    The conduct of Defendants in this case has substantially frustrated the automatic stay order entered by this Court and has caused the Debtor/Plaintiffs unwarranted and unnecessary time, effort and expense in seeking to enforce rights guaranteed by the Bankruptcy Code, by Contract, and by prior actions of Defendants. Defendants oppression of Plaintiff caused substantial damages to Plaintiff.

125.    Specifically, ALTPOA personnel know Debtor lives past gate #2 and it is a huge inconvenience, hassle and expense to use the manned guard at gate #1 for access. Additionally, Plaintiff was degraded and humiliated, because (i) the bar code gates are monitored by security camera's allowing security to see each time Plaintiff was refused access and forced to return to manned gate #1; and (ii) cars following behind Plaintiff had to back up and move out of the way while Plaintiff is denied access to the barcode gates #2 and #3, further humiliating and degrading Plaintiff in front of ALT members, ALT security, and the public at large.

126.    Defendant's violation of the automatic stay was an unfair and deceptive act and practice as it was not in the direct purview of the court, but was instead done in a secretive manner.

127.    No reasonable person expects to be denied access to their own property for no reason, and no reasonable person expects to be denied access to their property in willful violation of a court order.

**PRAYER FOR RELIEF**

WHEREFORE, Debtor/Plaintiff having set forth his claims for relief against the Defendant respectfully pray of the Court as follows:

- For a determination that Defendants, and each of them, have unclean hands;
- That the Debtor/Plaintiff may have and recover against the Defendant a sum to be determined by the Court in the form of actual damages;

- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of compensatory damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of exemplary damages;
- That the Debtor/Plaintiffs may have and recover against the Defendants a sum to be determined by the Court in the form of punitive damages pursuant to, inter alia, California Civil Code 3294;
- That the Debtor/Plaintiffs may have and recover against the Defendants all reasonable legal fees and expenses incurred by their attorney;
- That the Debtor/Plaintiff may have and recover against the Defendants costs of suit;
- For such other and further relief as is just and proper.

## SECOND CAUSE OF ACTION

## OBJECTION AND DISALLOWANCE OF CLAIM

### F.R.B.P. 3007(b)

128.    Plaintiff incorporates by reference all of the above and below paragraphs of this Adversary Proceeding as though fully stated herein and brings this cause of action against Auburn Lake Trails Property Owners Association, G&P Enterprises, LLC dba Allied Trustee Services and DOES 1-100 for objection and disallowance of claim.

129.    Plaintiff objects to Proof of Claim 4-1 filed by claimant G&P Enterprises, LLC dba Allied Trustee Services on behalf of general unsecured creditor Auburn Lake Trails Property Owners Association based on the following:

i.    Lack of claimant and creditors Standing and Jurisdiction;

    1.  Creditor and claimant have unclean hands;

ii.    Because of Defendants lack of compliance with statutory obligations or duties, Defendants never had a private right of enforcement *ab initio*.

iii.    Claimant and creditors mis-joinder;

    1.  In breach of contract and violation of California Civil Code 1558, Allied Trustee Services, Inc. does not exist and Auburn Lake Trails Property Owners Association is

not authorized to refer collections to G&P Enterprises, LLC dba Allied Trustee Services;

iv.    The claimant is not authorized by the CC&R's, which authorizes ALTPOA to use Allied Trustee Services, Inc.;

v.    Plaintiff/Debtor is unable to determine the validity of the claim because of noncompliance in completing a valid Proof of Claim form;

1.    Information is missing as the wrong Proof of Claim form has been used;

vi.    First Material Breach of Contract was from Auburn Lake Trails Property Owners Association from 2007, the breach has not been cured, and as such the contract is unenforceable or alternatively the ALT Collections Policy is unenforceable;

vii.    The amount of the claim is excessive and not authorized by an enforceable contract or by law;

viii.    Defendants, as a standard and practice, violate the law;

ix.    The claim is based on hearsay and without any foundation;

x.    Creditor violated the automatic stay thereby waiving any right to payment based on the claim or an offset for damages and/or restitution;

xi.    The Claim is barred by claimants and creditors own negligence;

xii.    The Claim is barred under the doctrine of estoppels waiver and laches;

1.    The Doctrine of equitable estoppels applies in this case, additionally Defendants have excessively delayed in taking corrective actions.

2.    The Doctrine of judicial estoppel applies in this case because there is a clear lack of compliance with statutory obligations or duties, the party taking a given position in a "quasi-judicial or administrative" proceeding (3rd party debt collection, placing a lien, invoking the non-judicial statute, etc.) who violates those statutory obligations has no private right of enforcement *ab initio.*

xiii.    The Claim is barred because it circumvents the law of contracts;

xiv.    The Claim is barred because creditor and claimant are acting ultra vires;

xv.    The Claim is barred because the condition precedent to collecting on a debt has not been met by the creditor;

130.    Debtor reserves all rights to amend this cause of action (as it pertains to Proof of Claim 4-1) without leave to amend should the creditor and/or claimant amend Proof of Claim 4-1, thus changing their position.

131.    Plaintiff objects to the priority unsecured claim of creditor Auburn Lake Trails Property Owners Association (for post petition Homeowners Association payments) based on the following:

    A.  Lack of creditors Standing and Jurisdiction;

       1.  Creditor has unclean hands;

    B.  Because of Defendants lack of compliance with statutory obligations or duties, Defendants never had a private right of enforcement *ab initio*.

    C.  First Material Breach of Contract was from Auburn Lake Trails Property Owners Association in 2007, the breach has not been cured, and as such the contract is unenforceable or alternatively the ALT Collections Policy is unenforceable;

    D.  The claimant is not authorized by the CC&R's, which authorizes ALTPOA to use Allied Trustee Services, Inc.;

    E.  The amount of the claim is excessive and not authorized by an enforceable contract, an enforceable Collections Policy, or by law;

    F.  Defendant Auburn Lake Trails Property Owners Association, as a standard and practice, acts unfairly and deceptively;

    G.  Auburn Lake Trails Property Owners Association willfully violated the automatic stay and has acted willfully in contempt of court thereby waiving any right to payment based on the claim or an offset for damages and/or restitution;

    H.  The Claim is barred by creditors own negligence;

    I.  The Claim is barred under the doctrine of estoppels waiver and laches, in that Defendants have been operating willfully in breach of contract and unfairly and deceptively as a standard and practice;

1.  The Doctrine of equitable estoppels applies in this case, additionally Defendants have excessively delayed in taking corrective actions.

2.  The Doctrine of judicial estoppel applies in this case because there is a clear lack of compliance with statutory obligations or duties, the party taking a given position in a "quasi-judicial or administrative" proceeding (3rd party debt collection, placing a lien, invoking the non-judicial statute, etc.) who violates those statutory obligations has no private right of enforcement *ab initio*.

J.  The Claim is barred because Defendants have acted inequitably in circumvented the law of contracts;

K.  The Claim is barred because Defendants are acting ultra vires;

L.  The Claim is barred because the condition precedent to collecting on a debt has not been met by the creditor;

132.    Debtor reserves all rights to amend this cause of action (as it pertains to the priority unsecured claim of creditor) without leave to amend should the creditor provide information, evidence or other documents in support of the priority unsecured claim of Auburn Lake Trails Property Owners Association.

133.    No reasonable person expects to be denied access to their own property for no reason, and no reasonable person expects to be denied access to their property in willful violation of a court order.

## PRAYER FOR RELIEF

WHEREFORE, Debtor/Plaintiff having set forth his claims for relief against the Defendant respectfully pray of the Court as follows:

- That the Defendant ALTPOA's post-petition claim be disallowed in its entirety while Plaintiff's bankruptcy remains open;

- That alternatively Defendant ALTPOA's post-petition claim be reduced by off-sets, counterclaims and restitution;

- That Defendants pre-petition claim 4-1 be disallowed in its entirety;

- That alternatively Defendants pre-petition claim 4-1 be reduced by off-sets, counterclaims and restitution;

- For a determination that Defendants, and each of them, have unclean hands;

- For sanctions pursuant to Federal Rule of Bankruptcy Procedure 3001(c)(2)(D)(i) against Defendants that preclude the Proof of Claim holder (both the named claimant and the named creditor) from presenting the information required by Federal Rule of Bankruptcy Procedure 3001(c), in any form, as evidence in any contested matter or adversary proceeding in the case;

- For sanctions pursuant to Federal Rule of Bankruptcy Procedure 3001(c)(2)(D)(ii) to award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure to comply with Federal Rule of Bankruptcy Procedure 3001(c);

- For a determination that the failure to comply with Federal Rule of Bankruptcy Procedure 3001 by including all information required to support Proof of Claim 4-1 was not substantially justified and was not harmless;

- Debtor/Plaintiff may have and recover against the Defendant a sum to be determined by the Court in the form of actual damages;

- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of compensatory damages;

- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of exemplary damages;

- That the Debtor/Plaintiffs may have and recover against the Defendants a sum to be determined by the Court in the form of punitive damages pursuant to, inter alia, California Civil Code 3294;

- That the Debtor/Plaintiffs may have and recover against the Defendants all reasonable legal fees and expenses incurred by their attorney;

- That the Debtor/Plaintiff may have and recover against the Defendants costs of suit;

- For such other and further relief as is just and proper.

### THIRD CAUSE OF ACTION

**BREACH OF CONTRACT**

134.    Plaintiff incorporates by reference all of the above and below paragraphs of this Adversary Proceeding as though fully stated herein and brings this cause of action against Auburn Lake Trails Property Owners Association, G&P Enterprises, LLC dba Allied Trustee Services and DOES 1-100 for breach of contract, by Plaintiff and all others similarly situated.

135.    "A written instrument is presumptive evidence of a consideration."[12]  As such, it is not necessary to plead the existence of consideration to support the contract.

136.    The CC&R contract as the basis for this cause of action was previously described, as was Plaintiff's assent to the contract and consideration paid.  Pursuant to California Civil Code 1614, the consideration is presumed by the existence of the contract.  Further, Plaintiff has already stated the consideration tendered as part of his acceptance of the contract.

137.    As previously stated Plaintiff performed as required under the contract and has performed as required.  Plaintiff stands ready, will and able to perform to the extent allowed by the bankruptcy court.  To the extent the Court finds that Plaintiff/Debtor has not performed under the contract, Plaintiff/Debtor is excused.  Reasons for Plaintiffs nonperformance would be, inter alia: (i) the First Material Breach of Contract Doctrine whereby Defendants breached the contract prior to any breach by Plaintiff/Debtor; and (ii) bankruptcy code preemption of contractual duties.  Further, Plaintiff/Debtor has deposited post-petition assessments into a Debtor-in-possession savings account and notified both the Auburn Lake Trails Property Owners Association and the Bankruptcy Court pending resolution of the dispute(s) between Auburn Lake Trails Property Owners Association and Plaintiff/Debtor.  No type of motion, objection or claim has been filed in regards to post-petition payments allegedly due to Auburn Lake Trails Property Owners Association.

138.    Defendants have breached the CC&R's by, inter alia: (i) failing to take action when Allied Trustee Services, Inc. ceased to exist at some point in 2007 (apparently on or around March 2007); (ii) ratifying and publishing the Auburn Lake Trails Property Owners Association Collections Policy and publishing it on a yearly basis from the 2007-2008 tax year through the 2011-2012 tax year and into the 2012-2013 tax year; (iii) Failing to protect the Auburn Lake Trails Property

---

[12] California Civil Code 1614

Owners Association Board of Directors, the Auburn Lake Trails Property Owners Association and the Auburn Lake Trails Property Owners Association members by requiring "Allied Trustee Services, Inc." to maintain adequate insurance, including, inter alia, general liability, and errors and omissions policies naming, inter alia, Auburn Lake Trails Property Owners Association as the insured and/or additional insured; (iv) Failing to maintain control over Auburn Lake Trails Property Owners Association members personal identifying information, including Plaintiff/Debtors personal identifying information, and passing this information as a collection referral to G&P Enterprises, LLC; (v) Using G&P Enterprises, LLC as an agent while failing to maintain control of the agent and their actions (as laid out in detail elsewhere in this adversary complaint); (vi) Failure to have the appropriate controls in place over critical operational procedures and processes such as managing and training managers, employees and agents, accounting procedures, legal review and opinions, etc. This listing is not all inclusive.

139.    Plaintiff has been damaged as his rights have been infringed, his credit and title have been slandered (actual or constructive), he has expended time, effort and money, he has expended wear and tear on his vehicles through being denied access to his property (real property described by the address 2690 Brown Bear Court, Cool, CA 95614 and property that is owned by Plaintiff through his fractional, undivided real property interest in Auburn Lake Trails Property Owners Association common areas, such as automatic bar coded gates #1, #2 and #3 which normally allow access automatically, but which are controlled by Auburn Lake Trails Property Owners Association Board of Directors, managers, employees, agents or contractors. Additionally the infringement of rights, wrongful claims for amounts due that had not yet accrued, and the threat to record a lien (ratified by the Auburn Lake Trails Property Owners Association Board of Directors) was the proximate cause of Plaintiffs petition for bankruptcy relief filed on May 15, 2012. The bankruptcy filing has damaged Plaintiff's reputation and credit and has caused Plaintiff/Debtor to expend extraordinary expenses he would otherwise have not incurred.

140.    Damages: Plaintiffs rights were prejudiced by the unlawful acts committed by Defendants, and all of them. Plaintiff suffered monetary and other damages subject to proof at trial, including,

inter alia, additional vehicle wear and tear, mileage expense, mental anguish, humiliation, degradation, costs of declaring and administering bankruptcy, etc.

141.    No reasonable person expects to be denied access to their own property for no reason, and no reasonable person expects to be denied access to their property in willful violation of a court order.

## PRAYER FOR RELIEF

WHEREFORE, Debtor/Plaintiff having set forth his claims for relief against the Defendant respectfully pray of the Court as follows:

- For a determination that Defendants, and each of them, have unclean hands;
- That the Debtor/Plaintiff may have and recover against the Defendant a sum to be determined by the Court in the form of actual damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of compensatory damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of exemplary damages;
- That the Debtor/Plaintiffs may have and recover against the Defendants a sum to be determined by the Court in the form of punitive damages pursuant to, inter alia, California Civil Code 3294;
- That the Debtor/Plaintiffs may have and recover against the Defendants all reasonable legal fees and expenses incurred by their attorney;
- That the Debtor/Plaintiff may have and recover against the Defendants costs of suit;
- For such other and further relief as is just and proper.

## FOURTH CAUSE OF ACTION

## SPECIFIC PERFORMANCE

142.    Plaintiff incorporates by reference all of the above and below paragraphs of this Adversary Proceeding as though fully stated herein and brings this cause of action against Auburn Lake Trails Property Owners Association, G&P Enterprises, LLC dba Allied Trustee Services and DOES 1-100 for specific performance, by Plaintiff and all others similarly situated.

143.    Payment for breach of contract does not make the Collections Policy enforceable. Assessment payments are due on an ongoing basis, without an order of specific performance the parties will continually litigate these issues.

144.    No reasonable person expects to be denied access to their own property for no reason, and no reasonable person expects to be denied access to their property in willful violation of a court order.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants:

- For a determination that Defendants, and each of them, have unclean hands;
- That Defendant Auburn Lake Trails Property Owners Association replace the Collections Policy referral entity "Allied Trustee Services, Inc." with a person or entity that exists and is identifiable (hereinafter "**New Collection Agent**"), and is otherwise qualified by law to so serve;
- That Auburn Lake Trails Property Owners Association perform due diligence in the selection of the New Collection Agent that will replace "Allied Trustee Services, Inc.".
- That Auburn Lake Trails Property Owners Association and its Board of Directors and members will be protected by adequate insurance, including a general liability policy as well as an errors and omissions policy that the New Collection Agent will maintain.
- That the Debtor/Plaintiff may have and recover against the Defendant a sum to be determined by the Court in the form of actual damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of compensatory damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of exemplary damages;
- That the Debtor/Plaintiffs may have and recover against the Defendants a sum to be determined by the Court in the form of punitive damages pursuant to, inter alia, California Civil Code 3294;

- That the Debtor/Plaintiffs may have and recover against the Defendants all reasonable legal fees and expenses incurred by their attorney;

- That the Debtor/Plaintiff may have and recover against the Defendants costs of suit;

- For such other and further relief as is just and proper.

## FIFTH CAUSE OF ACTION

## VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. §1692 et seq. (FDCPA)

145.    Plaintiff incorporates by reference all of the above and below paragraphs of this Adversary Proceeding as though fully stated herein and brings this cause of action against Auburn Lake Trails Property Owners Association, G&P Enterprises, LLC dba Allied Trustee Services and DOES 1-100 for violation of the Fair Debt Collection Practices Act, by Plaintiff and all others similarly situated.

146.    Defendant Auburn Lake Trails Property Owners Association is using and impersonating Allied Trustee Services, Inc. in the collection of its own debts.  In hiding behind this alias, Auburn Lake Trails Property Owners Association is acting unfairly and deceptively and is subject to the FDCPA.

147.    The foregoing acts and omissions of the Defendants constitute numerous and multiple violations of the FDCPA, including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. §1692 et seq.

148.    As a result of Defendant's violations of the FDCPA, Plaintiffs are entitled to statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A); costs pursuant to 15 U.S.C. §1692k(A)(3); and reasonable attorney's fees pursuant to 15 U.S.C. §1692k(A)(3) from Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants:

- For a determination that Defendants, and each of them, have unclean hands;

- For an award of statutory damages of $1,000.00, pursuant to 15 U.S.C. 1692k(a)(2)(A);

- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of compensatory damages;

ADVERSARY COMPLAINT

- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of exemplary damages;
- For an award of costs, pursuant to 15 U.S.C. 1692k(a)(3);
- For an award of reasonable attorney's fees, pursuant to 15 U.S.C. 1692k(a)(3)
- That the Debtor/Plaintiff may have and recover against the Defendants costs of suit;
- For such other and further relief as is just and proper.

## SIXTH CAUSE OF ACTION

## VIOLATION OF ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT

## §§1788-1788.32 (RFDCPA)

149.    Plaintiff incorporates by reference all of the above and below paragraphs of this Adversary Proceeding as though fully stated herein and brings this cause of action against Auburn Lake Trails Property Owners Association, G&P Enterprises, LLC dba Allied Trustee Services and DOES 1-100 for violation of the Rosenthal Fair Debt Collection Practices Act by Plaintiffs and all others similarly situated.

150.    The foregoing acts and omissions of the Defendant constitute numerous and multiple violations of the RFDCPA.

151.    As a result of Defendant's violations of the RFDCPA, Plaintiff is entitled to statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to California Civil Code § 1788.30(b), costs pursuant to California Civil Code § 1788.30(c); and reasonable attorney's fees pursuant to California Civil Code §1788.30(c) from Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants:

- For a determination that Defendants, and each of them, have unclean hands;
- For an award of statutory damages of $1,000.00, pursuant to California Civil Code §1788.30(b);
- For an award of costs, pursuant to pursuant to California Civil Code §1788.30(c);
- For an award of reasonable attorney's fees, pursuant to California Civil Code §1788.30(c);

- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of compensatory damages;

- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of exemplary damages;

- That the Debtor/Plaintiffs may have and recover against the Defendants a sum to be determined by the Court in the form of punitive damages pursuant to, inter alia, California Civil Code 3294;

- That the Debtor/Plaintiff may have and recover against the Defendants costs of suit;

- For such other and further relief as is just and proper.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §17200

152.    Plaintiff incorporates by reference all of the above and below paragraphs of this Adversary Proceeding as though fully stated herein and brings this cause of action against Auburn Lake Trails Property Owners Association, G&P Enterprises, LLC dba Allied Trustee Services and DOES 1-100 for violation of California Business & Professions Code § 17200, by Plaintiffs and all others similarly situated.

153.    Another huge advantage of the UCL is that plaintiffs can recover attorneys' fees by establishing the required elements under Code of Civil Procedure § 1021.5, which is the private attorney general fee statute in California.  Obviously, this creates a strong incentive for plaintiffs to diligently prosecute UCL claims.

154.    If the consent of anyone who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason thereof being stated in the complaint; and when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all.  Code of Civil Procedure 382.

155.    California Business & Professions Code § 17200, et seq., prohibits acts of unfair competition, which means and include any "fraudulent business act or practice…" and conduct which is "likely to deceive" and is "fraudulent" within the meaning of § 17200.

156.    As more fully described above, Defendants acts and practices are likely to deceive, constituting a fraudulent business act or practice.

157.    Specifically, as fully set forth above, Defendants engage in deceptive business practices with respect to the Collections Policy and attempts at collection and enforcement allegedly authorized by the Collections Policy, by:

    a.  Naming an entity that does not exist as the agent handling foreclosures and collections (specifically the Collections Policy names "Allied Trustee Services, Inc.");

    b.  Using the entity name "Allied Trustee Services, Inc." through impersonation;

    c.  Using G&P Enterprises, LLC dba Allied Trustee Services because their communications name them as Allied Trustee Services, which is easily confused as being Allied Trustee Services, Inc;

    d.  Passing Auburn Lake Trails Property Owners Association members personal identifying information and financial information without authority to G&P Enterprises, LLC;

    e.  Allowing G&P Enterprises, LLC to send out debt collection communications that violate, inter alia, the FDCPA, RFDCPA, identity theft, mail fraud and wire fraud statutes;

    f.  Threatening to record documents without the contractual or legal authority to do so;

    g.  Operating ultra vires;

    h.  Demanding payment that has not accrued in an unfair and deceptive manner;

    i.  Violating bankruptcy provisions, such as 11 U.S.C. §362(a) and acting in contempt of court pursuant to 11 U.S.C. §105;

    j.  Invading Plaintiffs privacy, intruding into Plaintiffs seclusion, harassing Plaintiff and otherwise inflicting emotional distress upon Plaintiff.

    k.  Acting as trustee without the legal authority to do so;

    l.  Making wrongful legal conclusions by stating that homeowners owe money that is not due (falsely representing the character, status or amount of a debt), by stating that that Defendants have the right to take the actions they have taken (as described in this adversary complaint and in the documents sent to Plaintiff by Defendants), and by stating Defendants have the right to take further actions, such as recording documents against Plaintiffs real

property, perfecting liens against Plaintiffs property, initiating litigation against Plaintiff, using self-help non-judicial foreclosure against Plaintiff and even initiating judicial foreclosure against Plaintiff;

m. Failing to meet the contractual and/or lawful conditions precedents before taking or threatening to take action against Plaintiff;

n. Despite being in First Material Breach of the CC&R's contract, attempting to enforce the contract on Plaintiff unfairly and deceptively.

o. Violating Plaintiffs right to privacy by willfully obtaining Plaintiffs personal identifying information and willfully transferring this information to G&P Enterprises, LLC without Plaintiffs permission, and without contract authority of the CC&R's.

158.    By engaging in the above described acts and/or practices as alleged herein, Defendants have violated numerous federal laws and regulations, numerous California laws and regulations and said predicate acts are therefore per se violations of Section 17200, *et seq*

159.    Defendants have engaged in a predicate act of violating the Cal. Penal Code §530.5 through passing Plaintiffs personal identifying information to G&P Enterprises without authority, and then using the Initial Communication to violate the FDCPA, RFDCPA, mail fraud and wire fraud statutes.

160.    Defendants misconduct, as stated herein, gave, and have given, Defendants an unfair advantage over consumers.  The scheme and artifice implemented by Defendants is designed to defraud California consumers and enrich the Defendants.

161.    The foregoing acts and practices have caused substantial harm to California consumers who have encountered Defendants unfair practices.  Plaintiffs have recorded numerous liens against Auburn Lake Trails Property Owners Association members since the time Allied Trustee Services, Inc. ceased to exist.  It is highly likely that Defendants are still engaging in these practices.

162.    The harm to Plaintiff, to members of Auburn Lake Trails Property Owners Association, and to member of the general public outweighs the utility of Defendants policy and practices. Consequently, their policy and practices constitute an unlawful business act or practice within the meaning of § 17200.  Further, the foregoing conduct threatens an incipient violation of a consumer

ADVERSARY COMPLAINT

law, or violates the policy or spirit of such law or otherwise significantly threatens or harms competition.

163.    Plaintiff is therefore entitled to injunctive relief and attorney's fees as available under California Business & Professions Code § 17200, et seq.  These acts and practices, as described in the previous paragraphs, are unfair and violate Business and Professions Code § 17200 because their policies and practices described above violate all the statutes previously listed as well as California Civil Code § 1709, and consequently, constitute unlawful business act and practice within the meaning of Business and Professions Code § 17200.

164.    No reasonable person expects to be denied access to their own property for no reason, and no reasonable person expects to be denied access to their property in willful violation of a court order.

## PRAYER FOR RELIEF

WHEREFORE, Debtor/Plaintiff having set forth his claims for relief against the Defendants respectfully pray of the Court as follows:

- For a determination that Defendants, and each of them, have unclean hands;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of actual damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of compensatory damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of exemplary damages;
- That the Debtor/Plaintiffs may have and recover against the Defendants a sum to be determined by the Court in the form of punitive damages pursuant to, inter alia, California Civil Code 3294;
- That the Debtor/Plaintiffs may have and recover against the Defendants all reasonable legal fees and expenses incurred by their attorney;
- That the Debtor/Plaintiff may have and recover against the Defendants costs of suit;
- For such other and further relief as is just and proper.

ADVERSARY COMPLAINT

**EIGHT CAUSE OF ACTION**

**BREACH OF FIDUCIARY DUTY**

165.    Plaintiff incorporates by reference all of the above and below paragraphs of this Adversary Proceeding as though fully stated herein and brings this cause of action against Auburn Lake Trails Property Owners Association and DOES 1-100 for breach of fiduciary duty, by Plaintiffs and all others similarly situated.

166.    Fiduciary relationships are confidential or special relationships.

167.    By virtue of entering in to the CC&R's and assenting to the ALT Collections Policy, Plaintiff put his trust and confidence in Defendants, including the ALT Board of Directors and ALT managers, employees and agents, who obtained control over Plaintiffs affairs by virtue of their position of authority over Plaintiff, including, inter alia, managing the association as well as managing Plaintiffs interest in the ALT common areas.  Plaintiff had no reason to believe that Defendants would violate their integrity and fidelity in (i) investing ALT money; (ii) acting for each ALT members benefit (including Plaintiffs benefit); (iii) disclosing all material facts; and/or (iv) employing logical care to avoid clients that mislead.

168.    Fiduciary Duty is defined as arising whenever trust and confidence is reposed by one person in the integrity and fidelity of another and that person obtains control over the other person's affairs. In simpler terms, it is a legal relationship evolving between two or more members involving the legal responsibility for (i) Investing Money; (ii) Acting for a party's benefit; (iii) Disclosing all material facts; and (iv) Employing logical care to avoid clients that mislead.

169.    By reason of their positions as officers, directors, and/or fiduciaries of the Auburn Lake Trails Property Owners Association and because of their ability to control the business and association affairs of the Auburn Lake Trails Property Owners Association, each individual member of the Auburn Lake Trails Property Owners Association Board of Directors since tax year 2007-2008 owed and owe the Auburn Lake Trails Property Owners Association and the Auburn Lake Trails Property Owners Association members (including Plaintiff) fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage the Auburn Lake Trails Property Owners Association in a fair, just, honest, and

equitable manner.  Individual Auburn Lake Trails Property Owners Association Board of Directors were and are required to act in furtherance of the best interests of the Auburn Lake Trails Property Owners Association and its members so as to benefit all members equally and not in furtherance of their personal interest or benefit.  Addtionally Kevin Hubred, ALT general manager, owes a fiduciary duty to the ALT Board of Directors, ALT and ALT members (such as Plaintiff) by reason of (i) his position as acting on behalf of the ALT Board of Directors; (ii) his confidential position of authority; (iii) his agreement to abide by the Code of Professional Ethics and Standards of Practice to The California Association of Community Managers, Inc. ("**CACM**"); and (iv) his control over the financial affairs of ALT.

170.    By reason of their position as principals, the Auburn Lake Trails Property Owners Association Board of Directors and the Auburn Lake Trails Property Owners Association have engaged G&P Enterprises, LLC dba Allied Trustee Services as agent.  The Auburn Lake Trails Property Owners Association Board of Directors and the Auburn Lake Trails Property Owners Association have control over, and direct G&P Enterprises, LLC in their actions, undertakings and communication with Auburn Lake Trails Property Owners Association members.

171.    A fiduciary's failure to share material information with the principal is constructive fraud, a term of art obviating actual fraudulent intent.  Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship.  As a general principle constructive fraud comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent. In this case the Defendants had a duty to be proactive in determining, inter alia: (i) if Allied Trustee Services, Inc. was a valid entity; (ii) if the contract between ALT and Allied Trustee Services, Inc. was valid pursuant to, inter alia, California Civil Code 1558; (iii) whether Allied Trustee Services, Inc. had valid general liability and/or valid errors and omissions insurance coverage; and (iii) to make inquiry when put on notice.

172.    Because of the breach by the fiduciaries, including defalcation while acting in a fiduciary capacity, Defendants should be disgorged of their funds they have converted to their personal use, and these funds should be returned to the rightful owners.

173.    Additionally because of the longstanding mismanagement and defalcation of member property and funds, the association is insolvent and/or incapable of self governing by an impartial board of directors and impartial general manager who put the interests of the members before their own interests. As such the Court should appoint a receiver and/or conservator until such time as the association can return to normal management and a board of directors with adequate oversight, internal controls, policies, and procedures, compliance risk management, internal audit, third party management, and training in place. And not to mention a viable Collections Policy.

174.    No reasonable person expects to be denied access to their own property for no reason, and no reasonable person expects to be denied access to their property in willful violation of a court order.

## PRAYER FOR RELIEF

WHEREFORE, Debtor/Plaintiff having set forth his claims for relief against the Defendants respectfully pray of the Court as follows:

- For a determination that Defendants, and each of them, have unclean hands;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of actual damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of compensatory damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of exemplary damages;
- That the Debtor/Plaintiffs may have and recover against the Defendants a sum to be determined by the Court in the form of punitive damages pursuant to, inter alia, California Civil Code 3294;
- That the Debtor/Plaintiffs may have and recover against the Defendants all reasonable legal fees and expenses incurred by their attorney;
- That the Debtor/Plaintiff may have and recover against the Defendants costs of suit;
- That the Court appoint a receiver and/or conservator;
- For such other and further relief as is just and proper.

ADVERSARY COMPLAINT

## NINTH CAUSE OF ACTION

### FRAUDULENT MISREPRESENTATION

175.    Plaintiff incorporates by reference all of the above and below paragraphs of this Adversary Proceeding as though fully stated herein and brings this cause of action against Auburn Lake Trails Property Owners Association, G&P Enterprises, LLC dba Allied Trustee Services and DOES 1-100 for fraudulent misrepresentation, by Plaintiffs and all others similarly situated.

176.    Defendants caused to be mailed to Plaintiff the Initial Communication demanding he pay a sum that had not yet accrued as due (Plaintiff does not admit any other sum is due and owing). Defendants stated that they had the authority to place a lien on Plaintiffs real property and that Defendants would in fact place a lien on Plaintiffs real property.  Defendants Initial Communication was unfair and deceptive and ordered Plaintiff not to pay Auburn Lake Trails Property Owners Association directly.  The Initial Communication ordered Plaintiff to pay "Allied Trustee Services" despite the fact that the CC&R's referred Plaintiff's collection of money allegedly owed to "Allied Trustee Services, Inc." who did not exist and was not identifiable.

177.    Defendants knew or should have known this demand for money not yet accrued was false and fraudulent as the CC&R's Collections Policy stated the collection would be done by "Allied Trustee Services, Inc." and Defendants knew or should have known that G&P Enterprises, LLC was not "Allied Trustee Services, Inc."  Additionally defendants knew the use of Allied Trustee Services as a dba by G&P Enterprises was unfair and deceptive.  The misrepresentation by all parties that Allied Trustee Services was "Allied Trustee Services, Inc." was false and misleading and the parties knew or should have known that Auburn Lake Trails Property Owners Association had no actual contractual dealings with "Allied Trustee Services, Inc." (since on or about March 2007), and that Auburn Lake Trails Property Owners Association had no insurance protection from "Allied Trustee Services, Inc." protecting Auburn Lake Trails Property Owners Association Board of Directors, Auburn Lake Trails Property Owners Association, or the Auburn Lake Trails Property Owners Association members since on or about March 2007.

178.    The demand for the sum on the first page of the Initial Communication was baseless and knowingly false.

179.    Defendants took these actions to induce Plaintiff into making payments.

180.    Plaintiffs relied on the Initial Communication and the recitals contained in the Initial Communication and attempted to immediately work with Auburn Lake Trails Property Owners Association in order to resolve these issues. Plaintiff was left with no choice but to immediately file bankruptcy in order to protect his property and his rights from Defendants actions and misrepresentations. Plaintiff was told that additional costs and fees would be added, that a lien would be placed on the Plaintiffs Property, and that Plaintiff could be removed from the Property if Plaintiff failed to pay the amount presented. Plaintiff's lawful rights were denied by Defendants misrepresentations. Plaintiff has suffered economic harm, mental anguish, and slander to his credit and person by Defendants misrepresentations.

181.    No reasonable person expects to be denied access to their own property for no reason, and no reasonable person expects to be denied access to their property in willful violation of a court order.

## PRAYER FOR RELIEF

WHEREFORE, Debtor/Plaintiff having set forth his claims for relief against the Defendants respectfully pray of the Court as follows:

- For a determination that Defendants, and each of them, have unclean hands;

- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of actual damages;

- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of compensatory damages;

- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of exemplary damages;

- That the Debtor/Plaintiffs may have and recover against the Defendants a sum to be determined by the Court in the form of punitive damages pursuant to, inter alia, California Civil Code 3294;

- That the Debtor/Plaintiffs may have and recover against the Defendants all reasonable legal fees and expenses incurred by their attorney;

- • That the Debtor/Plaintiff may have and recover against the Defendants costs of suit;
- • For such other and further relief as is just and proper.

## TENTH CAUSE OF ACTION

### NEGLIGENCE

182.   Plaintiff incorporates by reference all of the above and below paragraphs of this Adversary Proceeding as though fully stated herein and brings this cause of action against Auburn Lake Trails Property Owners Association, G&P Enterprises, LLC dba Allied Trustee Services and DOES 1-100 for negligence, by Plaintiffs and all others similarly situated.

183.   Defendants had a duty under the law, under California Civil Code §1714, and under the terms of the CC&R's to Plaintiff.  Breach of duty happened, inter alia, when Allied Trustee Services, Inc. ceased to exist and Defendant passed Plaintiffs personal identifying information, financial information and other information to G&P Enterprises, LLC dba Allied Trustee Services, and when G&P Enterprises, LLC sent communications to Plaintiff as the agent for ALT and the ALT Board of Directors that violated FDCPA and RFDCPA laws.  But for the Defendants ensuring that Allied Trustee Services, Inc. existed, or Defendants changing the Collections Policy to a company that did in fact exist, and had Defendants not violated FDCPA and RFDCPA laws, Plaintiff would have suffered no damages.  Defendants could have foreseen the damages caused by their actions, or omissions to act.  Threatening to place a lien on a property as well as threatening to foreclose are very serious, especially given that real property is unique and cannot be replaced. Plaintiff suffered damages, actual monetary damages through costs spent researching Allied Trustee Services, Inc. and G&P Enterprises, LLC dba Allied Trustee Services relationship (or lack thereof), in communicating with Defendants, and in vehicle wear, tear and fuel costs.  Plaintiff was told not to pay Auburn Lake Trails Property Owners Association, but instead to pay "Allied Trustee Services", without reference to "Allied Trustee Services, Inc." (as specified in the CC&R's).  Because Allied Trustee Services, Inc. did not exist and could not be identified, Plaintiff was left with no way to discharge the obligation.  Because the Initial Communication stated that a lien would be placed on the property and that ALT would begin legal proceedings or non-judicial foreclosure, Plaintiff's only remedy in the short time allotted was to file for bankruptcy relief,

damaging, inter alia, Plaintiff's reputation and credit.  Additionally, Plaintiff rights were prejudiced by the unlawful acts of all defendants.

184.    Defendant's actions were the actual and proximate cause of Plaintiff's severe emotional distress.

185.    Plaintiff suffered severe emotional distress from the Defendants actions.  Due to this outrageous conduct, the Plaintiff was frightened for his safety, as well as the safety of his wife and children, nervous that the Defendants would take further collection efforts and deprive Plaintiff and his family of the use and enjoyment of their property, keep Plaintiff and his family from entering into their property, record unlawful instruments with the El Dorado County Recorder's Office in an attempt to slander Plaintiff's title, and take legal action against Plaintiff.  Plaintiffs was agitated, nervous, worried, fearful, stricken with grief, anxious, shocked, shamed, humiliated, distressed, suffered sleeplessness, embarrassment, nervous tension, loss of reputation, and damaged sense of well being by them in public each time the automatic gates were maliciously and deliberately turned off, forcing Plaintiff to back up and turn around in front of neighbors and other HOA members, causing them to have to back up at the automatic gates also in order to allow Plaintiff to move out of the way and drive several miles to the manned guard gate. Additionally each bar-coded gate entry had numerous security camera's further humiliating and degrading Plaintiff.  After each time Plaintiff attempted to enter the gates through the barcode system, Plaintiff would then drive to the manned security gate at gate #1 (which is 2 miles from the 2nd gate and 5.5 miles from the 3rd gate), Plaintiff would then be forced to ask permission to enter into his own property. Plaintiff suffered severe agitation, nervousness, worry, fear, stricken with grief, anxious, shock, shame, humiliation, distress, sleeplessness, embarrassment, nervous tension, loss of reputation, and damaged sense of well being, never knowing if he was going to be denied entry on to his own property.

**PRAYER FOR RELIEF**

WHEREFORE, Debtor/Plaintiff having set forth his claims for relief against the Defendants respectfully pray of the Court as follows:

- For a determination that Defendants, and each of them, have unclean hands;

- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of actual damages;

- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of compensatory damages;

- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of exemplary damages;

- That the Debtor/Plaintiffs may have and recover against the Defendants a sum to be determined by the Court in the form of punitive damages pursuant to, inter alia, California Civil Code 3294;

- That the Debtor/Plaintiffs may have and recover against the Defendants all reasonable legal fees and expenses incurred by their attorney;

- That the Debtor/Plaintiff may have and recover against the Defendants costs of suit;

- For such other and further relief as is just and proper.

## ELEVENTH CAUSE OF ACTION

### THREATENED TORTIOUS AND CONSTRUCTIVE SLANDER OF TITLE

186.    Plaintiff incorporates by reference all of the above and below paragraphs of this Adversary Proceeding as though fully stated herein and brings this cause of action against Auburn Lake Trails Property Owners Association, G&P Enterprises, LLC dba Allied Trustee Services and DOES 1-100 for attempted and tortious slander of title.

187.    Plaintiff has property rights and privileges with regard to the use and enjoyment of his real property, which includes not only his house and land, but the use and enjoyment of the entire common areas of the Auburn Lake Trails Property Owners Association ("**Edstrom Property**"). The use and enjoyment of the Plaintiffs' Property has been interfered with by the attempted and constructive slander of title, harassment and other wrongful actions of Defendants as stated in this action.

188.    On or about April 2012 Defendants intruded into Plaintiff's affairs willfully, maliciously, and without privilege, threatening to record a lien on Plaintiffs property as stated in, inter alia, the Initial Communication.  Additionally Defendants threatened the enforcement of the lien through

the courts, non-judicial or judicial foreclosure. The Initial Communication was a publication and was sent through instrumentalities of interstate commerce or the mails, contained Plaintiffs personal identifying information, violated federal and state laws (for example the FDCPA and RFDCPA, among others), and threatened to take actions to which defendants had no right to take. Defendants threatened to record a lien publicly (publication through recordation), including the false statements contained in the Initial Communication and amounts stated as owing that were not in fact owed. Authorization to record the lien was confirmed by Defendant Auburn Lake Trails Property Owners Association General Manager Kevin Hubred, who notified Plaintiff in person on or about May 10, 2012 (but before Plaintiff filed a bankruptcy petition) that the Auburn Lake Trails Property Owners Association Board of Directors had ratified and authorized the lien to be recorded on Plaintiffs Property.

189.    The Initial Communication was sent to Plaintiff by G&P Enterprises, LLC (a 3rd party), however the ALT Board of Directors was only authorized to allow Allied Trustee Services, Inc. to send the Initial Communication. By publishing Plaintiffs personal identifying information together with false statements of amounts due that were not in fact due, and sending it to a 3rd party, ALT engaged in malicious slander of title, or constructive slander of title with a reckless disregard for the consequences. After sending the Initial Communication, the ALT Board of Directors ratified and authorized the recordation of a lien on Plaintiffs property.

190.    The threat of slander of title, and the constructive slander of title, was motivated by oppression and fraud in that the Plaintiffs knew or should have known of the Breach, violations of the FDCPA, violations of the RFDCPA, willful, unauthorized and wrongful usage of Plaintiffs personal identifying information, and all other wrongful actions as stated in this case. Authorizing a lien to be recorded was malicious and was done with reckless disregard for the truth. Plaintiff has personal knowledge of the difficulty in removing documents wrongfully recorded with the El Dorado County Recorder's Office, and was forced to immediately take action, and did so in expending time and money sending letters informing ALT of Plaintiffs findings. In order to immediately prevent the recording of the lien by ALT, Plaintiff filed the above captioned bankruptcy case on May 15, 2012 at 1:17 pm. The acts of all defendants have proximately caused

economic harm to Plaintiff because they have willfully, recklessly and maliciously continued to pursue contract remedies with a reckless disregard of the consequences and they knew or should have known of the Breach of Contract and the fact that Allied Trustee Services, Inc. did not exist, was not identifiable, and had not offered any insurance protection for general liability, errors and omissions, or otherwise to the Auburn Lake Trails Property Owners Association, its Board of Directors or its members.

191.    The actions of Defendants are the legal cause of the invasion of the Plaintiffs rights and privileges, as well as the cause of economic harm, mental anguish, anxiety, and the proximate cause of Plaintiff's filing a petition for bankruptcy protection.

192.    Plaintiff is entitled to punitive damages for these willful, malicious and oppressive acts.

193.    Plaintiffs have accordingly been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Debtor/Plaintiff having set forth his claims for relief against the Defendants respectfully pray of the Court as follows:

- For a determination that Defendants, and each of them, have unclean hands;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of actual damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of compensatory damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of exemplary damages;
- That the Debtor/Plaintiffs may have and recover against the Defendants a sum to be determined by the Court in the form of punitive damages pursuant to, inter alia, California Civil Code 3294;
- That the Debtor/Plaintiffs may have and recover against the Defendants all reasonable legal fees and expenses incurred by their attorney;
- That the Debtor/Plaintiff may have and recover against the Defendants costs of suit;
- For such other and further relief as is just and proper.

**TWELFTH CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

194.    Plaintiff incorporates by reference all of the above and below paragraphs of this Adversary Proceeding as though fully stated herein and brings this cause of action against Auburn Lake Trails Property Owners Association, G&P Enterprises, LLC dba Allied Trustee Services and DOES 1-100 for intentional infliction of emotional distress, by Plaintiffs and all others similarly situated.

195.    Defendants acts and omissions to act in, inter alia, breaching the contract, failing to correct the breach, continually ratifying the breach over a period of time exceeding 5 years, charging fees and costs not authorized by contract (and/or that were unenforceable), transferring Plaintiff's personal identifying information to other entities not authorized by the CC&R's and/or in breach of the CC&R's, violating the Fair Debt Collections Practices Act, violating the Rosenthal Fair Debt Collection Practices Act, violating the Automatic Stay, violating court orders, breaching fiduciary duties, attempted and constructive slander of title, invading Plaintiffs privacy and intruding into Seclusion afforded to Plaintiff, failing to act in good faith and deal fairly with Plaintiff, and engaging in a pattern and practice of all of the above.  These actions constituted reckless, malicious, and outrageous conduct directed specifically at Plaintiff.

196.    Defendants conduct exceeded all bounds of decency tolerated in a modern society and was of a nature that is calculated to cause mental distress.  Defendants abused their power as inherent in their positions of (i) Board of Directors of Auburn Lake Trails Property Owners Association; (ii) General Manager of Auburn Lake Trails Property Owners Association; (iii) Employees of Auburn Lake Trails Property Owners Association; (iv) Otherwise employed by, contractor of, or agent of Auburn Lake Trails Property Owners Association; (v) 3rd party debt collector for Auburn Lake Trails Property Owners Association; and/or (vi) trustee for Auburn Lake Trails Property Owners Association by representing false legal conclusions that would lead the Plaintiff's to be damaged in their position by causing mental distress until acquiescing to Defendants overpowering and overreaching abuse of authority.

197.    Defendants purposefully acted in this manner so as to cause mental distress in the Plaintiff in an attempt to force him to, inter alia, (i) pay money alleged to be due and owing; (ii) pay money

that had not yet accrued; (iii) pay money that was not owed and (iv) for payment of money that was uncollectable and unenforceable.

198.    The Auburn Lake Trails Property Owners Association, in the scope of their position as agent for the Auburn Lake Trails Board of Directors, and/or in impersonating or using the name "Allied Trustee Services, Inc.", acted recklessly by taking all of the actions alleged in this complaint, including threatening the Plaintiff with slander of title in order to extort money, fees and costs that had not accrued, were not authorized by contract, and/or were oppressive in nature.

199.    Plaintiff suffered severe emotional distress from these actions.  Due to their conduct, Plaintiff was, and still is, frightened for his safety, the safety of his wife and children; nervous that Defendant's may stop them from accessing their property, either their Property or the common property of the Auburn Lake Trails Property Owners Association, of which Plaintiff has a fractional, undivided real property ownership interest as well as attempting to slander Plaintiff's title by recording a lien on the Property or otherwise exercising control over the Plaintiff/Debtors property; was stricken with grief, anxiety, worry, shock, indignity and was humiliated by them and was deprived of the use of his property and forced to ask permission for entry on to his own property, in front of his neighbors, other members of the Auburn Lake Trails Property Owners Association, and the public at large.

200.    Defendants incessantly harassed Plaintiff with this conduct, both before filing bankruptcy, and even after filing.  This was done despite actual notice of the bankruptcy filing given to the Auburn Lake Trails Property Owners Association within hours of filing, and despite orders from the bankruptcy court to the contrary.  The harassment and degradation continued despite numerous letters from Plaintiff requesting access or notifying Auburn Lake Trails Property Owners Association that Plaintiff has been deprived of bar code access to the automatic vehicle gates. Plaintiff has suffered over the last 10 months and will continue to have distress and worry of his personal safety and the safety of his family through the bankruptcy filing, this adversary proceeding and afterwards.  Plaintiff is constantly worried, anxious and nervous that he will not only be deprived of access to the automated bar code gates, but denied access to his property completely.

ADVERSARY COMPLAINT

201.    The Defendants actions were the actual and proximate cause between their tortuous conduct and the severe emotional distress the Plaintiff has suffered.

202.    No reasonable person expects to be denied access to their own property for no reason, and no reasonable person expects to be denied access to their property in willful violation of a court order.

## PRAYER FOR RELIEF

WHEREFORE, Debtor/Plaintiff having set forth his claims for relief against the Defendants respectfully pray of the Court as follows:

- For a determination that Defendants, and each of them, have unclean hands;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of actual damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of compensatory damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of exemplary damages;
- That the Debtor/Plaintiffs may have and recover against the Defendants a sum to be determined by the Court in the form of punitive damages pursuant to, inter alia, California Civil Code 3294;
- That the Debtor/Plaintiffs may have and recover against the Defendants all reasonable legal fees and expenses incurred by their attorney;
- That the Debtor/Plaintiff may have and recover against the Defendants costs of suit;
- For such other and further relief as is just and proper.

## THIRTEENTH CAUSE OF ACTION

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

203.    Plaintiff incorporates by reference all of the above and below paragraphs of this Adversary Proceeding as though fully stated herein and brings this cause of action against Auburn Lake Trails Property Owners Association, G&P Enterprises, LLC dba Allied Trustee Services and DOES 1-100 for negligent infliction of emotional distress, by Plaintiffs and all others similarly situated.

ADVERSARY COMPLAINT

204.    Defendants owed Plaintiff a duty under the law, under, inter alia, contract (the CC&R's), the bankruptcy code (among other things, 11 U.S.C. §362(a)), the Fair Debt Collections Practices Act, the Rosenthal Fair Debt Collections Practice Act, the Covenant of Good Faith and Fair Dealing, California Business and Professions Code 17200, and California Civil Code statutes regarding the existence, maintenance and operation of homeowners associations, in their dealings with Plaintiff.

205.    The Auburn Lake Trails Property Owners Association Board of Directors, the Auburn Lake Trails Property Owners Association, the agents of Auburn Lake Trails Property Owners Association (i.e. G&P Enterprises, LLC) and all of the foregoing acting under or otherwise making use of the name Allied Trustee Services, Inc., have a duty to each other and to Plaintiff under California Civil Code 1714 for the responsibility of their willful acts, but also their duty as outlined elsewhere in this complaint, inter alia, the duty of good faith and fair dealing, Fiduciary duty for each person on the Board of Directors for the Auburn Lake Trails Property Owners Association, the duty of the principal and the agent in agency relationships.

206.    Defendants breached this duty by, inter alia, continually misrepresenting their position, the Plaintiff's position, both parties contractual rights, the status of fees, late charges, interest, collection costs, setup fees, preliminary mail charges, pre-lien fees, vesting verification fees, trustee's fees, the willful and deliberate unlawful use of Plaintiffs personal identifying information without Plaintiffs permission, and depriving Plaintiff of the use and enjoyment of his property, including the ALT common areas.

207.    Defendants breached this duty by telling Plaintiff that Defendants had the right to take the actions described in this cause of action and the other actions described in this adversary proceeding.  They further breached this duty by continually misrepresenting the Plaintiffs position and that Plaintiff would be responsible for past, present and future costs, fees, and litigation expenses.

208.    Defendants had a duty to not act in, inter alia, breaching the contract, failing to correct the breach, continually ratifying the breach over a period of time exceeding 5 years, charging fees and costs not authorized by contract (and/or that were unenforceable), transferring Plaintiff's personal

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

identifying information to other entities not authorized by the CC&R's and/or in breach of the CC&R's, violating the Fair Debt Collections Practices Act, violating the Rosenthal Fair Debt Collection Practices Act, violating the Automatic Stay, violating court orders, breaching fiduciary duties, attempted and constructive slander of title, invading Plaintiffs privacy and intruding into Seclusion afforded to Plaintiff, failing to act in good faith and deal fairly with Plaintiff, and engaging in a pattern and practice of all of the above. These actions constituted reckless, malicious, and outrageous conduct directed specifically at Plaintiff.

209.    Defendant's actions were the actual and proximate cause of Plaintiff's severe emotional distress.

210.    Plaintiff suffered severe emotional distress from the Defendants actions. Due to this outrageous conduct, the Plaintiff was frightened for his safety, as well as the safety of his wife and children, nervous that the Defendants would take further collection efforts and deprive Plaintiff and his family of the use and enjoyment of their property, keep Plaintiff and his family from entering into their property, record unlawful instruments with the El Dorado County Recorder's Office in an attempt to slander Plaintiff's title, take legal action against Plaintiff. Plaintiffs was agitated, nervous, worried, fearful, stricken with grief, anxious, shocked, shamed, humiliated, distressed, suffered sleeplessness, embarrassment, nervous tension, loss of reputation, and a damaged sense of well being by them in public when the automatic gates were maliciously and deliberately turned off and Plaintiff was forced to back up and turn around in front of neighbors and other HOA members, causing them to have to back up at the automatic gates also in order to allow Plaintiff to move out of the way and drive several miles to the manned guard gate. Additionally each bar-coded gate entry had numerous security camera's further humiliating and degrading Plaintiff. After each time Plaintiff attempted to enter the gates through the barcode system, Plaintiff would then drive to the manned security gate at gate #1 (which is 2 miles from the 2nd gate and 5.5 miles from the 3rd gate), Plaintiff would then be forced to ask permission to enter into his own property. Plaintiff suffered severe agitation, nervousness, worry, fear, grief, anxiety, shock, shame, humiliation, distress, sleeplessness, embarrassment, nervous tension, loss of reputation, and a damaged sense of well being, never knowing if he was going to be denied entry on to his own property.

211.    No reasonable person expects to be denied access to their own property for no reason, and no reasonable person expects to be denied access to their property in willful violation of a court order.

## PRAYER FOR RELIEF

WHEREFORE, Debtor/Plaintiff having set forth his claims for relief against the Defendants respectfully pray of the Court as follows:

- For a determination that Defendants, and each of them, have unclean hands;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of actual damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of compensatory damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of exemplary damages;
- That the Debtor/Plaintiffs may have and recover against the Defendants a sum to be determined by the Court in the form of punitive damages pursuant to, inter alia, California Civil Code 3294;
- That the Debtor/Plaintiffs may have and recover against the Defendants all reasonable legal fees and expenses incurred by their attorney;
- That the Debtor/Plaintiff may have and recover against the Defendants costs of suit;
- For such other and further relief as is just and proper.

## FOURTEENTH CAUSE OF ACTION

## HARASSMENT

212.    Plaintiff incorporates by reference all of the above and below paragraphs of this Adversary Proceeding as though fully stated herein and brings this cause of action against Auburn Lake Trails Property Owners Association, G&P Enterprises, LLC dba Allied Trustee Services and DOES 1-100 for Harassment, by Plaintiffs and all others similarly situated.

213.    The above Defendants engaged in knowing and willful harassing conduct through sending communications that contained false and deceptive statements, breaching the CC&R's contract,

threatening to place a lien on Plaintiffs property without authority or right, intruding into Plaintiffs seclusion in the ALT common areas and depriving Plaintiff access before members of the general public and other ALT members, depriving Plaintiff of his rights, depriving Plaintiff of the use and enjoyment of Plaintiffs right to access common areas, violating FDCPA laws, violating RFDCPA laws, violating the automatic stay bankruptcy protection in contempt of court, and other wrongful actions as described in this adversary proceeding.

214.    The Defendants directed these actions specifically at the Plaintiff and Plaintiff's family.

215.    Plaintiff was seriously alarmed, annoyed, nervous, worried, and harassed by Defendants actions, which continued after Plaintiff filed for bankruptcy relief on May 15, 2012 until on or about June 12, 2012.

216.    The harassment by the Defendants served no legitimate purpose other than to harass Plaintiff in retaliation for uncovering Defendants wrongful actions, and as an exaction to collect monies not due to Defendants, falsely representing the character, status and amount of the debt.

217.    The actions taken by Defendants would cause a reasonable person to suffer emotional distress because: (i) there is a contract in place for the handling of ALT collections, which provides the proper procedures for ALT and their agents to use, and there are laws put into place for proper collection of debts; and (ii) there are laws put into place for proper handling of collections by ALT and 3rd party debt collectors in their attempts to collect debts from consumers.  The ALT contract, and the laws regarding 3rd party debt collectors were put into place to prevent those in a position of "power" from taking wrongful actions.  Those in the Defendants position are able to abuse their knowledge of the law by telling Plaintiffs that they have to pay amounts presented that are not actually due and/or are not authorized by contract, or legal action will be taken against Plaintiff, including foreclosure.  For public policy reasons specific procedures were put into place to avoid the exact conduct the Defendants have portrayed.

218.    Further, the purposeful nonfeasance by ALT and the ALT Board of Directors to follow through on any investigation in regards to ALT and the ALT Board of Directors own agent, G&P Enterprises, LLC's, is both outrageous and reprehensible conduct that should not be tolerated by reasonable citizens, consumers, and especially ALT members.

ADVERSARY COMPLAINT

219.    Plaintiff suffered substantial emotional distress from the Defendants socially unacceptable conduct. Plaintiff was forced to make numerous trips, inter alia, around the ALT locked automatic guard gates, to the post office, to the City of Roseville government office, to the recorder's office for El Dorado County, to the recorder's office for Placer County, and to the bankruptcy court. No reasonable person in a civilized society should be expected to endure harassment by the ALT Board of Directors, ALT and G&P Enterprises, LLC who stated facts that were not true and took unauthorized and ultra vires actions.

220.    Plaintiff has been damaged by the infringement of Plaintiffs rights, emotional distress, mental anguish, forced to file bankruptcy, having his credit and reputation damaged, vehicle wear, tear and expense, and other pecuniary costs to be determined at trial.

221.    No reasonable person expects to be denied access to their own property for no reason, and no reasonable person expects to be denied access to their property in willful violation of a court order.

### PRAYER FOR RELIEF

WHEREFORE, Debtor/Plaintiff having set forth his claims for relief against the Defendants respectfully pray of the Court as follows:

- For a determination that Defendants, and each of them, have unclean hands;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of actual damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of compensatory damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of exemplary damages;
- That the Debtor/Plaintiffs may have and recover against the Defendants a sum to be determined by the Court in the form of punitive damages pursuant to, inter alia, California Civil Code 3294;
- That the Debtor/Plaintiffs may have and recover against the Defendants all reasonable legal fees and expenses incurred by their attorney;

ADVERSARY COMPLAINT

- That the Debtor/Plaintiff may have and recover against the Defendants costs of suit;

- For such other and further relief as is just and proper.

## FIFTEENTH CAUSE OF ACTION

### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

222.    Plaintiff incorporates by reference all of the above and below paragraphs of this Adversary Proceeding as though fully stated herein and brings this cause of action against Auburn Lake Trails Property Owners Association, G&P Enterprises, LLC dba Allied Trustee Services and DOES 1-100 for violation of the covenant of good faith and fair dealing, by Plaintiffs and all others similarly situated.

223.    As previously established in this adversary proceeding, ALT and Plaintiff entered into privity as part of the CC&R's on or about 8/10/2004.  Implied in the CC&R's is the covenant of good faith and fair dealing.  Defendants breached the covenant of good faith and fair dealing through their actions as well as inactions from the point at which Allied Trustee Services, Inc. ceased to exist on or about March 2007 ("**The Breach**").  The Breach through Defendants actions happened when, inter alia, the ALT Board of Directors ratified and authorized the ALT Collections Policy.  The Breach through Defendants inactions happened when, inter alia, the ALT Board of Directors failed to secure insurance from Allied Trustee Services, Inc. protecting the ALT Board of Directors, ALT and ALT members with general liability and/or errors and omissions policies. Besides the performance of the contract, the breach of the covenant of good faith and fair dealing happened through Defendants enforcement of the CC&R's as authorized by the ALT Collections Policy.  Defendants committed the First Material Breach of the CC&R's by failing to replace Allied Trustee Services, Inc. with a valid entity that exists and is identifiable.  Plaintiff has laid out many wrongful actions of Defendants in this adversary proceeding, for example willfully transferring Plaintiffs personal identifying information to G&P Enterprises, LLC in breach of, inter alia, the CC&R's.

224.    Defendants actions and inactions in breaching the implied covenant of good faith and fair dealing caused Plaintiff damages in the form of infringement of Plaintiffs rights, emotional distress, mental anguish, the proximate cause of Plaintiffs bankruptcy filing, Plaintiffs credit and reputation

have been damaged, vehicle wear, tear and expense, and other pecuniary costs as described in this adversary proceeding and to be determined at trial.

225.    No reasonable person expects to be denied access to their own property for no reason, and no reasonable person expects to be denied access to their property in willful violation of a court order.

## PRAYER FOR RELIEF

WHEREFORE, Debtor/Plaintiff having set forth his claims for relief against the Defendants respectfully pray of the Court as follows:

- For a determination that Defendants, and each of them, have unclean hands;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of actual damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of compensatory damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of exemplary damages;
- That the Debtor/Plaintiffs may have and recover against the Defendants a sum to be determined by the Court in the form of punitive damages pursuant to, inter alia, California Civil Code 3294;
- That the Debtor/Plaintiffs may have and recover against the Defendants all reasonable legal fees and expenses incurred by their attorney;
- That the Debtor/Plaintiff may have and recover against the Defendants costs of suit;
- For such other and further relief as is just and proper.

## SIXTEENTH CAUSE OF ACTION

## RESPONDEAT SUPERIOR

226.    Plaintiff incorporates by reference all of the above and below paragraphs of this Adversary Proceeding as though fully stated herein and brings this cause of action against Auburn Lake Trails Property Owners Association, G&P Enterprises, LLC dba Allied Trustee Services and DOES 1-100 for respondeat superior, by Plaintiffs and all others similarly situated.

227.    The Auburn Lake Trails Property Owners Association Board of Directors owes a Fiduciary Duty to the Auburn Lake Trails Property Owners Association.  Auburn Lake Trails Property Owners Association is the agent of the Auburn Lake Trails Property Owners Association Board of Directors.

228.    Allied Trustee Services, Inc. is the agent of both Auburn Lake Trails Property Owners Association and the Auburn Lake Trails Property Owners Association Board of Directors.

229.    G&P Enterprises, LLC is the agent of both the Auburn Lake Trails Property Owners Association and the Auburn Lake Trails Property Owners Association Board of Directors.

230.    The Auburn Lake Trails Property Owners Association Board of Directors has ratified and authorized, and published, the ALT Collections Policy on a yearly basis for each year: 2007-2008, 2008-2009, 2009-2010, 2010-2011, 2011-2012 and 2012-2013.  At some point prior to the 2007-2008 fiscal year for ALT, Allied Trustee Services, Inc. ceased to exist (on or around March 2007). The ALT Board of Directors had the responsibility to ensure that ALT members in collection were referred to a collections company that actually existed and was identifiable.  Further, the ALT Board of Directors had the responsibility to ensure that the Board of Directors, ALT and ALT members were protected through insurance policies maintained by the collections company, including general liability and/or errors and omissions policies.

231.    For each of the fiscal years 2007-2008, 2008-2009, 2009-2010, 2010-2011, 2011-2012 and 2012-2013, the Collections Policy has violated California Civil Code 1558 and a constant breach of contract state has existed.

232.    Despite the Collections Policy authority to engage Allied Trustee Services, Inc. for collection referrals, ALT and the ALT Board of Directors has decided, in a breach of contract, to engage G&P Enterprises, LLC for collections.  ALT and the ALT Board of Directors maintains control over the G&P Enteprises, LLC and G&P Enterprises, LLC is the agent of ALT and the ALT Board of Directors.  Acting as the agent for ALT and the ALT Board of Directors, G&P Enterprises, LLC sent the Initial Communication to Plaintiff.  The Initial Communication violated Federal Fair Debt Collection Practices Act laws and the California Rosenthal Fair Debt Collections Practices Act laws, among others as described in this adversary proceeding.

ADVERSARY COMPLAINT

233.   At all times relevant G&P Enterprises, LLC was acting as an agent for ALT and the ALT Board of Directors.  At all times relevant ALT was the Agent of the ALT Board of Directors.  At all times relevant ALT, the ALT Board of Directors and G&P Enterprises, LLC were using the falsely using the name Allied Trustee Services, Inc. to coerce exaction from ALT members.

234.   Again, these acts were all done while G&P Enterprises, LLC was in the scope of employment or agency of Auburn Lake Trails Property Owners Association, and while Auburn Lake Trails Property Owners Association and G&P Enterprises, LLC were impersonating or using the name Allied Trustee Services, Inc.  None of the actions taken by G&P Enterprises, LLC were privileged because they were not authorized by contract in the ALT Collections Policy, the actions were done with malice and/or a reckless disregard for the consequences, the use of false statements, willfully and recklessly violating Federal and State laws, and other actions described in this adversary complaint.

235.   It would be unjust for the ALT Board of Directors to disclaim responsibility for actions by ALT and G&P Enterprises, LLC, just as it would be unjust for ALT to disclaim responsibility for G&P Enterprises, LLC actions.  This is because the actions were taken directly in the scope of employment or engagement as an agent.

236.   Plaintiff accordingly has been damaged by the Defendants actions by depriving Plaintiff of his rights, forcing Plaintiff into bankruptcy, and causing Plaintiff to expend time, effort and money to decipher Defendants unfair and deceptive acts and practices.

237.   No reasonable person expects to be denied access to their own property for no reason, and no reasonable person expects to be denied access to their property in willful violation of a court order.

### PRAYER FOR RELIEF

WHEREFORE, Debtor/Plaintiff having set forth his claims for relief against the Defendants respectfully pray of the Court as follows:

- For a determination that Defendants, and each of them, have unclean hands;

- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of actual damages;

- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of compensatory damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of exemplary damages;
- That the Debtor/Plaintiffs may have and recover against the Defendants a sum to be determined by the Court in the form of punitive damages pursuant to, inter alia, California Civil Code 3294;
- That the Debtor/Plaintiffs may have and recover against the Defendants all reasonable legal fees and expenses incurred by their attorney;
- That the Debtor/Plaintiff may have and recover against the Defendants costs of suit;
- For such other and further relief as is just and proper.

## SEVENTEENTH CAUSE OF ACTION

### INJUNCTIVE RELIEF

238.    Plaintiff incorporates by reference all of the above and below paragraphs of this Adversary Proceeding as though fully stated herein and brings this cause of action against Auburn Lake Trails Property Owners Association, G&P Enterprises, LLC dba Allied Trustee Services and DOES 1-100 for injunctive relief.

239.    Defendant's actions are grossly unfair, deceptive and inequitable. Defendant's are incapable of acting fairly and impartially, and should be forever enjoined from taking any action to perfect a lien or foreclose non-judicially on Plaintiff/Debtors real property. Plaintiff/Debtor is entitled to this relief as Defendants have shown that they are incapable of acting fairly, impartially and equitably with Plaintiff/Debtor and his Property. This request is required because once outside the purview of the bankruptcy court, Plaintiff/Debtor will be unable to declare bankruptcy again and will be vulnerable to retaliation. While either party can file litigation in Federal or State court, the costs of doing so are prohibitive to Plaintiff/Debtor and these costs, if necessary should be shifted to the party who not only can afford them, but by the party whose breach of contract and unclean hands are the reason the injunction is being requested in the first place.

240.    Once again the original breach of contract in the CC&R's happened at some point in 2007, and has continued every year since.  Each year the ALTPOA Board of Directors ratified and approved the Collections Policy, despite no change in the conditions causing the breach. Defendants have made no inquiry into the matter, neither have the made an inquiry despite notice from Plaintiff, giving Defendants a reasonable duty to inquire.

241.    No reasonable person expects to be denied access to their own property for no reason, and no reasonable person expects to be denied access to their property in willful violation of a court order.

## PRAYER FOR RELIEF

WHEREFORE, Debtor/Plaintiff having set forth his claims for relief against the Defendants respectfully pray of the Court as follows:

- For a determination that Defendants, and each of them, have unclean hands;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of actual damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of compensatory damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of exemplary damages;
- That the Debtor/Plaintiffs may have and recover against the Defendants a sum to be determined by the Court in the form of punitive damages pursuant to, inter alia, California Civil Code 3294;
- That the Debtor/Plaintiffs may have and recover against the Defendants all reasonable legal fees and expenses incurred by their attorney;
- That the Debtor/Plaintiff may have and recover against the Defendants costs of suit;
- For such other and further relief as is just and proper.

## EIGHTEENTH CAUSE OF ACTION

## CONSPIRACY

ADVERSARY COMPLAINT

242.    Plaintiff incorporates by reference all of the above and below paragraphs of this Adversary Proceeding as though fully stated herein and brings this cause of action against Auburn Lake Trails Property Owners Association, G&P Enterprises, LLC dba Allied Trustee Services and DOES 1-100 for conspiracy, by Plaintiffs and all others similarly situated.

243.    As described in this complaint, the mis-joinder of ALT, the ALT Board of Directors, and G&P Enterprises, LLC resulted in the formation of an Enterprise. This Enterprise is operating using the fictitious name Allied Trustee Services, Inc., and this name is deceptively close to the name G&P Enterprises, LLC is doing business as, which is Allied Trustee Services. This contrivance is designed to confuse not only the least sophisticated consumer and but even the average consumer.

244.    The formation of the Enterprise, together with its unfair and wrongful operations is the conspiracy. The conspiracy started on or about March 1, 2007 when G&P Enterprises, LLC commenced transacting business as Allied Trustee Services. Since at least the ALT fiscal year 2007-2008, the Enterprise has been in operation and taking actions in breach of the CC&R's and ALT Collections Policy as well as in violation of Federal and State laws.

245.    Damages have been far reaching to any ALT member who since the 2007-2008 ALT fiscal year has received any dunning letter authorized and sent from the Enterprise (through instrumentalities of interstate commerce or the mails), or who had a document recorded to perfect a lien on the ALT members property as authorized by the Enterprise, and also any party sued by the Enterprise. Lawsuits were filed in the Plaintiffs name of Auburn Lake Trails Property Owners Association by their agent, G&P Enterprises, LLC.

246.    Using the contrivance and manipulation of contract rights, statutes and codes, Defendant conspirators directly threatened Plaintiff with slandering his title and forcing Plaintiff into immediately filing bankruptcy in order to stop their wrongful actions. Plaintiff has suffered substantial damages as described in this adversary proceeding, including all causes of action.

247.    No reasonable person expects to be denied access to their own property for no reason, and no reasonable person expects to be denied access to their property in willful violation of a court order. No reasonable person would expect ALT and the ALT Board of Directors to continue their

wrongful actions (including omissions to take prudent inquiry and corrective actions) when put on notice of claims of, inter alia, identity theft and numerous violations of the Fair Debt Collections Practices Act and the Rosenthal Fair Debt Collections Practices Act.

## PRAYER FOR RELIEF

WHEREFORE, Debtor/Plaintiff having set forth his claims for relief against the Defendants respectfully pray of the Court as follows:

- For a determination that Defendants, and each of them, have unclean hands;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of actual damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of compensatory damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of exemplary damages;
- That the Debtor/Plaintiffs may have and recover against the Defendants a sum to be determined by the Court in the form of punitive damages pursuant to, inter alia, California Civil Code 3294;
- That the Debtor/Plaintiffs may have and recover against the Defendants all reasonable legal fees and expenses incurred by their attorney;
- That the Debtor/Plaintiff may have and recover against the Defendants costs of suit;
- For such other and further relief as is just and proper.

## NINTEENTH CAUSE OF ACTION

## INVASION OF PRIVACY, ADDITIONALLY AND ALTERNATIVELY INTRUSION INTO SECLUSION

248. Plaintiff incorporates by reference all of the above and below paragraphs of this Adversary Proceeding as though fully stated herein and brings this cause of action against Auburn Lake Trails Property Owners Association, G&P Enterprises, LLC dba Allied Trustee Services and DOES 1-100 for invasion of private, additionally and alternatively intrusion into seclusion.

249.    The CC&R's contract, including the Collections Policy states that Plaintiff can be deprived of the use and enjoyment of the common areas of ALT, to which Plaintiff has a fractional, undivided real property ownership interest in.  This includes the automatic bar code gates for vehicle entry #1, #2 and #3.  The condition precedent to depriving Plaintiff of his right to the use and enjoyment of the common areas of ALT is that the Collections Policy be enforceable.  As previously shown, because of the First Material Breach of Contract, the Collections Policy is unenforceable, and ALT was not entitled to deprive Plaintiff of his rights to use and enjoyment of the common areas.  Specifically ALT intruded into the personal privacy and seclusion of Plaintiffs right to enjoy his property and to be left alone in seclusion.  Plaintiff had a right to the use and enjoyment of ALT common areas and to be left alone in privacy.  ALT without justification intruded into Plaintiffs privacy and seclusion by denying Plaintiff the use and enjoyment of the common areas of ALT specifically by denying Plaintiff access to any automatic barcoded guard gate for vehicle access.  Prior to the filing of the bankruptcy, Defendants removed Plaintiff and his family's right to the use and enjoyment of the ALT common areas.  Because of each wrongful action of Defendants, as well as the combination of all of Defendants wrongful actions, including the imminent threat to slander Plaintiffs title and record a lien, Plaintiff was forced to seek a court order against enjoining Defendants actions.  the wrongful actions of DefendantsFor an unknown period of time before filing bankruptcy up until 28 days after filing bankruptcy, Plaintiff's right to privacy and seclusion was intruded on by ALT.  The intrusion into privacy and seclusion was on Plaintiffs property (the common areas of ALT owned by all ALT members, including Plaintiff) in three specific areas and for a continuous period of time exceeding 30 days.  Further the ALT Collections Policy states that the use and enjoyment of the common areas will be denied until the default is paid in full.  The reasons behind the ALT policy of denying the use and enjoyment of the common areas, is punishment to induce exaction of amounts alleged to be due and owing to Defendants.

250.    Further confounding this situation, the Initial Communication used Plaintiffs personal identifying information for numerous unlawful purposes, including an attempt to collect an amount not owed by Plaintiff, numerous violations of the FDCPA and RFDCPA, as well as other wrongful

actions as described in this adversary proceeding. ALT sent Plaintiffs private information out publicly to G&P Enterprises, LLC, a company not authorized by the CC&R's. G&P Enterprises, LLC and ALT then sent the Initial Communication to Plaintiff. The Initial Communication denied Plaintiff of the right to pay ALT directly, and instead ordered Plaintiff to pay an amount that had not yet accrued to a 3rd party debt collector who was not authorized by the ALT Collections Policy and who was not Allied Trustee Services, Inc. Further, the 3rd party debt collector was in violation of numerous federal and state laws, as described in this adversary complaint. Plaintiff was left in an impossible situation.

251.    Because of the Defendants actions, Plaintiff was agitated, nervous, worried, fearful, stricken with grief, anxious, shocked, shamed, humiliated, distressed, suffered sleeplessness, embarrassed, suffered nervous tension, loss of reputation, and a damaged sense of well being. Plaintiff was deprived of use of his property and forced to ask permission for entry on to his own property, in front of his neighbors, other members of ALT, and the public at large. Plaintiff was not allowed a peaceful, private and uneventful entry on to his own property, but each time was denied access to the automatic barcode gates and had to parade through the manned guard gate seeking permission for access. Plaintiff was constantly anxious and worried that he would be denied access completely. Plaintiff on multiple occasions sent written requests for access to the automatic barcode guard gates, and checked nearly every day to see if access had been restored. Defendants conduct was unjustified and outrageous, not to mention enforced as part of the ALT Collections Policy despite the Collections Policy be unenforceable. Even when Plaintiff filed bankruptcy and was afforded the protection of the bankruptcy court and Defendants were ordered to stop collection actions (including exercising control over property of the estate), Defendants refused access, and continued wrongfully exercising control over property of Debtors bankruptcy estate.

252.    Defendant's actions towards Plaintiff were highly offensive to a reasonable person.

253.    No reasonable person expects to be denied access to their own property for no reason, and no reasonable person expects to be denied access to their property in willful violation of a court order.

**PRAYER FOR RELIEF**

ADVERSARY COMPLAINT

WHEREFORE, Debtor/Plaintiff having set forth his claims for relief against the Defendants respectfully pray of the Court as follows:

- For a determination that Defendants, and each of them, have unclean hands;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of actual damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of compensatory damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of exemplary damages;
- That the Debtor/Plaintiffs may have and recover against the Defendants a sum to be determined by the Court in the form of punitive damages pursuant to, inter alia, California Civil Code 3294;
- That the Debtor/Plaintiffs may have and recover against the Defendants all reasonable legal fees and expenses incurred by their attorney;
- That the Debtor/Plaintiff may have and recover against the Defendants costs of suit;
- For such other and further relief as is just and proper.

## TWENTIETH CAUSE OF ACTION

## QUIET TITLE

254.    Plaintiff incorporates by reference all of the above and below paragraphs of this Adversary Proceeding as though fully stated herein and brings this cause of action against Auburn Lake Trails Property Owners Association to Quiet Title.

255.    Plaintiff, together with plaintiff's non-filing spouse, is the rightful owner of the Property hereinabove described.

256.    At this time, without a judicial determination of rights, Plaintiff is without full and clear title to the Property from the adverse claims of Defendant Auburn Lake Trails Property Owners Association, G&P Enterprises, LLC dba Allied Trustee Services and both Auburn Lake Trails Property Owners Association and G&P Enterprises, LLC in their alter ego name of Allied Trustee Services, Inc.

257.    Defendants' claims of any interest in Plaintiffs Property through the CC&R's are blocked by judicial estoppels as well as Defendants unclean hands through intentional and willful breach of contract and violation of numerous statutes as described in this adversary proceeding. Defendants are using the CC&R's as a weapon against Plaintiff and his family and have willfully breached the contract and rendered it unenforceable. When put on notice of Plaintiff, Defendants, instead of making an inquiry to investigate Plaintiffs claims, retaliated against Plaintiffs. Defendants subjected Plaintiff to public humiliation while depriving Plaintiff of his enjoyment, use and access of his property. Defendants have no equitable rights or claims for an interest in Plaintiffs property and are the author of their own destruction.

258.    Plaintiff seeks the drastic equitable remedy of being "torn" from the Planned Unit Development and having the Conditions, Covenants and Restrictions removed from encumbering his Property.

259.    There are adverse claims against the Property as described in the other causes of action in this complaint. They include claims of rights that encumber Plaintiffs ownership and possession of the Property and which are adverse to Plaintiff's right to peaceful and quiet enjoyment.

260.    To the extent Plaintiff is granted an actual or constructive easement to ALT common areas, Plaintiff does not seek to quiet title to the ALT common areas. Without an actual or constructive easement, or additionally and alternatively Quiet Title to the ALT Common Areas, Plaintiffs Property would be "landlocked" with no means of access.

261.    Defendant has knowingly and willfully threatened to record false documents within the El Dorado County Recorder's Office with full knowledge that, in fact, those documents would be false when executed and subsequently filed. Defendant has violated the public trust and has evidenced criminal behavior and intent by threatening to file instruments slandering Plaintiffs title with such knowledge. Defendant has willfully and intentionally deceived this Court and the public by its actions and conduct.

262.    Plaintiff seeks in this action to quiet title against the claims of Defendants, and each of them. The claims of Defendants, and each of them are without merit as Defendants have given up their right, title or interest in the above-described Property by their wrongful actions. Plaintiff

seeks to quiet title in the aforementioned real property only against Defendants and in the names as stated when Plaintiff and his non-filing spouse acquired the Property by Grant, free and clear of any claimed interest by Defendants, and each of them, and seeks to so quiet title as of April 17, 2012. Plaintiff and his non-filing spouse acquired the Property as "DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM, HUSBAND AND WIFE AS JOINT TENANTS".

263.    No reasonable person expects to be denied access to their own property for no reason, and no reasonable person expects to be denied access to their property in willful violation of a court order.

## PRAYER FOR RELIEF

WHEREFORE, Debtor/Plaintiff having set forth his claims for relief against the Defendants respectfully pray of the Court as follows:

- For a determination that Defendants, and each of them, have unclean hands;
- For an order compelling said Defendants, and each of them, to transfer or release legal title and any alleged encumbrances or easements thereon, and grant title and possession of the subject property to Plaintiff;
- For a declaration and determination that Plaintiff and his non-filing spouse are the rightful holders of title to the Property and that Defendants herein, and each of them, be declared to have no estate, right, title or interest in said Property;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of actual damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of compensatory damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of exemplary damages;
- That the Debtor/Plaintiffs may have and recover against the Defendants a sum to be determined by the Court in the form of punitive damages pursuant to, inter alia, California Civil Code 3294;

ADVERSARY COMPLAINT

- That the Debtor/Plaintiffs may have and recover against the Defendants all reasonable legal fees and expenses incurred by their attorney;
- For costs of the suit herein incurred;
- For such other and further relief as is just and proper.

## TWENTYFIRST CAUSE OF ACTION

## ACTUAL AND/OR CONSTRUCTIVE EASEMENT

264.    Plaintiff incorporates by reference all of the above and below paragraphs of this Adversary Proceeding as though fully stated herein and brings this cause of action against Auburn Lake Trails Property Owners Association, and DOES 1-100 for an actual and/or constructive easement.

265.    Plaintiff requests that this honorable Court grant Plaintiff and Plaintiff's family an actual or constructive easement allowing unrestricted access to Plaintiff and Plaintiff's family to the ALT common areas, including bar code access to all of Plaintiff's and Plaintiff family vehicles through ALT automated gates #1, #2 and #3. This easement is required for the Twentieth Cause of Action, Quiet Title, which without this Cause of Action will result in the real property being landlocked and inaccessible.

## PRAYER FOR RELIEF

WHEREFORE, Debtor/Plaintiff having set forth his claims for relief against the Defendants respectfully pray of the Court as follows:

- For a determination that Defendants, and each of them, have unclean hands;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of actual damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of compensatory damages;
- That the Debtor/Plaintiff may have and recover against the Defendants a sum to be determined by the Court in the form of exemplary damages;
- That the Debtor/Plaintiffs may have and recover against the Defendants a sum to be determined by the Court in the form of punitive damages pursuant to, inter alia, California Civil Code 3294;

1

- That the Debtor/Plaintiffs may have and recover against the Defendants all

2

reasonable legal fees and expenses incurred by their attorney;

3

- That the Debtor/Plaintiff may have and recover against the Defendants costs of suit;

4

- For such other and further relief as is just and proper.

5

DATED: April 18, 2013                    Respectfully Submitted,

6

7

By:  _Daniel Major Edstrom_

8

Daniel Major Edstrom,
Plaintiff and Debtor-in-Possession

9

10    Real Property co-owner and non-filing spouse Teri Anne Edstrom, undersigned herein
below, consents to the Bankruptcy Courts jurisdiction of the real property described in this

11  Adversary Proceeding and consents to the entry of final orders or judgment by the bankruptcy court
in regards to the real property described in this adversary proceeding, which is 2690 Brown Bear

12  Court, Cool, California 95614 with APN# 073-141-03-100, the legal description of said property
being listed in the complaint itself.

13

14                                        _Teri Anne Edstrom_
TERI ANNE EDSTROM

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**VERIFICATION**

3       I, DANIEL MAJOR EDSTROM, verify that the foregoing Adversary Complaint has been

4   reviewed by me; and that the allegations therein are true and correct to the best of my knowledge,

5   information, and belief.

6       I declare under penalty of perjury under the laws of the United States that the foregoing is

7   true and correct.

8       Executed this 18ᵗʰ day of April, 2013, Placer County, California.

9

10

11                            DANIEL MAJOR EDSTROM

12

13

14

15

16                                NOTICE
                       SEE OFFICIAL CALIFORNIA NOTARY
17                        ATTACHMENT TO THIS
                              DOCUMENT
18

19

20

21

22

23

24

25

26

27

28

- 80 -

# California All  Purpose Acknowledgment

State Of California

County of Sacramento

On _____4-18-13_____ Before me, Jeff S. Khan, Notary Public,

personally appeared DANIEL MAJOR EDSTROM
who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person (s), or the entity upon behalf
of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under  the laws of the State of
California that the forgoing paragraph is true and correct.

WITNESS my hand and official seal.

Jeff S. Khan, Notary Public _____

Commission #2006589
Expiration: February 7, 2017

JEFF S. KHAN
COMM. # 2006589
NOTARY PUBLIC - CALIFORNIA
SACRAMENTO COUNTY
COMM. EXPIRES FEB. 7, 2017

# Exhibit A

## List of Exhibits to Adversary Proceeding

1. CC&R's 1990 (2nd Restatement)
2. Grant Deed to Edstrom 2004
3. CA Secretary of State Searches
   - Allied Trustee Services, Inc.
   - Allied Trustee Services
   - Auburn Lake Trails
   - G&P Enterprises, LLC
4. Placer County Recorder's Office FBNS for Allied Trustee Services
5. April 2012 ALT Trails View with Collections Policy
6. Pre-petition letters from Allied Trustee Services
7. Pre-petition letters to and from HOA
8. Dispute letter to Allied Trustee Services
9. Bankruptcy filing
10. Post-petition letters to and from HOA
11. February 2013 ALT Trails View
    - including Presidents recommendation of Kevin Hubred
    - including basic requirements to fill Board of Directors spots
12. El Dorado County Recorded document summary for Auburn Lake Trails
    - January 2007 through January 2013
13. El Dorado County Recorded documents summary for Allied Trustee Services, Inc. and Allied Trustee Services
    - January 2007 through January 2013

ADVERSARY COMPLAINT

# Exhibit 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ADVERSARY COMPLAINT

EL DORADO COUNTY
Case 13-02132 Filed 04/18/13 Doc 1



CERTIFIED

**59266**

OFFICIAL RECORDS
EL DORADO COUNTY-CALIF.
RECORD REQUESTED BY:

Homeowners Assn.

SEP 12  10 02 AM '90

DOROTHY CARR
COUNTY RECORDER
(81)

When recorded mail to
Auburn Lake Trails POA
P.o. Box 728
Cool, CA  95614
Attn:  Carl Ladeck

**SECOND RESTATED DECLARATION OF**
**COVENANTS, CONDITIONS AND RESTRICTIONS**
**OF**
**AUBURN LAKE TRAILS**

1650

**TABLE OF CONTENTS**

| Article/Section | Title | Page |
|---|---|---|
| | Recitals . . . . . . . . . . . . . . . . . . . . . . . | 1 |
| **Article I** | **Definitions** . . . . . . . . . . . . . . . . . . . | 1 |
| Section 1 | Articles . . . . . . . . . . . . . . . . . . . . | 1 |
| Section 2 | Assessment . . . . . . . . . . . . . . . . . . | 2 |
| Section 3 | Association . . . . . . . . . . . . . . . . . . | 2 |
| Section 4 | Association Rules . . . . . . . . . . . . . | 2 |
| Section 5 | Board of Directors . . . . . . . . . . . . . | 2 |
| Section 6 | Bylaws . . . . . . . . . . . . . . . . . . . . . | 2 |
| Section 7 | Common Area . . . . . . . . . . . . . . . . | 2 |
| Section 8 | Common Facilities . . . . . . . . . . . . . | 2 |
| Section 9 | Common Funds . . . . . . . . . . . . . . . | 2 |
| Section 10 | Common Expense . . . . . . . . . . . . . . | 2 |
| Section 11 | County . . . . . . . . . . . . . . . . . . . . . | 3 |
| Section 12 | Covenants Committee . . . . . . . . . . . . | 3 |
| Section 13 | Declarant . . . . . . . . . . . . . . . . . . . | 3 |
| Section 14 | Declaration . . . . . . . . . . . . . . . . . . | 3 |
| Section 15 | Design Committee . . . . . . . . . . . . . | 3 |
| Section 16 | Design Committee Rules . . . . . . . . . . | 3 |
| Section 17 | Excavation . . . . . . . . . . . . . . . . . . | 3 |
| Section 18 | Family . . . . . . . . . . . . . . . . . . . . . | 3 |
| Section 19 | Governing Documents . . . . . . . . . . . . | 3 |
| Section 20 | Fill . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| Section 21 | Lot . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| Section 22 | Member . . . . . . . . . . . . . . . . . . . . | 4 |
| Section 23 | Mortgage . . . . . . . . . . . . . . . . . . . | 4 |
| Section 24 | Owner . . . . . . . . . . . . . . . . . . . . . | 4 |
| Section 25 | Owner of Record . . . . . . . . . . . . . . | 4 |
| Section 26 | Properties . . . . . . . . . . . . . . . . . . | 4 |
| Section 27 | Regular Assessment . . . . . . . . . . . . . | 4 |
| Section 28 | Residence . . . . . . . . . . . . . . . . . . | 4 |
| Section 29 | Residence Lot . . . . . . . . . . . . . . . . | 4 |
| Section 30 | Restricted Lot . . . . . . . . . . . . . . . . | 4 |
| Section 31 | Single Family Residential Use . . . . . . . . | 4 |
| Section 32 | Special Assessment . . . . . . . . . . . . . | 5 |
| Section 33 | Special Individual Assessment . . . . . . . . | 5 |
| Section 34 | Subdivision Maps . . . . . . . . . . . . . . | 5 |

BOOK 3425 PAGE 281

CERTIFIED

**Article II**    **Declaration and Property Rights** . . . . . . . . . . .    5
   Section 1    Declaration Regarding Properties . . . . . . . . .    5
   Section 2    Title to the Common Area . . . . . . . . . . .    5
   Section 3    Owners' Non-Exclusive Easements
            of Enjoyment in Common Area . . . . . . . . .    6
   Section 4    Delegation of Use . . . . . . . . . . . . . . .    8
   Section 5    Notification Regarding Governing
            Documents . . . . . . . . . . . . . . . . .    9

**Article III**    **Property Owner's Association** . . . . . . . . . . . . .    9
   Section 1    Formation of Association . . . . . . . . . . . .    9
   Section 2    One Class of Membership . . . . . . . . . . . .    10
   Section 3    Membership Voting . . . . . . . . . . . . . . .    10
   Section 4    Assessments . . . . . . . . . . . . . . . . .    10
   Section 5    Transfer of Memberships . . . . . . . . . . .    10
   Section 6    Rights and Duties of Association
            Board of Directors . . . . . . . . . . . . .    11
   Section 7    Power and Authority of the
            Association . . . . . . . . . . . . . . . . .    11
   Section 8    Association Rules . . . . . . . . . . . . . . .    11
   Section 9    Limitation on Liability of
            Association and Its Board of
            Directors and Officers . . . . . . . . . . .    12

**Article IV**    **Assessments** . . . . . . . . . . . . . . . . . . . .    12
   Section 1    Assessments Generally . . . . . . . . . . . . .    12
   Section 2    Regular Assessments . . . . . . . . . . . . . .    13
   Section 3    Special Assessments . . . . . . . . . . . . . .    15
   Section 4    Special Individual Assessments . . . . . . . . .    16
   Section 5    Purpose and Reasonableness of
            Assessments . . . . . . . . . . . . . . . .    17
   Section 6    Exemption of Certain of the
            Properties from Assessments . . . . . . . .    18
   Section 7    Notice and Procedure for Any
            Action Authorized Under
            Sections 2 and 3 . . . . . . . . . . . . . .    18
   Section 8    Maintenance of Funds Collected . . . . . . . . .    18
   Section 9    Collection of Assessments;
            Enforcement of Liens . . . . . . . . . . . .    19
   Section 10    Transfer of Lot by Sale or
            Foreclosure . . . . . . . . . . . . . . . .    20
   Section 11    Priorities . . . . . . . . . . . . . . . . . .    20
   Section 12    Unallocated Taxes . . . . . . . . . . . . . . .    21
   Section 13    Waiver of Exemptions . . . . . . . . . . . . .    21

**Article V**    **Obligations of Owners** . . . . . . . . . . . . . . .    21
   Section 1    Persons Subject to Governing
            Documents . . . . . . . . . . . . . . . . .    21
   Section 2    Payment of Assessments and
            Compliance with Rules . . . . . . . . . . .    21

CERTIFIED

| Section 3 | Discharge of Liens . . . . . . . . . . . . . . . . | 21 |
| Section 4 | Joint Ownership of Lots . . . . . . . . . . . . | 21 |
| Section 5 | Prohibition on Avoidance of | |
| | Obligations . . . . . . . . . . . . . . | 21 |
| Section 6 | Termination of Obligations . . . . . . . . . . | 21 |

**Article VI**  **Architectural Control** . . . . . . . . . . . . . . . . 22
| Section 1 | Design Committee Approval Required | |
| | for All Improvements . . . . . . . . . . | 22 |
| Section 2 | Compensation and Appointment | |
| | of Committee . . . . . . . . . . . . . . | 22 |
| Section 3 | Resignations and Vacancies . . . . . . . . . . . | 22 |
| Section 4 | Duties . . . . . . . . . . . . . . . . . . . . . . | 23 |
| Section 5 | Meetings . . . . . . . . . . . . . . . . . . . . | 23 |
| Section 6 | Design Committee Rules . . . . . . . . . . . . | 23 |
| Section 7 | Basis for Approval of Improvements . . . . . . . | 23 |
| Section 8 | Procedures for Obtaining Design | |
| | Committee Approval of | |
| | Plans and Specifications . . . . . . . . . | 24 |
| Section 9 | Proceeding with Work . . . . . . . . . . . . . | 26 |
| Section 10 | Failure to Complete Work . . . . . . . . . . . . | 26 |
| Section 11 | Inspection of Work by Design | |
| | Committee . . . . . . . . . . . . . . . | 27 |
| Section 12 | Landscaping . . . . . . . . . . . . . . . . . . | 27 |
| Section 13 | Non-Waiver . . . . . . . . . . . . . . . . . . . | 28 |
| Section 14 | Variances . . . . . . . . . . . . . . . . . . . | 28 |
| Section 15 | Estoppel Certificate . . . . . . . . . . . . . . | 28 |
| Section 16 | Liability . . . . . . . . . . . . . . . . . . . . | 29 |
| Section 17 | Governmental Regulations . . . . . . . . . . . | 29 |
| Section 18 | Appeals . . . . . . . . . . . . . . . . . . . . . | 29 |

**Article VII**  **Restrictions Applicable To**
**Construction and Alteration**
**Of Improvements** . . . . . . . . . . . . . . . . . . . . . 29
| Section 1 | Lot Improvements . . . . . . . . . . . . . . . | 29 |
| Section 2 | Common Area Improvements . . . . . . . . . . . | 31 |

**Article VIII**  **Property Use Restrictions** . . . . . . . . . . . . . . 33
| Section 1 | Use of Residence Lots . . . . . . . . . . . . . | 33 |
| Section 2 | Use of Restricted Lots . . . . . . . . . . . . . | 33 |
| Section 3 | Use of Common Areas and | |
| | Common Facilities . . . . . . . . . . . . | 34 |
| Section 4 | Prohibition of Noxious Activities . . . . . . . . | 34 |
| Section 5 | Trees . . . . . . . . . . . . . . . . . . . . . . | 34 |
| Section 6 | Rebuilding . . . . . . . . . . . . . . . . . . . | 34 |
| Section 7 | Signs . . . . . . . . . . . . . . . . . . . . . . | 34 |
| Section 8 | Storage of Equipment . . . . . . . . . . . . . | 35 |
| Section 9 | Garbage . . . . . . . . . . . . . . . . . . . . . | 35 |
| Section 10 | Activities Affecting Insurance . . . . . . . . . | 35 |
| Section 11 | Drilling and Mining Operations . . . . . . . . | 35 |

CERTIFIED

| Section 12 | Household Pets and Horses . . . . . . . . . . . . | 35 |
| Section 13 | Vehicles and Trailers . . . . . . . . . . . . . | 36 |
| Section 14 | Business Activities . . . . . . . . . . . . . | 36 |
| Section 15 | No Alterations or Antennas . . . . . . . . . . | 37 |
| Section 16 | Barbecues and Open Fires . . . . . . . . . . | 37 |
| Section 17 | Machinery and Equipment . . . . . . . . . . . | 37 |
| Section 18 | Diseases and Insects . . . . . . . . . . . . | 37 |
| Section 19 | Supervision of Children . . . . . . . . . . | 37 |
| Section 20 | Restriction on Further Subdivision and Severability . . . . . . . . . . | 37 |
| Section 21 | Exterior Fluorescent and Security Lights . . . . . . . . . . . . . . . . | 37 |
| Section 22 | Use of Private Roads in Common Area . . . . . . . . . . . . . . . . | 38 |
| Section 23 | Vehicles on Equestrian Trails . . . . . . . . | 38 |
| Section 24 | Variances . . . . . . . . . . . . . . . . . . | 38 |

| **Article IX** | **Easements** . . . . . . . . . . . . . . . . . . . | 38 |
| Section 1 | Utility Easements . . . . . . . . . . . . . . | 38 |
| Section 2 | Road Easements . . . . . . . . . . . . . . . | 39 |
| Section 3 | Maintenance Easements . . . . . . . . . . . | 39 |
| Section 4 | Easements for Septic Facilities . . . . . . . | 39 |
| Section 5 | Other Easements . . . . . . . . . . . . . . | 40 |
| Section 6 | Priority of Easements . . . . . . . . . . . . | 40 |

| **Article X** | **Insurance** . . . . . . . . . . . . . . . . . | 40 |
| Section 1 | Type of Insurance Coverage . . . . . . . . . | 40 |
| Section 2 | Copies of Policies . . . . . . . . . . . . . | 41 |
| Section 3 | Additional Insurance and Bonds . . . . . . . | 41 |

| **Article XI** | **Damage or Destruction** . . . . . . . . . . . . . | 41 |
| Section 1 | Common Facilities, Bids and Determination of Available Insurance Proceeds . . . . . . . . . . . | 41 |
| Section 2 | Common Facilities; Sufficient Insurance Proceeds . . . . . . . . . . . | 42 |
| Section 3 | Common Facilities: Insurance Proceeds Insufficient In An Amount Exceeding $1,000.00 . . . . . . . . | 42 |
| Section 4 | Damage or Destruction of Private Residences or other Lot Improvements . . . . . . . . . . . . | 42 |

| **Article XII** | **Condemnation of Common Area** . . . . . . . . . . . | 42 |

| **Article XIII** | **Penalties and Enforcement** . . . . . . . . . . . | 43 |
| Section 1 | Remedy at Law Inadequate . . . . . . . . . | 43 |
| Section 2 | Nuisance . . . . . . . . . . . . . . . . . . | 43 |

CERTIFIED

| | | |
|---|---|---|
| Section 3 | Costs and Attorneys' Fees . . . . . . . . . . . . | 43 |
| Section 4 | Cumulative Remedies . . . . . . . . . . . . . . . | 43 |
| Section 5 | Failure Not a Waiver . . . . . . . . . . . . . . | 43 |
| Section 6 | Enforcement Rights and Remedies of the | |
| | Association; Limitations Thereon . . . . . . | 43 |
| Section 7 | The Covenants Committee . . . . . . . . . . . . . | 45 |

**Article XIV** Amendment of Declaration . . . . . . . . . . . . . 45
| Section 1 | Amendment, Generally . . . . . . . . . . . . . . | 45 |
| Section 2 | Effective Date of Amendment . . . . . . . . . . | 46 |

**Article XV** Notices . . . . . . . . . . . . . . . . . . . . 46
| Section 1 | Mailing Addresses . . . . . . . . . . . . . . . | 46 |
| Section 2 | Personal Service Upon Co-Owners | |
| | and Others . . . . . . . . . . . . . . | 46 |
| Section 3 | Deposit in U.S. Mails . . . . . . . . . . . . . | 46 |

**Article XVI** No Public Rights in the Properties . . . . . . . . . 46

**Article XVII** General Provisions . . . . . . . . . . . . . . . . 47
| Section 1 | Term . . . . . . . . . . . . . . . . . . . . . | 47 |
| Section 2 | Restrictions Construed Together . . . . . . . . | 47 |
| Section 3 | Restrictions Severable . . . . . . . . . . . . | 47 |
| Section 4 | Singular Includes Plural . . . . . . . . . . . | 47 |
| Section 5 | Exhibits . . . . . . . . . . . . . . . . . . . | 47 |
| Section 6 | Captions . . . . . . . . . . . . . . . . . . . | 48 |

CERTIFIED

## SECOND RESTATED DECLARATION
## OF COVENANTS, CONDITIONS AND RESTRICTIONS
## OF
## AUBURN LAKE TRAILS

THAT CERTAIN DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS executed by Auburn Lake Trails Property Owners Association, a California nonprofit mutual benefit corporation (the "Association") entitled "First Restated Declaration of Covenants, Conditions and Restrictions of Auburn Lake Trails" and recorded in Book 2145, Page 247 of the Official Records of El Dorado County, California (the "First Restated Declaration"), which affects all of the Properties located within the common interest development known as "Auburn Lake Trails" is hereby amended and restated in its entirety to read as follows:

### RECITALS

A.   The Association is a nonprofit corporation organized to own, maintain, repair, and replace the Common Areas and Common Facilities located within the real property more particularly described in exhibit A (the "Properties").  The Association's membership is comprised of the Owners of Lots within the Properties and pursuant to California Civil Code Section 1355 the Association has executed and recorded this Second Restated Declaration on behalf of said Owners.

B.   The Properties were originally subdivided, developed and sold by the Declarant and its predecessors in interest in a series of phases, as evidenced by the Subdivision Maps listed in exhibit "A" which were recorded with respect to each phase.  Each phase of development was subjected to a Declaration of Covenants and Restrictions recorded in furtherance of the common plan and scheme of development, which Declarations are listed in exhibit "B", attached hereto (the "Original Declarations").  The First Restated Declaration amended, restated, and consolidated the Original Declarations into a single document and incorporated other technical revisions required to conform the Declaration to the then existing law.

C.   On March 5, 1990, by order of the El Dorado County Superior Court (attached hereto as exhibit C), the Members of the Association adopted this First Restated Declaration of Covenants, Conditions and Restrictions by written ballot vote sufficient to amend and restate the Original Declaration, in accordance with California Civil Code section 1356.  As so amended and restated, these easements, covenants, restrictions and conditions shall run with the Properties and shall be binding on all parties having or acquiring any right, title or interest in the Properties or any portion thereof, and shall inure to the benefit of each Owner thereof.

### ARTICLE I
### DEFINITIONS

Section 1.   "Articles" means the Articles of Incorporation of Auburn Lake Trails Property Owners Association, a California nonprofit corporation, which are filed in the Office of the Secretary of the State of California.

-1-

CERTIFIED

Section 2. "Assessment" means any Regular, Special or Special Individual Assessment made or assessed against an Owner and his Lot in accordance with the provisions of Article IV of this Declaration.

Section 3. "Association" means and refers to AUBURN LAKE TRAILS PROPERTY OWNERS ASSOCIATION, a California nonprofit mutual benefit corporation, its successors and assigns.

Section 4. "Association Rules" mean the rules, regulations and policies adopted by the Board of Directors of the Association, as the same may be in effect from time to time pursuant to Article III, Section 8 of this Declaration.

Section 5. "Board of Directors" or "Board" means the Board of Directors of the Association.

Section 6. "Bylaws" means the Bylaws of the Association, as such Bylaws may, from time to time, be amended.

Section 7. "Common Area" means all real property owned by the Association for the common use and enjoyment of the Owners and the Common Facilities located thereon. The Common Areas owned by the Association, as of the date of this Declaration, are more particularly described in exhibit "D".

Section 8. "Common Facilities" means the buildings, trails, recreation improvements, parks, roads, trees, hedges, plantings, lawns, shrubs, landscaping, fences, utilities, berms, pipes, lines, lighting fixtures, structures and other facilities constructed or installed, or to be constructed or installed, or currently located on the Common Area and owned by the Association. The term "Common Facilities" also includes vehicles and other items of personal property, owned or leased by the Association.

Section 9. "Common Funds" means all funds collected or received by the Association for use (i) in the maintenance, management, administration, insurance, operation, replacement, repair, addition to, alteration or reconstruction of, all or any portion of the Common Areas and Common Facilities and (ii) in discharging any and all of its functions as provided in the Governing Documents.

Section 10. "Common Expense" means any use of Common Funds authorized by Article IV hereof and Article IX of the Bylaws and includes, without limitation: (i) all expenses or charges incurred by or on behalf of the Association for the management, maintenance, administration, insurance, operation, repairs, additions, alterations or reconstruction of the Common Areas and Common Facilities, as incurred or as may be estimated from time to time by the Association's Board of Directors, (ii) any amounts reasonably required to be set aside as reserves for maintenance, repair and replacement of Common Areas and Common Facilities and for the nonpayment of any assessments, and (iii) the use of such funds to defray any costs and expenses incurred by the Association in the performance of its functions or in the proper discharge of the responsibilities of the Board as provided for in the Governing Documents. As more particularly provided in Article IV, Section 2(a) of this Declaration and Article XII of the Bylaws, the Association shall establish reserves, and shall budget for the funding of said reserves, as a portion of the Association's Regular Assessment.

CERTIFIED

Section 11. "County" means the County of El Dorado, State of California.

Section 12. "Covenants Committee" means the Committee named in Article X, Section 1 of the Bylaws and described in Article XIII, Section 6 of this Declaration.

Section 13. "Declarant" means Transamerica Development Company, a California corporation, its successors and assigns, if such successors in interest should acquire more than five undeveloped Lots from the Declarant for the purpose of development and resale. The term "Original Declarant" refers to Trans-Land Co., a co-partnership.

Section 14. "Declaration" means this Second Restated Declaration, as it may, from time to time, be amended, modified or changed. The "First Restated Declaration" shall mean that document referenced in the preamble to this Declaration and the "Original Declarations" shall mean those documents described in exhibit "B" attached hereto.

Section 15. "Design Committee" shall mean the Committee created in accordance with Article VI of this Declaration.

Section 16. "Design Committee Rules" shall mean the rules and procedures promulgated by the Design Committee in accordance with Article VI, Section 6 of this Declaration.

Section 17. "Excavation" means any disturbance of the surface of any parcel of land within the Properties (except to the extent reasonably necessary for planting) which destroys any vegetation, changes the natural contour of the parcel or results in the removal of earth, rock, sand or other natural substances.

Section 18. "Family" shall mean one or more persons, each related to the other by blood, marriage or legal adoption, or a group of not more than four persons not so related who maintain a common household in a Residence.

Section 19. "Governing Documents" is a collective term that refers to this Declaration, the Articles of Incorporation and Bylaws of the Association and the Association Rules (including the rules of any Committee constituted hereunder or created in accordance with Article X of the Bylaws), and to any duly adopted amendments to any Governing Document.

Section 20. "Fill" means any addition of rock or earth materials to the surface of the land which increases the natural elevation of said surface by more than 18 inches.

Section 21. "Lot" means any parcel of real property designated by a number on the Subdivision Map for any portion of the Properties. The term "Lot" shall also include any portion of a Lot, including without limitation, the Residences, out buildings and other improvements constructed or to be constructed on any Lot but excluding the Common Areas. Unless otherwise specifically provided herein, the term "Lot" shall be a collective term that includes both Residence Lots, as defined in Section 29 of this Article I, and Restricted Lots, as defined in Section 30 of this Article I.

-3-

CERTIFIED

Section 22. "Member" shall mean and refer to every person or entity who holds a membership in the Association and whose rights as a Member have not been suspended pursuant to Article XIII, Section 6 hereof.

Section 23. "Mortgage" means any security device encumbering all or any portion of the Properties, including any deed of trust. "Mortgagee" means and refers to a beneficiary under a deed of trust as well as a mortgagee in the conventional sense.

Section 24. "Owner" means any person, firm, corporation or other entity which owns a fee simple interest in any Lot (including contract sellers, but excluding any person or entity holding such interest merely as security for the payment of a debt or the performance of an obligation) and includes (except when the context otherwise requires) the family, guests, tenants and invitees of such Owner.

Section 25. "Owner of Record" and "Member of the Association" include an Owner and mean any person, firm, corporation or other entity in which title to a Lot is vested as shown by the Official records of the Office of the County Recorder.

Section 26. "Properties" means the parcels of real property (Common Area and Lots) included within the Subdivision Maps listed in exhibit "A" hereof, together with all buildings, structures, utilities, Common Facilities, and other improvements now located or hereafter constructed or installed thereon and all appurtenances thereto. Any reference herein to "Auburn Lake Trails" shall be synonymous with "Properties."

Section 27. "Regular Assessment" means an assessment levied on Owner and his or her Lot in accordance with Article IV, Section 2 hereof.

Section 28. "Residence" means a private single-family dwelling constructed or to be constructed on any Residence Lot.

Section 29. "Residence Lot" means any Lot within the Properties other than Restricted Lots or Common Areas.

Section 30. "Restricted Lot" means any of the numbered Lots designated in exhibit "E" attached hereto unless any such Lot is legally combined with an adjacent Residence Lot so as to create a single Residence Lot. Restricted Lots are so designated because they have been evaluated by the Georgetown Divide Public Utility District and determined to be incapable of sustaining an on-site sewage waste disposal system or of serving as a Residence Lot by utilization of adjoining Common Area for septic tank or septic leach field purposes when authorized pursuant to Article IX, Section 4 hereof. In addition to compliance with other covenants, restrictions and conditions contained herein, Restricted Lots shall be subject to assessment to the extent provided in Article IV, Sections 2(j) and 4(a) hereof and the land use restrictions set forth in Article VIII, Section 2 hereof.

Section 31. "Single Family Residential Use" means occupation and use of a Residence for single family dwelling purposes in conformity with this Declaration and the requirements imposed by applicable zoning laws or other state or municipal rules and regulations.

-4-

BOOK 3425 PAGE 289

EL DORADO COUNTY

CERTIFIED

Section 32. "Special Assessment" means an assessment levied on an Owner and his or her Lot in accordance with Article IV, Section 3 hereof.

Section 33. "Special Individual Assessment" means an assessment levied against an Owner in accordance with Article IV, Section 4 hereof.

Section 34. "Subdivision Maps" means the maps set forth in exhibit A attached hereto.

## ARTICLE II
### DECLARATION AND PROPERTY RIGHTS

Section 1. Declaration Regarding Properties. In the Original Declaration the Original Declarant declared, and in adopting this Declaration the Owners and the Association affirm, that:

(a) The Properties included within Auburn Lake Trails shall be held, conveyed, divided, encumbered, hypothecated, leased, rented, used, occupied and improved only upon and subject to the covenants, conditions, restrictions, limitations, reservations, grants of easements, rights, rights-of-way, liens, charges and equitable servitudes set forth in this Declaration, all of which are hereby declared, established, expressed and agreed to: (i) be in furtherance of a general plan for the subdivision, development, sale, and use of the Properties as a planned development as that term is defined in California Civil Code Section 1351(k), (ii) be for the benefit and protection of the Properties and the desirability, value and attractiveness of each parcel of property located therein, (iii) run with the land and be binding upon all parties having or acquiring any right, title or interest in the Properties or any portion thereof, (iv) inure to the benefit of every portion of the Properties and any interest therein, and (v) to inure to the benefit of and be binding upon each Owner, and each successor in interest of Declarant and of each Owner; .

(b) Each conveyance, transfer, sale, assignment, lease or sublease made by Declarant of the Common Area and of any Lot shall be deemed to incorporate by reference all of the provisions of this Declaration (including, but not limited to, the covenants, conditions, restrictions, limitations, reservations, grants of easements, rights, rights-of-way, lines, charges and equitable servitudes herein provided for); and that

(c) This Declaration shall be enforceable by each Owner and each successor in interest of each Owner, and also by the Association, its Board of Directors, and each person, firm, corporation or other entity duly authorized by the Association or its Board of Directors all as more particularly set forth in Article XIII hereof.

Section 2. Title to Common Area.

(a) Fee Title in Association. Fee simple title to the Common Area and the Common Facilities affixed thereto are vested in the Association.

(b) Rights of Owners in Common Areas. The interest of each Lot Owner in and to the use and enjoyment of the Common Areas and the Common Facilities shall be appurtenant to the Residence Lot owned by the Owner and shall not be sold, conveyed or otherwise transferred by the Owner separately from the

-5-



ownership interest in such Residence Lot. Any sale, transfer or conveyance of a Residence Lot shall operate to transfer the appurtenant right to use and enjoy the Common Areas and Common Facilities, and the transferee shall thereupon be permitted to use and benefit of the Common Area and the Common Facilities located thereon. There shall be no judicial partition of the Common Area or any part thereof, and each Owner, whether by deed, gift, devise, or operation of law for his or her own benefit and for the benefit of all other Owners specifically waives and abandons all rights, interest and causes of action for a judicial partition of any ownership interest in the Common Area and does further covenant that no action for such judicial partition shall be instituted, prosecuted or reduced to judgment. The rights of all Owners in the Common Areas and Common Facilities shall be further subject to the requirements and limitations set forth in Section 3 of this Article II.

Section 3. Owners' Nonexclusive Easements of Use Enjoyment in Common Areas. Every Owner shall have a nonexclusive right and easement of enjoyment in and to the Common Area, including ingress and egress to and from his or her Lot, which shall be appurtenant to and shall pass with the title to every Residence Lot, subject to the following:

(a) The right of the Association to charge reasonable admission and other fees for the use of any recreational Common Facility situated upon or with the Common Area. Furthermore, the Association shall be entitled to lease or otherwise grant permission to utilize portions of the Common Facilities or Common Areas to be operated by the lessee for the benefit of the Association and its Members; provided that no lease of any Common Area or Common Facilities shall exceed three years without the prior approval of a majority of a quorum of the Members.

(b) The right of the Association to suspend the voting rights and right to use the Common Area and Common Facilities by an Owner for any period during which any assessment against the Owner's Lot remains unpaid. The Association's Rules shall specify uniform rules for when such a suspension shall become effective in the event that an Owner is delinquent in the payment of any assessment.

(c) The right of the Association to adopt uniform rules and regulations as provided in Article III, Section 8 hereof, regulating the use and enjoyment of the Properties for the benefit and well-being of the Owners in common, and, in the event of a breach of such Rules or of any provision contained in any other Governing Document, to temporarily suspend the voting rights and rights of use and enjoyment of recreational Common Areas and Common Facilities by any Owner, the Owner's family members, tenants and guests so long as the accused Owner is first given notice and the opportunity to be heard before the Covenants Committee established by the Board of Directors, as more particularly provided in Article XIII, Section 6 hereof.

(d) The right of the Association, to the extent reasonably necessary to protect the rights, privileges, benefits, uses and enjoyment of the Members, to limit the number of guests of Members who may use the Common Areas and Common Facilities.

(e) The right of the Association, or its agents, when necessary, to enter any Lot to (i) perform its obligations under this Declaration, including the enforcement of any restrictions contained herein or, any obligations of the

-6-

CERTIFIED

Lot Owner with respect to construction, maintenance and repair of improvements as necessary for the benefit of the Common Area, the Common Facilities or the Owners in common, or (ii) to undertake necessary repairs or Lot maintenance (including weed abatement and similar fire control measures) that an Owner has failed to perform which, if left undone, will pose a threat to, or cause an unreasonable interference with, Association property or the property of any neighboring Owner.

The Association's rights under this subparagraph (e) shall be immediate in case of an emergency originating in or threatening such Lot or any adjoining Lots or Common Area, and the Association's work may be performed under such circumstances whether or not the Owner or other occupant of the Lot is present. In all nonemergency situations the Association, or its agents, shall furnish the Owner or his or her lessee with at least 24 hours' written notice of the Association's intent to enter the Lot, specifying the purpose and the estimated time of such entry and shall make every reasonable effort to perform its work and schedule its entry in a manner that respects the privacy of the persons residing on the Lot.

(f) The right of the Association, in accordance with its Articles and Bylaws, to borrow money for the purpose of improving the Common Areas and Common Facilities and in aid thereof to mortgage said property; provided, the rights of any such mortgage in said properties shall be subordinate to the rights of the Owners hereunder; and provided further that any such indebtedness shall be considered as an expense of the Association for purposes of the Special Assessment provisions of Article IV, Section 3 hereof.

(g) The right of the Association to dedicate or transfer all or any part of the Common Area to any public agency, authority or utility for such purposes and subject to such conditions as may be agreed upon by the Owners; provided, however that no such dedication or transfer shall be effective unless an instrument, signed by at least two-thirds of the voting power of the Members, and their first mortgagees consenting to such dedication or transfer has been recorded. Furthermore, no dedication shall be permitted that impairs the ingress and egress to any individual Lot. Said instrument may be executed in counterpart so long as each counterpart is in recordable form.

(h) Such easements as have been dedicated and/or granted at the time of recordation of any Subdivision Map, including the easements described in Article IX hereof.

(i) Such easements as may now exist or hereafter be granted to any Owner by the Association or the Declarant, pursuant to Article IX, Section 4 hereof, for the location, construction, maintenance and repair of a septic tank, leach field, leach line, and/or other sewage facilities to service the Owner's Residence Lot when the Design Committee, with the consent of the Board, has determined that it is not reasonably possible to properly serve said Residence Lot by location of the septic tank, leach field, leach line or other sewage facility on the Residence Lot, itself.

(j) The right of the Association, by a two-thirds vote of its Board of Directors, to convey a fee interest in any portion of the Common Area encumbered by a septic facility easement (established in accordance with Article IX, Section 4 hereof) to the Owner-grantee(s) of such easement if (i) all the Owner-grantees consent to accept conveyance of a fee interest in the property encumbered by the septic facility easement; and (ii) the Board of

-7-

CERTIFIED

Directors determines, by resolution set forth in the minutes of the Association, that: (A) it is to the advantage and in the best interest of the Association and its members that the conveyance occur; (B) neither the property interests of any Owner nor the recreational or Road use of any Common Area or Common Facility will be adversely affected or impaired in any material respect by such conveyance; (C) the conveyance is otherwise proper under Sections 66410 et. seq. of the California Government Code; and (D) that all the requirements of Article IX, Section 4 of this Declaration have been satisfied.

(k) The right of the Association, in accordance with Article VII, Section 2 of this Declaration, to construct further Common Facilities on any undeveloped portions of the Common Areas that are not dedicated to use as Roads.

(l) The right of the Association to use the Common Areas and/or grant to others an easement to use the Common Areas for the purpose of constructing, maintaining and operating thereon and therein such pipes, poles, wires, conduits, equipment and attachments in connection with a cable television system, or similar facility, to serve the Properties.

(m) The restrictions set forth in Article VIII, Section 2(b) on the rights of Owners of Restricted Lots to use and enjoy recreational Common Facilities.

### Section 4. Delegation of Use.

(a) **Delegation Generally**. Any Owner may delegate, in accordance with, and subject to, the Governing Documents, the Owner's rights in and to the use and enjoyment to the Common Area and Common Facilities to the members of the Owner's family, or to the Owner's tenants or contract purchasers who reside on the Owner's Residence Lot; provided that any rental or lease of the Owner's Residence Lot may only be to a single family for Single Family Residential Use.

Any rental or lease of a Residence shall be subject to all provisions of the Governing Documents, each of which shall be deemed to be incorporated by reference in any lease or rental agreement. Every Owner-lessor shall be obligated to furnish his or her tenant or lessee with a copy of this Declaration, together with a current copy of the Association Rules. The Owner-lessor shall at all times be responsible for compliance of Owner's tenant or lessee with all applicable Governing Document provisions during the tenant's/lessee's occupancy and use of the Owner-lessor's Residence.

(b) **Discipline of Lessees**. In the event that any lessee fails to honor any provision of the Governing Documents or engages in conduct that constitutes a nuisance or an unreasonable interference with the rights of quiet enjoyment of neighboring Owners, the Association shall so notify the Owner in accordance with subparagraph (c) below. If, within a reasonable time following receipt of such notice, the Owner fails to take necessary corrective action with respect to the tenant or lessee or, in the alternative, fails to request a hearing on the matter, the Board shall be entitled to take such corrective action as it deems appropriate under the circumstances, which action may include suspension of the tenant's privileges to use Common Areas and/or Common Facilities (other than Roads) or the imposition of fines and penalties against the Owner.

CERTIFIED

(c) **Due Process Requirements for Disciplinary Action.** Except in those instances where the Association is authorized to undertake immediate corrective or disciplinary action as provided in Article XIII, Section 6(d)(iii), the Association shall have no right to initiate disciplinary action against an Owner (or the Owner's lessee or tenant) on account of the misconduct of the Owner's lessee or tenant unless and until the following conditions have been satisfied: (i) the Owner has received written notice from the Board, the Association's general manager or an authorized committee of the Board detailing the nature of the lessee's/tenant's alleged infraction or misconduct and advising the Owner of his or her right to a hearing; (ii) the Owner has been given a reasonable opportunity to take corrective action on a voluntary basis or to appear at a hearing (conducted in accordance with Article XIII, Section 6 hereof), to present arguments as to why disciplinary action is unnecessary or unwarranted; and (iii) the Owner has failed to prevent or correct the tenant's objectionable actions or misconduct.

(d) **Owner's Duty to Notify Association of the Identity of Tenants and Contract Purchasers.** Each Owner shall notify 'the Association's general manager of the names of any contract purchaser, lessee or tenant residing within the Owner's Residence. Each Owner, contract purchaser, lessee or tenant shall also notify the general manager of the names of all persons residing on the Owner's Residence Lot to whom such Owner, contract purchaser, lessee or tenant has delegated any rights of use and enjoyment in the Properties and the relationship that each such person bears to the notifying person.

**Section 5.  Notification Regarding Governing Documents.**

(a)  As more particularly provided in Section 1368 of the California Civil Code, as soon as practicable before transfer of title or the execution of a real property sales contract with respect to any Lot, the Owner thereof must give the prospective purchaser a current copy of the Articles, Bylaws and this Declaration (together with all amendments thereto) and a true statement in writing from the Association ("delinquency statement") as to the amount of any delinquent Assessments, together with information relating to penalties, attorneys' fees and other charges due with respect to the Lot as of the date the statement is issued and a copy of the Association's most current financial statements.

(b)  The Association shall, within 10 days of the mailing or delivery of a written request therefor, provide the Owner with a copy of the current Association Governing Documents, together with the delinquency statement referred to in the immediately preceding paragraph.  The Association shall be entitled to impose a fee for providing the Governing Documents and delinquency statement equal to (but not more than) the Association's reasonable cost of preparing and reproducing the materials.

## ARTICLE III
### PROPERTY OWNER'S ASSOCIATION

**Section 1.  Formation of Association.**  The Association was formed and presently exists as a California nonprofit mutual benefit corporation that owns, operates, manages and maintains the Common Areas and Common Facilities within Auburn Lake Trails.  The Association also discharges the other duties

-9-

and responsibilities enumerated in its Articles of Incorporation and Bylaws and in this Declaration.

Section 2. One Class of Membership.

(a) The Association shall have one class of voting membership consisting of the owners of Residence Lots. The rights, duties, obligations and privileges of the Members shall be as set forth in the Governing Documents.

(b) An Owner shall hold one membership in the Association for each Residence Lot owned. Ownership of a Residence Lot, or any interest therein, shall be the sole qualification for membership in the Association. Each Owner shall remain a Member of the Association until his or her ownership interest in all Residence Lots within the Properties ceases, at which time the Owner's membership in the Association shall automatically cease. Persons or entities who hold an interest in a Residence Lot merely as security for performance of an obligation are not to be regarded as Members. Ownership of Restricted Lots shall not give rise to any Association membership rights.

(c) To avoid an overburdening of Common Areas and Common Facilities, the membership that is appurtenant to any Residence Lot shall entitle the Lot Owner(s) only to the following user privileges with respect to Association recreation facilities:

(i) Any membership appurtenant to a Residence Lot owned by a corporation, partnership or other group of three or more individuals holding the Lot for investment, rather than as their principal residence, shall confer privileges to use and enjoy recreational Common Facilities on no more than two adult co-Owners.

(ii) The membership appurtenant to an improved Residence Lot shall confer recreational Common Facility user privileges, without payment of guest fees, upon those individuals residing within the Residence in accordance with the limitations of Article VIII, Section 1(a). If those individuals are not Owners, the Owners but not the members of the Owners' family shall also have full recreational Common Facility user privileges.

Section 3. Membership Voting. The voting rights of the Members shall be as set forth in Article IV of the Bylaws and shall be subject to suspension in the event of non-payment of assessments or fines or an infraction of the Governing Documents in accordance with Article XIII, Section 6 hereof. To be eligible to vote an Owner must be current in the payment of Assessments. No Association voting rights shall arise by virtue of the ownership of any Restricted Lots.

Section 4. Assessments. The Association shall have the power to establish, fix and levy assessments against the Owners of Lots within the Properties and to enforce payment of such assessments, as more particularly provided in Article IV hereof. Any assessments levied by the Association on its Members shall be levied in accordance with and pursuant to the provisions of this Declaration.

Section 5. Transfer of Memberships. Memberships in the Association shall not be transferred, encumbered, pledged or alienated in any way, except upon the sale or encumbrance of the Residence Lot to which it is appurtenant, and then only to the purchaser, in the case of a sale, or mortgagee, in the case

-10-

CERTIFIED

of an encumbrance of such Lot. The Association membership appurtenant to a Residence Lot passes automatically to the purchaser thereof upon transfer of title to said Residence Lot. A mortgagee does not have membership rights until the mortgagee becomes an Owner of a Residence Lot by foreclosure or deed in lieu thereof. Any attempt to make a prohibited transfer of a membership is void. In the event the Owner of any Residence Lot should fail or refuse to transfer the Membership registered in his or her name to the purchaser of the Owner's Lot, the Association shall have the right to record the transfer upon its books and thereupon any other membership outstanding in the name of the seller shall be null and void.

**Section 6. Rights and Duties of the Association Board of Directors.** The rights, duties and obligations of the Board of Directors of the Association shall be as set forth in this Declaration and the Bylaws of the Association (particularly Article IX of the Bylaws).

**Section 7. Powers and Authority of the Association.** The Association and its Board of Directors shall have all of the powers of a nonprofit mutual benefit corporation organized under the laws of the State of California in owning and managing its properties and otherwise discharging its responsibilities hereunder for the benefit of its Members, subject only to such limitations upon the exercise of such powers as are expressly set forth in the Governing Documents. The Association, acting through its Board and its duly constituted committees, shall have the power to do any and all lawful things which may be authorized, required or permitted to be done under and by virtue of the Governing Documents, and to do and perform any and all acts which may be necessary or proper for, or incidental to, the exercise of any of the express powers of the Association for the peace, health, comfort, safety or general welfare of the Owners in common. The specific powers of the Association Board and the limitations thereon, shall be as set forth in Article IX of the Bylaws.

**Section 8. Association Rules.**

(a) **Rulemaking Power.** The Board may, from time to time and subject to the provisions of this Declaration, propose, enact and amend rules and regulations of general application to the Owners of Lots within Auburn Lake Trails. Notwithstanding the foregoing, no Rules may be adopted which materially affect the rights, preferences or privileges of any Owner as specifically set forth herein. In the event that the provisions of this Declaration and any rule adopted by the Association are in conflict, the provisions of this Declaration shall be deemed to prevail.

(b) **Distribution of Rules.** A copy of the Association Rules, as they may from time to time be adopted, amended or repealed, shall be mailed or otherwise delivered to each Owner.

(c) **Adoption and Amendment of Rules.** Association Rules may be adopted, amended or supplemented from time to time by a majority vote of the Board of Directors. Except in the case of Rules adopted in response to an emergency or to correct or prevent some condition or activity that involves a threat to the health or safety of any Owner or the Owners in common, no Association Rule or amendment to an existing Association Rule shall be adopted by the Board until at least 45 days after the proposed Rule or amendment thereto has been published in the Association newsletter or is otherwise communicated to the

CERTIFIED

Owners in writing and posted in the principal office of the Association. New Rules and amendments to existing Rules shall be distributed to the Owners by mail.

So long as any proposed Rule or amendment has been published in accordance with this subparagraph (c), any duly adopted Rule or Rule amendment shall become effective immediately upon adoption thereof by the Board, or at such later date as the Board may deem appropriate under the circumstances (i.e., if greater notice is necessary to afford Owners the opportunity for voluntary compliance).

(d) <u>Breach of Rules or Restrictions</u>. Any breach of the Association Rules or other Governing Document provision shall give rise to the rights and remedies set forth in Article XIII hereof.

<u>Section 9</u>.  <u>Limitation on Liability of Association and Its Board of Directors and Officers</u>.

(a)  No director, officer, committee member or employee of the Association (collectively "Released Parties") shall be personally liable to any of the Association's members or to any other person, for any error or omission of any such person, their agents, representatives and employees, or the Design Committee in the discharge of their duties and responsibilities in accordance with the Governing Documents, or for their failure to provide any service required by any Governing Document, provided that such Released Party has, upon the basis of such information as may be possessed by him, acted reasonably and in good faith. Without limiting the generality of the foregoing, this limitation on liability shall extend to such matters as the establishment of the Association's annual financial budget and the funding of Association capital replacement and reserve accounts.

(b)  Neither the Association nor any Released Party shall be responsible to any owner or to any member of his or her family or any of his guests, servants, employees, licensees, invitees or any others for any loss or damage suffered by reason of theft or otherwise of any article, vehicle or other item of personal property which may be stored by such owner or other person on any Lot or on any Common Area or for any injury to or death of any person or loss or damage to the property of any person caused by fire, explosion or the elements or any other Owner or person within the Properties, or by any other cause, unless the same is attributable to its or his own willful misconduct or negligence.

**ARTICLE IV**
**ASSESSMENTS**

<u>Section 1</u>.  <u>Assessments Generally</u>.

(a)  Each Owner of a Lot by acceptance of a deed therefor (whether or not it shall be so expressed in such deed), covenants and agrees, to pay to the Association the Regular Assessments and Special Assessments hereinafter provided for. Restricted Lots (as defined in Article I, Section 30 hereof) shall be liable for Regular and Special Individual Assessments under the circumstances described in Sections 2(j) and 4(a), below.

-12-

CERTIFIED

(b) Any unpaid Assessment of a previous Owner shall remain the debt of such previous Owner against whom assessed and any lien created pursuant to the provisions of this Article IV by reason of such unpaid Assessment shall remain in force and effect as a lien on the Lot sold and may be subject to foreclosure as provided in Section 9 hereof.

(c) Each installment payment of any Regular Assessment and each lump sum or installment payment of any Special Assessment or Special Individual Assessment, together with any interest charge or late payment penalty provided for in subparagraph (d) hereof and costs (including reasonable attorneys' fees) attributable thereto or incurred in the collection thereof, shall be a separate debt of the Owner against whom the same has been assessed and is hereby declared and agreed to be a lien upon and against the Lot so assessed in the nature of a mortgage with a power of sale in accordance with California Civil Code Section 1367 (or comparable superseding statute), all as more particularly described in Section 9 hereof.

(d) No Owner may exempt himself or herself or the Owner's Lot from liability or charge for his or her share of any Regular, Special or Special Individual Assessment made against the Owner and his or her Lot by waiving or relinquishing, or offering to waive or relinquish, the Owner's right to use and enjoy all or any portion of the Common Area or Common Facilities or by the abandonment or nonuse of his or her Lot.

Section 2.    Regular Assessments.

(a) Preparation of Annual Budget; Establishment of Regular Assessments. Not less than 45 nor more than 60 days prior to the beginning of the Association's fiscal year, the Board shall estimate the total amount required to fund the anticipated Common Expenses for the next succeeding fiscal year (including additions to any reserve funds established to defray the costs of future repairs, replacement or additions to the Common Areas and Common Facilities) by preparing and distributing to all Association Members a budget satisfying the requirements of Article XII, Section 5 of the Bylaws.

(b) Establishment of Regular Assessment by Board/Membership Approval Requirements. The total annual Common Expenses estimated in the Association's budget (less projected income from sources other than assessments) shall become the aggregate Regular Assessment for the next succeeding fiscal year; provided, however, that, except as provided in subparagraph (c) below, the Board of Directors may not impose a Regular Assessment that is more than 20 percent greater than the Regular Assessment for the Association's preceding fiscal year without the approval of Owners, constituting a quorum, casting a majority of the votes at a meeting or election by written ballot conducted in accordance with Article IV, Section 6 of the Bylaws. The required quorum for any membership vote pursuant to this subparagraph (b) shall be a majority of the voting power of the Members.

(c) Assessments to Address Emergency Situations. The requirement of a membership vote to approve Regular Assessment increases in excess of 20 percent of the previous year's Regular Assessment shall not apply to assessment increases which are necessary to address emergency situations. For purposes of this subparagraph (c), an emergency situation is any of the following:

CERTIFIED

(i) An extraordinary expense required by an order of a court.

(ii) An extraordinary expense necessary to repair or maintain the Common Areas or Common Facilities where a threat to personal safety is discovered.

(iii) An extraordinary expense necessary to repair or maintain the Common Areas or Common Facilities that could not have been reasonably foreseen by the Board in preparing and distributing the budget pursuant to subparagraph (a) above; provided, however, that prior to the imposition or collection of an assessment under this subparagraph (iii), the Board shall pass a resolution containing written findings as to the necessity of the extraordinary expense involved and why the expense was not or could not have been reasonably foreseen in the budgeting process, and the resolution shall be distributed to the Members with the notice of assessment.

(d) Allocation of Regular Assessment. The total estimated Common Expenses, determined in accordance with subparagraph (a), shall be allocated among, assessed against, and charged to each Owner according to the ratio of the number of Residence Lots within the Properties owned by the assessed Owner to the total number of Residence Lots subject to Assessments so that each Residence Lot bears an equal share of the total Regular Assessment; provided, however, that said allocation computatoin shall be adjusted to reflect that portion of the Regular Assessment, if any, payable by Owners of Restricted Lots pursuant to subparagraph (j), below.

(e) Assessment Roll. That portion of the estimated Common Expenses assessed against and charged to each Owner shall be set forth and recorded in an Assessment roll which shall be maintained and available with the records of the Association and shall be open for inspection at all reasonable times by each Owner or his authorized representative for any purpose reasonably related to the Owner's interest as a property Owner or as a Member of the Association. The Assessment roll (which may be maintained in the form of a computer printout) shall show for each Lot the name and address of the Owner of Record, all Regular, Special and Special Individual Assessments levied against each Owner and his Residence Lot, and the amount of such Assessments which have been paid or remain unpaid. The delinquency statement required by article II, section 5 hereof shall be conclusive upon the Association and the Owner of such Lot as to the amount of such indebtedness as of the date of such statement, in favor of all persons who rely thereon in good faith, and such a statement shall be furnished by the Association to any Owner or to any first Mortgagee under a Mortgage encumbering a Lot upon written request therefor at a reasonable fee payable to the Association.

(f) Mailing Notice of Assessment. The Board of Directors shall mail to each Owner at the street address of the Owner's Residence Lot, or at such other address as the Owner may from time to time designate in writing to the Association, a statement of the amount of the Regular Assessment for the next succeeding fiscal year no less than 45 days prior to the beginning of the next fiscal year.

(g) Failure to Make Estimate. If the Board of Directors fails to make an estimate of the Common Expenses for any fiscal year, then the Regular Assessment made for the preceding fiscal year, together with any Special Assessment made pursuant to Section 3(a)(i) of this Article IV for that year, shall be assessed against each Owner and his Residence Lot on account of the then current fiscal year, and installment payments (as hereinafter provided)

-14-

CERTIFIED

based upon such automatic Assessment shall be payable on the regular payment dates established by the Association.

(i) <u>Installment Payment</u>. The Regular Assessment made against each Owner shall be due and payable in advance to the Association in equal monthly installments on the first day of each month or on such other date or dates as may be established from time to time by the Association's Board of Directors. Monthly installments of Regular Assessments shall be delinquent if not paid by the 15th day of the month.

(j) <u>Restricted Lot Regular Assessment</u>. In addition to the Regular Assessment obligation of each Owner pursuant to subparagraphs (a) and (b), above, any Owner of a Restricted Lot covenants and agrees to pay a Regular Assessment with respect to each Restricted Lot owned by said Owner in an amount equal to 20% of the annual Regular Assessment established for Residence Lots. In the event that Restricted Lots are sold to adjacent Residence Lot Owners only, the Association Board may, in its discretion, waive this assessment as to all Restricted Lots.

<u>Section 3.</u>     <u>Special Assessments</u>.

(a) <u>Purposes for Which Special Assessments May Be Levied</u>. Subject to the membership approval requirements set forth in subparagraph (b) below, the Board of Directors shall levy Special Assessments against the Owners and their Residence Lots for the following purposes:

(i) <u>Regular Assessment Insufficient in Amount</u>. If, at any time, the Regular Assessment for any fiscal year is insufficient in amount due to extraordinary expenses not contemplated in the budget prepared for said fiscal year, then the Board of Directors shall levy and collect a Special Assessment, applicable to the remainder of such year only, for the purpose of defraying, in whole or in part, any deficit which the Association may incur in the performance of its duties and the discharge of its obligations hereunder.

(ii) <u>Capital Improvements</u>.     The Board may also levy Special Assessments for additional capital improvements within the Common Area (i.e., improvements not in existence on the date of this Declaration that are unrelated to repairs for damage to, or destruction of, the existing Common Facilities). The Special Assessment power conferred hereunder is not intended to diminish the Board's obligation to plan and budget for normal maintenance, replacement, or repair of the Common Areas or Common Facilities through Regular Assessments (including the funding of reasonable reserves) and to maintain adequate insurance on the Common Areas and Common Facilities in accordance with Article X hereof.

(b) <u>Special Assessments Requiring Membership Approval</u>. No Special Assessment described in subparagraph (a) hereof shall be made in any fiscal year without the vote or assent by written ballot of Members constituting a quorum, casting a majority of the votes at a meeting or election of the Association if such Special Assessment, when added to any other Special Assessment levied in that fiscal year, will exceed 5 percent of the budgeted gross expenses of the Association for that fiscal year; provided, however, that this membership approval requirement shall not apply to any Special Assessment levied to address emergency situations as defined in subsection 2(c) of this Article IV. The required quorum for any membership

CERTIFIED

vote pursuant to this subparagraph (b) shall be a majority of the voting power of the Members.

(c) _Allocation and Payment of Special Assessments_. When levied by the Board or approved by the Members as provided above, the Special Assessment shall be divided among, assessed against and charged to each Owner and his or her Residence Lot in the same manner prescribed for the allocation of Regular Assessments pursuant to subparagraph 2(d) above. The Special Assessment so levied shall be recorded on the Association's Assessment roll and notice thereof shall be mailed to each Owner.

Special Assessments for purposes described in subparagraph (a)(i) of this Section 3 shall be due as a separate debt of the Owner and a lien against his or her Residence Lot, and shall be, payable to the Association in equal monthly installments during the remainder of the then current fiscal year. Special Assessments for purposes described in subparagraph (a)(ii) shall be due as a separate debt of the Owner and a lien against his or her Residence Lot, and shall be payable in full to the Association within 30 days after the mailing of such notice or within such extended period as the Board shall determine to be appropriate under the circumstances giving rise to the Special Assessment.

Section 4. _Special Individual Assessments_.

(a) _Circumstances Giving Rise to Special Individual Assessments_. In addition to the Association's authority to levy Special Assessments pursuant to Section 3 hereof, the Association may also impose Special Individual Assessments against an Owner in any of the circumstances described in subparagraphs (i) through (iv) below; provided that Special Individual Assessments may only be imposed pursuant to this Section 4 after the Owner has been afforded the notice and hearing rights to which the Owner is entitled pursuant to Article XIII, Section 6 hereof, and, when appropriate, has been given a reasonable opportunity to comply voluntarily with the Association's Governing Documents. The acts and circumstances that may give rise to Special Individual Assessment liability include:

(i) _Damage to Common Area or Common Facilities_. In the event of any damage to or destruction of any portion of the Common Area or the Common Facilities caused by the willful misconduct or negligent act or omission of any Owner, any member of his or her family, or any of his or her tenants, guests, servants, employees, licensees or invitees, the Board shall cause the same to be repaired or replaced, and all estimated costs and expenses to repair and replace shall be assessed and charged solely to and against such Owner as a Special Individual Assessment. Insurance proceeds received by the Association, if any, in compensation for the damage or destruction shall be repaid to the Owner responsible for the Special Individual Assessment in an amount not to exceed the sums paid by the Owner to the Association in response to the assessment.

(ii) _Act Increasing Insurance Premiums_. In the event any act or omission of any Owner, any member of his or her family, or any of his or her tenants, guests, servants, employees, licensees or invitees, shall in any way cause or be responsible for any increase in the premiums for any insurance purchased or obtained by the Association in accordance with the provisions of Article X hereof, the amount of such increase shall be assessed and charged solely to and against such Owner as a Special Individual Assessment.

-16-

CERTIFIED

(iii) <u>Expenses Incurred in Gaining Member Compliance</u>. In the event that the Association incurs any costs or expenses, including reasonable title company, accounting or legal fees, to accomplish (A) the payment of delinquent assessments, (B) any repair, maintenance or replacement for which the Owner is responsible under the Governing Documents (but has failed to undertake or complete in a timely fashion), or (C) to otherwise bring the Owner and/or his or her Lot (whether Residential or Restricted) into compliance with any provision of the Governing Documents, the amounts incurred by the Association (including reasonable fines and penalties duly imposed hereunder, court costs and reasonable attorneys' fees, if any) may be assessed and charged solely to and against such Owner as a Special Individual Assessment.

(iv) <u>Required Maintenance on Lots</u>. As more particularly provided in Article II, Section 3(e) (and without limiting the generality of that Section), if any Lot (including any Restricted Lot) becomes a nuisance, fire or safety hazard for any reason, including, without limitation, the accumulation of trash, junk automobiles or improper weed and/or vegetation control, the Association shall have the right to enter upon said Lot, correct the offensive or hazardous condition and recover the cost of such action through imposition of a Special Individual Assessment.

(b) <u>Levy of Special Individual Assessment and Payment</u>. Once a Special Individual Assessment has been levied against an Owner for any reason described, and subject to the conditions imposed, in subparagraph (a) of this Section 4, such Special Individual Assessments shall be recorded on the Association's assessment rolls, notice thereof shall be mailed to the affected Owner and the Special Individual Assessment shall thereafter be due as a separate debt of the Owner payable as follows: Special Individual Assessments imposed pursuant to Sections 4(a)(i), (iii) or (iv) shall be payable in full to the Association within 30 days after the mailing of notice of the assessment and Special Individual Assessments imposed pursuant to Section 4(a)(ii) shall be payable in full to the Association at least 10 days in advance of the date or dates for the payment of the increased insurance premium giving rise to the Special Individual Assessment.

(c) <u>Limitation on Right to Lien Lots For Special Individual Assessments</u>. With the exception of Special Individual Assessments imposed by the Association's Board to recover reasonable late payment penalties for delinquent assessments and/or charges to reimburse the Association for its reasonable costs (including attorneys' fees) of collecting delinquent Assessments, Special Individual Assessments shall not be recoverable through the imposition of a lien against the Owner's Lot enforceable through foreclosure, but the same may be recovered by the Association through other legal processes.

<u>Section 5</u>. <u>Purpose and Reasonableness of Assessments</u>. Each Assessment, whether Regular or Special, made in accordance with the provisions of this Declaration, is hereby declared and agreed to be for use exclusively (a) to promote the recreation, health, safety and welfare of individuals residing within the Properties; (b) to promote the enjoyment and use of the Properties by the Owners and their families, tenants, invitees, licensees, guests and employees, or for the protection of the Properties; and (c) to provide for the repair, maintenance, replacement and protection of the Common Areas and Common Facilities. Each and every Assessment levied hereunder is further declared and agreed to be a reasonable assessment, and to constitute a separate debt

-17-

CERTIFIED

(with respect to which a separate lien may be created hereby) of the Owner of the Lot against which the Assessment is made that shall be binding upon the Owner's heirs, successors and assigns; provided, however, that the personal obligation of each Owner for delinquent assessments shall not pass to the Owner's successors in title unless expressly assumed by them.

Section 6. Exemption of Certain Portions of the Properties from Assessments. The following real property subject to this Declaration shall, unless devoted to use as a dwelling, be exempt from the Assessments provided herein and the lien thereof provided herein:

(a) Any portion of the Properties dedicated and accepted by a local public authority;

(b) The Common Area and Common Facilities; and

(c) Any Lot owned by the Association.

Section 7. Notice and Procedure for any Action Authorized Under Sections 2 and 3. Any action authorized under Sections 2 and 3 of this Article IV requiring the vote of the Association Members shall be taken either by written ballot or at a meeting of the Members called for that purpose, written notice of which shall be sent to all Members not less than 15 days nor more than 60 days in advance of the meeting or mailing of the written ballots.

Section 8. Maintenance of Funds Collected.

(a) Deposit: Bank Account. All sums received or collected by the Association from Assessments or other sources, shall be promptly deposited in checking or savings accounts in banks or savings and loan associations located within the State of California as selected by the Board of Directors; provided, however, that the Board shall be entitled to make other prudent investments of Association funds consistent with standards of prudence and discretion normally observed by trustees and fiduciaries and the limitations, if any, imposed by any trust instrument adopted by the Board to hold and invest any such funds.

To preclude a multiplicity of bank accounts, the proceeds of all Assessments may be commingled in one or more accounts and need not be deposited in separate accounts so long as the separate accounting records described herein are maintained. Any interest received on such deposits shall be credited proportionately to the balances of the various Assessment fund accounts maintained on the books of the Association as provided in subparagraph (b) below.

(b) Separate Accounts: Commingling of Funds. Except as provided below, the proceeds of each Assessment shall be used only for the purpose for which such Assessment was made, and such funds shall be received and held in trust by the Association for such purpose. Notwithstanding the foregoing, the Board, in its discretion, may move general operating funds from one line item to another within the Association's approved budget if the Board determines that it is prudent and in the best interests of the Association and its Members to do so. Furthermore, if the proceeds of any Special Assessment exceed the requirement of which such Assessment was made, such surplus shall, in the sole discretion of the Board, either be returned to the contributors

CERTIFIED

thereof, or credited proportionately on account of their Regular Assessment obligations.

For purposes of accounting, but without requiring any physical segregation of assets, the Association shall keep a separate account of all funds received by it in payment of each Assessment and of all disbursements made therefrom; provided, however, that the receipts and disbursements of any Special Assessments made pursuant to Article IV, Section 3(a)(i) hereof shall be combined with the receipts and disbursements of the Regular Assessments; and, provided further, that the Board shall maintain separate liability accounts for each capital improvement for which replacement reserve funds are allocated.

Unless the Association is exempt from federal or state taxes, all sums allocated to capital replacement accounts shall be considered for accounting purposes, as contributions to the capital of the Association and as trust funds segregated from the regular income of the Association or in any other manner authorized by law or by any applicable regulations of the Internal Revenue Service and/or the California Franchise Tax Board that will prevent such funds from being taxed as income of the Association.

Section 9. Collection of Assessments: Enforcement of Liens.

(a) Delinquent Assessments. If any installment payment of a Regular Assessment or lump sum or installment payment of any Special Assessment or Special Individual Assessment assessed to any Owner is not paid within 30 days after the same becomes due, such payment shall be delinquent and the amount thereof may, at the Board's election, bear interest at the maximum rate allowed by law from and after the due date until the same is paid. Late payment charges may also be assessed to the extent permitted by law.

(b) Action for Money Judgment. In the event of a default in payment of any Assessment, and in addition to any other remedy provided herein or by law, the Association, in its name but acting for and on behalf of all other Owners, may file suit or suits to recover a money judgment or judgments against the Owner personally obligated for the Assessment.

(c) Effect of Non-Payment of Assessments: Enforcement of Liens.

(i) Schedule of Fines. Subject to the limitations set forth in California Civil Code Sections 1366, subdivision (c), and 1366.1, the Board of Directors is authorized and empowered to promulgate a schedule of reasonable fines and penalties for any Assessments that are delinquent.

(ii) Creation and Imposition of a Lien for Delinquent Assessments. As more particularly described in section 1367 of the California Civil Code, or comparable superseding statute, the amount of any delinquent Regular or Special Assessment, together with any penalties, interest and costs (including reasonable attorneys' fees) attributable thereto or incurred in the collection thereof, shall become a lien upon the Lot of the Owner so assessed only when the Association causes to be recorded in the Office of the County Recorder of El Dorado, State of California, a Notice of Delinquent Assessment setting forth: (A) the amount of the assessment and other sums imposed pursuant to this Article IV and Section 1366 of the Civil Code; (B) the legal description of the Owner's Lot against which the assessment and other sums are levied; (C) the name of the record Owner of said Lot; and (D) the name and address of the trustee authorized by the Association to enforce the lien by sale. The Notice

-19-

CERTIFIED

of Delinquent Assessment shall be signed on behalf of the Association by either its president, treasurer, general manager or legal counsel. Upon payment of the sums specified in the Notice of Delinquent Assessment, the Association shall cause to be recorded a further notice stating the satisfaction and release of the lien thereof.

(iii) <u>Remedies Available To The Association To Collect Assessments, Generally</u>. The Association may bring an action at law against the Owner personally obligated to pay the delinquent assessment, or foreclosure its lien against the Owner's Lot. Foreclosure by the Association of its lien may be by judicial foreclosure or by non-judicial foreclosure by the trustee designated in the Notice of Delinquent Assessment or sale by a trustee substituted pursuant to California Civil Code Section 2934a. Any sale by a trustee shall be conducted in accordance with the provisions of Sections 2924, 2924(b), and 2924(c) of the California Civil Code applicable to the exercise of powers of sale in mortgages and deeds of trusts.

Suit to recover a money judgment for unpaid common expenses, rent and attorneys' fees shall be maintainable without foreclosure or waiving the lien securing the same. Furthermore, the Board may take such additional action, including, without limitation, acceptance of a deed in lieu of foreclosure, consistent with this Declaration, as is necessary or appropriate to enforce its assessment rights hereunder.

<u>Section 10</u>. <u>Transfer of Lot by Sale or Foreclosure</u>. Except as otherwise provided herein, the sale or transfer of any Lot shall not affect the assessment lien. The sale or transfer of any Lot pursuant to foreclosure of any first Mortgage shall extinguish the lien of such assessments as to payments which became due prior to such sale or transfer . No transfer of a Lot as the result of a foreclosure, exercise of a power of sale or otherwise shall relieve the new Owner, whether it be the former beneficiary of the first encumbrance or other person, from liability for any assessments thereafter becoming due or from the lien thereof.

Where the mortgagee of the first Mortgage of record or other purchaser of a Lot obtains title to the same as a result of foreclosure of any first Mortgage, the person acquiring title, his successors and assigns, shall not be solely liable for the share of the Common Expenses or Association assessments chargeable to such Lot which became due prior to the acquisition of title to such Lot by such acquirer. Such unpaid share of common expenses or assessments shall be deemed to be Common Expenses collectible from Owners of all Residence Lots within the Properties, including such acquirer, his successors and assigns.

<u>Section 11</u>. <u>Priorities</u>. When a notice of assessment has been recorded with respect to any Lot, such assessment shall constitute a lien on each respective Lot prior and superior to all other liens recorded subsequent thereto except (a) all taxes, bonds, assessments and other which, by law, would be superior thereto, and (b) the lien or charge of any first Mortgage of record (meaning any recorded mortgage or deed of trust with first priority over other mortgages or deeds of trust) made in good faith and for value; provided, however, that such subordination shall apply only to the assessments which have become due and payable prior to the sale of the Lot pursuant to a decree of foreclosure of any such first Mortgage or deed of trust or pursuant to a power of sale in such Mortgage or deed of trust.

**CERTIFIED**

Section 12. **Unallocated Taxes.** In the event that any taxes are assessed against the Common Area, or the personal property of the Association, rather than being assessed to the Lots, such taxes shall be included in the Regular Assessments made under the provisions of Section 2 of this Article IV and, if necessary, an additional Special Assessment may be levied against the Residence Lots in an amount equal to such taxes, payable in two installments, 30 days prior to the due date of each tax installment.

Section 13. **Waiver of Exemptions.** Each Owner, to the extent permitted by law, waives, to the extent of any liens created pursuant to this Article IV, the benefit of any homestead or exemption law of California in effect at the time any assessment or installment thereof becomes delinquent or any lien is imposed.

### ARTICLE V
### OBLIGATIONS OF OWNERS

Section 1. **Persons Subject to Governing Documents.** All present and future Owners, tenants and occupants of Lots within the Properties shall be subject to, and shall comply with, each and every provision of the Governing Documents, as the same or any of them shall be amended from time to time unless a particular provision is specifically restricted in its application to one or more of such classes of persons, i.e. Owners, tenants, invitees, etc. The acceptance of a deed to any Lot, the entering into a lease, sublease or contract of sale with respect to any Lot, or the entering into occupancy of any Lot shall constitute the consent and agreement of such Owner, tenant or occupant that each and all of the provisions of this Declaration, as the same or any of them may be amended from time to time, shall be binding upon said persons and that said persons will observe and comply with the same.

Section 2. **Payment of Assessments and Compliance with Rules.** Each Owner shall pay when due each Regular, Special and Special Individual Assessment made against the Owner and his or her Lot and shall observe, comply with, and abide by any and all rules and regulations set forth in, or promulgated pursuant to, any Governing Document for the purpose of protecting the interests of all Owners or protecting the Common Area and Common Facilities.

Section 3. **Discharge of Liens.** Each Owner shall promptly discharge any assessment lien that may hereafter become a charge against his or her Lot.

Section 4. **Joint Ownership of Lots.** In the event of joint ownership of any Lot, the obligations and liabilities of the multiple Owners shall be joint and several. Without limiting the foregoing, this Section 4 shall apply to all obligations, duties and responsibilities of Owners as set forth in this Declaration, including, but not limited to, the payment of all Assessments.

Section 5. **Prohibition on Avoidance of Obligations.** No Owner, by nonuse of the Common Areas or Common Facilities, abandonment of the Owner's Lot or otherwise may avoid the burdens and obligations imposed on such Owner by this Declaration.

Section 6. **Termination of Obligations.** Upon the conveyance, sale, assignment or other transfer of a Lot to a new Owner, the transferor-Owner shall not be liable for any Assessments levied with respect to such Lot after the date of recordation of the deed evidencing said transfer and upon such

-21-

CERTIFIED

recordation evidencing said transfer all Association membership rights possessed by the transferor by virtue of the ownership of said Lot shall cease.

In the event a Lot is conveyed by a contract of sale, the rights and obligations of the transferor and transferee shall be as follows: A contract seller of any Residence Lot must delegate his or her voting rights as a Member of the Association and his or her rights to the use and enjoyment of the Common Areas and Common Facilities to the contract vendee provided possession is in the contract vendee. However, the contract seller of any Lot shall remain liable for any default in the payment of assessments by the contract vendee until title to the property sold has been transferred to the vendee.

### ARTICLE VI
### ARCHITECTURAL CONTROL

**Section 1.** **Design Committee Approval Required for all Improvements.**

(a) No Residence, swimming pool, landscaping, wall, fence, coping, barn, outbuilding, guest house, utility line (wire or conduit) other structure or improvements of any kind or character whatsoever (collectively "improvements") shall be erected, constructed, installed, placed upon, moved to altered or remodeled on any Lot, until construction plans, specifications and plot plans for the improvement, meeting the requirements of Section 8 below, have been submitted to, and approved in writing by, the Association's Design Committee. In approving any work of improvement the Design Committee shall apply the criteria set forth in Section 7 of this Article VI.

(b) Once a work of improvement has been duly approved by the Design Committee, no material modifications shall be made in the plans and specifications therefor and no subsequent alteration, relocation, addition or modification shall be made or done to any completed improvement or structure without a separate review and approval of the proposal by the Design Committee.

(c) Building improvements on any Lot shall comply with any location, height limitation or minimum size requirements that are applicable to the Lot under Article VII, Section 1 of this Declaration.

(d) Also considered as an "improvement" subject to this Article VI shall be any Excavation or Fill on any Lot and any cutting or removal of trees from any Lot.

**Section 2.** **Composition and Appointment of Committee.** The Design Committee shall be composed of three members or such greater number as designated by the Board of Directors and shall serve for one year terms and until their successors have been appointed. The members of the Design Committee must also be Members of the Association and members of the Board of Directors shall be eligible to serve. The Board shall be entitled to permit a representative of the Georgetown Divide Public Utility District, or any successor governmental agency responsible for supervision of waste disposal systems within Auburn Lake Trails, to sit on the Design Committee, ex-officio and without the right to vote, in order to supervise the design and installation of on-site waste disposal systems.

**Section 3.** **Resignation and Vacancies.** Any member or alternate member of the Design Committee may at any time resign from the Committee upon written

-22-

CERTIFIED

notice delivered to the Association Board. Vacancies on the Design Committee, however caused, shall be filled by the Association Board.

Section 4. Duties. It shall be the duty of the Design Committee to consider and act upon the proposals and plans submitted to it pursuant to this Declaration, to adopt Design Committee Rules pursuant to Section 6 hereof, to perform other duties delegated to it by the Association and to carry out all other duties imposed upon it by this Declaration.

Section 5. Meetings. The Design Committee shall meet from time to time as necessary to properly perform its duties hereunder. The vote or written consent of a majority of the Committee members shall constitute an act by the Committee unless the unanimous decision of its members is otherwise required by this Declaration or by Design Committee Rule. The Committee shall keep and maintain a written record of all actions taken by it at any Design Committee meeting or otherwise. The Design Committee and its members shall be entitled to reimbursement for reasonable out-of-pocket expenses incurred by them in the performance of any Design Committee functions. Requests for reimbursement shall be supported by adequate documentation and shall be submitted to, and approved by, the Board of Directors.

The Owner-Applicant shall be entitled to appear at any meeting of the Design Committee at which the Owner's proposal has been scheduled for review and consideration. The Owner shall be entitled to be heard on the matter and may be accompanied by his or her architect, engineer and/or contractor. Other Owners whose property may be affected by the proposed improvement (in terms of the view or solar access of their Lot, noise or other similar considerations) shall also be entitled to attend the meeting.

Reasonable notice of the time, place and proposed agenda for Design Committee meetings shall be communicated before the date of the meeting to any Owner-Applicant whose application is scheduled to be heard.

Section 6. Design Committee Rules. The Design Committee may, from time to time and with approval of the Board of Directors, adopt, amend and repeal, by unanimous vote of the Committee, rules and regulations to be known as "Design Committee Rules." Said rules shall interpret and implement the provisions hereof by setting forth the standards and procedures for Design Committee review and guidelines for architectural design, placement of any work of improvement or color schemes, exterior finishes and materials and similar features which are recommended for use within the Properties; provided, however, that said rules shall not be in derogation of the minimum standards required by this Declaration. In the event of any conflict between the Design Committee Rules and this Declaration, the provisions of the Declaration shall prevail.

Section 7. Basis for Approval of Improvements. When a proposed work of improvement is submitted to the Design Committee for review, the Committee shall grant the requested approval only if each of the following provisions is satisfied:

(a) The Committee finds that the Owner has complied with the provisions of Section 8 below;

(b) The Committee finds that the Owner's plans and specifications: (i) conform to this Declaration and to the Design Committee Rules in effect at the

-23-

CERTIFIED

time such plans are submitted to the Committee; (ii) will result in the construction of an improvement that is in harmony with the external design of other structures and/or landscaping within the Properties, and (iii) will not interfere with the reasonable enjoyment of any other Lot Owner of his or her property, including, without limitation, the other Owner's rights to scenic and solar access free of unreasonable obstructions; and

(c) The Committee, in its sole discretion, determines that proposed improvements would otherwise be consistent with the architectural and aesthetic standards prevailing within the Properties and with the purposes of this Declaration. While it is recognized that the Design Committee's determination will, of necessity, be subjective to some degree, the members of the Committee shall consider such factors as the quality of workmanship and materials proposed for the project, the harmony of its exterior design and color with that of other existing structures, and the proposed location of the improvement in relation to existing topography, finished grade elevations and other existing structures.

Section 8. Procedures for Obtaining Design Committee Approval of Plans and Specifications.

(a) Application for Preliminary Approval. In order to afford an Owner who is proposing to make substantial improvements an opportunity to obtain guidance and comment from the Design Committee prior to the expenditure of substantial sums on complete plans and specifications, any Owner may apply to the Committee for preliminary approval of the proposed project. Applications for preliminary approval shall be considered and processed as follows:

(i) Any application for preliminary approval shall be in writing and shall present sufficient detail to apprise the Design Committee of the general nature, location, dimensions and contemplated exterior colors and finishes of the proposed improvement.

(ii) Within 30 days after receipt of the application for preliminary approval, the Design Committee shall grant the preliminary approval only if the proposed improvement, to the extent that its nature and characteristics are shown by the application, would be entitled to a final approval on the basis of a full and complete application. Failure of the Design Committee to act within 30 days from the filing date shall constitute a preliminary approval. In granting or denying approval, the Design Committee may give the applicant such directions concerning the form and substance of the final application for approval as it may deem proper or desirable for the guidance of the Applicant.

(iii) Any preliminary approval granted by the Design Committee shall be effective for a period 90 days from the date of issuance. During said period, any application for final approval that presents complete plans and specifications for the proposed improvements, consistent with the provisions of the preliminary approval and otherwise acceptable under the terms of this Declaration and the Design Committee Rules, shall be approved by the Design Committee.

(iv) In no event shall any preliminary approval be deemed to constitute final approval authorizing construction of the subject improvements. The purpose of the preliminary review procedure is to give the

-24-

CERTIFIED

Owner a measure of security in proceeding with the proposed improvement project and committing funds thereto.

(b) **Application for Final Approval.** Regardless of whether an Owner elects to seek preliminary approval in accordance with subparagraph (a), all Owners who desire to undertake any work of improvement (as defined in Section 1 above) must apply to the Design Committee and receive its prior approval. The application shall be in writing and shall contain all information that is necessary to reasonably evaluate the nature, design, location and extent of the proposed improvement, including, at a minimum, one complete set of plans and specifications for the improvement project (satisfying the requirements set forth in subparagraph (c) below) and such additional information as the Committee may reasonably request, either by Design Committee Rule or while the project is under review.

(c) **Content of Plans and Specifications.** In order to be complete, the plans and specifications shall include:

(i) A professionally prepared plot plan, which indicates (A) the size of the Residence Lot, (B) Lot contour lines, (C) the location of all existing and proposed improvements, (D) setbacks from Lot lines of all existing and proposed improvements, (E) the proposed drainage plan, (F) the location of all trees and vegetation which are to be removed as part of the construction plan, (G) the location of all proposed utility installations, (H) the location of the Residence's proposed septic tank and primary leach field, and (I) a copy of the plan for the septic tank and leach field signed and approved by the Georgetown Divide Public Utility District (GDPUD) or other responsible supervising agency, if any.

(ii) A professionally prepared (prepared by an Architect or licensed building designer) set of plans showing all (A) elevations (including foundation), (B) floor plans, (C) location of all heating and/or cooling equipment, (D) decking, (E) screening devices, and (F) retaining walls.

(iii) Description of exterior materials (if not included with above plans), and samples of roofing material and exterior colors.

(iv) A complete, and professionally prepared landscape plan which includes the names, location, and sizes of all proposed trees, shrubbery, and lawn area(s) and a description of provisions for replanting trees and vegetation and for stabilizing slopes during and after construction.

(v) The Owner's proposed construction schedule.

If the contemplated work is of a nature that does not merit extensive plans and specifications, the Design Committee may (but shall not be obligated to) waive or modify any of the above plan and specification requirements upon receipt of a written request from the Applicant to do so.

(d) **Inspection Fee and Deposits.** The Design Committee may require that the submission of plans and specifications be accompanied by a reasonable fee. The Design Committee Rules may also provide for a cash deposit procedure to help ensure proper and timely completion of works of improvement in accordance with approved plans and specifications.

BOOK 3425 PAGE 310

CERTIFIED

(e) <u>Delivery of Plans and Specifications</u>. Plans and specifications shall be submitted to the Design Committee by personal delivery or first-class mail to the Secretary of the Association or the Chairman of the Design Committee.

(f) <u>Time Limits for Approval or Rejection</u>. Within 30 days after submission of plans and specifications satisfying the requirements of subparagraph (c) above, the Design Committee shall return one set of such plans to the Applicant, with either written notice of approval or disapproval or with written suggestions of changes required for approval accompany the returned set of plans, the Applicant may implement such changes to the plans and within 45 days resubmit plans incorporating such changes for approval to the Committee, which approval it shall not unreasonably withhold so long as the Owner has complied in all material respects with the requested changes. If no written notice of approval or disapproval is received by the Applicant within 45 days after the plans (or revisions thereto) are submitted to the Committee, the plans shall be deemed to have been approved.

(g) <u>Employment of Architect or Engineer</u>. If at any time the Design Committee determines that it would be in the best interests of Auburn Lake Trails for an Applicant to employ an architect, licensed building designer or engineer to design or review any proposed improvement or component thereof, the Committee shall advise the Applicant in writing of its determination whereupon all plans and specifications so designated by the Design Committee must thereafter bear appropriate evidence of such preparation or review.

<u>Section 9</u>. <u>Proceeding With Work</u>. Upon receipt of approval from the Design Committee pursuant to Section 8 above, the Owner shall, as soon as practicable, satisfy all conditions thereof and diligently proceed with the commencement of construction and excavation pursuant to said approval, said commencement to be, in all cases, within one year from the date of such approval. If the Owner shall fail to comply with this paragraph, any approval given pursuant to Section 8 above, shall be deemed revoked unless the Design Committee, upon written request of the Owner made prior to the expiration of the initial one year period, extends the time for commencement or completion. No such extension shall be granted except upon a finding by the Design Committee that there has been no change in the circumstances upon which the original approval was granted and that the Owner has a bona fide intention and ability to complete the project within the time of the requested extension.

<u>Section 10</u>. <u>Failure to Complete Work</u>. Unless the Owner has been granted an extension of time to complete the project by the Design Committee, construction, reconstruction, refinishing or alteration of any such improvement must be completed within one year after construction has commenced, except and for so long as such completion is rendered impossible or would result in great hardship to the Owner because of strikes, fires, national emergencies, natural calamities or other supervening forces beyond the control of the Owner or his agents. In the case of building improvements the requirements of this Section shall be deemed to have been met if, within the six month construction period, the Owner has completed construction of the building's foundation and all exterior surfaces (including the roof, exterior walls, windows and doors).

If the Owner fails to comply with this Section 10, the Design Committee shall notify the Board of such failure, and the Board shall proceed in accordance with the provisions of Section 11(c) and (d) below as though the failure to complete the improvement was a noncompliance with approved plans.

-26-

CERTIFIED

Section 11. Inspection of Work by Design Committee. Inspection of the work relating to any approved improvement and correction of defects therein shall proceed as follows:

(a) During the course of construction representatives of the Design Committee shall have the right to inspect the job site to confirm that the work of improvement is proceeding in accordance with the approved plans and specifications.

(b) Upon the completion of any work for which Design Committee approval is required under this Article, the Owner shall give the Design Committee a written notice of completion.

(c) Within 30 days thereafter, the Design Committee, or its duly authorized representative, may inspect the improvement to determine whether it was constructed, reconstructed, altered or refinished in substantial compliance with the approved plans. If the Design Committee finds that the improvement was not done in substantial compliance with the approved plans, then within the 30 day inspection period the Committee shall give the Owner a written notice of noncompliance detailing those aspects of the project that must be modified, completed or corrected.

(d) If the Owner fails to remedy any noncompliance of which notice has been given within 30 days from the date of such notification, the Design Committee shall notify the Board in writing of such failure. The Board shall then set a date on which a hearing before the Board shall be held regarding the alleged noncompliance. The hearing date shall be not more than 30 days nor less than 15 days after the notice of the noncompliance is given by the Board to the Owner, to the Design Committee and, in the discretion of the Board, to any other interested party.

(e) At the hearing, the Owner, a representative(s) of the Design Committee and, in the Board's discretion, any other interested person may present information relevant to the question of the alleged noncompliance. After considering all such information, the Board shall determine whether there is a noncompliance and, if so, the nature thereof and the estimated cost of correcting or removing the same. If a noncompliance exists, the Board shall require the Owner to remedy or remove the same within such period or within any extension of such period as the Board, at its discretion, may grant. If the Owner fails to take corrective action after having a reasonable opportunity to do so, the Board, at its option, may either remove the noncomplying improvement or remedy the noncompliance and the Owner shall reimburse the Association for all expenses incurred in connection therewith upon demand. If such expenses are not properly repaid by the Owner to the Association, the Board shall recover such expenses through the levy of a Special Individual Assessment against such Owner.

(f) If for any reason the Design Committee fails to notify the Owner of any noncompliance within 30 days after receipt of the Owner's notice of completion, the improvement shall be deemed to have been constructed in accordance with the approved plans.

Section 12. Landscaping. As specified in Section 1 of this Article VI, landscaping shall be deemed to be a work of improvement requiring Design Committee approval hereunder. All approved landscaping must be completed

-27-

EL DORADO COUNTY

CERTIFIED

within 60 days after a notice of occupancy has been filed with the County for the Owner's Residence and, in the event that the landscaping has not been completed by the occupancy date, the Design Committee may, in its discretion, require an Owner-Applicant to post a bond in an amount not to exceed the estimated cost of the landscaping work, or a cash deposit not to exceed $500 in lieu thereof, to ensure the Applicant's timely completion of the landscaping work. Rather than requiring a separate landscaping deposit the Committee may elect to rely on a single cash deposit covering all aspects of the project (see Section 8(d) above).

Section 13. Non-Waiver. The approval by the Design Committee of any plans, drawings or specifications for any work done or proposed, or for any other matter requiring the approval of the Design Committee under this Declaration, or any waiver thereof, shall not be deemed to constitute a waiver of any right to withhold approval of any similar plan, drawing, specification or matter subsequently submitted for approval by the same or some other Owner.

Section 14. Variances. The Design Committee, in its sole discretion, shall be entitled to allow reasonable variances in any procedures specified in this Article VI or in any restrictions specified in Article VII to overcome practical difficulties, avoid unnecessary expense or prevent unnecessary hardships, provided all of the following conditions are met:

(a) If the requested variance will necessitate deviation from, or modification of, a property use restriction that would otherwise be applicable under this Declaration, the Design Committee must conduct a public hearing on the proposed variance after giving prior written notice to the Board and to all Owners residing within a half mile of the subject Lot. Said notice shall also be posted in the Association office on the Properties. The notice shall be posted and mailed to the necessary Owners at least 10 days prior to the date when the Design Committee is scheduled to act on the requested variance.

(b) The Design Committee must make a good faith written determination that: (i) the requested variance does not constitute a material deviation from any restriction contained herein or that the proposal allows the objectives of the violated requirement(s) to be substantially achieved despite noncompliance; or (ii) that the variance relates to a requirement hereunder that is unnecessary or burdensome under the circumstances; or (iii) that the variance, if granted, will not result in a material detriment, or create an unreasonable nuisance, with respect to any other Lot, Common Area or Owner within the Properties.

Section 15. Estoppel Certificate. Within 30 days after written demand is delivered to the Design Committee by any Owner, and upon payment to the Association of a reasonable fee (as established from time to time by the Board), the Design Committee shall record an estoppel certificate, executed by any two of its members, certifying (with respect to any Lot owned by the applicant Owner) that as of the date thereof, either: (a) all improvements made and other work completed by said Owner comply with this Declaration, or (b) such improvements or work do not so comply, in which event the certificate shall also identify the noncomplying improvements or work and set forth with particularity the basis of such noncompliance. Any purchaser from the Owner, or from anyone deriving any interest in said Lot through the Owner, shall be entitled to rely on said certificate with respect to the matters therein set forth, such matters being conclusive as between the Association, Declarant, all Owners and any persons deriving any interest through them.

-28-

CERTIFIED

<u>Section 16</u>.  <u>Liability</u>.  Neither the Design Committee nor any member thereof shall be liable to the Association or to any Owner for any damage, loss or prejudice suffered or claimed on account of: (a) the approval or disapproval of any plans, drawings and specifications, whether or not defective; (b) the construction or performance of any work, whether or not pursuant to approved plans, drawings and specifications; (c) the development of any Lot within the Properties; or (d) the execution and filing of an estoppel certificate pursuant to Section 15, above, whether or not the facts therein are correct; provided, however, that such member has acted in good faith on the basis of such information as may be possessed by him.

<u>Section 17</u>.  <u>Governmental Regulations</u>.  Review and approval by the Design Committee of any proposals, plans or other submittals shall in no way be deemed to constitute satisfaction of, or compliance with, any building permit process or any other governmental requirements, the responsibility for which shall lie solely with the respective Lot Owner.

<u>Section 18</u>.  <u>Appeals</u>.  Appeals from decisions of the Design Committee may be made to the Board of Directors, which may elect, in its discretion, to hear the appeal or, in the alternative, to affirm the decision of the Design Committee.  The Association Rules shall contain procedures to process appeals pursuant to this Section 18.

### ARTICLE VII
### RESTRICTIONS APPLICABLE TO
### CONSTRUCTION AND ALTERATION OF IMPROVEMENTS

<u>Section 1</u>.  <u>Lot Improvements</u>.  The following general restrictions are applicable to the construction of improvements on any Lot within Auburn Lake Trails:

(a) <u>One Residence Per Residence Lot</u>.  No Owner shall construct more than one Residence on any Residence Lot (together with a private garage and other outbuildings that are incidental to the primary residential use of the Lot). No Residences or other buildings containing plumbing or waste disposal facilities shall be constructed on any Restricted Lot.

The restrictions contained in this Section 1(a) with respect to construction of improvements on Residence Lots are intended to exclude every form of multi-family dwelling, board or lodging house, sanitarium, hospital and the like, but is not intended to exclude:

(i) the construction and maintenance of barns, corrals and similar horse care facilities so long as horses are otherwise permitted on such Lot and the Owner has completed construction of the Lot's Residence or the Design Committee otherwise permits; or

(ii) temporary construction shelters or facilities maintained during, and used exclusively in connection with, construction of the main Residence.

(b) <u>Minimum Size of Residences</u>.  Every Residence structure constructed on a Residence Lot shall contain a minimum of 1200 square feet of fully enclosed floor area devoted to living purposes (exclusive of roofed or unroofed porches, terraces, decks, garages, carports and other outbuildings).

-29-

CERTIFIED

(c) <u>Height of Structure</u>. No Residence or other structure or improvement on any Residence Lot shall be constructed, having a height of more than one story; provided, however, that a two story structure may be built if such a height is permissible by law and the Design Committee determines that the proposed height is compatible with the physical site involved and will not unreasonably impair the view or solar access of Residences constructed on neighboring Residence Lots.

(d) <u>Parking</u>. Each Residence Lot shall have off the Road garage or carport facilities for at least two automobiles and appropriate off-street parking for guests unless a variance is granted by the Design Committee.

(e) <u>Exterior Items</u>. All above-ground trash, rubbish, and garage receptacles, exterior incinerators, clotheslines, and other outside drying or airing facilities, storage areas, and lot-maintenance equipment storage areas shall be screened in such manner or placed in such location as not to be visible from neighboring Lots and Common Areas.

(f) <u>Fuel Tanks</u>. On all Residence Lots, fuel tanks common to household use must be installed in conformance with all applicable Design Committee and applicable governmental requirements. No other fuel tanks will be installed or maintained on any Lot.

(g) <u>Exterior Finishes</u>. No reflective finishes (other than glass) shall be used on exterior surfaces of any improvement (other than surfaces of hardware fixtures).

(h) <u>Antennas</u>. No exterior antenna of any sort other than conventional television antennas shall be installed or maintained on any Lot without the approval of the Design Committee, provided, however, that this restriction shall not apply to any cable television facilities constructed or installed by or pursuant to the authority of the Association. The Design Committee shall adopt guidelines regarding the type, height and size of antennas that are likely to receive approval from the Committee. The height of antennas shall in all events be subject to Design Committee approval.

(i) <u>Plumbing and Toilet Facilities</u>. No outside toilet shall be constructed on any Lot. All plumbing fixtures, dishwashers, toilets or sewage disposal systems shall be connected to a septic tank or other sewage system constructed by the Owner and approved by the responsible government agencies. No plumbing or toilet facilities shall be constructed, installed or maintained on any Restricted Lot.

(j) <u>Design of Septic Systems</u>. No septic tank system or other sewer facility designed to serve a Residence Lot shall be constructed on any Lot unless: (i) it has been designed and certified by a Registered Civil Engineer and approved by the Georgetown Divide Public Utility District (or other responsible supervising agency, if any) as being adequate to serve said Lot; (ii) it has been approved by the Health Department of the County of El Dorado; and (iii) its design and location have been approved of by the Design Committee.

(k) <u>Water Wells</u>. No individual water well shall be constructed or maintained on any Lot unless at the time of recordation of the Subdivision Map

-30-

CERTIFIED

covering said Lot a declaration is recorded excepting said Lot from this restriction.

(l) <u>Occupancy of New Residences</u>. No Residence shall be occupied until the same has been substantially completed in accordance with its plans and specifications and the front yard landscaping has either been completed or bonded in accordance with Article VI, Section 12 hereof.

(m) <u>Use of New Materials</u>. All structures constructed on any Lot shall be constructed with a substantial quantity of new material. No used structures shall be relocated or placed on any such Lot.

(n) <u>No Model Homes</u>. No Owner of any Residence Lot shall build or permit the building thereon of any structure that is to be used as a model home or exhibit.

(o) <u>No Mobile Homes or Trailers</u>. No house trailer, mobile home, truck camper, recreational vehicle, boat, tent, or any similar living facility shall be used as living quarters on any Lot.

(p) <u>Fences</u>. All fences on any Lot shall be in accordance with standards prescribed by the Design Committee.

(q) <u>No Further Subdivision</u>. Except as otherwise specifically provided in the Settlement Agreement referenced in Recital F of the First Restated Declaration, no Lot shall be resubdivided.

(r) <u>Building Location</u>. No building shall be located nearer to the front, side, or rear boundary line of any Lot than as permitted by applicable zoning ordinance or other governmental restriction. A detached garage structure or barn may be located as near to any interior Lot line as the existing zoning ordinances will permit. In accordance with the authority conferred in Article VI hereof, the Design Committee shall be entitled to consider preservation of the views and solar access of adjoining Residence Lots in approving the design and location of buildings on any Lot.

(s) <u>Licensed Contractor</u>. All Residences shall be constructed by a contractor licensed under the laws of the State of California. This restriction is not intended to preclude Owners from serving as owner-builders so long as the actual work is inspected and approved by all government agencies with jurisdiction over such matters.

(t) <u>Utilities</u>. The Design Committee is empowered to require the electrical service lines servicing any Lot to be installed underground in order to promote an attractive appearance and preserve views within the Properties. This restriction shall not apply to any service lines that have already been installed above ground as of the recordation date of this Declaration.

(u) <u>Street Encroachments</u>. To protect Roads within the Properties from unnecessary deterioration, the Design Committee may adopt rules regarding the design and installation of street encroachments at the point where an Owner's driveway enters the common Road system.

<u>Section 2</u>. <u>Common Area Improvements</u>. The following general restrictions are applicable to the construction of improvements within the Common Areas:

-31-

CERTIFIED

(a) <u>Right To Construct Improvements. In General</u>. With the exception of the Association or an Owner (by right of easement for septic tank, leach line, or other sewer facilities granted pursuant to Article IX, Section 4 hereof) or a public utility or governmental agency (by right of an easement granted by the Association), no persons shall have the right to construct any improvement upon, or make or create any excavation or fill upon, or change the natural or existing drainage of, or destroy or remove any tree, shrub or other vegetation from, or plant any tree, shrub on other vegetation upon any Common Area.

(b) <u>Construction of New Improvements or Material Alteration of Existing Improvements</u>. If the Association Board of Directors desires to construct any new building or recreational improvement or to materially alter the exterior appearance of any existing improvement within the Common Area, any such project must be reviewed by the Design Committee in accordance with Article VI hereof. Such improvement shall be approved only if it is determined to be consistent with the overall plan and scheme of development within the Properties and to be to the advantage and in the best interest of Auburn Lake Trails and its Owners.

(c) <u>Other Improvements</u>. Without approval of the Design Committee, the Board of Directors may:

(i) Construct, reconstruct, replace or refinish any Common Facility or any portion thereof substantially in accordance with the plans for such Common Facility as it existed within the Common Area when it was conveyed to the Association by the Declarant or when it was subsequently constructed by the Association. An improvement project involving any Common Facility shall be deemed to be in substantial conformity with the original plans for the subject facility if the only material alterations thereto are those alterations that are required to bring the building into compliance with the then current governmental requirements for building improvements in El Dorado County.

(ii) Construct, reconstruct, replace, refinish any Road improvement or surface upon any portion of Common Area designated on any "Subdivision Map as a road or parking area.

(iii) Replace destroyed trees or other vegetation and, to the extent the Association deems necessary, plant trees, shrubs and ground cover upon any portion of Common Area.

(iv) Place and maintain upon the Common Area and Common Facilities such signs as the Association may deem necessary for the identification of the development and of roads, the regulation of traffic, including parking, the regulation and use of Common Area and Common Facilities and for the health, welfare and safety of Owners, tenants and guests Any such signs to be placed within the street area shall be subject to County approval.

(v) Take whatever measures may, in the discretion of the Association's Board, be necessary or appropriate to prevent or retard the shifting or sliding of earth.

(d) <u>Septic Improvements In Common Area</u>. Prior to construction and installation of any septic tank, leach line or other sewer facility pursuant to an easement granted to an Owner pursuant to Article IX, Section 4 of this

-32-

CERTIFIED

Declaration, the Owner must receive the prior approval of the Design Committee as to design and location of the improvement. All necessary governmental approvals shall also be obtained and written evidence thereof shall be furnished to the Design Committee.

### ARTICLE VIII
### PROPERTY USE RESTRICTIONS

In addition to restrictions established by law and by regulations which may from time to time be promulgated hereunder by the Board of Directors, the following restrictions are hereby imposed upon the use of Lots and parcels located with Auburn Lake Trails:

Section 1. Use of Residence Lots.

(a) The use of Residence Lots within the Properties is hereby restricted to Single Family Residential Use, as defined in Article I, Section 31 of this Declaration. In no event shall a Residence be occupied by more individuals than permitted by applicable law, zoning, or regulation.

(b) Each Lot shall be conveyed as a separately designated and legally described fee simple estate subject to this Declaration. All Lots and the Residences and other improvements placed thereon (including without limitation, landscaping) shall at all times be maintained in such a manner as to prevent their becoming unsightly.

(c) The vegetation on any Residence Lot shall be planted and/or maintained by the Owner in such a manner as to prevent or retard shifting or erosion, encourage the growth of indigenous ground cover and reduce the risk of fire hazard.

(d) No camping, whether temporary or permanent, shall be permitted on any Residence Lot.

Section 2. Use of Restricted Lots.

(a) Prohibition of Residential Structures. No structure or improvement designed for human habitation or requiring effluent disposal facilities shall be constructed or maintained on any Restricted Lot.

(b) Restriction on Association Membership Rights. No Association membership voting rights or rights to use and enjoy any recreational Common Facilities shall arise out of, or be appurtenant to, the ownership of any Restricted Lot; provided, however, that Restricted Lots shall be subject to Special Individual Assessments to the extent provided in Article IV, Section 4(a) hereof.

(c) Barns, Corrals and Similar Improvements. Barns, corrals and similar improvements for the maintenance of horses may be constructed on Restricted Lots that are at least one acre in size.

(d) Other Restrictions Incorporated By Reference. Subparagraphs (b) through (d), inclusive, of Section 1 of this Article VIII shall apply to Restricted Lots to the same extent as Residence Lots, except that the

-33-

CERTIFIED

references to "Residences" in said subparagraphs shall not apply in this context.

(e) <u>Amendment or Modification of These Restrictions</u>.  The restrictions contained in this Section 2 may only be amended by the written consent of 75% the voting power of the Members of the Association.

<u>Section 3</u>.  <u>Use of Common Areas and Common Facilities</u>.  The use of Common Areas and Common Facilities shall be preserved as open space and used for recreational purposes and other purposes incidental and ancillary to the use of Lots.  Such use shall be limited to the private use for the aesthetic enjoyment of the Owners and their tenants, families and guests subject to the regulations contained in this Declaration and the other Governing Documents. No improvement, excavation or work which in any way alters any Common Area from its natural or existing state on the date such Common Area was conveyed to the Properties shall be made or done except in strict compliance with the requirements of Article VII, Section 2 hereof.

<u>Section 4</u>.  <u>Prohibition of Noxious Activities</u>.  No illegal, noxious or offensive trade or activity shall be conducted upon any Lot, Restricted Lot or Common Area nor shall anything be done thereon which may be or become an annoyance or nuisance to neighboring Owners.  Without limiting any of the foregoing, no Owner shall permit noise, including, but not limited to the barking of dogs, the operation of air conditioners, stereo amplifier systems, television systems, motor vehicles or power tools, to emanate from the Owner's Lot, or from within any portion of the Common Area, which would unreasonably disturb the quiet enjoyment of other Owners and residents.

Excessive noise levels may be determined in the discretion of the management which may, but shall not be obligated to, rely on the standards established by County ordinance or other applicable governmental regulation dealing with such matters.

The Board may, in its sole discretion, prohibit maintenance within the Properties of any animal that constitutes a nuisance to any other Owner(s) (whether due to its size, viciousness, unreasonable noise or otherwise).

<u>Section 5</u>.  <u>Trees</u>.  No existing trees shall be destroyed, uprooted, cut down or removed from any Lot until the destruction, uprooting, cutting down or removal has been approved by the Design Committee.  Owners shall refrain from planting new trees in locations that are likely to unreasonably obstruct the solar access of residential structures located on adjoining Residence Lots.

<u>Section 6</u>.  <u>Rebuilding</u>.  Should any Residence erected on any Residence Lot or any portion of any Residence Lot be destroyed by fire or otherwise, any structure erected to replace the destroyed structure shall be subject to full Design Committee review in accordance with Article VI hereof.  The destroyed portion of any Residence or other building shall be removed promptly, and in any event within 6 months from the date of destruction, so as to avoid the maintenance of an unsightly nuisance or safety hazard within the Properties. Rebuilding shall proceed as expeditiously as reasonably possible.

<u>Section 7</u>.  <u>Signs</u>.  No sign of any nature is to be placed on any Lots for advertising purposes, or for any other purpose other than a sign of reasonable dimensions and design advertising (a) that the property is for sale, lease or

-34-

CERTIFIED

exchange, (b) the owner's or agent's name, and (c) the owner's or agent's address and telephone number.

**Section 8. Storage of Equipment.** All equipment, trash cans, clothes drying facilities, and storage items shall be kept screened and concealed from the view of neighboring Lots, the Common Area and streets within the Properties.

**Section 9. Garbage.** All garbage, rubbish and trash shall be kept entirely within appropriate covered containers. All rubbish, trash or garbage shall be regularly removed from each Lot and shall not be allowed to accumulate thereon or on the Common Area. The Association shall be entitled to impose reasonable fines and penalties for the collection of garbage and refuse that is disposed in any manner inconsistent with this Section.

**Section 10. Activities Affecting Insurance.** Nothing shall be done or kept on any Lot or Restricted Lot on or in the Common Areas which will (a) increase the rate of insurance on any other Lot or Residence or on the Common Area or Common Facilities, or (b) cause any improvements to be uninsurable against loss by fire or the perils covered by the extended coverage endorsement to the California standard fire policy form, or (c) cause any policy or policies representing such insurance to be cancelled or suspended or the insurer issuing the same to refuse renewal thereof.

**Section 11. Drilling and Mining Operations.** No oil or natural gas drilling, refining, quarrying or mining operation of any kind shall be permitted upon any Lot or Restricted Lot and no derrick, structure or equipment designed for use in drilling for oil or natural gas shall be erected, maintained or permitted on any Lot or Restricted Lot.

**Section 12. Household Pets and Horses.** The following restrictions shall apply to the ownership and maintenance of animals and pets within Auburn Lake Trails:

(a) Only a reasonable number of common household pets may be kept on each Lot so long as the same are not kept, bred or maintained for commercial purposes. Horses may be maintained on Lots one acre in size or larger, but only in strict compliance with any Association Rule limiting the number of horses per acre or requiring certain improvements and facilities. No other animals, livestock, or poultry of any kind shall be kept, bred, or raised on any Lot.

(b) Dogs shall only be allowed on the Common Areas when they are leashed and/or otherwise under the Owner's supervision and control. Proper facilities for the care, shelter, and feeding of any pets permitted hereunder shall be provided by the Owner thereof so as to avoid any annoyance or nuisance to the neighborhood and under no circumstances shall any household pet be left chained or otherwise tethered in front of a Residence or in the Common Area.

(c) The Board of Directors shall have the right to establish and enforce additional regulations for the reasonable control and keeping of pets within Auburn Lake Trails, to ensure that the same do not interfere with the quiet and peaceful enjoyment of other Owners. The Association Rules may also establish guidelines or regulations defining, in a uniform and nondiscriminating manner what constitutes a "reasonable number" of pets

-35-



depending on such factors as: the type of animal, its size, disposition, and maintenance needs.

(d) Each person bringing or keeping a pet within Auburn Lake Trails shall be solely responsible for the conduct of such pet and the Association, its Board, officers, employees, and agents shall have no liability (whether by virtue of this Declaration or otherwise) to any Owners, their family members, guests, invitees, tenants, or contract purchasers for any damage to persons or property caused by any such pet.

Section 13.  Vehicles and Trailers.  The following restrictions shall apply to the storage and parking of vehicles and trailers within Auburn Lake Trails:

(a) Pick-up trucks with a "gross vehicle weight rating" under 12,000 pounds shall be considered the same as automobiles.

(b) No trucks over 12,000 pounds, commercial carriers (including, but not limited to, flat beds, bobtails, truck tractors), or similar vehicles shall be parked or stored on any Lot except for temporary parking for purposes of loading or unloading passengers or materials except as appropriately screened as provided in subparagraph (d) below.

(c) No stripped down, inoperative, wrecked, or junk motor vehicle shall be kept, parked, stored, or maintained on any Lot; provided, however, that a vehicle may be stored, maintained, or repaired within a garage.

(d) No vehicle bearing commercial insignia or names shall be parked on any Lot unless it is garaged or screened so that the insignia may not be seen from any neighboring Lot or Common Area unless such vehicle is temporarily parked for the purpose of serving the residents of such Lot.

(e) The parking of vehicles on Roads within Auburn Lake Trails shall at all times be subject to the Association Rules.

(f) No house trailer, horse trailer, boat trailer, or other trailer, no motor home, camper, camper shell, fifth wheeler, boat, aircraft, or other recreational vehicle shall be parked, stored or kept upon any Lot unless it is garaged or screened so that it may not noticeably be seen from any neighboring Lot or Common Area.  All screening shall be subject to Design Committee approval.  Nothing herein contained shall give any authority to use any vehicle of whatever kind as a residence at any time.

Section 14.  Business Activities.  No business activities of any kind whatsoever shall be conducted within any Residence or in any portion of any Lot or Restricted Lot without the prior written consent of the Board; provided, however, the foregoing covenants shall not apply to the activities, signs or the maintenance of buildings, by the Association, its successors and assigns, in furtherance of its powers and purposes as set forth herein.

Notwithstanding the foregoing, no restrictions contained in this Section 14 shall be constructed in such manner as to prohibit any Owner from engaging in the following activities from or within his Residence: (a) maintaining his or her personal library therein; (b) keeping his or her personal business records or accounts therein; (c) handling his or her personal or professional telephone calls or correspondence therefrom; or (d)

-36-

BOOK3425 PAGE321

CERTIFIED

conducting any other activities on the Owner's Lot otherwise compatible with residential use and the provisions of this Declaration which either are permitted under applicable zoning laws or governmental regulations without the necessity of first obtaining a special use permit or similar specific governmental authorization or approved by the Board. Such uses are expressly declared to be customary and incidental to the principal residential use of a Residence Lot and are therefore not in violation of any provision of this Article VIII.

Section 15. No Alterations or Antennas. In order to insure adequate aesthetic controls and to maintain the general attractive appearance of the Properties, no Owner, resident or lessee shall, at his expense or otherwise, construct fences, walls, or make any alterations, additions or modifications to or on any part or portion of the Common Areas or exterior surfaces of residential structures, or place or maintain any objects, such as masts, towers, poles, or television and radio antennas, on or about the exterior of any building within the Properties except as authorized by the Design Committee in accordance with Article VI hereof.

Section 16. Barbecues and Open Fires. All open fires shall be managed in accordance with the Association Rules and all applicable local regulations and ordinances. Prior to starting any open fire the Owner shall notify the Association security personnel. Barbecue fires shall be contained within receptacles designed for such purpose.

Section 17. Machinery and Equipment. No machinery or equipment of any kind shall be placed, operated or maintained upon or adjacent to any Lot unless it is garaged or screened so that it may not noticeably be seen from any neighboring Lot or Common Area. Machinery or equipment that is usual or customary in connection with the maintenance or construction of a private Residence or appurtenant structures within Auburn Lake Trails may be kept upon or adjacent to a Lot only during such construction or maintenance.

Section 18. Diseases and Insects. No Owner shall permit any thing or condition to exist upon his or her Lot which shall induce, breed, or harbor infectious plant diseases or noxious insects.

Section 19. Supervision of Children. Each Owner and tenant residing within Auburn Lake Trails shall be accountable to the remaining Owners, their families, visitors, guests and invitees, for the conduct and behavior of their children and that of any children temporarily residing in or visiting the Owner's Residence and for any property damage caused by such children.

Section 20. Restriction on Further Subdivision and Severability. Except as otherwise provided in the Settlement Agreement referenced in Recital F of the First Restated Declaration, no Lot shall be further subdivided nor shall less than all of any such Lot be conveyed by an Owner thereof and no Owner of a Lot within the Properties shall be entitled to sever that Lot from the Common Area portion of Auburn Lake Trails. No easement or other similar interest in a Lot shall be given to any person without the prior written approval of the Design Committee.

Section 21. Exterior Fluorescent and Security Lights. Fluorescent, mercury vapor, sodium, or amber vapor lights, or standard outdoor lights of the type used for security must be enclosed in a manner that directs the light in a specific area without causing a visual impairment to passing motorists or

-37-

CERTIFIED


a nuisance to neighboring properties. The issue of whether a nuisance exists shall be determined by the Design Committee in its sole discretion.

Section 22.  Use of Private Roads in Common Area.

(a)  All operators of motor vehicles, including motorcycles, within the Auburn Lake Trails subdivision must possess a valid California driver's license.

(b)  All provisions of the California Vehicle Code must be honored at all times when operating any motor vehicle within Auburn Lake Trails.

(c)  Although all Roads within Auburn Lake Trails are subject to the California Vehicle Code, the Association shall have the right to adopt reasonable rules regarding the control and use of the Roads, vehicles operated thereon and the speed of such vehicles, the further authorized to delegate the discharge of its rights hereunder to a municipality or other governmental entity or to contract with a private security patrol company for such purposes so long as the private character of the Roads is not jeopardized by such action.  No motorized vehicles of any sort shall be operated or allowed on the equestrian trails within Auburn Lake Trails.

Section 23.  Vehicles on Equestrian Trails.  No vehicles of any sort (including, without limitation, bicycles, motorcycles, or motor bikes) shall be operated or allowed on the equestrian trails within Auburn Lake Trails, except for those Vehicles necessary to perform maintenance work.

Section 24.  Variances.  Upon application by any Owner, the Board of Directors shall be authorized and empowered to grant reasonable variances from the property use restrictions set forth in this Article VIII, if specific application of the restriction will either cause an undue hardship to the affected Owner or fail to further or preserve the common plan and scheme of development contemplated by this Declaration.  In considering the acting upon any request for a variance, the Board shall follow the procedures set forth in Article VI, Section 14 for the granting of architectural variances by the Design Committee.

**ARTICLE IX**
**EASEMENTS**

Section 1.  Utility Easements.  The Association shall have the power to grant and convey easements and rights-of-way in, on, over or under the streets and Common Areas to any third party for the purpose of constructing, erecting, operating or maintaining lines, cables, wires, conduits, or other devices for electricity, cable, television, power, telephone and other purposes, public sewers, storm water drains and pipes, water systems, sprinkling systems, water, heating and gas lines or pipes, and any similar public or quasi-public improvements or facilities, subject to prior written approval thereof by the County of El Dorado, and each Owner, in accepting a deed to a Lot, expressly consents to such easements and rights-of-way and authorizes and appoints the Association as attorney-in-fact of such Owner to execute any and all instruments conveying or creating such easements or rights-of-way.

-38-

CERTIFIED

## Section 2.  Road Easements.

(a) **Member Road Easement.**  Each Owner (including family members who reside with the Owner within Auburn Lake Trails) and the Association shall have and is hereby granted a non-exclusive easement for street, roadway and vehicular traffic purposes over and along the Roads within the Properties, subject to termination of such easement and the rights and restrictions set forth in this Declaration.  The non-exclusive easement granted hereby to each Owner and to the Association is subject to the offer of dedication of such streets made upon the Subdivision Maps and upon complete or partial acceptance of such offer by the County of El Dorado, said easement shall terminate and be of no further force or effect as to those streets or portions thereof accepted by the County of El Dorado.  Any such dedication shall require membership approval in accordance with Article II, Section 3(g).

(b) **Road Easements Granted To Other Persons.**  As a condition to the approval of the Subdivision Map of Auburn Lake Trails Units 1 and 2, the County of El Dorado required that Declarant grant, a perpetual non-exclusive easement and right of way over all of the Roads located within Auburn Lake Trails to the owners of the real property situated in El Dorado County, record title of which was vested as of March 17, 1970 in the following named persons: Dimler, Ziegelman, Ingraham, Sorraco, Bachert, Nixon, Lawrence and Shields, all of which real property is situated in Sections 3, 4 and 8, Township 12N Range 9E of El Dorado County, California.  Said easement and right-of-way is appurtenant to said real property for the purpose of ingress and egress to said appurtenant property and for the purpose of providing a means of access for utility purposes to said appurtenant property.  Said grant of easement is made on page 1 of the Subdivision Map.

Section 3.  **Maintenance Easements.**  An easement is hereby granted to the Association, its officers, agents, and employees, to enter in or to cross over the Common Area and any Lot or perform the duties of maintenance and repair of the Common Areas as provided for herein.

Section 4.  **Easements for Septic Facilities.**  The Association shall have the rights described in Article II, Section 3(i) hereof to grant easements affecting Common Area property for the location, construction, maintenance and repair of septic tanks, leach fields, leach lines and or other sewage facilities (collectively "septic facilities") to service the Residence Lot of any Owner or Owners if each of the following conditions is satisfied and evidence of such satisfaction is evidenced by Board resolution set forth in the minutes of the Association:

(a) The Design Committee and the Georgetown Divide Public Utility District make a determination, based on the report of a qualified engineer, that the Owner's Residence Lot is not capable of sustaining its own septic facilities and that there are appropriate Common Area properties in reasonable proximity to the Owner's Residence Lot that have been tested and approved by all responsible government agencies for septic facility use.  The determination of the Design Committee hereunder must be approved by the Board of Directors;

(b) The maintenance, repair and replacement obligation with respect to any such septic facility will rest solely with the Owner-users and the Georgetown Divide Public Utility District or other responsible agency; and the obligation to monitor the use and performance of any such septic facility

-39-



shall have been expressly assumed by Georgetown Divide Public Utility District or other responsible agency;

(c) The proposed septic facility design, location, replacement area and installation satisfy all governmental health, environmental and safety requirements, and evidence of such compliance, in a form acceptable to the Board, has been provided by the Owner;

(d) The Board prepares, or causes to be prepared, appropriate easement documents for execution by the Association and the user-Owners, which documents shall contain specific provisions that indemnify and hold the Association and its members, officers, and directors harmless from any claims, demands or liabilities arising out of or relating to the use, maintenance, repair and replacement of any such septic facility. The easement documents shall also clearly express the lack of responsibility and liability of the Association for any subsequent maintenance, repair, monitoring or replacement of any septic facility located on Common Areas, although the easements shall provide for enforcement authority (in the event of a septic tank failure or improper repair or maintenance) in the Association, Georgetown Divide Public Utility District or other responsible agency and any other Owner with appropriate provisions for recovering any costs and attorneys fees from any defaulting Owner, coupled with lien rights against the Owner's property to aid in the recovery of such expenses, costs and fees; and

(e) Use of Common Area for septic facility purposes shall not disturb or unduly restrict any existing use of the surface area and in no event shall the Association be obligated to consent to use any portion of the Common Areas presently dedicated to the golf course, recreational lakes and surrounding recreational amenities, camping areas or any other area that has an existing building improvement for septic facility purposes.

Section 5. Other Easements. Each Lot and its Owner, and the Common Area and the Association, as the case may be, is hereby declared to be subject to all the easements, dedications and rights-of-way granted or reserved in, on, over and under portions of the properties located within Auburn Lake Trails and each Lot shown on the subdivision map for Auburn Lake Trails.

Section 6. Priority of Easements. Whatever easements granted to the County of El Dorado are, in whole or in part, conterminous with any other easements, the easements of the County shall have and are hereby granted priority over said other easements in all respects.

## ARTICLE X
## INSURANCE

Section 1. Type of Insurance Coverage. The Association shall purchase, obtain and maintain, with the premiums therefor being paid out of Common Funds, the following types of insurance, if and to the extent the same are available:

(a) Casualty Insurance. A policy of fire and casualty insurance naming as parties insured the Association and any Mortgagee of the Common Area, and containing the standard extended coverage and replacement cost endorsements and such other or special endorsements as will afford protection and insure, for the insurable, current replacement cost (excluding foundations and

-40-

CERTIFIED

excavation, but without deduction for depreciation) as determined annually by the insurance carrier, all Common Facilities and the personal property of the Association for or against the following risks:

(1) Loss or damage by fire or other risks covered by the standard extended coverage endorsement.

(2) Loss or damage from theft, vandalism or malicious mischief.

(3) Such other risks, perils or coverage as the Board of Directors may determine.

Such policy or the endorsement made a part thereof shall, if and to the extent available, provide that the insurer issuing the policy agrees to abide by the decision of the Association made in accordance with the provisions of Article XI of this Declaration as to whether or not to repair, reconstruct or restore all or any damaged or destroyed portion of the Common Facilities.

(b) <u>Public Liability and Property Damage Insurance</u>. A policy of comprehensive public liability insurance insuring the Association and the Owners and occupants of Lots, and their respective family members, guests, invitees, and the agents and employees of each, against any liability incident to the ownership or use of the Common Areas and including, if obtainable, a cross-liability or severability of interest endorsement insuring each insured against liability to each other insured. The limits of such insurance shall not be less than ONE MILLION DOLLARS ($1,000,000.00) covering all claims for death, personal injury and property damage arising out of any single occurrence. Such liability for nonowned and hired automobiles, liability for property of others and any other liability or risk customarily covered with respect to projects similar in construction, location, and use.

(c) <u>Workmen's Compensation</u>. Workmen's compensation insurance to the extent necessary to comply with applicable law.

In the event any insurance policy, or any endorsement thereof, required by this Section 1 is for any reason not available, then the Association shall obtain such other or substitute policy or endorsement as may be available which provides, as nearly as possible, the coverage hereinabove described.

<u>Section 2</u>. <u>Copies of Policies</u>. Copies of all insurance policies (or certificates thereof showing the premiums thereon to have been paid) shall be retained by the Association and shall be available for inspection by Owners at any reasonable time.

<u>Section 3</u>. <u>Additional Insurance and Bonds</u>. The Association Board may also purchase with Common Funds such additional insurance and bonds (including fidelity bonds), as it may, from time to time, determine to be necessary or desirable to the proper discharge of its responsibilities under the Governing Documents.

### ARTICLE XI
### DAMAGE OR DESTRUCTION

<u>Section 1</u>. <u>Common Facilities; Bids and Determination of Available Insurance Proceeds</u>. In the event any Common Facilities are ever damaged or

-41-

CERTIFIED

destroyed, then, and in such event, as soon as practicable thereafter the Board of Directors shall (a) obtain bids from at least two reputable, licensed contractors, which bids shall set forth in detail the work required to repair, reconstruct and restore the damaged or destroyed portions of the Common Facilities to substantially the same condition as they existed prior to the damage and the itemized price asked for such work, and (b) determine that amount of all insurance proceeds available to the Association for the purpose of effecting such repair, reconstruction and restoration.

Section 2. Common Facilities: Sufficient Insurance Proceeds. Subject to the provisions of Section 1 hereof, if, in the event of damage to or destruction of any portion of any Common Facility, the insurance proceeds available to the Association are sufficient to cover the costs of repair, reconstruction and restoration, then the Association may cause such facilities to be repaired, reconstructed and restored to substantially the same condition in which they existed prior to the loss.

Section 3. Common Facilities: Insurance Proceeds Insufficient in an Amount Exceeding $1,000.00. In the event that any Common Facility is totally or substantially damaged or destroyed or, if, in the event of damage to or destruction of only a portion of the Common Facilities, the insurance proceeds available to the Association are insufficient in an amount exceeding $1,000.00 to cover the estimated cost of repair, reconstruction and restoration, then the Board of Directors shall determine whether (i) to repair, reconstruct and restore the damaged or destroyed Common Facilities and specially assess all Owners for such additional funds as may be needed for such purpose, or (ii) not to repair, reconstruct or restore the damaged or destroyed Common Facilities but (a) utilize the insurance proceeds available for such reconstruction, together with any other sums otherwise available to the Association for such purpose, to demolish and remove the damaged or destroyed improvements from the Common Area and to level and landscape the sites thereof and (b) apply any balance of such proceeds and/or funds as the Board shall determine.

Section 4. Damage or Destruction of Private Residences or Other Lot Improvements. As more particularly provided in Article VIII, Section 6 hereof, in the event that any Residence or other improvement on any Residence Lot or Restricted Lot is damaged or destroyed the Owner thereof shall promptly repair, replace or remove the damaged structure so as to avoid the creation and maintenance of an unsightly nuisance that is offensive to neighboring property Owners. Any repair, reconstruction of new construction shall be conducted in compliance with the requirements of Articles VI and VII of this Declaration.

### ARTICLE XII
### CONDEMNATION OF COMMON AREA

If at any time, any portion of Common Area, or any interest therein, be taken by right of eminent domain or by private purchase in lieu of eminent domain, the entire award shall be paid to the Association and deposited in one or more of the Association accounts maintained in accordance with Article IV, Section 8 hereof as the Association may, in its sole discretion, determine. No Owner shall be entitled to any portion of such award and no Owner shall be entitled to participate as a party in any such condemnation proceedings.

-42-

CERTIFIED

## ARTICLE XIII
### PENALTIES AND ENFORCEMENT

**Section 1.** <u>Remedy at Law Inadequate</u>. Except for the nonpayment of any Assessment, it is hereby expressly declared and agreed that the remedy at law to recover damages for the breach, default or violation of any of the covenants, conditions, restrictions, limitations, reservations, grants of easements, rights, rights-of-way, liens, charges or equitable servitudes contained in this Declaration is inadequate and that the failure of any Owner, tenant, occupant or user of any Lot, or any portion of the Common Area or Common Facilities, to comply with any provision of the Governing Documents may be enjoined by appropriate legal proceedings instituted by any Owner, the Association, its officers or Board of Directors, or by their respective successors in interest.

**Section 2.** <u>Nuisance</u>. Without limiting the generality of the foregoing, the result of every act or omission whereby any covenant contained in this Declaration is violated in whole or in part is hereby declared to be and constitutes a nuisance, and every remedy against nuisance, either public or private, shall be applicable against every such act or omission.

**Section 3.** <u>Costs and Attorneys' Fees</u>. In any action brought because of any alleged breach or default of any Owner or other party hereto under this Declaration, the Court may award to the prevailing party to such action such attorneys' fees and other costs as it may deem just and reasonable.

**Section 4.** <u>Cumulative Remedies</u>. The respective rights and remedies provided by this Declaration or by law shall be cumulative, and the exercise of any one or more of such rights or remedies shall not preclude or affect the exercise, at the same or at different times, of any other such rights or remedies for the same or any different default or breach or for the same or any different failure of any Owner or others to perform or observe any provision of this Declaration.

**Section 5.** <u>Failure Not a Waiver</u>. The failure of any Owner, the Board of Directors or the Association or its officers or agents to enforce any of the covenants, conditions, restrictions, limitations, reservations, grants of easements, rights, rights-of-way, liens, charges or equitable servitudes contained in this Declaration shall not constitute a waiver of the right to enforce the same thereafter, nor shall such failure result in or impose any liability upon the Association or the Board, or any of its officers or agents.

**Section 6.** <u>Enforcement Rights and Remedies of the Association; Limitations Thereon</u>.

(a) <u>Rights Generally</u>. In the event of a breach or violation of any Association Rule or of any of the restrictions contained in any Governing Document by an Owner, his or her family, or the Owner's guests, employees, invitees, licensees, or tenants, the Board, for and on behalf of all other Owners, shall enforce the obligations of each Owner to obey such Rules or restrictions through the use of such remedies as are deemed appropriate by the Board and available in law or in equity, including but not limited to the hiring of legal counsel, the imposition of fines and monetary penalties in accordance with this subparagraph (a), the pursuit of legal action, or suspension of the Owner's right to use recreation Common Facilities or

-43-



suspension of the Owner's voting rights as a Member of the Association; provided, however, the Association's right to undertake disciplinary action against its Members shall be subject to the conditions set forth in this Section 6.

The Board may implement schedules of reasonable fines and penalties for particular offenses that are common or recurring in nature and for which a uniform fine schedule is appropriate (such as fines for late payment of assessments or illegally parked vehicles). Once imposed, a fine or penalty may be collected as a Special Individual Assessment.

(b) <u>Covenants Committee</u>. The Covenants Committee, as established in Article X, Section 1 of the Bylaws and described in Section 7 of this Article XIII, shall hear cases involving violation of these CC&Rs and the Association Rules and Regulations and shall impose such penalties as may be established by the Board for the violations involved. Notwithstanding the foregoing, violations of specific, individual requirements stipulated by the Design Committee shall be heard and enforced by the Design Committee.

(c) <u>Definition of "Violation"</u>. A violation of the Governing Documents shall be defined as a single act or omission occurring on a single day. If the detrimental effect of a violation continues for additional days, discipline imposed by the Board may include one component for the violation and, according to the Board's discretion, a per diem component for so long as the detrimental effect continues. Similar violations on different days shall justify cumulative imposition of discipline. The Association shall take reasonable and prompt action to repair or avoid the continuing damaging effects of a violation or nuisance occurring within the Common Areas at the cost of the responsible Owner.

(d) <u>Limitations on Disciplinary Rights</u>.

(i) The Association shall have no power to cause a forfeiture or abridgment of an Owner's right to the full use and enjoyment of his or her Lot on account of a failure by the Owner (or his or her family members, tenants or invitees) to comply with any provision of the Governing Documents or of any duly enacted Association Rule except (A) where the loss or forfeiture is the result of the judgment of a court of competent jurisdiction as a decision arising out of arbitration or on account of a foreclosure or sale under a power of sale for failure of the Owner to pay assessments levied by the Association, or (B) where the loss or forfeiture is limited to a temporary suspension of an Owner's rights as a Member of the Association (including, without limitation, the imposition of monetary penalties) for failure to comply with any Governing Document so long as the Association's actions satisfy the due process requirements of subparagraph (iii) below.

(ii) A monetary penalty imposed by the Association as a disciplinary measure for failure of a member to comply with the Governing Documents or as a means of reimbursing the Association for costs incurred by the Association in the repair of damage to Common Areas or Common Facilities for which the member was alleged to be responsible or in bringing the member and his or her Lot into compliance with the Governing Documents may not be characterized nor treated as an Assessment which may become a lien against the member's Lot enforceable by a sale of the Lot in non-judicial foreclosure provided, however, that this limitation on the Association's lien rights shall not apply to charges imposed against an Owner consisting of reasonable late payment

-44-

EL DORADO COUNTY

CERTIFIED

penalties to reimburse the Association for the loss of interest and for costs reasonably incurred (including attorneys' fees) in the Association's efforts to collect delinquent Assessments.

(iii) No penalty or temporary suspension of rights shall be imposed pursuant to this Article XIII unless the Owner alleged to be in violation is given at least 15 days' prior notice of the proposed penalty or temporary suspension and is given an opportunity to be heard before the Covenants Committee established pursuant to the Bylaws with respect to the alleged violation(s) at a hearing conducted at least 5 days before the effective date of the proposed disciplinary action. Notwithstanding the foregoing, under circumstances involving conduct that constitutes (A) an immediate and unreasonable infringement of, or threat to, the safety or quiet enjoyment of neighboring Owners, (B) a traffic or fire hazard, (C) a threat of material damage to, or destruction of, the Common Areas or Common Facilities, or (D) a violation of the Governing Documents that is of such a nature that there is no material question regarding the identity of the violator or whether a violation has occurred (such as late payment of assessments or parking violations), the Board of Directors, or its duly authorized agents, can undertake immediate corrective or disciplinary action and, upon request of the offending Owner (which request must be received, in writing, within five days following the Association's disciplinary action), conduct a noticed hearing as soon thereafter as reasonably possible, but in no event more than 15 days after the disciplinary action is imposed or 15 days following receipt of the Owner's request for a hearing, whichever is later. Under such circumstances, any fine imposed pursuant to an established fine schedule shall be due and payable only upon expiration of the 15-day notice period.

(e) Notices. Any notice required by this Article shall, at a minimum, set forth the date and time for the hearing, a brief description of the action or inaction constituting the alleged violation and a reference to the specific Governing Document provision alleged to have been violated. The notice shall be in writing and may be given by any method reasonably calculated to give actual notice; provided that if notice is given by mail it shall be sent by first-class or registered mail sent to the last address of the Member shown on the records of the Association.

Section 7. The Covenants Committee. The Covenants Committee shall review written complaints from Lot Owners, the General Manager, or the Design Committee (for violations other than specific, individual requirements stipulated by the design Committee) of alleged violations of the Governing Documents or Association Rules, and, when determined appropriate, conduct hearings and make findings on such alleged violations. The Covenants Committee may levy penalties and/or fines in the event the allegations regarding such violations are found to be true. To perform the foregoing, the Covenants Committee shall adopt rules of procedure for conducting such hearings and shall conduct its hearings in accordance with such rules after they have been approved by the Board.

## ARTICLE XIV
### AMENDMENT OF DECLARATION

Section 1. Amendment, Generally. This Declaration may be amended or revoked in any respect by the vote or assent by written ballot of the holders of not less than sixty-six and two-thirds percent (66 2/3%) of the total

-45-

CERTIFIED

voting power of the Association. Notwithstanding the foregoing, the percentage of the voting power necessary to amend a specific Article, Section or provision of this Declaration shall not be less than the percentage of affirmative votes prescribed for action to be taken under that Article, Section or other provision.

Section 2. Effective Date of Amendment. The amendment shall be effective upon the recordation of the Office of the Recorder of El Dorado County of an instrument setting forth the terms thereof duly certified and executed by the President and Secretary of the Association. Any amendment duly adopted by the vote of the Members in accordance with Section 1 shall be binding upon every Owner and every Lot subject to this Declaration, whether the burdens thereon are increased or decreased thereby and whether the Owner of each and every Lot consents thereto or not; provided, however, that, the foregoing notwithstanding, no such amendment shall affect the rights of the holder of any deed of trust or mortgage recorded prior to the recordation of such amendment.

## ARTICLE XV
## NOTICES

Section 1. Mailing Addresses. Any communication or notice of any kind permitted or required herein shall be in writing and may be served, as an alternative to personal service, by mailing the same as follows:

If to any Owner:     To the street address of the Owner's Lot or to such other address as the Owner may, from time to time, designate in writing to the Association.

If to the Association:    Auburn Lake Trails Property Owners Association at 2277 Westville Trail, Cool, California 95614 or at such address as the Association may from time to time designate in writing to the Owners.

Section 2. Personal Service Upon Co-Owners and Others. Personal service of a notice or demand to one of the co-owners of any Lot, to any general partner of a partnership which is the Owner of Record of the Lot, or to any officer or agent for service of process of a corporation which is the Owner of Record of the Lot, shall be deemed delivered to all such co-owners, to such partnership, or to such corporation, as the case may be.

Section 3. Deposit in U.S. Mails. All notices and demands served by mail shall be by registered or certified mail, with postage prepaid, and shall be deemed delivered 48 hours after deposit in the United States mail in El Dorado County, California.

## ARTICLE XVI
## NO PUBLIC RIGHTS IN THE PROPERTIES

Nothing contained in this Declaration shall be deemed to be a gift or dedication of all or any portion of the Properties comprising Auburn Lake Trails to the general public or for any public use or purpose whatsoever.

-46-

CERTIFIED

## ARTICLE XVII
## GENERAL PROVISIONS

**Section 1.** **Term.** The covenants, conditions, restrictions, limitations, reservations, grants of easement, rights, rights-of-way, liens, charges and equitable servitudes contained in this Declaration shall run with, and shall benefit and burden the Lots and the Common Area as herein provided, and shall inure to the benefit of and be binding upon the Owners, Declarant, the Association, its Board of Directors, and its officers and agents, and their respective successors in interest, for an initial period expiring on the first day of January, 1999, after which time the same shall be automatically extended for successive periods of 10 years each unless, within six months prior to the expiration of the initial term or any such 10-year extension period, a recordable written instrument, approved by Owners entitled to vote and holding at least 66-2/3% of the voting power of the Association terminating the effectiveness of this Declaration shall be filed for recording in the Office of the County Recorder of El Dorado County, California.

**Section 2.** **Restrictions Construed Together.** All of the covenants, conditions and restrictions of this Declaration shall be liberally construed together to promote and effectuate the fundamental concepts of the development of the Properties as set forth in the Recitals of this Declaration. Failure to enforce any provision hereof shall not constitute a waiver of the right to enforce that provision in a subsequent application or any other provision hereof.

**Section 3.** **Restrictions Severable.** Notwithstanding the provisions of section 2 above, the covenants, conditions and restrictions of this Declaration shall be deemed independent and severable, and the invalidity or partial invalidity of any provision or portion thereof shall not affect the validity or enforceability of any other provision.

**Section 4.** **Singular Includes Plural.** The singular shall include the plural and the plural the singular unless the context requires the contrary, and the masculine, feminine or neuter shall each include the masculine, feminine and neuter, as the context requires.

**Section 5.** **Exhibits.** All exhibits to which reference is made are deemed incorporated in this Declaration whether or not actually attached.

-47-

CERTIFIED

Section 6. Captions. All Article, Section and paragraph captions are for reference only and are not to be considered in construing this Declaration.

DATED: ___July 17,_____, 1990.

AUBURN LAKE TRAILS
PROPERTY OWNERS ASSOCIATION
David C. Jagger

By _____
    (President)
Kenneth Carey

By _____
    (Secretary)

478-335-C                          -48-                    BOOK 3425 PAGE 333



State of California )
) ss.
County of El Dorado )

On this the 23rd day of ___July___, 1990, before me, the undersigned Notary Public, personally appeared David C. Jagger, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person who executed the within instrument as President on behalf of Auburn Lake Trails Property Owners Association, a California nonprofit corporation, and acknowledged to me that said corporation executed the within instrument pursuant to its by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.



_Susan Houlf_
Notary Public

State of California )
) ss.
County of El Dorado )

On this the 17th day of ___July___, 1990, before me, the undersigned Notary Public, personally appeared Kenneth Carey, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person who executed the within instrument as Secretary on behalf of Auburn Lake Trails Property Owners Association, a California nonprofit corporation, and acknowledged to me that said corporation executed the within instrument pursuant to its by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.



_Susan Houlf_
Notary Public

478-336-C



## EXHIBIT A

### LIST OF SUBDIVISION MAPS COMPRISING THE PROPERTIES
### THE PROPERTIES INCLUDED WITHIN AUBURN LAKE TRAILS

Set forth below is a list of the original subdivision maps for the Auburn Lake Trails common interest development (Schedule A-1) as modified by certain Lot mergers resulting from settlement of litigation between the Association and the Declarant filed in the El Dorado Superior Court as Civil Action No. 34594 and captioned Auburn Lake Trails Property Owners Association v. Transamerica Development Company, et al. The Lot mergers are listed in Schedule A-2.

### SCHEDULE A-1

UNIT NO. 1

Lots  1  through  131 , both inclusive, as said lots are shown on the Official Map of "Auburn Lake Trails, Unit No. 1", filed March 19, 1970, in the office of the County Recorder, County of El Dorado, in Map Book E, page 55.

UNIT NO. 2

Lots  132  through  422 , both inclusive, as said lots are shown on the Official Map of "Auburn Lake Trails, Unit No. 2", filed March 19, 1970, in the office of the County Recorder, County of El Dorado, in Map Book E, page 56.

UNIT NO. 3

Lots  423  through  591 , both inclusive, as said lots are shown on the Official Map of "Auburn Lake Trails, Unit No. 3", filed May 8, 1970, in the office of the County Recorder, County of El Dorado, in Map Book E, page 60.

UNIT NO. 4

Lots  600  through  916 , both inclusive, as said lots are shown on the Official Map of "Auburn Lake Trails, Unit No. 4", filed May 8, 1970, in the office of the County Recorder, County of El Dorado, in Map Book E, page 61.

Said Map was amended by that certain map filed March 19, 1971, in Map Book E, page 86, El Dorado County Records.

UNIT NO. 5

Lots  917  through  1606 , both inclusive, as said lots are shown on the Official Map of "Auburn Lake Trails, Unit No. 5", filed March 18, 1971, in the office of the County Recorder, County of El Dorado, in Map Book E, page 85.

UNIT NO. 6

Lots  1610  through  1753 , both inclusive, as said lots are shown on the Official Map of "Auburn Lake Trails, Unit No. 6", filed March 2, 1972, in the office of the County Recorder, County of El Dorado, in Map Book E, page 113.

A-1



UNIT NO. 7

Lots 1820  through 1932 , both inclusive, as said lots are shown on the Official
Map of "Auburn Lake Trails, Unit No. 7", filed August 14, 1970, in the office of
the County Recorder, County of El Dorado, in Map Book E, page 66.

Said Map was amended by that certain map filed March 10, 1971, in Map Book E, page
83, El Dorado County Records.

Said Map was also amended by that certain Certificate of Correction, recorded July
3, 1978, in Book 1647, page 176, El Dorado County Records.


UNIT NO. 8

Lots 1760  through 1775 , both inclusive, as said lots are shown on the Official
Map of "Auburn Lake Trails, Unit No. 8", filed January 9, 1973, in the office of
the County Recorder, County of El Dorado, in Map Book F, page 10.


UNIT NO. 9

Lots 1786  through 1796 , both inclusive, as said lots are shown on the Official
Map of "Auburn Lake Trails, Unit No. 9", filed January 9, 1973, in the office of
the County Recorder, County of El Dorado, in Map Book F, page 11.



## SCHEDULE A-2

### LIST OF LOT MERGERS

Parcel 1A, Filed 18 July 1988, in book 39 of Maps, Page 47,  O.R County of El Dorado.
Merger of Lots 1, 2 & 3, of Auburn Lake Trails, Unit No. 1

Parcel 4A, Filed 25 July 1986, in Book 35 of Maps, Page 118, O.R. County of El Dorado.
Merger of Lots 4 & 5 of Auburn Lake Trails, Unit No. 1

Parcel 9A,  Filed 2 December 1987, in Book 38 of Maps, Page 29, O.R. County of El Dorado.
Merger of Lots 8, 9, & 10 of Auburn Lake Trails, Unit No. 1

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 62, O.R. County of El Dorado.
Merger of Lots 21 & 22, of Auburn Lake Trails, Unit No. 1

Parcel 111A, Filed 14 September 1988, in Book 39 of Maps, Page 84, O.R. County of El Dorado.
Merger of Lots 97, 98, 99, 110 & 111, of Auburn Lake Trails, Unit No. 1

Parcel 103A, Filed 10 February 1988, in Book 38 of Maps, Page 72, O.R. County of El Dorado.
Merger of Lots 102 & 103, of Auburn Lake Trails, Unit No. 1

Parcel A, Filed 21 December 1981, in Book 30 of Maps, Page 60, O.R. County of El Dorado.
Merger of Lots 104 & 105, of Auburn Lake Trails, Unit No. 1

Parcel 114A, Filed 12 August 1986, in Book 35 of Maps, Page 133, O.R. County of El Dorado
Merger of Lots 114 & 115, of Auburn Lake Trails, Unit No.1

Parcel 120A, Filed 12 August 1986, in Book 35 of Maps, Page 135, O.R. County of El Dorado
Merger of Lots 118, 119, 120, 121, of Auburn Lake Trails, Unit No. 1

Parcel 133A, Filed 28 October 1987, in Book 38 of Maps, Page 2, O.R. County of El Dorado
Merger of Lots 133, 134, 135 & 136, of Auburn Lake Trails, Unit No. 2

Parcel 138A, Filed 29 October 1987, in Book 38 of Maps, Page 3, O.R. County of El Dorado
Merger of Lots 137 & 138, of Auburn Lake Trails, Unit 2

Parcel 143A, Filed 6 January 1988, in Book 40 of Maps, Page 36, O.R. County of El Dorado
Merger of Lots 143, 144, 145 & 146, of Auburn Lake Trails, Unit 2

Parcel 151A, Filed 22 June 1987, in Book 37 of Maps, Page 77, O.R. County of El Dorado
Merger of Lots 151 & 152, of Auburn Lake Trails, Unit 2

Parcel 160A, Filed 23 June 1986, in Book 35 of Maps, Page 90, O.R. County of El Dorado
Merger of Lots 160 & 161, of Auburn Lake Trails, Unit 1

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 33, O.R. County of El Dorado
Merger of Lots 174 & 175 of Unit 1 and Lot 422 of Unit 2, of Auburn Lake Trails

A-2



Exhibit A Continued

Parcel 177A, Filed 23 June 1986, in Book 35 of Maps, Page 89, O.R. County of El Dorado
    Merger of Lot 177 and a portion of Lot 178, of Auburn Lake Trails, Unit 2

Parcel 179A, Filed 23 June 1986, in Book 35 of Maps, Page 89, O.R. County of El Dorado
    Merger of a portion of Lot 178 and Lot 179, of Auburn Lake Trails, Unit 2

Parcel I, Filed 12 January 1989, in Book 40 of Maps, Page 41, O.R. County of El Dorado
    Merger of Lots 183, 184, 185 & 398 of Auburn Lake Trails,Unit 1 and Lots 400 &
    401 of Auburn Lake Trails, Unit 2

Parcel 192A, Filed 4 May 1987, in Book 37 of Maps, Page 37, O.R. County of El Dorado
    Merger of Lots 191 & 192, of Auburn Lake Trails, Unit 1

Parcel B, Filed 15 August 1985, in Book 34 of Maps, Page 33, O.R. County of El Dorado
    Merger of Lots 206 & 207, of Auburn Lake Trails, Unit 1

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 34, O.R. County of El Dorado
    Merger of Lots 257 & 258, of Auburn Lake Trails, Unit 1

Parcel 268A, Filed 13 June 1986, in Book 35 of Maps, Page 82, O.R. County of El Dorado
    Merger of Lots 267, 268, 269, 270, 271 & 272, of Auburn Lake Trails, Unit 1

Parcel 282A, Filed 26 January 1989, in Book 40 of Maps, Page 58, O.R. County of El
    Dorado
    Merger of Lots 281 & 282, of Auburn Lake Trails, Unit 1

Parcel 296A, Filed 5 October 1988, in Book 39 of Maps, Page 107, O.R. County of El
    Dorado
    Merger of Lots 292, 293 & 294 of Auburn Lake Trails, Unit 1 and Lot 296 of Auburn
    Lake Trails, Unit 2

Parcel 307A, Filed 20 January 1989, in Book 40 of Maps, Page 56, O.R. County of El
    Dorado
    Merger of Lots 303, 304, 305, 306 & 307 of Auburn Lake Trails, Unit 1

Parcel 312A, Filed 25 July 1986, in Book 35 of Maps, Page 115, O.R. County of El Dorado
    Merger of Lots 311, 312 & 313, of Auburn Lake Trails, Unit 1

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 35, O.R. County of El Dorado
    Merger of Lot 314, of Auburn Lake Trails, Unit 1 and a portion of Lot 1802 of
    Auburn Lake Trails, Unit 9

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 36, O.R. County of El Dorado
    Merger of Lots 329 and 330, of Auburn Lake Trails, Unit 1

Parcel 337A, Filed 21 November 1988, in Book 39 of Maps, Page 140, O.R. County of El
    Dorado
    Merger of Lots 336, 337 & 338, of Auburn Lake Trails, Unit 1

Parcel B, Filed 15 August 1985, in Book 34 of Maps, Page 36, O.R. County of El Dorado
    Merger of Lots 339, 340, 341, 342, 343 & 344, of Auburn Lake Trails, Unit 1

Parcel 345A, Filed 15 June 1988, in Book 39 of Maps, Page 24, O.R. County of El Dorado
    Merger of Lots 345, 346, 347 & 348 of Auburn Lake Trails, Unit 1

BCC: 3425 PAGE 338



Exhibit A Continued

Parcel 360A, Filed 13 April 1989, in Book 40 of Maps, Page 103, O.R. County of El
Dorado
    Merger of Lots 359, 360, & 361 of Auburn Lake Trails, Unit 1

Parcel 363A, Filed 13 April 1989, in Book 40 of Maps, Page 103, O.R. County of El
Dorado
    Merger of Lots 362 & 363 of Auburn Lake Trails, Unit 1

Parcel 368A, Filed 25 July 1986, in Book 35 of Maps, Page 117, O.R. County of El Dorado
    Merger of Parcel B of Book 34 of Maps, Page 34 and Lot 368 of Auburn Lake Trails,
    Unit 1

Parcel 378A, Filed 24 April 1986, in Book 35 of Maps, Page 43, O.R. County of El Dorado
    Merger of Lot 378 and a portion of Lot 379 of Auburn Lake Trails, Unit 1

Parcel 380A, Filed 24 April 1986, in Book 35 of Maps, Page 43, O.R. County of El Dorado
    Merger of a portion of Lot 379 and Lot 380, of Auburn Lake Trails, Unit 1

Parcel 384A, Filed 21 September 1988, in Book 39 of Maps, Page 93, O.R. County of El
Dorado
    Merger of Lots 384, 385 & 386, of Auburn Lake Trails, Unit 1

Parcel 392A, Filed 2 February 1987, in Book 36 of Maps, Page 126, O.R. County of El
Dorado
    Merger of Lots 392, 393 & 394, of Auburn Lake Trails, Unit 1

Parcel I, Filed 21 November 1988, in Book 39 of Maps, Page 139, O.R. County of El
Dorado
    Merger of Lot 396A, Book 36 of Maps, Page 112, and Lot 402, of Auburn Lake
    Trails, Unit 2

Parcel 410A, Filed 5 December 1988, in Book 40 of Maps, Page 2, O.R. County of El
Dorado
    Merger of Lots 409 & 410, of Auburn Lake Trails, Unit 2

Parcel 416A, Filed 20 March 1987, in Book 37 of Maps, Page 1, O.R. County of El Dorado
    Merger of Lots 415, 416, 417 & 418, of Auburn Lake Trails, Unit 2

Parcel B, Filed 15 August 1985, in Book 34 of Maps, Page 37, O.R. County of El Dorado
    A portion of Lot 424 of Auburn Lake Trails, Unit 3

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 37, O.R. County of El Dorado
    Merger of Lot 425 and a portion of Lot 424, of Auburn Lake Trails, Unit 3

Parcel 433A, Filed 6 January 1989, in Book 40 of Maps, Page 35, O.R. County of El
Dorado
    Merger of Lots 433 & 434, of Auburn Lake Trails, Unit 3

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 38, O.R. County of El Dorado
    Merger of Lots 435 & 436, of Auburn Lake Trails, Unit 3

Parcel 438A, Filed 13 June 1986, in Book 35 of Maps, Page 81, O.R. County of El Dorado
    Merger of Lots 438 & 439, of Auburn Lake Trails, Unit 3



Exhibit A Continued

Parcel C, Filed 15 August 1985, in Book 34 of Maps, Page 38, O.R. County of El Dorado
    Merger of Lots 443, of Auburn Lake Trails, Unit 3, Lot 1765, of Auburn Lake
    Trails, Unit 8

Parcel B, Filed 15 August 1985, in Book 34 of Maps, Page 38, O.R. County of El Dorado
    Merger of Lots 462 & 463, of Auburn Lake Trails, Unit 3

Parcel 466A, Filed 18 July 1986, in Book 35 of Maps, Page 111, O.R. County of El Dorado
    Merger of Lots 466, 467, 468 & 469 of Auburn Lake Trails, Unit 3 and Lots 687 &
    688 of Auburn Lake Trails, Unit 4

Parcel 470A, Filed 10 October 1986, in Book 36, Page 43, O.R. County of El Dorado
    Merger of Lots 470 & 471, of Auburn Lake Trails, Unit 3

Parcel 689A, Filed 28 April 1987, in Book 37 of Maps, Page 31, O.R. County of El Dorado
    Merger of Lots 475, 476, 477, 478 & 479 of Auburn Lake Trails, Unit 3 and Lot 689
    of Auburn lake Trails, Unit 4

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 39, O.R. County of El Dorado
    Merger of Lots 487 & 488, of Auburn Lake Trails, Unit 3

Parcel 495A, Filed 10 September 1987, in Book 37 of Maps, Page 115, O.R. County of El
    Dorado
    Merger of Lots 494 & 495, of Auburn Lake Trails, Unit 3

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 40, O.R. County of El Dorado
    Merger of Lots 500, 501, 502 & 503, of Auburn Lake Trails, Unit 3

Parcel 504A, Filed 6 May 1987, in Book 37 of Maps, Page 40, O.R. County of El Dorado
    Merger of Lots 504 & 505, of Auburn Lake Trails, Unit 3

Parcel 735A, Filed 2 February 1987, in Book 36 of Maps, Page 128, O.R. County of El
    Dorado
    Merger of Lots 509 & 510 of Auburn Lake Trails, Unit No 3 and Lots 734 & 735 of
    Auburn Lake Trails, Unit 4

Parcel A, Filed 16 September 1986, in Book 36 of Maps, Page 23, O.R. County of El
    Dorado
    Merger of Lots 511 & 512 of Auburn lake Trails Unit 3 and 736 of Auburn Lake
    Trails, Unit 4

Parcel 514A, Filed 15 June 1988, in Book 39 of Maps, Page 25, O.R. County of El Dorado
    Merger of Lots 513, 514 & 515, of Auburn Lake Trails, Unit 3

Parcel 519A, Filed 11 March 1988, in Book 38 of Maps, Page 97, O.R. County of El Dorado
    Merger of Lots 518 & 519, of Auburn Lake Trails, Unit 3

Parcel 526A, Filed 4 February 1986, In Book 36 of Maps, Page 131, O.R. County of El
    Dorado
    Merger of Lots 526 & 527, of Auburn Lake Trails, Unit 3

Parcel 529A, Filed 11 June 1987, in Book 37 of Maps, Page 70, O.R. County of El Dorado
    Merger of Lots 528 & 529, of Auburn Lake Trails, Unit 3



Exhibit A Continued

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 41, O.R. County of El Dorado
    Merger of Lots 530, 531, 532 & 533, of Auburn Lake Trails, Unit 3

Parcel 535A, Filed 10 September 1987, in Book 37 of Maps, Page 116, O.R. County of El
    Dorado
    Merger of Lots 535 & 536, of Auburn Lake Trails, Unit 3

Parcel 542A, Filed 6 April 1988, in Book 38 of Maps, Page 109, O.R. County of El Dorado
    Merger of Lot 542 of Auburn Lake Trails, Unit 3 and Lots 905 & 906 of Auburn Lake
    Trails, Unit 4

Parcel 544A, Filed 11 March 1988, in Book 38 of Maps, Page 96, O.R. County of El Dorado
    Merger of Lot 544 of Auburn Lake Trails, Unit 3 and Lot 1704 of Auburn Lake
    Trails, Unit 6

Parcel 916A, Filed 28 April 1987, in Book 37 of Maps, Page 29, O.R. County of El Dorado
    Merger of Lot 551 & 552 of Auburn Lake Trails, Unit 3 and Lot 916 of Auburn lake
    Trails, Unit 4

Parcel 555A, Filed 18 January 1989, in Book 40 of Maps, Page 49, O.R. County of El
    Dorado
    Merger of Lot 553, 554 & 555 of Auburn Lake Trails, Unit 3 and Lots 759 & 760 of
    Auburn Lake Trails, Unit 4

Parcel 777A, Filed 27 August 1986, in Book 36 of Maps, Page 4, O.R. County of El Dorado
    Merger of Lot 777 of Auburn Lake Trails, Unit 4 and Lots 561, 562 & 563 of Auburn
    Lake Trails, Unit 3 and Parcel A recorded in Book 28 of Maps, Page 114, County
    of El Dorado, Unit 3

Parcel 566A, Filed 2 April 1987, in Book 37 of Maps, Page 7, O.R. County of el Dorado
    Merger of Lots 564, 565 & 566 of Auburn Lake Trails, Unit 3

Parcel 570A, Filed 1 June 1987, in Book 37 of Maps, Page 54, O.R. County of El Dorado
    Merger of Lots 570 & 571 of Auburn Lake Trails, Unit 3

Parcel B, Filed 15 August 1985, in Book 34 of Maps, Page 41, O.R. County of El Dorado
    Merger of Lots 579, 580 & 581 of Auburn Lake Trails, Unit 3

Parcel C, Filed 15 August 1985, in Book 34 of Maps, Page 41, O.R. County of El Dorado
    Merger of Lots 582, 583 & 584 of Auburn Lake Trails, Unit 3

Parcel 585A, Filed 14 October 1988, in Book 39 of Maps, Page 115, O.R. County of El
    Dorado
    Merger of Lots 585 & 586 of Auburn Lake Trails, Unit 3

Parcel 591A, Filed 28 April 1987, in Book 37 of Maps, Page 30, O.R. County of El Dorado
    Merger of Lots 591, of Auburn Lake Trails, Unit 3 and Lots 1009,1010 & 1011, of
    Auburn Lake Trails, Unit 5

Parcel 602A, Filed 3 June 1988, in Book 39 of Maps, Page 18, O.R. County of El Dorado
    Merger of Lots 602, 603, 604, 605 & 606 of Auburn Lake Trails, Unit 4

Parcel 610A, Filed 19 August 1988, in Book 39 of Maps, Page 71, O.R. County of El
    Dorado

A-6

EL DORADO COUNTY



Exhibit A Continued

    Merger of Lots 610, 611 & 612 of Auburn Lake Trails, Unit 4

Parcel 614A, Filed 11 June 1987, in Book 37 of Maps, Page 69, O.R. County of El Dorado
    Merger of Lots 614 & 615 of Auburn Lake Trails, Unit 4

Parcel 619A, Filed 10 October 1986, in Book 36 of Maps, Page 45, O.R. County of El
    Dorado

    Merger of Lots 618 & 619 of Auburn Lake Trails, Unit 4

Parcel 620A, Filed 5 December 1988, in Book 40 of Maps, Page 4, O.R. County of El
    Dorado
    Merger of Lots 620, 621 & 622 of Auburn Lake Trails, Unit 4

Parcel 627A, Filed 28 September 1987, in Book 37 of Maps, Page 130, O.R. County of El
    Dorado
    Merger of Lots 626, 627, 628 & 629 of Auburn Lake Trails, Unit 4

Parcel I, Filed 20 May 1988, in Book 39 of Maps, Page 6, O.R. County of El Dorado
    Merger of Lots 630 & 631 of Auburn Lake Trails, Unit 4

Parcel 633A, Filed 1 June 1987, in Book 37 of Maps, Page 57, O.R. County of El Dorado
    Merger of Lots 632 & 633 of Auburn Lake Trails, Unit 4

Parcel 636A, Filed 4 February 1988, in Book 38 of Maps, Page 65, O.R. County of El
    Dorado
    Merger of Lots 636 & 637 of Auburn Lake Trails, Unit 4

Parcel 639A, Filed 24 August 1987, in Book 37 of Maps, Page 103, O.R. County of El
    Dorado
    Merger of Lots 639 & 640 of Auburn Lake Trails, Unit 4

Parcel 641A, Filed 26 February 1988, in Book 38 of Maps, Page 89, O.R. County of El
    Dorado
    Merger of Lots 641 & 642 of Auburn lake Trails, Unit 4

Parcel B, Filed 15 August 1985, in Book 34 of Maps, Page 35, O.R. County of El Dorado
    Merger of Lots 648 of Auburn Lake Trails, Unit 4 and a portion of Lot 1802 of
    Auburn Lake Trails, Unit 9

Parcel 651A, Filed 15 July 1987, in Book 37 of Maps, Page 92, O.R. County of El Dorado
    Merger of Lots 650, 651, 652, 653 & 654 of Auburn Lake Trails, Unit 4

Parcel 668A, Filed 2 September 1987, in Book 37 of Maps, Page 111, O.R. County of El
    Dorado
    Merger of Lots 668 & 669 of Auburn Lake Trails, Unit 4

Parcel 681A, Filed 1 June 1987, in Book 37 of Maps, Page 55, O.R. County of El Dorado
    Merger of Lots 681, 682 & 683 of Auburn Lake Trails, Unit 4

Parcel 701A, Filed 24 August 1987, in Book 37 of Maps, Page 104, O.R. County of El
    Dorado
    Merger of Lots 701, 702, 703 & 704 of Auburn Lake Trails, Unit 4

CERTIFIED

Exhibit A Continued

Parcel 709A, Filed 27 February 1987, in Book 36 of Maps, Page 145, O.R. County of El Dorado
     Merger of Lots 709 & 710 of Auburn Lake Trails, Unit 4

Parcel 715A, Filed 7 July 1987, in Book 37 of Maps, Page 87, O.R. County of El Dorado
     Merger of Lots 712, 713, 714 & 715 of Auburn Lake Trails, Unit 4

Parcel 717A, Filed 26 February 1987, in Book 36 of Maps, Page 143, O.R. County of El Dorado
     Merger of Lots 717 & 718 of Auburn Lake Trails, Unit 4

Parcel 721A, Filed 30 September 1987, in Book 15 of Maps, Page 22, O.R. County of El Dorado
     Merger of Lot 721 and a portion of 722 of Auburn Lake Trails, Unit 4

Parcel 723A, Filed 30 September 1987, in Book 15 of Maps, Page 22, O.R. County of El Dorado
     Merger of a portion of Lot 722 and Lot 723 of Auburn Lake Trails, Unit 4

Parcel 725A, Filed 4 February 1988, in Book 38 of Maps, Page 63, O.R. County of El Dorado
     Merger of Lots 724 & 725 of Auburn Lake Trails, Unit 4

Parcel B, Filed 16 September 1986, in Book 36 of Maps, Page 23, O.R. County of El Dorado
     Merger of Lots 737, 738, 739 & 740 of Auburn Lake Trails, Unit 4

Parcel 744A, Filed 12 August 1986, in Book 35 of Maps, Page 137, O.R. County of El Dorado
     Merger of Lots 744 & 745 of Auburn Lake Trails, Unit 4

Parcel 751A, Filed 13 July 1988, in Book 39 of Maps, Page 42, O.R. County of El Dorado
     Merger of Lots 750, 751 & 752 of Auburn Lake Trails, Unit 4

Parcel 753A, Filed 2 January 1989, in Book 40 of Maps, Page 42, O.R. County of El Dorado
     Merger of Lots 753, 754, 755, 756, 757 & 758 of Auburn Lake Trails, Unit 4

Parcel 766A, Filed 4 February 1986, in Book 36 of Maps, Paage 132, O.R. County of El Dorado
     Merger of Lots 765 & 766 of Auburn lake Trails, Unit 4

Parcel 768A, Filed 14 September 1988, in Book 39 of Maps, Page 85, O.R. County of El Dorado
     Merger of Lot 768 of Auburn Lake Trails, Unit 4 and Lots 1798 & 1799 of Auburn Lake Trails, Unit 9

Parcel I, Filed 22 April 1988, in Book 38 of Maps, Page 123, O.R. County of El Dorado
     Merger of Lots 778 & 779 in Auburn Lake Trails, Unit 4

Parcel 792A, Filed 5 December 1988, in Book 40 of Maps, Page 1, O.R. County of El Dorado
     Merger of Lots 790, 791 & 792 of Auburn Lake Trails, Unit 4



Exhibit A Continued

Parcel 794A, Filed 21 September 1988, in Book 39 of Maps, Page 94, O.R. County of El
    Dorado
    Merger of Lots 793 & 794 of Auburn Lake Trail, Unit 4

Parcel 799A, Filed 18 July 1986, in Book 35, Page 110, O.R. County of El Dorado
    Merger of Lots 797, 798 & 799 of Auburn Lake Trails, Unit 4

Parcel 801A, Filed 10 October 1986, in Book 36 of Maps, Page 41, O.R. County of El
    Dorado
    Merger of Lots 800 & 801 of Auburn Lake Trails, Unit 4

Parcel 808A, Filed 25 July 1986, in Book 35 of Maps, Page 114, O.R. County of El Dorado
    Merger of Lots 808 & 809 of Auburn Lake Trails, Unit 4

Parcel 812A, Filed 10 February 1987, in Book 38 of Maps, Page 73, O.R. County of El
    Dorado
    Merger of Lots 812 & 813 of Auburn Lake Trails, Unit 4

Parcel 823A, Filed 10 October 1986, in Book 36 of Maps, Page 42, O.R. County of
    El Dorado
    Merger of Lots 822 & 823 of Auburn Lake Trails, Unit 4

Parcel I, Filed 17 May 1988, in Book 39 of Maps, Page 3, O.R. County of El Dorado
    Merger of Lots 829 & 830 of Auburn Lake Trails, Unit 4

Parcel 831A, Filed 12 November 1987, in Book 38 of Maps, Page 14, O.R. County of El
    Dorado
    Merger of Lots 831 & 832 of Auburn Lake Trails, Unit 4

Parcel 845A. Filed 15 September 1987, in Book 37 of Maps, Page 118, O.R. County of El
    Dorado
    Merger of Lots 845, 846, 847 & 848 of Auburn Lake Trails, Unit 4

Parcel 850A, Filed 20 January 1989, in Book 40 of Maps, Page 54, O.R. County of El
    Dorado
    Merger of Lots 849 & 850 of Auburn Lake Trails, Unit 4

Parcel 859A, Filed 3 June 1988, in Book 39 of Maps, Page 20, O.R. County of El Dorado
    Merger of Lots 859, 860, 861, 862, 863 & 864, Unit 4

Parcel 866A, Filed 4 February 1988, in Book 38 of Maps, page 62, O.R. County of El
    Dorado
    Merger of Lots 865, 866 & 867 of Auburn Lake Trails, Unit 4

Parcel 869A, Filed 4 February 1988, in Book 38 of Maps, Page 64, O.R. County of El
    Dorado
    Merger of Lots 868 & 869 of Auburn Lake Trails, Unit 4

Parcel 872A, Filed 29 August 1986, in Book 36 of Maps, Page 8, O.R. County of El Dorado
    Merger of Lots 871 & 872 of Auburn Lake Trails, Unit 4

Parcel 894A, Filed 30 March 1987, in Book 37 of Maps, Page 4, O.R. County of El Dorado
    Merger of Lots 893 & 894 of Auburb Lake Trails, Unit 4

EL DORADO COUNTY



Exhibit A Continued

Parcel 896A, Filed 30 March 1987, in Book 37 of Maps, Page 6, O.R. County of El Dorado
    Merger of Lots 896 & 897 of Auburn Lake Trails, Unit 4

Parcel 899A, Filed 2 February 1987, in Book 36 of Maps, Page 125, O.R. County of El
    Dorado

    Merger of Lots 898 & 899 in Auburn Lake Trails, Unit 4

Parcel 900A, Filed 12 September 1988, in Book 39 of Maps, Page 81, O.R. County of El
    Dorado
    Merger of Lots 900 & 901 in Auburn Lake Trails, Unit 4

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 42, O.R. County of El Dorado
    Merger of Lots 903 & 904 of Auburn Lake Trails, Unit 4

Parcel 910A, Filed 2 September 1987, in Book 37 of Maps, Page 112, O.R. County of El
    Dorado
    Merger of Lots 910 & 911 of Auburn Lake Trails, Unit 4

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 43, O.R. County of El Dorado
    Merger of Lots 917, 918 & 919 of Auburn Lake Trails, Unit 5

Parcel 922A, Filed 1 June 1987, in Book 37 of Maps, Page 56, O.R. County of El Dorado
    Merger of Lots 921 & 922 of Auburn Lake Trails, Unit 5

Parcel 926A, Filed 15 August 1988, in Book 39 of Maps, Page 66, O.R. County of El
    Dorado
    Merger of Lots 925 & 926 of Auburn Lake Trails, Unit 5

Parcel 935A, Filed 23 December 1987, in Book 38 of Maps, Page 41, O.R. County of El
    Dorado
    Merger of Lots 935, 936 & 937 of Auburn Lake Trails, Unit 5 and Lot 1766 of
    Auburn lake Trails, Unit 8

Parcel 1707A, Filed 26 August 1986, in Book 35 of Maps, Page 146, O.R. County of El
    Dorado
    Merger of Lots 940 & 941 of Auburn Lake Trails, Unit 5 and Lot 1707 of Auburn
    Lake Trails, Unit 6

Parcel 1724A, Filed 13 August 1986, in Book 35 of Maps, Page 139, O.R. County of El
    Dorado
    Merger of Parcel C (lots 948 & 949) in Book 18 of Maps, Page 136 and Lots 1724
    & 1725 of Auburn Lake Trails, Unit 6

Parcel 1770A, Filed 23 June 1986, in Book 35 of Maps, Page 92, O.R. County of El Dorado
    Merger of Lots 951, 952, 953 & 954 of Auburn Lake Trails, Unit 5 and Lot 1770 of
    Auburn Lake Trails, Unit 8

Parcel 990A, Filed 2 February 1987, in Book 36 of Maps, Page 127, O.R. County of El
    Dorado
    Merger of Lots 961 & 962, Lots 984 through 990 of Auburn Lake Trails, Unit 5 and
    Lots 1749 & 1750 and Parcel B (lots 1751 & 1752) 34 of Maps, Page 44, of Auburn
    Lake Trails, Unit 6

A-10



Exhibit A Continued

Parcel C, Filed 15 August 1985, in Book 34 of Maps, Page 44, O.R. County of El Dorado
    Merger of Lots 963, 964, 965, 966 & 967 of Auburn Lake Trails, Unit 5

Parcel 970A, Filed 21 November 1988, in Book 39 of Maps, Page 141, O.R. County of El
    Dorado
    Merger of Lots 968 & 970 of Auburn Lake Trails, Unit 5

Parcel 975A, Filed 2 September 1987, in Book 37 of Maps, Page 113, O.R. County of El
    Dorado
    Merger of Lots 974 & 975 of Auburn Lake Trails, Unit 5

Parcel 1003A, Filed 20 May 1986, in Book 35 of Maps, Page 59, O.R. County of El Dorado
    Merger of Lots 1003 & 1004 of Auburn Lake Trails, Unit 5

Parcel 1017A, Filed 12 January 1989, in Book 40 of Maps, Page 39, O.R. County of El
    Dorado
    Merger of Lots 1012, 1013, 1014, 1015, 1016, 1017 & Parcel 1021A (1018,1019
    1020,1021, 1022, 1023) in Book 37 of Maps, Page 43 of Auburn Lake Trails, Unit
    5

Parcel 1030A, Filed 10 February 1988, in Book 38 of Maps, Page 71, O.R. County of El
    Dorado
    Merger of Lots 1030 & 1031 of Auburn Lake Trails, Unit 5

Parcel 1037A, Filed 5 October 1988, in Book 39 of Maps, Page 108, O.R. County of El
    Dorado
    Merger of Lots 1037 of Auburn Lake Trails, Unit 5 and Lot 1769 of Auburn lake
    Trails, unit 8

Parcel 1166A, Filed 12 September 1988, in Book 39 of Maps, Page 82, O.R. County of El
    Dorado
    Merger of Lots 1044, 1045, 1046, 1047, 1048, 1164, 1165 & 1166 of Auburn lake
    Trails, Unit 5

Parcel B, Filed 15 August 1985, in Book 34 of Maps, Page 45, O.R. County of El Dorado
    Merger of Parcel A (Lots 1067 and a portion of Lot 1068) Parcel B (portion of Lot
    1068 and 1069) Parcel C (Lots 1070 & 1071) and Lot 1072, of Auburn Lake Trails,
    Unit 5

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 45, O.R. County of El Dorado
    Merger of Lot 1075, Parcel D & E (Lots 1076, 1077 & 1078) of Auburn Lake Trails,
    Unit 5

Parcel I, Filed 16 May 1988, in Book 38 of Maps, Page 141, O.R. County of El Dorado
    Merger of Lots 10809 & 1081 of Auburn Lake Trails, Unit 5

Parcel C, Filed 15 August 1985, in Book 34 of Maps, Page 45, O.R. County of El Dorado
    Merger of Lots 1082 & 1083 in Auburn Lake Trails, Unit 5

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 57, O.R. County of El Dorado
    Merger of Lots 1095, 1096, 1097, 1098 & 1099 of Auburn Lake Trails, Unit 5

Parcel I, Filed 2 April 1987, in Book 37 of Maps, Page 8, O.R. County of El Dorado
    Merger of Lots 1100, 1101, 1102, 1103, 1104, 1105, & 1106, of Auburn Lake Trails,



Exhibit A Continued

Unit 5 and Lot 1774 of Auburn Lake Trails, Unit 8

Parcel 1111A, Filed 2 May 1986, in Book 35 of Maps, Page 48, O.R. County of El Dorado
    Merger of Lots 1109, 1110 & 1111 of Auburn Lake Trails, Unit 5

Parcel E, Filed 15 August 1985, in Book 34 of Maps, Page 45, O.R. County of El Dorado
    Merger of Lots 1120, 1121, 1122 & 1123 of Auburn Lake Trails, Unit 5

Parcel D, Filed 15 August 1985, in Book 34 of Maps, Page 45, O.R. County of El Dorado
    Merger of Lots 1128 & 1129 of Auburn Lake Trails, Unit 5

Parcel 1131A, Filed 9 January 1988, in Book 38 of Maps, Page 52, O.R. County of El
    Dorado
    Merger of Lots 1130 & 1131 of Auburn Lake Trails, Unit 5

Parcel 1132A, Filed 25 July 1986, in Book 35 of Maps, Page 116, O.R. County of El
    Dorado
    Merger of Lots 1132 & 1133 of Auburn lake Trails, Unit 5

Parcel I, Filed 11 January 1988, in Book 38 of Maps, Page 50, O.R. County of El Dorado
    Merger of Lots 1126 & 1127 of Auburn Lake Trails, Unit 5 and Parcel F (Lots 1139
    & 1140) of Auburn Lake Trails

Parcel B, Filed 15 August 1985, in Book 34 of Maps, Page 57, O.R. County of El Dorado
    Merger of Lots 1156, 1157 & 1158 of Auburn Lake Trails, Unit 5

Parcel 1162A, Filed 12 January 1989, in Book 40 of Maps, Page 43, O.R. County of El
    Dorado
    Merger of Lots 1161 & 1162 of Auburn Lake Trails, Unit 5

Parcel 1175A, Filed 26 September 1988, in Book 16 of Maps, Page 8, O.R. County of
    El Dorado
    Merger of Lot 1175 and a portion of Lot 1176 of Auburn Lake Trails, Unit 5

Parcel 1177A, Filed 26 September 1988, in Book 16 of Maps, Page 8, O.R. County of El
    Dorado
    Merger of a portion of Lot 1176, Lot 1177 and a portion of Lot 1178 of Auburn
    Lake Trails, Unit 5

Parcel 1179A, Filed 26 September 1988, in Book 16 of Maps, Page 8, O.R. County of El
    Dorado
    Merger of a portion of Lot 1178 and Lot 1179 of Auburn Lake Trails, Unit 5

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 59, O.R. County of El Dorado
    Merger of Lot 1195 of Auburn Lake Trails, Unit 5 and Lot 1686 of Auburn Lake
    Trails, Unit 6

Parcel 1198A, Filed 5 December 1988, in Book 5 of Maps, Page 3, O.R. County of El
    Dorado
    Merger of Lots 1197 and 1198 of Auburn Lake Trails, Unit 5

Parcel 1212A, Filed 15 June 1988, in Book 39 of Maps, Page 26, O.R. County of El Dorado
    Merger of Lots 1208, 1209, 1210, 1211 and 1212 of Auburn Lake Trails, Unit 5



Exhibit A Continued

Parcel D, Filed 3 May 1982, in Book 30 of Maps, Page 137, O.R. County of El Dorado
    Merger of Lots 1215 and 1216 of Auburn Lake Trails, Unit 5

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 46, O.R. County of El Dorado
    Merger of Lots 1218 and 1219 of Auburn Lake Trails, Unit 5

Parcel 1246A, Filed 18 January 1989, in Book 40 of Maps, Page 48, O.R. County of El
    Dorado
    Merger of Lots 1246, 1247 & 1248 of Auburn Lake Trails, Unit 5

Parcel D, Filed 15 August 1985, in Book 34 of Maps, Page 48, O.R. County of El Dorado
    Merger of Lots 1249 and 1250 of Auburn Lake Trails, Unit 5

Parcel E, Filed 15 August 1985, in Book 34 of Maps, Page 48, O.R. County of El Dorado
    Merger of Lots 1251 and 1252 of Auburn Lake Trails, Unit 5

Parcel F, Filed 15 August 1985, in Book 34 of Maps, Page 48, O.R. County of El Dorado
    Merger of Lots 1258, 1259, 1260, 1261 and Parcel D (1263) of Auburn Lake Trails,
    Unit 5

Parcel C, Filed 15 August 1985, in Book 34 of maps, Page 47, O.R. County of El Dorado
    Lot 1270, Filed 18 March 1971 in Book E of Maps, Page 85, O.R. County of El
    Dorado
    Merger of Lots 1270, 1271, 1272 and 1273 of Auburn Lake Trails, Unit 5

Parcel I, Filed 12 January 1989, in Book 40 of Maps, Page 40, O.R. County of El Dorado
    Merger of Lots 1274 & 1275 in Auburn Lake Trails, Unit 5

Parcel I, File 26 May 1988, in Book 39 of Maps, Page 11, O.R. County of El Dorado
    Merger of Lots 1280 of Auburn Lake Trails, Unit 5 and 1780 of Auburn Lake Trails,
    Unit 8

Parcel B, Filed 15 August 1985, in Book 34 of Maps, Page 47, O.R. County of El Dorado
    Merger of Lots 1292 & 1293 of Auburn Lake Trails, Unit 5

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 47, O.R. County of El Dorado
    Merger of Lots 1294 & 1295 of Auburn Lake Trails, Unit 5

Parcel B, Filed 15 August 1985, in Book 34 of Maps, Page 49, O.R. County of El Dorado
    Merger of Lot 1301 and a portion of Lot 1302 of Auburn Lake Trails, Unit 5

Parcel A, Filed 15 August 1985 in Book 34 of Maps, Page 49, O.R. County of El Dorado
    Merger of Lot 1303 and a portion of Lot 1302 of Auburn Lake Trails, Unit 5

Parcel G, Filed 15 August 1985 in Book 34 of Maps, Page 48, O.R. County of El Dorado
    Merger of Lots 1309, 1310, 1311 and 1312 of Auburn Lake Trails, Unit 5

Parcel 1321A, Filed 17 February 1988, in Book 38 of Maps, Page 78, O.R. County of El
    Dorado
    Merger of Lots 1320 & 1321 of Auburn Lake Trails, Unit 5

Parcel B, Filed 15 August 1985, in Book 34 of Maps, Page 50, O.R. County of El Dorado
    Merger of Lots 1335 & 1336 of Auburn Lake Trails, Unit 5

A-13



Exhibit A Continued

Parcel 1338A, Filed 6 January 1989, in Book 40 of Maps, Page 34, O.R. County of El
    Dorado
        Merger of Lots 1337 & 1338 of Auburn Lake Trails, Unit 5

Parcel E, Filed 15 August 1985, in Book 34, Page 52, O.R. County of El Dorado
        Merger of Lot 1340 of Auburn Lake Trails, Unit 5 and Lots 1783 & 1784 of Auburn
        Lake Trails, Unit 8

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 50, O.R. County of El Dorado
        Merger of Lots 1343, 1344 & 1345 of Auburn Lake Trails, Unit 5

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 48, O.R. County of El Dorado
        Merger of Lot 1362 & 1363 of Auburn Lake Trails, Unit 5

Parcel B, Filed 15 August 1985, in Book 34 of Maps, Page 48, O.R. County of El Dorado
        Merger of Lots 1364 & 1365 in Auburn Lake Trails, Unit 5

Parcel C, Filed 15 August 1985, in Book 34 of Maps, Page 48, O.R. County of El Dorado
        Merger of Lots 1366, 1367 & 1368 of Auburn Lake Trails, Unit 5

Parcel C, Filed 15 August 1985, in Book 34 of Maps, Page 52, O.R. County of El Dorado
        Merger of Lots 1378 & 1379 of Auburn Lake Trails, Unit 5 and Lot 1782 of Auburn
        Lake Trails, Unit 8

Parcel B, Filed 15 August 1985, in Book 34 of Maps, Page 52, O.R. County of El Dorado
        Merger of Lots 1384 & 1385 of Auburn Lake Trails, Unit 5 and Lot 1781 of Auburn
        Lake Trails, Unit 8

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 52, O.R. County of El Dorado
        Merger of Lots 1386, 1387 & 1388 of Auburn Lake Trails, Unit 5

Parcel B, Filed 15 August 1985, in Book 34 of Maps, Page 58, O.R. County of El Dorado
        Merger of Lots 1389, 1390 & 1391 of Auburn Lake Trails, Unit 5

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 58, O.R. County of El Dorado
        Merger of Lots 1392, 1393 & 1394 of Auburn Lake Trails, Unit 5

Parcel B, Filed 15 August 1985, in Book 34 of Maps, Page 53, O.R. County of El Dorado
        Merger of Lots 1404, 1405 & 1406 of Auburn Lake Trails, Unit 5

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 53, O.R. County of El Dorado
        Merger of Lots 1407 & 1408 of Auburn Lake Trails, Unit 5

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 54, O.R. County of El Dorado
        Merger of Lots 1413 & 1414 of Auburn Lake Trails, Unit 5 and Lot 1754 of Auburn
        Lake Trails, Unit 6

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 55, O.R. County of El Dorado
        Merger of Lots 1417, 1418, 1419, 1420 and 1421 of Auburn Lake Trails, Unit 5

Parcel 1422A, Filed 12 November 1987, in Book 38 of Maps, Page 15, O.R. County of El
    Dorado
        Merger of Lots 1422, 1423 and 1424 of Auburn Lake Trails, Unit 5



Exhibit A Continued

Parcel 1426B, Filed 22 February 1987, in Book 38 of Maps, Page 83, O.R. County of El
    Dorado
    Merger of Lot 1425 and 1426A of Auburn Lake Trails, Unit 5

Parcel 1429A, Filed 12 August 1986, in Book 35 of Maps, Page 136, O.R. County of El
    Dorado
    Merger of Lot 1427A and 1429 of Auburn Lake Trails, Unit 5

Parcel B, Filed 15 August 1985, in Book 34 of Maps, Page 55, O.R. County of El Dorado
    Merger of Lots 1431, 1432, 1433 and 1434 of Auburn Lake Trails, Unit 5

Parcel C, Filed 15 August 1985, in Book 34 of Maps, Page 55, O.R. County of El Dorado
    Merger of Lots 1435 and 1436 of Auburn Lake Trails, Unit 5

Parcel D, Filed 15 August 1985, in Book 34 of Maps, Page 55, O.R. County of El Dorado
    Merger of Lots 1437, 1438, 1439 and 1440 of Auburn Lake Trails, Unit 5

Parcel E, Filed 15 August 1985, in Book 34 of Maps, Page 56, O.R. County of El Dorado
    Merger of Lot 1441 and a portion of Lot 1442 of Auburn Lake Trails, Unit 5

Parcel 1443A, Filed 10 February 1988, in Book 38 of Maps, Page 70, O.R. County of El
    Dorado
    Merger of Lot 1443 and Parcel F (portion of Lot 1442) of Auburn Lake Trails, Unit
    5

Parcel G, Filed 15 August 1985, in Book 34 of Maps, Page 54, O.R. County of El Dorado
    Merger of lots 1444, 1445 and 1446 of Auburn Lake Trails, Unit 5

Parcel H, Filed 15 August 1985, in Book 34 of Maps, Page 54, O.R. County of El Dorado
    Merger of Lots 1447, 1448, 1449, 1450 and 1451 of Auburn Lake Trails, Unit 5

Parcel D, Filed 15 August 1985, in Book 34 of Maps, Page 54, O.R. County of El Dorado
    Merger of Lots 1452, 1478, 1479 and 1480 of Auburn Lake Trails, Unit 5

Parcel C, Filed 15 August 1985, in Book 34 of Maps, Page 54, O.R. County of El Dorado
    Merger of Lots 1453, 1454 and 1455 of Auburn Lake Trails, Unit 5

Parcel B, Filed 15 August 1985, in Book 34 of Maps, Page 54, O.R. County of El Dorado
    Merger of Lots 1458, 1459 and 1460 of Auburn Lake Trails, Unit 5

Parcel C, Filed 15 August 1985, in Book 34 of Maps, Page 53, O.R. County of El Dorado
    Merger of Lots 1471, 1472 and 1473 of Auburn Lake Trails, Unit 5

Parcel D, Filed 15 August 1985, in Book 34 of Maps, Page 53, O.R. County of El Dorado
    Merger of Lots 1474 & 1475 in Auburn Lake Trails, Unit 5

Parcel E, Filed 15 August 1985, in Book 34 of Maps, Page 54, O.R. County of El Dorado
    Merger of Lots 1481, 1482, 1483 and 1484 of Auburn Lake Trails, Unit 5

Parcel F, Filed 15 August 1985, in Book 34 of Maps, Page 54, O.R. County of El Dorado
    Merger of Lots 1485 and 1486, Auburn Lake Trails, Unit 5

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 56, O.R. County of El Dorado
    Merger of Lots 1491 and a portion of Lot 1492, Auburn Lake Trails, Unit 5

BOOK 3425 PAGE 350

EL DORADO COUNTY



Exhibit A Continued

Parcel B, Filed 15 August 1985, in Book 34 of Maps, Page 56, O.R. County of El Dorado
    Merger of a portion of Lot 1492 and 1493 and a portion of Lot 1494, of Auburn
    Lake Trails, Unit 5

Parcel C, Filed 15 August 1985, in Book 34 of Maps, Page 56, O.R. County of El Dorado
    Merger of a portion of Lot 1494 and a portion of 1495, of Auburn Lake Trails,
    Unit 5

Parcel D, Filed 15 August 1985, in Book 34 of Maps, Page 56, O.R. County of El Dorado
    Merger of a portion of Lot 1495 and Lot 1496 of Auburn Lake Trails, Unit 5

Parcel D, Filed 15 August 1985, in Book 34 of Maps, Page 58, O.R. County of El Dorado
    Merger of Lots 1505 & 1506 of Auburn Lake Trails, Unit 5

Parcel C, Filed 15 August 1985, in Book 34 of Maps, Page 58, O.R. County of El Dorado
    Merger of Lots 1507, 1508, 1509 and 1510, of Auburn Lake Trails, Unit 5

Parcel I, Filed 26 May 1988, in Book 39 of Maps, Page 12, O.R. County of El Dorado
    Merger of Lots 1522, 1523, 1524 and 1525 of Auburn Lake Trails, Unit 5

Parcel K, Filed 15 August 1985, in Book 34 of Maps, Page 58, O.R. County of El Dorado
    Merger of Lots 1526, 1527, 1528 and 1530 of Auburn Lake Trails, Unit 5

Parcel E, Filed 15 August 1985, in Book 34 of Maps, Page 58, O.R. County of El Dorado
    Merger of Lots 1542, 1543 and 1544 of Auburn Lake Trils, Unit 5

Parcel F, Filed 15 August 1985, in Book 34 of Maps, Page 58, O.R. County of El Dorado
    Merger of Lots 1546 & 1547  of Auburn Lake Trails, Unit 5

Parcel G, Filed 15 August 1985, in Book 34 of Maps, Page 58, O.R. County of El Dorado
    Merger of Lots 1548 & 1549 of Auburn Lake Trails, Unit 5

Parcel H, Filed 15 August 1985, in Book 34 of Maps, Page 58, O.R. County of El Dorado
    Merger of Lots 1559 & 1560 of Auburn Lake Trails, Unit 5

Parcel J, Filed 15 August 1985, in Book 34 of Maps, Page 58, O.R. County of El Dorado
    Merger of Lots 1567, 1568 & 1569 of Auburn Lake Trails, Unit 5

Parcel 1576A, Filed 1 June 1987, in Book 37 of Maps, Page 58, O.R. County of El Dorado
    Merger of Lots 1575 & 1576 of Auburn Lake Trails, Unit 5

Parcel 1580A, Filed 23 June 1986, in Book 35 of Maps, Page 91, O.R. County of El Dorado
    Merger of Lots 1580 & 1581 of Auburn Lake Trails, Unit 5

Parcel C, Filed 15 August 1985, in Book 34 of Maps, Page 50, O.R. County of El Dorado
    Merger of Lots 1582 & 1583 of Auburn Lake Trails, Unit 5

Parcel D, Filed 15 August 1985, in Book 34 of Maps, Page 50, O.R. County of El Dorado
    Merger of Lots 1586 & 1587 of Auburn Lake Trails, Unit 5

Parcel E, Filed 15 August 1985, in Book 34 of Maps, Page 50, O.R. County of El Dorado
    Merger of Lots 1592 & 1593 of Auburn Lake Trails, Unit 5

Parcel D, Filed 15 August 1985, in Book 34 of Maps, Page 47, O.R. County of El Dorado

BOOK 3425 PAGE 351



Exhibit A Continued

Merger of Parcel B (Lots 1601, 1602, 1603), Lot 1604 & Parcel C (Lots 1604 & 1605) of Auburn Lake Trails, Unit 5

Parcel B, Filed 15 August 1985, in Book 34 of Maps, Page 46, O.R. County of El Dorado
Merger of Lots 1611 & 1612 of Auburn Lake Trails, Unit 6

Parcel I, Filed 12 May 88, in Book 38 of Maps, Page 144, O.R. County of El Dorado
Merger of Lots 1616, 1617, 1618, 1619 & 1620 of Auburn Lake Trails, Unit 6

Parcel 1623A, Filed 30 January 1989, in Book 40 of Maps, Page 59, O.R. County of El Dorado
Merger of Lots 1623 & 1624 of Auburn Lake Trails, Unit 6

Parcel 1628A, Filed 7 July 1987, in Book 37 of Maps, Page 86, O.R. County of El Dorado
Merger of Lots 1625, 1626, 1627 & 1628 of Auburn Lake Trails, Unit 6

Parcel 1630A, Filed 12 September 1988, in Book 39 of Maps, Page 80, O.R. County of El Dorado
Merger of Lots 1629, 1630, 1631 & 1632 of Auburn Lake Trails, Unit 6

Parcel 1634A, Filed 3 February 1987, in Book 36 of Maps, Page 130, O.R. County of El Dorado
Merger of Lots 1633 & 1634 of Auburn Lake Trails, Unit 6

Parcel 1636A, Filed 18 May 1988, in Book 39 of Maps, Page 4, O.R. County of El Dorado
Merger of Lots 1636 & 1637 of Auburn Lake Trails, Unit 6

Parcel 1646A, Filed 20 January 1989, in Book 40 of Maps, Page 55, O.R. County of El Dorado
Merger of Lots 1645 & 1646 of Auburn Lake Trails, Unit 6

Parcel 1694A, Filed 9 July 1987 (Correction filed March 1989), in Book 37 of Maps, Page 88, O.R. County of El Dorado
Merger of Lots 1647, 1648 & 1649 of Auburn Lake Trails, Unit 6

Parcel 1651A, Filed 3 June 1988, in Book 39 of Maps, Page 19, O.R. County of El Dorado
Merger of Lots 1650 & 1651 of Auburn Lake Trails, Unit 6

Parcel 1672A, Filed 10 October 1986, in Book 36 of Maps, Page 44, O.R. County of El Dorado
Merger of Lots 1671, 1672 & 1673 of Auburn Lake Trails, Unit 6

Parcel B, filed 15 August 1985, in Book 34 of Maps, Page 59, O.R. County of El Dorado
Merger of Lots 1674, 1675 & 1676 in Auburn Lake Trails, Unit 6

Parcel 1688A, Filed 7 July 1988, in Book 39 of Maps, Page 36, O.R. County of El Dorado
Merger of Lots 1688 & 1689 of Auburn Lake Trails, Unit 6

Parcel 1697A, Filed 14 May 1986, in Book 35 of Maps, Page 53, O.R. County of El Dorado
Merger of Lots 1697 & 1698 of Auburn Lake Trails, Unit 6

Parcel 1701A, Filed 30 March 1987, in Book 37 of Maps, Page 37, O.R. County of El Dorado
Merger of Lots 1701 & 1702, of Auburn Lake Trails, Unit 6



Exhibit A Continued

Parcel I, Filed 26 May, in Book 39 of Maps, Page 10, O.R. County of El Dorado
    Merger of Lots 1711 & 1713 of Auburn Lake Trails, Unit 6

Parcel 1726A, Filed 26 February 1987, in Book 36 of Maps, Page 144, O.R. County of El
    Dorado
    Merger of Lots 1721 & 1726 of Auburn Lake Trails, Unit 6

Parcel 1722A, Filed 26 August 1986, in Book 35 of Maps, Page 147, O.R. County of El
    Dorado
    Merger of Lots 1722, 1723 of Auburn Lake Trails, Unit 6

Parcel 1729A, Filed 13 June 1986, in Book 35 of Maps, Page 80, O.R. County of El Dorado
    Merger of Lots 1727, 1728 & 1729 of Auburn Lake Trails, Unit 6

Parcel 1730, Filed 12 August 1986, in Book 35, Page 131, O.R. County of El Dorado
    Merger of Lots 1730 & 1731 of Auburn Lake Trails, Unit 6

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 60, O.R. County of El Dorado
    Merger of Lots 1732 & 1733 of Auburn Lake Trails, Unit 6

Parcel 1739A, Filed 4 February 1988, in Book 38 of Maps, Page 61, O.R. County of El
    Dorado
    Merger of Lots 1735, 1736, 1737, 1738, 1739 & 1740 of Auburn Lake Trails, Unit
    6

Parcel I, Filed 3 August 1988, in Book 39 of Maps, Page 56, O.R. County of El Dorado
    Merger of Parcel A (Lots 1741 & 1742), 1743, 1744 & 1745 of Auburn Lake Trails,
    Unit 6

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 44, O.R. County of El Dorado
    Merger of Lots 1753 & 1771 in Auburn Lake Trails, Unit 6

Parcel 1760A, Filed 13 June 1986, in Book 35, Page 84, O.R. County of El Dorado
    Merger of Lots 1760, 1761 & 1762 in Auburn Lake Trails, Unit 8

Parcel 1786A, Filed 13 June 1986, in Book 35 of Maps, Page 83, O.R. County of El Dorado
    Merger of Lots 1763, 1764 in Auburn Lake Trails, Unit 8 and Lot 1786 in Auburn
    Lake Trails, Unit 9

Parcel 1788A, Filed 27 August 1986, in Book 36 of Maps, Page 3, O.R. County of El
    Dorado
    Merger of Lot 1788 and a portion of Lot 1789 in Auburn Lake Trails, Unit 9

Parcel 1790A, Filed 27 August 1986, in Book 36 of Maps, Page 3, O.R. County of El
    Dorado
    Merger of a portion of Lot 1789 and Lot 1790 in Auburn Lake Trails, Unit 9

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 61, O.R. County of El Dorado
    Merger of Lots 1795 & 1796 of Auburn Lake Trails, Unit 9

Parcel B, Filed 15 August 1985, in Book 34 of Maps, Page 62, O.R. County of El Dorado
    Merger of Lots 1822, 1823, 1824 & 1825 of Auburn Lake Trails, Unit 7

Parcel 1830A, Filed 1 June 1987, in Book 37 of Maps, Page 53, O.R. County of El Dorado



Exhibit A Continued

       Merger of Lots 1830 & 1835 of Auburn Lake Trails, Unit 7

Parcel C, Filed 15 August 1985, in Book 34 of Maps, Page 62, O.R. County of El Dorado
      Merger of Lots 1837, 1838, 1839 & 1840 of Auburn Lake Trails, Unit 7

Parcel 1841A, Filed 23 April 1987, in Book 37 of Maps, Page 25, O.R. County of El
      Dorado

       Merger of Lots 1841, 1842, 1843 & 1844 of Auburn Lake Trails, Unit 7

Parcel 1846A, Filed 18 January 1989, in Book 40 of Maps, Page 47, O.R. County of El
      Dorado
      Merger of Lots 1845 & 1846 of Auburn Lake Trails, Unit 7

Parcel A, Filed 15 August 1985, in Book 34 of Maps, Page 63, O.R. County of El Dorado
      Merger of Lots 1868 & 1869 of Auburn Lake Trails, Unit 7

Parcel A, Filed 16 September 1986, in Book 36 of Maps, Page 22, O.R. County of El
      Dorado
      Merger of Lots 1874, 1875 & 1876 of Auburn Lake Trails, Unit 7

Parcel D, Filed 15 August 1985, in Book 34 of Maps, Page 63, O.R. County of El Dorado
      Merger of Lots 1878 7 1879 of Auburn Lake Trails, Unit 7

Parcel B, Filed 15 August 1985, in Book 34 of Maps, Page 63, O.R. County of El Dorado
      Merger of Lots 1882, 1883, 1884 & 1885 of Auburn Lake Trails, Unit 7

Parcel 1886A, Filed 12 November 1987, in Book 38 of Maps, Page 16, O.R. County of El
      Dorado
      Merger of Lots 1886 & 1887 of Auburn Lake Trails, Unit 7

Parcel C, Filed 15 August 1985, in Book 34 of Maps, Page 63, O.R. County of El Dorado
      Merger of Lots 1889, 1890, 1891, 1892 & 1893 of Auburn Lake Trails, Unit 7

Parcel E, Filed 15 August 1985, in Book 34 of Maps, Page 63, O.R. County of El Dorado
      Merger of Lots 1898 & 1899 of Auburn Lake Trails, Unit 7

Parcel 1905A, Filed 12 August 1986, in Book 35 of Maps, Page 132, O.R. County of El
      Dorado
      Merger of Lots 1905, 1906, 1907, 1908 & 1909 of Auburn Lake Trails, Unit 7

Parcel I, Filed 13 October 1988, in Book 39 of Maps, Page 112, O.R. County of El Dorado
      Merger of Lots 1910 and a portion of Lot 1912A of Auburn Lake Trails, Unit 7

Parcel 2, Filed 13 October 1988, in Book 39 of Maps, Page 112, O.R. County of El Dorado
      Merger of Lots 1912A, 1913, 1914 & 1915 of Auburn Lake Trails, Unit 7

Parcel 1920A, Filed 26 August 1986, in Book 35 of Maps, Page 145, O.R. County of El
      Dorado
      Merger of Lots 1919 & 1920 of Auburn Lake Trails, Unit 7

Parcel 1923A, Filed 15 September 1987, in Book 37 of Maps, Page 119, O.R. County of El
      Dorado
      Merger of Lots 1921, 1922 & 1923 of Auburn Lake Trails, Unit 7



Exhibit A Continued

Parcel 1924A, Filed 23 September 1986, in Book 36 of Maps, Page 29, O.R. County of El
        Dorado
        Merger of Lots 1924, 1925 & 1926 of Auburn Lake Trails, Unit 7

Parcel 1927A, Filed 6 January 1988, in Book 40 of Maps, Page 33, O.R. County of El
        Dorado
        Merger of Lots 1927 & 1928 of Auburn Lake Trails, Unit 7

Parcel 1929A, Filed 7 January 1987, in Book 36 of Maps, Page 111, O.R. County of El
        Dorado
        Merger of Lots 1929 & 1930 of Auburn Lake Trails, Unit 7

A-20



**EXHIBIT B**

**LIST OF ORIGINAL DECLARATIONS OF COVENANTS AND RESTRICTIONS
WHICH WERE AMENDED AND CONSOLIDATED IN THE
FIRST RESTATED DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS**

Declaration of Covenants and Restrictions Auburn Lake Trails
Unit 1 and 2, dated March 17, 1970, and recorded in the Official
Records of El Dorado County, California on March 19, 1970 at
Book 977, page 490.

Declaration of Amendment of Covenants and Restrictions - Auburn
Lake Trails Units 1 and 2, dated March 30, 1970, and Recorded
in the Official Records of El Dorado County California on
April 2, 1970 at Book 979, Page 179.

Declaration of Covenants and Restrictions Auburn Lake Trails
Units 3 and 4, dated April 13, 1970, and recorded in the
Official Records of El Dorado County, California on May 8,
1970 at Book 985, Page 52.

Declaration of Covenants and Restrictions Auburn Lake Trails
Unit No. 5, dated March 12, 1971, and recorded in the Official
Records of El Dorado County, California on March 18, 1971
at Book 1043, Page 24.

Declaration of Covenants and Restrictions Auburn Lake Trails,
Unit 6, dated February 29, 1972, and recorded in the Official
Records of El Dorado County, California on March 2, 1972
at Book 1107, Page 731.

Declaration of Covenants and Restrictions Auburn Lake Trails,
Unit No. 7, dated August 13, 1970 and recorded in the Official
Records of El Dorado County, California on August 14, 1970
at Book 1001, page 257.

Declaration of Covenants and Restrictions Auburn Lake Trails
Unit 8, dated October 31, 1972, and recorded in the Official
Records of El Dorado County, California, on January 9, 1973
at Book 1169, page 84.

Declaration of Covenants and Restrictions Auburn Lake Trails,
Unit 9, dated October 31, 1972, and recorded in the Official
Records of El Dorado County, California on January 9, 1973
at Book 1169, page 87.

**EXHIBIT B**

EL DORADO COUNTY

CERTIFIED

EXHIBIT C

1    CURTIS CUTTER SPROUL - 58370
     WEINTRAUB GENSHLEA
2    HARDY ERICH & BROWN
     A Professional Corporation
3    P.O. Box 13530,  95853-4530
     2535 Capitol Oaks Drive
4    Sacramento, California  95833
     (916) 648-9400
5
6    Attorneys for Petitioner
7
8              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                 IN AND FOR THE COUNTY OF EL DORADO
10
11   In the Matter of                )    No. 54903
                                      )
12   AUBURN LAKE TRAILS PROPERTY      )    ORDER RE PETITION TO REDUCE
     OWNERS ASSOCIATION               )    REQUIRED VOTING PERCENTAGE
13   a California Nonprofit           )    PURSUANT TO SECTION 1356 OF
     Mutual Benefit Corporation,      )    THE CALIFORNIA CIVIL CODE AND
14                                    )    TO SECTION 7515 OF THE CALIFORNIA
                       Petitioner.    )    CORPORATIONS CODE
15   _____)
16
17          The above-entitled matter came on regularly for hearing on December

18   8, 1989, in Department  II  of the above-entitled Court at 10:00 a.m.

19   Petitioner AUBURN LAKE TRIALS PROPERTY OWNERS ASSOCIATION appeared by and

20   through its counsel, Curtis C. Sproul of Weintraub Genshlea Hardy Erich &

21   Brown.

22          Having considered the evidence presented, the Court finds that

23   Petitioner has satisfied the requirements of Section 1356 of the Civil Code

24   and Section 7515 of the Corporations Code and, therefore, the Court issues the

25   following Order:

26          IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

27          1.   For the exclusive purposes of approving the Second Restated

28

                                    - 1 -

ENDORSED
FILED
MAR 6 - 1990
BILLIE MITCHELL, Clerk
SYLVIA CHANEY

BOOK 3425 PAGE 357



1   Declaration of Covenants, Conditions and Restrictions (the "new Declaration")
2   and the Second Restated Bylaws (the "new Bylaws") for AUBURN LAKE TRAILS
3   PROPERTY OWNERS ASSOCIATION, the requirements imposed by Article XIV,
4   Section 1 of the present Declaration that all amendments of the Declaration be
5   approved by 66 2/3 percent of the voting power of Petitioner's members and
6   Article XIII, Section 4 of the present Bylaws that all amendments of the
7   Bylaws be approved by a majority of the voting power of Petitioner's members
8   are hereby dispensed with, and approval of the new Declaration and new Bylaws
9   is hereby decreed by virtue of the substantial compliance with said membership
10  voting requirements as a result of the number of votes actually obtained by
11  Petitioner from its members during the balloting process, all as more
12  particularly alleged in the Petition on file herein.

13      2.   Accordingly, the new Declaration and the new Bylaws which
14  accompany the Petition on file herein, are approved.  The new Declaration
15  shall be effective upon execution by the president and secretary of the
16  Petitioner and recordation in the Office of the El Dorado County Recorder,
17  with a copy of this Order attached thereto.

18      3.   The Petitioner shall notify its members of the actions taken
19  pursuant to this Order and shall furnish a copy of the recorded new
20  Declaration and Bylaws to each member who has not already received copies
21  thereof during the balloting process.

22      Dated: March 5, 1990. 1989.

23                          EDDIE T. KELLER
                            JUDGE OF THE SUPERIOR COURT

24
25
26
27
28

                          - 2 -

BOOK 3425 PAGE 358

CERTIFIED

## EXHIBIT D

### SCHEDULE D-1

#### ORIGINAL COMMON AREAS

The Common Areas within the Properties include all the real property designated as Lot A, Unit 1, and those areas designated as "Common Areas", "Trails", "Courts", "Road" or "Street" on the Subdivision Maps listed in Exhibit B. These Maps disclose 11 principal Common Areas designated on the Maps as C-1 through C-11, inclusive, and Lot A.

EXHIBIT D

CERTIFIED



SCHEDULE D-2

AUBURN LAKE TRAILS COMMON AREA RESTRICTED AND EASEMENT LOTS

| | | | |
|---|---|---|---|
| 0034 | 0420 | 1006 | 1545 |
| 0100 | 0421 | 1007 | 1558 |
| 0106 | 0423 | 1008 | 1564 |
| 0109 | 0425 (2/3) | 1049 | 1570 |
| 0116 | 0459 | 1050 | 1572 |
| 0140 | 0460 | 1051 | 1573 |
| 0148 | 0496 | 1052 | 1596 |
| 0149 | 0497 | 1053 | 1597 |
| 0158 | 0498 | 10548 | 1598 |
| 0181 | 0499 | 1060 | 1599 |
| 0182 | 0517 | 1061 | 1600 |
| 0216 | 0558 | 1063 | 1614 |
| 0260 | 0572 | 1064 | 1638 |
| 0263 | 0573 | 1065 | 1639 |
| 0264 | 0623 | 1091 | 1663 |
| 0265 | 0624 | 1092 | 1665 |
| 0266 | 0625 | 1094 | 1666 |
| 0273 | 0675 | 1113 | 1667 |
| 0274 | 0706 | 1114 | 1677 |
| 0275 | 0707 | 1115 | 1696 |
| 0276 | 0763 | 1117 | 1718 |
| 0277 | 0764 | 1118 | 1746 |
| 0279 | 0784 | 1119 | 1747 |
| 0280 | 0785 | 1124 | 1748 |
| 0289 | 0786 | 1134 | 1768 |
| 0290 | 0787 | 1136 | 1772 |
| 0302 | 0788 | 1148 | 1773 |
| 0316 | 0789 | 1149 | 1775 |
| 0317 | 0825 | 1150 | 1779 |
| 0319 | 0855 | 1152 | 1785 |
| 0320 | 0858 | 1154 | 1792 |
| 0321 | 0892 | 1155 | 1820 |
| 0324 | 0920 | 1163 | 1827 |
| 0325 | 0923 | 1203 | 1828 |
| 0352 | 0976 | 1227 | 1848 |
| 0354 | 0977 | 1228 | 1901 |
| 0365 | 0979 | 1229 | 1903 |
| 0370 | 0980 | 1230 | 1904 |
| 0371 | 0981 | 1235 | 1932 |
| 0372 | 0982 | 1255 | |
| 0373 | 0983 | 1256 | |
| 0374 | 0991 | 1266 | |
| 0375 | 0992 | 1284 | |
| 0376 | 0993 | 1304 | |
| 0403 | 0994 | 1325 | |
| 0404 | 0995 | 1370 | |
| 0405 | 0996 | 1371 | |
| 0406 | 0997 | 1372 | |
| 0407 | 0999 | 1376 | |
| 0408 | 1000 | 1377 | |
| 0419 | 1001 | 1399 | |

EXHIBIT D

### EXHIBIT E
AUBURN LAKE TRAILS PROPERTY OWNERS

RESTRICTED LOTS UNDER PRIVATE OWNERSHIP

0676
0834
0838
0473

End of Document

# Exhibit 2

ADVERSARY COMPLAINT

RECORDING REQUESTED BY
CHICAGO    TITLE    COMPANY
AND WHEN RECORDED MAIL TO

Dainel Edstrom and
Teri Edstrom
2690 Brown Bear Ct.
Cool, CA 95614

El Dorado, County Recorder
William Schultz Co Recorder Office
**DOC- 2004-0066953-00**
Acct 1-CHICAGO TITLE CO
**Friday, AUG 20, 2004 14:30:00**
Ttl Pd $461.00        Nbr-0000619380
                              CLC/C1/1-2

Escrow No. 1150506 - MB
Order No. 1150506 - MAD

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# GRANT DEED

Assessor's Parcel No:
073-141-03

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
DOCUMENTARY TRANSFER TAX IS  $451.00
[X] unincorporated area    [ ] City of
[X] computed on the full value of the interest or property conveyed, or is
[ ] computed on the full value less the value of liens or encumbrances remaining at time of sale, and

PCOS
FILED

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
THELMA LORENE HUGHES, SURVIVING JOINT TENANT

hereby GRANT(S) to
DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM, HUSBAND AND WIFE  *As Joint Tenants*

the following described real property in the
County of  EL DORADO                        , State of California:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF BY REFERENCE

Dated  August 10, 2004

STATE OF  CALIFORNIA
COUNTY OF  PLACER                              } SS.
On  August 19, 2004                    before me,
Marianne Bagwell
a Notary Public in and for said County and State, personally appeared
THELMA LORENE HUGHES

*Thelma Lorene Hughes*
THELMA LORENE HUGHES

personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

MARIANNE BAGWELL
Comm. # 1317927
NOTARY PUBLIC CALIFORNIA
Placer County
My Comm. Expires Sept. 13, 2005

_____    9/13/05
Signature of Notary        Date My Commission Expires        FOR NOTARY SEAL OR STAMP

MAIL TAX STATEMENTS TO PARTY SHOWN ON FOLLOWING LINE: IF NO PARTY SO SHOWN, MAIL AS DIRECTED ABOVE

| Name | Street Address | City, State & Zip |
|---|---|---|

GD1 –05/30/97bk

066953

Page  1
Escrow No. 1150506   -MB

## LEGAL    DESCRIPTION    EXHIBIT

LOT 885, AS SHOWN ON THE "MAP OF AUBURN LAKE TRAILS UNIT 4", FILED MAY 8, 1970, IN BOOK E OF MAPS, PAGE 61, EL DORADO COUNTY RECORDS.

ASSESSOR'S PARCEL NUMBER 073-141-03-100

DEEDLEGL-08/09/94bk

08/20/2004, 20040066953

# Exhibit 3

ADVERSARY COMPLAINT

All people Liberty Speak Outlaud discrimination.
Connive

# California Secretary of State Debra Bowen

Administration   Elections   Business Programs   Political Reform   Archives   Registries   Other Services

**Business Entities (BE)**

**Online Services**
- Business Search
- Disclosure Search
- E-File Statements
- Processing Times

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Annual/Biennial Statements**

**Filing Tips**

**Information Requests** (certificates, copies & status reports)

**Service of Process**

**FAQs**

**Contact Information**

**Resources**
- Business Resources
- Tax Information
- Starting a Business
- International Business Relations Program

**Customer Alerts**
- Business Identity Theft
- Misleading Business Solicitations

## Business Search

This search provides access to domestic stock, domestic nonprofit and qualified foreign corporations, limited liability company and limited partnership information of record with the California Secretary of State. For additional information about entity addresses and the names and addresses of the principals of the entity, order a copy of the last complete Statement of Information (for corporations and limited liability companies) or formation and amendment documents (for limited partnerships). For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to Information Requests.

Please note: This search is not intended to serve as a name availability search. For information on checking or reserving a name, refer to Name Availability.

To conduct a search:

- Select the applicable search type.
- Enter the entity name or number you wish to search. Note: If entering the entity number of a corporation, the number must begin with the letter C.
- Select the Search button.
- For help with searching an entity name or number, refer to Search Tips.

**Search Type:**

⦿ Corporation Name  ○ Limited Liability Company/Limited Partnership Name  ○ Entity Number

**Entity Name:** _____   [ Search ]

**Disclaimer:** This tool allows you to search the Secretary of State's California Business Search database for abstracts of information for domestic stock, domestic nonprofit and qualified foreign corporations, limited liability companies and limited partnerships that have filed with this office. This search tool groups corporations separately from limited liability companies and limited partnerships and returns all entities for the search criteria in the respective groups regardless of the current status.

Although every attempt has been made to ensure that the information contained in the database is accurate, the Secretary of State's office is not responsible for any loss, consequence, or damage resulting directly or indirectly from reliance on the accuracy, reliability, or timeliness of the information that is provided. All such information is provided "as is." For information on ordering copies of the official business entity records for a particular entity, please refer to Information Requests.

Privacy Statement | Free Document Readers

Copyright © 2012   California Secretary of State



California Secretary of State Debra Bowen

Administration   Elections   Business Programs   Political Reform   Archives   Registries   Other Services

## Business Search - Results

Data is updated weekly and is current as of Friday, May 04, 2012. It is not a complete or certified record of the entity.

- *Select an entity name below to view additional information.* Results are listed alphabetically in ascending order by entity name.
- For information on checking or reserving a name, refer to Name Availability.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to Information Requests.
- For help with searching an entity name, refer to Search Tips.
- For descriptions of the various fields and status types, refer to Field Descriptions and Status Definitions.

Results of search for " ALLIED TRUSTEE SERVICES " returned no entity records.

Record not found.

Modify Search   New Search

Privacy Statement | Free Document Readers
Copyright © 2012   California Secretary of State

Business Entities (BE)

**Online Services**
- Business Search
- Disclosure Search
- E-File Statements
- Processing Times

Main Page

Service Options

Name Availability

Forms, Samples & Fees

Annual/Biennial Statements

Filing Tips

Information Requests
(certificates, copies &
status reports)

Service of Process

FAQs

Contact Information

**Resources**
- Business Resources
- Tax Information
- Starting A Business
- International Business
  Relations Program

**Customer Alerts**
- Business Identity Theft
- Misleading Business
  Solicitations

Case 13-02132    Filed 04/18/13    Doc 1

**California Secretary of State Debra Bowen**

All people Liberty Speak Civilized discrimination.

Administration   Elections   **Business Programs**   Political Reform   Archives   Registries   Other Services

## Business Search

**Business Entities (BE)**

**Online Services**
- Business Search
- Disclosure Search
- E-File Statements
- Processing Times

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Annual/Biennial Statements**

**Filing Tips**

**Information Requests**
(certificates, copies &
status reports)

**Service of Process**

**FAQs**

**Contact Information**

**Resources**
- Business Resources
- Tax Information
- Starting A Business
- International Business
  Relations Program

**Customer Alerts**
- Business Identity Theft
- Misleading Business
  Solicitations

This search provides access to domestic stock, domestic nonprofit and qualified foreign corporations, limited liability company and limited partnership information of record with the California Secretary of State. For additional information about entity addresses and the names and addresses of the principals of the entity, order a copy of the last complete Statement of Information (for corporations and limited liability companies) or formation and amendment documents (for limited partnerships). For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to Information Requests.

Please note: This search is not intended to serve as a name availability search. For information on checking or reserving a name, refer to Name Availability.

To conduct a search:

- Select the applicable search type.
- Enter the entity name or number you wish to search. Note: If entering the entity number of a corporation, the number must begin with the letter C.
- Select the Search button.
- For help with searching an entity name or number, refer to Search Tips.

**Search Type:**

○ Corporation Name  ◉ Limited Liability Company/Limited Partnership Name  ○ Entity Number

**Entity Name:** [              ]  [Search]

**Disclaimer:** This tool allows you to search the Secretary of State's California Business Search database for abstracts of information for domestic stock, domestic nonprofit and qualified foreign corporations, limited liability companies and limited partnerships that have filed with the office. This search tool groups corporations separately from limited liability companies and limited partnerships and returns all entities for the search criteria in the respective groups regardless of the current status.

Although every attempt has been made to ensure that the information contained in the database is accurate, the Secretary of State's office is not responsible for any loss, consequence, or damage resulting directly or indirectly from reliance on the accuracy, reliability, or timeliness of the information that is provided. All such information is provided "as is." For information on ordering copies of the official business entity records for a particular entity, please refer to Information Requests.

Privacy Statement | Free Document Readers

Copyright © 2012   California Secretary of State



California Secretary of State Debra Bowen

All people liberty, speak, without discrimination.
Consume

Secretary of State    Administration    Elections    Business Programs    Political Reform    Archives    Registries    Other Services

**Business Search - Results**

Data is updated weekly and is current as of Friday, May 04, 2012. It is not a complete or certified record of the entity.

- Select an entity name below to view additional information. Results are listed alphabetically in ascending order by entity name.
- For information on checking or reserving a name, refer to Name Availability.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to Information Requests.
- For help with searching an entity name, refer to Search Tips.
- For descriptions of the various fields and status types, refer to Field Descriptions and Status Definitions.

Results of search for " ALLIED TRUSTEE SERVICES " returned no entity records.

Record not found.

Modify Search    New Search

Privacy Statement | Free Document Readers
Copyright © 2012    California Secretary of State

**Business Entities (BE)**

**Online Services**
- Business Search
- Disclosure Search
- E-File Statements
- Processing Times

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Annual/Biennial Statements**

**Filing Tips**

**Information Requests**
(certificates, copies &
status reports)

**Service of Process**

**FAQs**

**Contact Information**

**Resources**
- Business Resources
- Tax Information
- Starting A Business
- International Business
Relations Program

**Customer Alerts**
- Business Identity Theft
- Misleading Business
Solicitations

California Secretary of State Debra Bowen

All people, privacy, Liberty, Speech, Conscience, without discrimination. common good.

| Secretary of State | Administration | Elections | Business Programs | Political Reform | Archives | Registries | Other Services |

## Business Entity Detail

Data is updated to the California Business Search on Wednesday and Saturday mornings. Results reflect work processed through Tuesday, April 16, 2013. Please refer to Processing Times for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity.

| | |
|---|---|
| **Entity Name** | AUBURN LAKE TRAILS PROPERTY OWNERS ASSOCIATION |
| **Entity Number** | C0591204 |
| **Date Filed** | 02/03/1970 |
| **Status** | ACTIVE |
| **Jurisdiction** | CALIFORNIA |
| **Entity Address** | 1400 AMERICAN RIVER TRAIL |
| **Entity City, State, Zip** | COOL CA 95614 |
| **Agent for Service of Process** | KEVIN D HUBRED |
| **Agent Address** | 1400 AMERICAN RIVER TRAIL |
| **Agent City, State, Zip** | COOL CA 95614 |

* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code section 2114 for information relating to service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to Name Availability.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to Information Requests.
- For help with searching an entity name, refer to Search Tips.
- For descriptions of the various fields and status types, refer to Field Descriptions and Status Definitions.

Modify Search    New Search    Printer Friendly    Back to Search Results

---

**Business Entities (BE)**

**Online Services**
- E-File Statements of Information for Corporations
- Business Search
- Processing Times
- Disclosure Search

Main Page

Service Options

Name Availability

Forms, Samples & Fees

Statements of Information (annual/biennial reports)

Filing Tips

Information Requests (certificates, copies & status reports)

Service of Process

FAQs

Contact Information

**Resources**
- Business Resources
- Tax Information
- Starting A Business

**Customer Alerts**
- Business Identity Theft
- Misleading Business Solicitations

---

File   Edit   View   Favorites   Tools   Help

http://kepler.sos.ca.gov/

Business Search - Business ...

100%

common good    privacy    All people. Liberty. Speak without discrimination.

# California Secretary of State Debra Bowen

Secretary of State

| Administration | Elections | Business Programs | Political Reform | Archives | Registries | Other Services |

**Business Entities (BE)**

**Online Services**
- Business Search
- Disclosure Search
- E-File Statements
- Processing Times

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Annual/Biennial Statements**

**Filing Tips**

**Information Requests**
(certificates, copies &
status reports)

**Service of Process**

**FAQs**

**Contact Information**

**Resources**
- Business Resources
- Tax Information
- Starting A Business
- International Business
  Relations Program

**Customer Alerts**
- Business Identity Theft
- Misleading Business
  Solicitations

## Business Entity Detail

Data is updated weekly and is current as of Friday, May 04, 2012. It is not a complete or certified record of the entity.

| | |
|---|---|
| **Entity Name:** | G&P ENTERPRISES, LLC |
| **Entity Number:** | 200700410276 |
| **Date Filed:** | 01/04/2007 |
| **Status:** | ACTIVE |
| **Jurisdiction:** | CALIFORNIA |
| **Entity Address:** | 990 RESERVE DR STE 208 |
| **Entity City, State, Zip:** | ROSEVILLE CA 95678 |
| **Agent for Service of Process:** | EDWARD A TREDER |
| **Agent Address:** | 20955 PATHFINDER RD STE 300 |
| **Agent City, State, Zip:** | DIAMOND BAR CA 91765 |

\* Indicates the information is not contained in the California Secretary of State's database.

\* **Note:** If the agent for service of process is a corporation, the address of the agent may be requested by ordering a status report.

- For information on checking or reserving a name, refer to **Name Availability.**
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to **Information Requests.**
- For help with searching an entity name, refer to **Search Tips.**
- For descriptions of the various fields and status types, refer to **Field Descriptions and Status Definitions.**

Modify Search    New Search    **Printer Friendly**    Back to Search Results

Privacy Statement | Free Document Readers
Copyright © 2012    California Secretary of State

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit 4

# FICTITIOUS BUSINESS NAME STATEMENT
BUSINESS AND PROFESSIONS CODE 17900 ET SEQ.

# FILED

JAN 0 9 2007

Jim McCauley
COUNTY CLERK OF PLACER COUNTY
BY _____
DEPUTY

K. COLLINS

This Space Reserved
For File Stamp

**FILING FEES:**
- $30.00 — FOR FIRST BUSINESS NAME AND FIRST BUSINESS OWNER ON STATEMENT
- $ 5.50 — FOR EACH ADDITIONAL BUSINESS NAME FILED ON SAME STATEMENT AND DOING BUSINESS AT THE SAME LOCATION
- $ 5.50 — FOR EACH ADDITIONAL OWNER IN EXCESS OF ONE OWNER

Mail to: Placer County
Clerk-Recorder
2954 Richardson Drive
Auburn, CA 95603
(530) 886-5610
1-800-488-4308 x 5610

This statement was filed with the Placer County Clerk on date indicated by the file stamp.
*Note:* First publication must start within 30 days from the file date in a Placer County Newspaper. Refer to list provided.

PLEASE READ INSTRUCTIONS ON REVERSE SIDE AND PRINT OR TYPE ONLY. APPLICATON MUST BE COMPLETELY LEGIBLE. WHEN FILING BY MAIL, PROVIDE SELF-ADDRESSED STAMPED ENVELOPE.

**1** STREET ADDRESS, CITY, STATE AND ZIP OF PRINCIPAL PLACE OF BUSINESS IN PLACER COUNTY. LIST ONLY ONE.

3721 DOUGLAS BOULEVARD, SUITE 345, ROSEVILLE CA 95661

**2** FICTITIOUS BUSINESS NAME(S) TO BE FILED

(1) ALLIED TRUSTEE SERVICES    (3)

(2)    (4)

**3** FULL NAME(S) OF REGISTRANT(S), COMPLETE STREET ADDRESS • IN ADDITION TO PHYSICAL ADDRESS, A P.O. BOX MAY BE LISTED FOR MAILING PURPOSES ONLY

| | CITY | STATE | ZIP | PHONE NO. |
|---|---|---|---|---|
| G+P ENTERPRISES, LLC  3721 DOUGLAS BLVD #345 | ROSEVILLE | CA | 95661 | 916-960-5370 |

IF MORE THAN 3 REGISTRANTS – ATTACH ADDITIONAL SHEET SHOWING OWNER INFORMATION.
IF REGISTRANT IS/ARE A CORPORATION, INCLUDE STATE OF INCORPORATION.

**4** BUSINESS CONDUCTED BY — Check only one box

- ☐ A LIMITED PARTNERSHIP
- ☐ AN INDIVIDUAL
- ☐ HUSBAND AND WIFE
- ☐ AN UNINCORPORATED ASSOCIATION OTHER THAN A PARTNERSHIP
- ☒ LIMITED LIABILITY CO, STATE OF CALIFORNIA
- ☐ A GENERAL PARTNERSHIP
- ☐ A BUSINESS TRUST
- ☐ CO-PARTNERS
- ☐ A JOINT VENTURE
- ☐ CORPORATION, STATE OF
- ☐ OTHER

COMPLETE THIS SECTION ONLY IF REGISTRANT IS A CORPORATION
CORPORATION NAME

OFFICER'S NAME AND TITLE

**5** THE REGISTRANT(S) COMMENCED TO TRANSACT BUSINESS UNDER THE FICTITIOUS BUSINESS NAME(S) LISTED ABOVE ON: (FUTURE DATE IS NOT ALLOWED) – PLEASE INSERT N/A IF DATE IS IN FUTURE.

DATE: N/A

THE FILING OF THIS STATEMENT DOES NOT OF ITSELF AUTHO-RIZE THE USE IN THIS STATE OF A FICTITIOUS BUSINESS NAME IN VIOLATION OF THE RIGHTS OF ANOTHER UNDER FEDERAL, STATE, OR COMMON LAW. (SEE SECTION 14411 ET SEQ., BUSI-NESS AND PROFESSIONS CODE.)

**6** SIGNATURE:

*Gary Wisham* (signature)

"I DECLARE THAT ALL INFORMATION IN THIS STATEMENT IS TRUE AND CORRECT." (A REGISTRANT WHO DECLARES AS TRUE INFORMATION WHICH HE OR SHE KNOWS TO BE FALSE IS GUILTY OF A CRIME. (Sec. 17913(c) B&P Code))

NAME – (TYPED OR PRINTED):

7 GARY WISHAM

**NOTICE:**
THIS FICTITIOUS BUSINESS NAME STATEMENT EXPIRES FIVE YEARS FROM THE DATE IT WAS FILED IN THE OFFICE OF THE COUNTY CLERK.

RENEW PRIOR TO: 1-9-2012

I HEREBY CERTIFY THAT THIS COPY IS A CORRECT COPY OF THE ORIGINAL STATEMENT ON FILE IN MY OFFICE.

Jim McCauley
COUNTY CLERK

BY _____ DEPUTY

FILE NO. 07-00078

DISTRIBUTION:  1–FILE WITH COUNTY CLERK
3–FOR NEWSPAPER PUBLICATION (WHEN REQUIRED)
2–FOR BANK AND OTHER REQUIRED NEEDS (CERTIFIED)
4–REGISTRANT'S COPY

REV. 02/05

# PROOF OF PUBLICATION

**STATE OF CALIFORNIA**
**County of Placer**

I am a citizen of the United States and am employed in the County aforesaid. I am over the age of eighteen years and not a party to or interested in the above entitled matter. I am the principal clerk of The Press-Tribune, a newspaper of general circulation printed and published in the County of Placer and which newspaper has been adjudged a newspaper of general circulation by the Superior Court of the County of Placer, State of California, under date of May 5, 1952, by Superior Court order number 17357, that the notice, for which the annexed is printed copy (set in type not smaller than nonpareil) has been published in each regular and entire issue of said newspaper and not in any supplement thereof on the following dates, to-wit:

January 20, 27,

Febuary 3, 10,

In the year of 2007

I certify, under penalty of perjury, that the foregoing is true and correct.

_Cecil G. DeCeglie_
Signature

Dated in Roseville, California

February 10, 2007

---

The following space is reserved for the County Clerk's filing stamp

# FILED

## FEB 1 5 2007

**Jim McCauley**
COUNTY CLERK OF PLACER COUNTY
BY _____
DEPUTY

### PROOF OF PUBLICATION OF

16149326

### 07-00078 FBN Allied Trustee Services

√ 16149326
FILE NO. 07-00078
FILED JAN. 9, 2007
FICTITIOUS BUSINESS
NAME STATEMENT
The following person(s) is (are) doing business as: Allied Trustee Services, 3721 Douglas Boulevard, Suite 345, Roseville, CA 95661
1. G & P Enterprises, LLC, 3721 Douglas Blvd. #345, Roseville, CA 95661
This business is conducted by: Limited Liability Co., State of California
Signed: Gary Wisham
The registrant(s) commenced to transact business under the fictitious business name(s) listed above on: N/A
This statement was filed with the Placer County Clerk on date indicated by file stamp above.
I hereby certify that this copy is a correct copy of the original statement on file in my office.
Jim McCauley, County Clerk
By: K. Collins, Deputy
Refile statement expires Jan. 9, 2012
Published in Roseville Press-Tribune: Jan. 20, 27, Feb. 3, 10, 2007

---

PROOF OF PUBLICATION
**The PRESS TRIBUNE**
188 Cirby Way
Roseville, CA 95678

# FICTITIOUS BUSINESS NAME STATEMENT

Business and Professionals Code §17900 ET SEQ.

**F I L E D**

January 13, 2012

Jim McCauley

COUNTY CLERK OF PLACER COUNTY

BY *C. Wheeler*

C. WHEELER, DEPUTY

This Space Reserved for File Stamp

**FILING FEES:**

$30.00 - FOR FIRST BUSINESS NAME AND FIRST BUSINESS OWNER ON STATEMENT.

$ 5.50 - FOR EACH ADDITIONAL BUSINESS NAME FILED ON SAME STATEMENT AND DOING BUSINESS AT THE SAME LOCATION.

$ 5.50 - FOR EACH ADDITIONAL OWNER IN EXCESS OF THE FIRST OWNER.

Mail to:   Placer County Clerk-Recorder

2954 Richardson Drive, Auburn, CA 95603

(530) 886-5610 or Toll free (800) 488-4308 ext. 5610

IF YOUR BUSINESS IS NOT LOCATED IN PLACER COUNTY HAVE YOU FILED AN FBN WHERE YOUR PRINCIPAL PLACE OF BUSINESS IS PHYSICALLY LOCATED?   YES ☐   NO ☐

PLEASE READ INSTRUCTIONS ON REVERSE SIDE AND PRINT OR TYPE ONLY. APPLICATION MUST BE COMPLETELY LEGIBLE. WHEN FILING BY MAIL PLEASE PROVIDE A SELF-ADDRESSED STAMPED ENVELOPE.

**1.** FICTITIOUS BUSINESS NAME(S) TO BE FILED. (Must be typed or printed legibly)

1) **Allied Trustee Services**

2)

3)

4)

**2.** STREET ADDRESS OF PRINCIPAL PLACE OF BUSINESS.

| STREET ADDRESS | CITY | STATE | ZIP CODE | COUNTY OF PRINCIPAL PLACE OF BUSINESS |
|---|---|---|---|---|
| 990 Reserve Drive, Suite 208 | Roseville | CA | 95678 | Placer |

**3.** REGISTRANT INFORMATION - PHYSICAL ADDRESS IS REQUIRED, PO BOX MAY BE ADDED FOR MAILING.

FULL NAME OF REGISTRANT/OWNER

**G&P Enterprises, LLC**

TELEPHONE # **(916) 960-5370**

| REGISTRANT'S ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 990 Reserve Drive, Suite 208 | Roseville | CA | 95678 |

FULL NAME OF REGISTRANT/OWNER

TELEPHONE #

| REGISTRANT'S ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|

FULL NAME OF REGISTRANT/OWNER

TELEPHONE #

| REGISTRANT'S ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|

IF MORE THAN 3 REGISTRANTS/OWNERS, ATTACH ADDITIONAL SHEETS SHOWING OWNER INFORMATION.

IF REGISTRANT IS A CORPORATION OR LLC, INCLUDE STATE OF INCORPORATION BELOW.

**4.** BUSINESS CONDUCTED BY: Check only one box

☐ A LIMITED PARTNERSHIP

☐ AN INDIVIDUAL

☐ HUSBAND AND WIFE

☐ TRUST

☐ AN UNINCORPORATED ASSOCIATION OTHER THAN PARTNERSHIP

☒ A LIMITED LIABILITY COMPANY, STATE OF CA

☐ CORPORATION, STATE OF _____

☐ STATE OR LOCAL REGISTERED DOMESTIC PARTNERS

☐ A GENERAL PARTNERSHIP

☐ CO-PARTNERS

☐ A JOINT VENTURE

☐ A LIMITED LIABILITY PARTNERSHIP

**5.** BUSINESS COMMENCEMENT DATE:

THE REGISTRANT(S) COMMENCED TO TRANSACT BUSINESS UNDER THE FICTITIOUS BUSINESS NAME(S) LISTED ABOVE ON: (A FUTURE DATE IS NOT ALLOWED. PLEASE INSERT N/A IF DATE IS IN FUTURE.)

DATE: **March 1, 2007**

THE FILING OF THIS STATEMENT DOES NOT OF ITSELF AUTHORIZE THE USE IN THIS STATE OF A FICTITIOUS BUSINESS NAME IN VIOLATION OF THE RIGHTS OF ANOTHER UNDER FEDERAL, STATE OR COMMON LAW. (SEE B&P CODE §14411 ET SEQ.)

**6.** NAME: (PRINT NAME OF PERSON SIGNING. IF CORPORATION, ALSO PRINT CORPORATE TITLE OF OFFICER. IF LLC, ALSO PRINT TITLE OF OFFICER OR MANAGER.)

**Gary Wisham, Director of Operations**

**7.** "I DECLARE THAT ALL INFORMATION IN THIS STATEMENT IS TRUE AND CORRECT." (A REGISTRANT WHO DECLARES AS TRUE INFORMATION THAT WHICH HE OR SHE KNOWS TO BE FALSE IS GUILTY OF A MISDEMEANOR.) B&P Code §17913(c).

SIGNATURE: *Gary Wisham*

NOTICE: IN ACCORDANCE WITH SUBDIVISION (a) OF §17920, A FICTITIOUS NAME STATEMENT GENERALLY EXPIRES AT THE END OF FIVE YEARS FROM THE DATE ON WHICH IT WAS FILED IN THE OFFICE OF THE COUNTY CLERK, EXCEPT, AS PROVIDED IN SUBDIVISION (b) OF §17920, WHERE IT EXPIRES 40 DAYS AFTER ANY CHANGE IN THE FACTS SET FORTH IN THE STATEMENT PURSUANT TO §17913 OTHER THAN A CHANGE IN THE RESIDENCE ADDRESS OF A REGISTERED OWNER. A NEW FICTITIOUS BUSINESS NAME STATEMENT MUST BE FILED BEFORE THE EXPIRATION DATE.

I HEREBY CERTIFY THAT THIS COPY IS A CORRECT COPY OF THE ORIGINAL STATEMENT ON FILE IN MY OFFICE.

**Jim McCauley**

County Clerk

BY: _____

Deputy

RENEW PRIOR TO: **01/13/2017**

FILE NUMBER: **12-00098**

DISTRIBUTION:

1 - FILE COUNTY CLERK

2 - FOR NEWSPAPER PUBLICATION (WHEN REQUIRED)

3 - FOR BANK AND OTHER REQUIRED NEEDS (CERTIFIED)

4 - REGISTRANT'S COPY

16437930

P917315 FBN 12-00098 ALLIED TRUSTEE SERVICES

16437930
P917315
FILE NO. 12-00098
FILED JANUARY 13, 2012
FICTITIOUS BUSINESS
NAME STATEMENT
The following person(s) is (are)
doing business as: Allied Trustee
Services, 990 Reserve Drive,
Suite 208, Roseville CA 95678
1. G&P Enterprises, LLC, 990
Reserve Drive, Suite 208, Rose-
ville CA 95678
This business is conducted by:
Corporation, State of California
Signed: Gary Wisham, Director
of Operations
The registrant(s) commenced to
transact business under the ficti-
tious business name(s) listed
above on: March 1, 2007
This statement was filed with
the Placer County Clerk on date
indicated by file stamp above.
I hereby certify that this copy is
a correct copy of the original
statement on file in my office.
Jim McCauley, County Clerk
By: C. Wheeler, Deputy
Refile statement expires
1/13/2017
PUBLISHED IN ROSEVILLE
PRESS TRIBUNE: 2/1, 8, 15, 22,
2012

# FILED

FEB 2 4 2012

Jim McCauley
COUNTY CLERK OF PLACER COUNTY
BY
DEPUTY
The above space is reserved for Court/County Filed Date Stamp

## PROOF OF PUBLICATION
(2015.5 C.C.P.)

## STATE OF CALIFORNIA
## County of Placer

I am a citizen of the United States and employed by a publication
in the County aforesaid. I am over the age of eighteen years, and
not a party to the mentioned matter. I am the principal clerk of
the **Roseville Press Tribune**, a newspaper of general
circulation, in the **City of Roseville**, which is printed and
published in the **County of Placer**. This newspaper has been
judged a newspaper of general circulation by the Superior Court
of the State of California, in and for the **County of Placer**, on the
date of November 13, 1951 (Case Number 16996). The notice,
of which the attached is a printed copy (set in type not smaller
than nonpareil) has been published in each regular and entire
issue of said newspaper and not in any supplement thereof on
the following dates, to-wit:

FEBRUARY 1, 8, 15, 22

I certify, under penalty of perjury, that the foregoing is true and
correct.

Terry Clark

Dated in Roseville, California

FEBRUARY 22, 2012

**PROOF OF PUBLICATION**
**ROSEVILLE PRESS TRIBUNE**
**188 Cirby Way**
**Roseville, CA 95678**

# Exhibit 5

ADVERSARY COMPLAINT

# AUBURN LAKE TRAILS PROPERTY OWNERS ASSOCIATION



## 2012/2013 SUMMARY BUDGET
## AND STATEMENT OF SIGNIFICANT POLICIES



*Aerial photo of Auburn Lake Trails by Ceron Marcom*

# May 1, 2012

**AUBURN LAKE TRAILS PROPERTY OWNERS ASSOCIATION**
**2012/2013 SUMMARY BUDGET**
**AND STATEMENT OF SIGNIFICANT POLICIES**
May 1, 2012

Dear ALT Members:

Enclosed is the 2012/2013 Summary Budget for the Auburn Lake Trails Property Owners Association (ALTPOA). This budget establishes the estimated revenue and the projected level of expenditures for the Associations for the next calendar year – July 1, 2012 through June 30, 2013. The pro-forma operating budget is available at the Association office upon request. The monthly assessments for 1104 lots will remain at $169.00 per month ($2028.00 per year) and 3 restricted lots remain at $33.80 per month ($405.60 per year).

Historically, the Membership votes to apply any excess membership income over expenses for the fiscal year ending June 30th, to the subsequent fiscal year's operating budget, as allowed by Revenue Ruling 70-604, which will be decided on again at the annual membership meeting held on May 12, 2012. As of the date of this letter, the June 30, 2012 Y/E surplus is unknown; however, the 2012/2013 Pro-Forma budget reflects a budgeted loss of $120,000.00, to reflect application of a portion of the actual surplus (as of April, 2012) to reduce the amount of assessments otherwise due in the 2012/2013 budget year.

**A.    Replacement Reserves**

Enclosed you will find disclosure forms for the ALTPOA Common Areas and Facilities. These forms are the California Homeowner Summary; the state-mandated California Assessment and Reserve Study Disclosures; and the 30-Year Reserve Funding Plan. These disclosures provide a brief review of the funding status for future major repairs and replacements required. Copies of the complete reserve study are available for review at the Association office.

Current California law (Civil Code 1365) requires the Association to calculate the percentage of future major repairs and replacements funded. This calculation is made by dividing "the current amount of accumulated cash reserves set aside to repair, replace, restore, or maintain major components" by "the current estimate of the amount of cash reserve necessary to repair, replace, restore, or maintain the major components." The California Homeowner Summaries disclose these percentages.

The reserve allocation is an estimation of the cost to replace (and in some instances, repair) an item over an estimated life expectancy with normal wear and tear, and does not anticipate or include amounts for vandalism, theft, accident or unforeseeable occurrences (Acts of Nature). The estimated remaining life of each item listed in the Homeowner Summary varies depending on when the improvements were originally installed and the current condition of each component.

In 2012, the Board of Directors (Board) coordinated with Browning Reserves Group to update current year expenses for each component in the reserve study. The study reflects the cash flow methodology for funding, based on reasonable replacement factors and inflation, with a useful life of 30 years or less. The 2012 reserve budget reflects a variety of reserve funding calculations.

The regular monthly assessments include a reserve allocation to finance the periodic replacement and maintenance of these major reserve components without the need for special assessments. The Association does not anticipate the need to levy a special assessment in the 2012/2013 budget year.

**B.    Collections Policy**

**Delinquent Assessment Collection Policy Statement**

The Auburn Lake Trail's Property Owners Association Delinquent Assessment Collection Policy is presented herein, and is generally authorized by CC&R's Article IV Assessments, Section 9 Collection of assessments; Enforcement of Liens.

Failure to pay the Regular, Special and Special Individual Assessments when due creates a difficult cash flow problem for the Association and is unfair to the many owners who

pay on time. Therefore, the Board of Directors with regards to all delinquent assessment accounts has enacted the following procedures:

1.  Regular Assessments are due, in advance, on the first day of each assessment period, and delinquent if not received, in full, by the Association within fifteen (15) days after the due date thereof. Special and Special Individual Assessments are due on the date(s) specified upon imposition, and each installment thereof shall be delinquent if not received by the Association within fifteen (15) days after it first became due. A late charge of ten dollars ($10.00) shall be automatically levied and due on any such delinquent assessment.

2.  Interest shall be applied equally to all delinquent accounts, for amounts due on all such accounts, once due and unpaid for thirty (30) days, at the rate of 12% per annum.

3.  The Association will mail a series of collection letters to all owners with delinquent assessment payments. The first collection letter will be mailed via first class mail. The second collection letter will be mailed VIA CERTIFIED MAIL. This second letter, will be mailed after an assessment payment is sixty (60) days delinquent, and will offer a payment plan option. Auburn Lake Trails has developed a written payment plan. Arrearages may be amortized up to six months following the postmark on the Association's second collection letter in which to contact the Association and meet in executive session with the Board which may authorize a payment plan agreement in order to avoid assignment to collection.

4.  An owner may, but is not obligated to, pay under protest any disputed charge or sum levied by the association, including, but not limited to, an assessment, fine, penalty, late fee, collection cost, or monetary penalty imposed as a disciplinary measure, and by so doing, specifically reserve the right to contest the disputed charge or sum in court or otherwise.

5.  If any portion of any such assessment or late charge remains unpaid sixty (60) days after the original due date thereof, the account will be referred to collection, whereby Allied Trustee Services, Inc. ("Allied") will be presented with a Declaration of Default detailing the amounts then delinquent together with a $75 collection administration charge added. Allied will prepare a "Letter of Intent" to file a Notice of Delinquent Assessment ("Lien") required by Civil Code 1367.1. The Trustee Service will charge an additional fee to accept the delinquent account and prepare the first letter. Other greater costs will be added to the account after 20 days after the original due date thereof if Allied does not receive payment in full, and a Lien will be filed and recorded with the County of El Dorado, California. Please be advised that the Association has the right to collect, through Allied, all reasonable costs of collection per California Civil Code 1367.1 and by CC&R's Article IV, Section 1(c).

6.  In the event that any payment is not paid within sixty (60) days after the original due date thereof, the owner shall be notified of the delinquency and that the right of the use and enjoyment of the recreational common areas and common facilities, including rental/lease of Association facilities, by the owner, the owner's family members, tenants and guests shall be suspended until payment is made so that no delinquency exists. The owner may request a hearing before the Auburn Lake Trails Board of Directors by delivering such a request, in writing to the Association office within 15 days after the notice of delinquency is provided herein. The meeting will be held in executive session. Alternately, the owner may file written explanation of their objections to the debt within 15 days after the notice of delinquency is provided herein to which the Board is obligated to respond in writing.

7.  All amounts, and all other assessments and related charges thereafter due to the Association until all such amounts are paid, must be paid in full and the Association shall not be required to accept any partial or installment payments from the date of the institution of an action to collect delinquent amounts (assignment to Allied) to the time that all such amounts are paid in full.

8.  If the Trustee Service has not received all such amounts within thirty (30) days after mailing of their pre-lien letter, a Lien will be prepared and recorded as to the

delinquent Lot and the owne[...]
will be added to the total de[...]

9.  If all such amounts have no[...]
the recordation of such Lie[...]
further advance notice, pro[...]
remedies as the Association[...]
without limitation, non-jud[...]
suit for money damages, a[...]

10. All payments received by [...]
directed to the oldest asse[...]
balances are paid, and the[...]
otherwise specified by wr[...]

11. The Association shall imp[...]
as non-negotiable, insuff[...]

12. All above-referenced not[...]
mailing address provided[...]

13. The mailing address for [...]
routine assessment paym[...]
American River Trail, C[...]

14. The Board of Directors [...]
or on a paragraph-by-pa[...]

15. Out of fairness to all th[...]
consistently, uniformly[...]
Treasurer and the Boar[...]
Accounts Receivable R[...]
Directors, acting as a g[...]
from this policy, on a c[...]
in writing and from the[...]
TREASURER, 1400 A[...]

**NOTICE O[...]**

This notice outlines some of[...]
common interest developme[...]
the section of Civil Code in[...]
in this notice applies to lien[...]
consult a lawyer if you disp[...]

Owners may submit a secon[...]
request by an owner identif[...]
the Association shall send [...]
address provide by the Ow[...]
mailed to the Association [...]
The Owner may identify o[...]
address is identified to sen[...]
Association received the n[...]

**AS[...]**
Assessments become deli[...]
documents provide for a l[...]
result in the loss of an ow[...]
either as a result of a cou[...]
often referred to as nonju[...]
2006, an Association may[...]
if the amount of the deli[...]
assessments, late charge[...]
than one thousand dolla[...]
excess of one thousand [...]
delinquent, an Associati[...]
conditions set forth in S[...]
judicial foreclosure, the[...]

delinquent Lot and the owner(s) thereof, and all resulting collection fees and costs will be added to the total delinquent amount.

9. If all such amounts have not been received by Allied, in full, within 30 days after the recordation of such Lien, the Association, acting through Allied, may, without further advance notice, proceed to take any and all additional enforcement remedies as the Association, in its sole discretion, deem appropriate, including, without limitation, non-judicial foreclosure of such Lien, judicial foreclosure, or suit for money damages, all at the expense of the property owner(s).

10. All payments received by the Association, regardless of the amount paid, will be directed to the oldest assessment balances first, until which time all assessment balances are paid, and then to late charges, interest and cost of collection unless otherwise specified by written agreement.

11. The Association shall impose a return check charge of $25 for all checks returned as non-negotiable, insufficient funds or any other reason.

12. All above-referenced notices will be mailed to the owner(s) of record at the last mailing address provided in writing to the Association by such owner(s).

13. The mailing address for overnight payment of assessments is the same as that for routine assessment payments unless otherwise noted. The mailing address is 1400 American River Trail, Cool, CA, 95614.

14. The Board of Directors of the Association may revise this policy, either generally or on a paragraph-by-paragraph basis, if it finds good cause to do so.

15. Out of fairness to all the owners who pay on time, this policy will be applied consistently, uniformly and fairly throughout the collection process. The Treasurer and the Board of Directors will receive and review the monthly Accounts Receivable Report. Only the Treasurer acting alone, or the Board of Directors, acting as a group, will be authorized to review and consider deviations from this policy, on a case-by-case basis, and only then for good reasons, received in writing and from the owner in a timely manner, addressed to: ALT TREASURER, 1400 American River Trail, Cool, CA, 95614.

### CA CIVIL CODE 1365.1
### NOTICE OF ASSESSMENTS AND FORECLOSURE

This notice outlines some of the rights and responsibilities of owners of property in common interest developments and the Associations that manage them. Please refer to the section of Civil Code indicated for further information. A portion of the information in this notice applies to liens recorded on or after January 1, 2003. You may wish to consult a lawyer if you dispute an assessment.

Owners may submit a secondary address to the Association. Upon receipt of a written request by an owner identifying a secondary address for purpose of collection notices, the Association shall send additional copies of any notices required to the secondary address provide by the Owner. The Owners request shall be in writing and shall be mailed to the Association in a manner that shall indicate the Association has received it. The Owner may identify or change its address at any time, provide that if a secondary address is identified to send noticed to the indicated secondary address from the point the Association received the request.

### ASSESSMENT AND FORECLOSURE

Assessments become delinquent 15 days after they are due, unless the governing documents provide for a longer time. The failure to pay Association assessments may result in the loss of an owner's property through foreclosure. Foreclosure may occur either as a result of a court action, known as judicial foreclosure or without court action, often referred to as nonjudicial foreclosure. For liens recorded on and after January 1, 2006, an Association may not use judicial or nonjudicial foreclosure to enforce that lien if the amount of the delinquent assessments or dues, exclusive of any accelerated assessments, late charges, fees, attorney's fees, interest, and costs of collection, is less than one thousand eight hundred dollars ($1,800). For delinquent assessments or dues in excess of one thousand eight hundred dollars ($1,800) or more than 12 months delinquent, an Association may use judicial or nonjudicial foreclosure subject to the conditions set forth in Section 1367.4 of the Civil Code. When using judicial or non-judicial foreclosure, the Association records a lien on the owner's property. The owner's

property may be sold to satisfy the lien if the amounts secured by the lien are not paid. (Sections 1366, 1367.1, and 1367.4 of the Civil Code)

In a judicial or nonjudicial foreclosure, the Association may recover assessments, reasonable costs of collection, reasonable attorney's fees, late charges, and interest. The Association may not use nonjudicial foreclosure to collect fines or penalties, except for costs to repair common areas damaged by a member or a member's guests, if the governing documents provide for this. (Sections 1366 and 1367.1 of the Civil Code). The Association must comply with the requirements of Section 1367.1 of the Civil Code when collecting delinquent assessments. If the Association fails to follow these requirements, it may not record a lien on the owner's property until it has satisfied those requirements. Any additional costs that result from satisfying the requirements are the responsibility of the Association. (Section 1367.1 of the Civil Code).

At least 30 days prior to recording a lien on an owner's separate interest, the Association must provide the owner of record with certain documents by certified mail, including a description of its collection and lien enforcement procedures and the method of calculating the amount. It must also provide an itemized statement of the charges owed by the owner. An owner has a right to review the Association's records to verify the debt. (Section 1367.1 of the Civil Code) If a lien is recorded against an owner's property in error, the person who recorded the lien is required to record a lien release within 21 days, and to provide an owner certain documents in this regard. (Section 1367.1 of the Civil Code)

The collection practices of the Association may be governed by state and federal laws regarding fair debt collection. Penalties can be imposed for debt collection practices that violate these laws.

### PAYMENTS

When an owner makes a payment, he or she may request a receipt, and the Association is required to provide it. On the receipt, the Association must indicate the date of payment and the person who received it. The Association must inform owners of a mailing address for overnight payments. (Section 1367.1 of the Civil Code) An owner may dispute an assessment debt by submitting a written request for dispute resolution to the Association as set forth in Article 5 (commencing with Section 1368.810) of Chapter 4 of Title 6 of Division 2 of the Civil Code. In addition, an Association may not initiate a foreclosure without participating in alternative dispute resolution with a neutral third party as set forth in Article 2 (commencing with Section 1369.510) of Chapter 7 of Title 6 of Division 2 of the Civil Code, if so requested by the owner. Binding arbitration shall not be available if the Association intends to initiate a judicial foreclosure.

An owner is not liable for charges, interest, and costs of collection, if it is established that the assessment was paid property on time. (Section 1367.1 of the Civil Code)

### MEETING AND PAYMENT PLANS

An owner of a separate interest that is not a timeshare may request the Association to consider a payment plan to satisfy a delinquent assessment. The Association must inform owners of the standards for payment plans, if any exist. (Section 1367.1 of the Civil Code).

The board of directors must meet with an owner who makes a proper written request for a meeting to discuss a payment plan when the owner has received a notice of a delinquent assessment. These payment plans must conform with the payment plan standards of the Association, if they exist. (Section 1367.1 of the Civil Code).

(c) A member of an Association may provide written notice by facsimile transmission, United States mail, or E-mail to the Association of a secondary address. If a secondary address is provided, the Association shall send any and all correspondence and legal notices required pursuant to this article to both the primary and the secondary address.

C. Rules Enforcement Procedures and Schedule of Monetary Penalties

### AUBURN LAKE TRAILS PROPERTY OWNERS ASSOCIATION
### GOVERNING DOCUMENT ENFORCEMENT PROCEDURES
### COMPLIANCE PROCEDURE

2012 BUDGET INSERT — Page

**PART I.  INTRODUCTION TO AUBURN LAKE TRAILS PROPERTY OWNERS ASSOCIATION GOVERNING DOCUMENT ENFORCEMENT PROCEDURES**

The Auburn Lake Trails Property Owners Association (hereafter referred to as either "Auburn Lake Trails", "ALT", or the "Association") is a nonprofit corporation organized to own, maintain, repair, and replace the Common Areas and Common Facilities located within the Association for the benefit and enjoyment of its Owners and Residents. The Association also administers and enforces the rules, regulations and property use restrictions by virtue of the Association's Governing Documents. The most important of these documents is the Second Restated Declaration of Covenants, Conditions and Restrictions (the "CC&Rs ") which include property use restrictions and forms part of the chain of title to every lot within the Association.

When violations of the governing documents are identified, the Association acts as the enforcement arm of the members of the Association. In certain matters (e.g. overdue assessment payments), the Association has authority to enforce the stated requirements. In other matters, the Association attempts to gain compliance through informal means, but may then take the case to the Covenants Committee (the "Committee"), a group of ALT property owners appointed by the Board of Directors. The Committee takes on the role similar to that of a local ordinance enforcement body. The goal of the Committee is to preserve the integrity of Auburn Lake Trails as a planned community of Owners and Residents who share a common interest and respect for the beauty, ambiance and natural surroundings of the development.[1]

Whenever possible, the Association endeavors to obtain voluntary compliance with the governing documents by Owners and Residents. To that end, these Enforcement Procedures establish a progressive structure of Governing Document enforcement, beginning with efforts at informal dispute resolution (Part V, below). If these informal efforts do not successfully resolve the matter, these procedures call for more formal alternative dispute resolution (commonly referred to as" ADR") proceedings to begin (Parts VI and VII, below). Finally, if an Owner or Resident is determined to be in violation of the Governing Documents at the conclusion of the Association's ADR process, or if circumstances warranting use of Summary Enforcement Procedures exist (see Part IV, below), the Association is authorized to seek enforcement through a formal court action.

The progressive sequence of enforcement remedies can be summarized as follows: The process begins with an investigation of alleged Governing Document violations by appropriate members of the Association staff. If an initial determination is made that a violation exists or has occurred, staff will issue a Courtesy Notice to the Owner or Resident who is alleged to be in violation of the Governing Documents. If no response is forthcoming, this notice will be followed by informal efforts to resolve apparent Violations of the Governing Documents without the need for any formal hearings or expensive legal proceedings.

Governing Document enforcement situations should never go further than this informal dispute resolution process. However, some cases can only be resolved by resorting to more formal procedures, including court actions, if necessary. Regardless of the manner in which disputes are ultimately resolved, it is the Association's intent to follow dispute resolution procedures, which are fair and reasonable.

If Owners and Residents are familiar with the requirements of the governing documents, and the Association discharges its responsibilities uniformly and fairly, the instances in which the use of formal enforcement procedures is necessary should be the exception, rather than the rule.  To that end, the Association intends to increase the awareness of all Owners and Residents of the rules through the publication of these revised procedures (last updated in 1985).  These Enforcement Procedures are intended to establish a fair, uniform and consistent process for addressing and resolving apparent violations of the community's Governing Documents.

---

[1] Most matters involving the construction or remodeling of structures on residential lots are governed by the Association's Design Committee. The Design Committee is also comprised of ALT property owners appointed by the Board of Directors. The Design Committee enforces certain portions of the CC&Rs through its own procedures, which are adopted by the Board of Directors. Matters governed by the Design Committee are therefore not generally applicable to these Enforcement Procedures.

**PART II.    GLOSSARY OF TERMS USED IN THESE ENFORCEMENT PROCEDURES**

(A) **Appeals Petition.** "Appeals Petition" means the petition that a Respondent must file if he or she wishes to appeal a determination that the Respondent has violated the CC&Rs or another Governing Document of the Association.

(B) **Association.** "Association" means the Auburn Lake Trails Property Owners Association, a California nonprofit mutual benefit corporation.  Under the CC&Rs and California State law (primarily the Davis-Stirling Common Interest Development Act), the Association is responsible for, among other things, reviewing and approving residential construction and improvement projects through its Design Committee, and for enforcing the CC&R's property use restrictions in a uniform and nondiscriminatory fashion.

(C) **Board.** "Board" or "Board of Directors" means the Board of Directors of the Association.  Whenever in these Enforcement Procedures reference is made to the Association taking action, that reference is intended to refer to action by or under the ultimate direction and control of the Board of Directors, as required by law.  However, these procedures delegate various duties and responsibilities in the progressive enforcement process to management and the Covenants Committee.

(D) **CC&Rs.** "CC&Rs" means the Second Restated Declaration of Covenants, Conditions and Restrictions of Auburn Lake Trails, which are recorded in the chain of title to all lots within the development.

(E) **Complainant.** "Complainant" means any person who lodges a formal Complaint alleging that another Owner or Resident of the Association has violated the CC&R property use restrictions or any other provisions of the Governing Documents.  The Association may issue a Complaint on its own volition, and in such circumstances the term "Complainant" shall refer to the Association.

(F) **Complaint.** "Complaint" means a formal complaint issued by the Association or any other Complainant who feels that another Owner or Resident of Auburn Lake Trails has violated the property use restrictions of the CC&Rs or any other provisions of the Governing Documents.

(G) **Courtesy Notice.** "Courtesy Notice" means the initial notice that is given to an Owner or Resident who appears to be engaging in activity, which violates the Governing Documents.

(H) **Covenants Committee.** "Covenants Committee" or "Committee" refers to the Committee appointed by the Board of Directors (from among the Association's membership) to hear and decide any Governing Document enforcement cases that require a hearing.

(I) **Design Committee.** "Design Committee" means the Association's Design Committee. The Design Committee is responsible for administering the Association's responsibilities to review and approve any construction or property improvement projects as described in the CC&Rs.

(J) **Enforcement Procedures.** "Enforcement Procedures" means this booklet of procedures, as the same may be amended from time to time. The Enforcement Procedures are designed to establish objective and uniform procedures for resolving disputes involving apparent violations of the Governing Documents of the Association.

(K) **Final Notice.** "Final Notice" means the notice issued to an Owner or Resident who is alleged to have violated the Governing Documents, and who has failed to correct the violation(s) via the informal resolution process.

(L) **Governing Documents.** "Governing Documents" is a collective term, which refers to the CC&RS, the Articles of Incorporation, and Bylaws of the Association, and to any rules or procedures, adopted by the Board of Directors.

(M) **Notice of Hearing.** "Notice of Hearing" means the notice that is issued to a Respondent who has failed to respond to either the Courtesy Notice(s) or the Final Notice.  The Notice of Hearing begins the formal enforcement process.

(N) **Owner.** "Owner" m[...]
a lot or parcel within
Trails.

(O) **Request for Hearin[g]**
presented by a Respo[...]
has been the subject [...]
Hearing requests tha[t]
before the Covenants [...]

(P) **Resident.** "Resident [...]
Trails.

(Q) **Respondent.** "Respo[...]
who is alleged to hav[e]
Governing Document[s]

(R) **Summary Enforcen[...]**
necessary or appropr[...]
without going throug[h]
procedures described [...]

(S) **Violation.** "Violatio[n...]
day, which violates t[...]
violation involves a [...]
violation shall be co[...]
condition or situatio[n]
Violation continues f[...]
may include one com[...]
long as the Violation [...]

**PART III.    AUTHORIT[Y]**

Acting pursuant to Article XII [...]
Auburn Lake Trails hereby ad[...]
further refine and implement t[...]
enforcement actions involving [...]
Enforcement Procedures inclu[...]
Covenants Committee for the [...]
of Directors, all pursuant to A[...]
Procedures are intended to con[...]
Civil Code Section 1363.810 t[...]
provisions found in Article XI[...]

**PART IV.    SUMMARY [...]**

4.1  **Circumstances Giving [...]**
circumstances described [...]
immediate enforcement a[...]
in violation of the Gover[...]
Association can act with[...]
a hearing.

The circumstances in which su[...]
Violations of the Governing D[...]

(B) an immediate and unr[...]
enjoyment of neighbo[...]

(C) a traffic, fire or other [...]

(D) a threat of material da[...]
Common Facilities;

(E) a violation of the Gov[...]
material question reg[...]
has, in fact, occurred [...]
violations)

(F) any conduct for whic[...]
Association's fine sch[...]

(N) **Owner.** "Owner" means the person or persons who are the owners of record of a lot or parcel within any of the subdivision units comprising Auburn Lake Trails.

(O) **Request for Hearing.** "Request for Hearing" means the request that is presented by a Respondent who has received notice of a fine or penalty, or who has been the subject of Summary Enforcement Procedures. The Request for Hearing requests that the Association schedule a formal hearing on the matter before the Covenants Committee pursuant to Part VI, below.

(P) **Resident.** "Resident" means a tenant of a residential lot within Auburn Lake Trails.

(Q) **Respondent.** "Respondent" means an Owner or Resident of Auburn Lake Trails who is alleged to have violated one or more provisions of the CC&Rs or other Governing Documents.

(R) **Summary Enforcement Procedures.** Refers to those situations in which it is necessary or appropriate for the Association to initiate enforcement procedures without going through the progressive sequence of the notice and hearing procedures described in these Enforcement Procedures.

(S) **Violation.** "Violation means a single act or omission, occurring on a single day, which violates the governing documents of the Association. If the violation involves a static or relatively constant condition or situation, the violation shall be considered to have occurred only once on any day the condition or situation exists or continues. If the detrimental effect of a Violation continues for additional days, discipline imposed by the Association may include one component for the violation and a per diem component for so long as the Violation continues.

## PART III.   AUTHORITY FOR ADOPTION OF PROCEDURES

Acting pursuant to Article XIII, section 6 of the CC&Rs, the Board of Directors of Auburn Lake Trails hereby adopts the following rules, regulations, and procedures to further refine and implement the due process requirements for disciplinary and enforcement actions involving alleged Violations of the Governing Documents. These Enforcement Procedures include rules of procedure, which have been adopted by the Covenants Committee for the conduct of its hearings, and hereby adopted by the Board of Directors, all pursuant to Article XIII, Section 7, of the CC&Rs. These Enforcement Procedures are intended to comply with the alternative dispute resolution requirements of Civil Code Section 1363.810 thru 1363.850 and to supplement the enforcement provisions found in Article XIII of the CC&Rs.

## PART IV.   SUMMARY ENFORCEMENT PROCEDURES

4.1 **Circumstances Giving Rise to Summary Enforcement Procedures.** Under the circumstances described in this Part IV, the Association is empowered to initiate immediate enforcement action against any Owner or Resident who is alleged to be in violation of the Governing Documents. In situations covered by this part, the Association can act without first giving notice to the alleged violator or conducting a hearing.

The circumstances in which summary enforcement action is authorized include Violations of the Governing Documents, which involve any of the following:

(B) an immediate and unreasonable infringement of, or threat to, the safety or quiet enjoyment of neighboring Owners or Residents;

(C) a traffic, fire or other safety hazard;

(D) a threat of material damage to, or destruction of, the Common Areas or Common Facilities;

(E) a violation of the Governing Documents that is of such a nature that there is no material question regarding the identity of the violator, or whether a Violation has, in fact, occurred (such as late payment of assessments or parking violations)

(F) any conduct for which a fixed fine or penalty has been established under the Association's fine schedule (see Part VIII, below); or

(G) Situations in which immediate injunctive relief is needed to preserve the status quo and the Association's ability to effectively enforce the Governing Documents.

4.2 **Remedies Available To Association in Response to Summary Enforcement Situations.** If summary enforcement remedies are appropriate, the Board or its duly authorized agents may undertake immediate corrective or disciplinary action. Such action may include, without limitation:

(A) **Imposition of Fines.** The imposition of a fine pursuant to the Association's published fine schedule (see Part VIII, below);

(B) **Intervention of Law Enforcement.** The pursuit of other corrective action as may be considered necessary or appropriate under the circumstances in order to avoid a breach of the peace or continuation of a nuisance or hazardous activity, including, but not limited to, the involvement of law enforcement personnel;

(C) **Referral to Legal Counsel.** Referral of the matter by the Association to an attorney in order to seek appropriate legal relief, including, but not limited to, court action to obtain a temporary restraining order or preliminary injunction in order to preserve the status quo pending conduct and completion of the Association's hearing procedures in accordance with Part VI, below; or

(D) **Expedited Hearing Procedures.** In lieu of beginning the process of progressive enforcement with the informal dispute resolution procedures described in Part V, below, the Association can immediately set the matter for a formal hearing pursuant to Part VI, below.

4.3. **Respondent's Right To Demand A Hearing.** If an Owner or Resident who is the subject of immediate disciplinary action desires a hearing on the matter, he or she may tender to the Association a written Request for a Hearing (Appendix E). To be timely, the Request for a Hearing must be received at the Association office within five (5) days following the date that summary enforcement action is actually taken or imposed.[2] A hearing shall then be scheduled before the Association's Covenants Committee not more than fifteen (15) days following receipt of the Respondent's Request for a Hearing.

Under such circumstances, any fine imposed pursuant to the Association's fine schedule shall be due and payable only if affirmed by the Covenants Committee. Hearings shall be conducted in accordance with section 6.2, below. If a Request for a Hearing is not received within five (5) days following the date of the summary action, the action shall be deemed final.

Note: The requirement that the Association conduct a hearing in response to a Respondent's Request for a Hearing following summary enforcement action may be modified or eliminated by the action of law enforcement personnel pursuant to section 4.2(B), above, or by the terms of any court order issued pursuant to section 4.2(C), above.

_____

2  In some cases, such as those involving traffic citations, the summary enforcement action of the Association does not actually impose the fine, but instead establishes a recommended fine, subject to review by the Covenants Committee. In these cases, the Notice of Violation contains the recommended fine, and a date by which the violator must request a hearing on the citation. If no hearing is requested by the date specified, then the fine is imposed, and is due and payable by a specific date set forth in the Notice of Violation.

## PART V.   INFORMAL DISPUTE RESOLUTION

5.1. Initiation of Informal Dispute Resolution Process. Any Owner, Resident, or staff member of the Association who observes or learns of a possible violation of the governing documents may initiate the informal dispute resolution process. The person may deal directly with the violator in an attempt to gain compliance. However, such direct interaction is outside the scope of these Enforcement Procedures.

The process is initiated when the person who observed or learned of the possible violation contacts either the Association office or Community Services department, to advise of the situation. At the time of this initial contact, or as soon thereafter as

practical, the person reporting the possible violation (except when that person is a staff member of the Association only, and is not also an Owner or Resident) shall be advised that they have the following three options:

They may advise the Association of the situation, and leave the Association with complete authority and discretion to decide how to handle the matter;

They may request that the Association issue a formal Complaint, leaving it to the discretion of the Association staff whether or not to file a formal Complaint; or

They may file a formal Complaint, and pursue the case as the formal Complainant, with or without the support or concurrence of the Association.

Any Owner, Resident, or the Association Administrative Manager may file a formal complaint. The Complaint shall be made using a copy of the form included with these Enforcement Procedures (Appendix A).

**5.2. Actions by the Association Prior to the Initiation of Formal Disciplinary Process.**

(A) All Complaints shall initially be reviewed by the Administrative Manager, who shall determine if the complaint appears meritorious. In making this decision, the Administrative Manager shall obtain whatever additional information may be needed to properly evaluate the matter. If the Administrative Manager decides not to pursue the complaint on behalf of the Association, the complaint (along with all background materials and a summary of the Administrative Manager's reasons for rejecting the complaint) shall be forwarded to the Covenants Committee. The Covenants Committee may decide to hear the complaint, in which case the Covenants Committee shall be responsible for compliance with subsections (B), (C), and (D) of this section, and 6.1, below, acting in place of the Administrative Manager.

(B) Issuance of Courtesy Notice. If it appears from the initial review conducted in accordance with subparagraph (A), above, that an Owner or Resident has violated the Governing Documents, it is the intent of the Board that management attempt to resolve the dispute or violation informally prior to the initiation of a formal hearing before the Covenants Committee. Accordingly, if a Complaint involving an apparent violation of the Governing Documents is determined to be meritorious by the Administrative Manager or the chairperson of the Covenants Committee the alleged violator "Respondent" shall be given a "Courtesy Notice" which may be issued with approval of either the Administrative Manager, the Supervisor of Community Services, or the chairperson of the Covenants Committee. This Notice shall be in the form attached hereto as Appendix B, and shall identify the nature of the noted Violation and request the Respondent's voluntary compliance with the cited provision(s) of the Governing Documents. Accompanying the courtesy notice shall be a copy of the Complaint relating to the matter (see Appendix A).

Except in urgent situations requiring resort to Summary Enforcement Procedures pursuant to Part VI, above, any Owner or Resident who appears to be in violation of the Governing Documents shall receive the Association's Courtesy Notice before a formal enforcement action is initiated. In the case of any alleged Violations of the Governing Documents committed by a Resident, a copy of the Courtesy Notice shall also be delivered or mailed to the Owner of the Resident's lot, at the address shown on the books of the Association.

(C) Issuance of Notice of Non-Compliance. If a Respondent fails to respond to the Association's Courtesy Notice (Appendix B) by voluntarily initiating appropriate corrective action within the time specified in the Courtesy Notice, the alleged violator (and the Owner, if the violator is a Resident) shall be given a Notice of Non-Compliance in the form attached here to as Appendix C, which Notice shall be signed by the Administrative Manager. The Administrative Manager may dispense with the issuance of a notice of Non-compliance, and immediately proceed with the issuance of a Final Notice (subparagraph (D), below, if the Administrative Manager determines that informal dispute resolution efforts are likely to be unsuccessful, and/or the Association's ability to provide an effective remedy to the alleged violation will be compromised by any further delay in the dispute resolution process.

(D) Issuance of Final Notice. If alleged Violations of the Governing Document are not resolved after completion of the steps described in subparagraphs (A) (B), and (C) above, the Administrative Manager shall issue a Final Notice to Respondent (in the form as in Appendix D attached to these Enforcement Procedures). Any Final Notice issued pursuant to these Enforcement Procedures shall describe the alleged Violation(s) of the Governing Docume and advise the Respondent that, if voluntary compliance is not forthcoming, formal enforcement hearings shall be commenced against the Respondent. If considered necessary or appropriate, the Association can direct its legal coun to issue the Final Notice.

**PART VI. INITIATION AND CONDUCT OF FORMAL DISCIPLINARY PROCEEDINGS**

**6.1. Initiation of Formal Disciplinary Proceedings.**

(A) Notice of Hearing. If the Respondent has failed to respond to the Final Noti within fifteen (15) days after its issuance (or such longer time as may be specified in the Notice), formal disciplinary proceedings shall be initiated by Administrative Manager, who shall schedule the matter for a hearing (after consultation with the chairperson of the Covenants Committee), and send the alleged violator a Notice of Hearing (in the form attached to these Procedure Appendix F). The hearing shall be scheduled no sooner than fifteen (15) day after service of the Notice of Hearing. Accompanying the Notice of Hearing shall be a Notice of Respondent's Rights (in the form attached to these Enforcement Procedures as Appendix G), a copy of the Complaint (Appendi A), if not previously furnished to the Respondent; and a copy of the complet text of California Civil Code Section 1363.810 thru 1363.850. The Notice o Hearing constitutes a "Request for Resolution" for purposes of Civil Code Section 1363.810 thru 1363.850. If the alleged violator is a Resident, all not pertaining to the hearing shall be sent or otherwise delivered to both the Resident and to the Owner of the Resident's lot.

(B) Manner of Service. The Notice of Hearing, and any attachments thereto, sh be delivered to the Owner or Resident by any method reasonably calculated give actual notice. Personal service may be performed by any person, includ an employee of the Association, who is at least 18 years of age. If service by mail is used, the Notice of Hearing shall be sent by either first-class or registered mail to the address of the Owner and/ or Resident as shown on the records of the Association. The individual who served the Notice of Hearing shall keep such records as will allow him or her to complete a declaration of such service, in the event the respondent does not appear at the hearing, and not otherwise acknowledge receipt of the Notice of Hearing by oral or writte communication with the Association.

(C) Objection or Answer to Notice of Hearing. Any objections or answer by t respondent to the form or substance of the Notice of Hearing (or any attache thereto) shall be in writing, and shall be actually received by the Covenants Committee no later than five (5) days prior to the scheduled hearing date. Th objections or answer shall be considered by the Covenants Committee within ten (10) days after receipt. The hearing may be continued if necessary to consider the objections or answer. If it is determined by the Covenants Committee that the objection is sufficient, The Complaint will be returned to Complainant with a letter stating the reason for rejection.

(D) Amendments or Supplements to Notice of Hearing. The Association may serve (upon all parties) a supplement or amendment to the Notice of Hearing attachments thereto) up to five (5) days prior to the hearing date. If the supplement or amendment raises new issues or presents new facts, the Covenants Committee, in its discretion, may reschedule the hearing date so t the Respondent has a reasonable opportunity to prepare his or her defense.

(E) Use of Summary Enforcement Procedures. If the Board of Directors, by majority vote, concludes that the facts and circumstances of a particular violation merit use of the Summary Enforcement Procedures described in Pa IV, above, the Board may decide to initiate legal proceedings immediately to avoid compromising the Association's ability to effectively enforce the

Governing Document
design review matter,
the Association imme
Respondent notice or
Enforcement Procedu

**6.2. Conduct of Enforcement**

(A) The Covenants Com
Governing Document
appointed Covenants

(B) Scheduling of Heari
shall schedule hearing

(C) Hearing Continuanc
continue the hearing, :
Committee at least 48
commencement of the
Committee through th
chairperson of the Co
explanation of why th
date. If the Covenants
requested delay, the h
date, time, and locatio
ten (10) days prior to
shorter notice. The re
the Covenants Commi
avoidable conflicts.

(D) Representation by L
Association to admini
results in a fair, exped
disputes. To that end,
legal counsel in enforc
insists on appearing w
surrounding the allege
its legal counsel partic
phase.

If the Association inte
shall so advise the Re
If the Association doe
and the Respondent in
so advise the Associat
hearing date. If such I
the hearing shall be co
Association to arrange
this paragraph shall p
counsel present merely

(E) Discovery. Prior to th
Complainant, or the R

(1) Obtain the nam
to call at the he

(2) Inspect and/or
investigative re
to the facts invc

Unless otherwise agreed to at th
introduce any writing, or testim
witness was not provided to the
information. A written request
least 48 hours in advance of the
shall be done in the same mann
(B) of these procedures).

Governing Documents. If the alleged Violation relates to an architectural or design review matter, the Design Committee may recommend to the Board that the Association immediately pursue legal action without first according the Respondent notice or an opportunity for a hearing pursuant to these Enforcement Procedures.

**6.2. Conduct of Enforcement Hearings.**

(A) **The Covenants Committee.** Formal hearings on alleged Violations of the Governing Documents shall be conducted before the Association's duly appointed Covenants Committee.

(B) **Scheduling of Hearings on Enforcement Matters.** The Covenants Committee shall schedule hearings on an as needed basis.

(C) **Hearing Continuance.** If either the Respondent or the Association wishes to continue the hearing, a written request must be received by the Covenants Committee at least 48 hours prior to the originally scheduled time for commencement of the hearing. The request shall be delivered to the Covenants Committee through the Association office, who shall immediately notify the chairperson of the Covenants Committee. The request must set forth an explanation of why the hearing should not proceed on the scheduled hearing date. If the Covenants Committee determines that good cause exists for the requested delay, the hearing shall be rescheduled and written notice of the new date, time, and location of the hearing shall be served upon all parties at least ten (10) days prior to the rescheduled hearing date, unless both parties agree to a shorter notice. The requirement of "good cause" shall be strictly construed by the Covenants Committee, and shall involve more than mere inconvenience or avoidable conflicts.

(D) **Representation by Legal Counsel at Hearings.** It is the desire of the Association to administer these Enforcement Procedures in a manner which results in a fair, expeditious and inexpensive resolution of Governing Document disputes. To that end, it is the Association's desire and intention to avoid using legal counsel in enforcement hearings or appeals unless (1) the Respondent insists on appearing with his or her counsel (2) the facts and circumstances surrounding the alleged Violation make it advisable for the Association to have its legal counsel participate in the case during the administrative (pre-judicial) phase.

If the Association intends to have its counsel present at a hearing or appeal, it shall so advise the Respondent at the time that the Notice of Hearing is given. If the Association does not advise the Respondent that counsel will be present, and the Respondent intends to be represented by counsel, the Respondent must so advise the Association in writing at least five (5) days prior to the scheduled hearing date. If such five (5) day advance notice is not given to the Association, the hearing shall be continued for at least five (5) days in order to permit the Association to arrange to have its legal counsel present. However, nothing in this paragraph shall be interpreted as requiring the Association to have legal counsel present merely because the respondent is represented by counsel.

(E) **Discovery.** Prior to the scheduled hearing date, the Covenants Committee, any Complainant, or the Respondent, shall be entitled to:

(1) Obtain the names and addresses of any witnesses that any party intends to call at the hearing (to the extent known to the other party); and

(2) Inspect and/or obtain a copy of any statements, writings, and investigative reports (in the possession of the other party), which pertain to the facts involved in the hearing.

Unless otherwise agreed to at the hearing by all parties, no party shall be permitted to introduce any writing, or testimony of any witness, if the writing or identity of the witness was not provided to the other party (or parties) in response to a request for such information. A written request must have been served upon the other party or parties at least 48 hours in advance of the scheduled hearing. Service of a request for discovery shall be done in the same manner as for service of a Notice of Hearing (see section 6.1 (B) of these procedures).

Notwithstanding the foregoing, nothing in this subparagraph (E) shall authorize the disclosure of anything, which is privileged from disclosure by law, or otherwise made confidential or protected as a privileged communication, or as part of an attorney's work product.

Any party claiming that its request for discovery has not been honored shall submit to the Covenants Committee a written petition to compel discovery. The petition shall set forth the items and/or information that has not been provided, and shall describe the steps taken to obtain the items or information. The Committee shall promptly make a determination whether the material is discoverable, and issue a written order setting forth the requested items or information to which the petitioner is entitled. If necessary, the Committee may continue a scheduled hearing date if it determines that a party's failure to comply with reasonable discovery requests have prejudiced the requesting party.

Unless otherwise agreed to by the parties to the proceeding, any documents prepared for the purpose of, or in the course of, or pursuant to, the hearing procedures described in this Part VI shall not be admissible in evidence in any subsequent civil action. Disclosure of any such documents may not be compelled in a subsequent civil action relating to the same violation. The restrictions of this paragraph shall not apply to documents (relating to the violation), which were in existence prior to the Hearing, and/or were not produced or prepared for use in the Covenants Committee hearing.

(F) **Quorum for Valid Action.** A majority of the members of the Covenants Committee then in office, but in no case less than two (2), must attend a hearing in order to have a quorum for action. The Board may appoint other members of the Association to serve as alternate members of the Committee if necessary to obtain a quorum. The hearing shall be continued until a quorum is obtained.

If a member of the Covenants Committee withdraws during the hearing, the remaining members shall continue with the hearing. However, if a sufficient number of Committee members withdraw to defeat a quorum, the matter shall be continued until such time a quorum can be present.

(G) **Attendance at Hearings by Other Members.** All disciplinary hearings conducted by the Covenants Committee shall be open to the Association's general membership unless the alleged offender requests that the meeting be conducted in private. Nothing in the foregoing sentence shall be interpreted as affecting the right of the Board to meet privately in executive session to discuss litigation in which the Association is, or may become, a party (relating to a pending case before the Covenants Committee), or otherwise as may be necessary in order to protect the attorney-client privilege.

(H) **Avoidance of Conflicts; Challenges for Cause.** No member of the Covenants Committee shall hear any matter in which he or she has (or may have) a conflict of interest, or in which the member is an interested party, whether by virtue of (1) having an ownership interest in the property where the violation is present, (2) initiating the Complaint relating to the matter being heard, or (3) being a relative or close friend of the alleged violator or the complainant. (A conflict of interest does not exist merely because a Covenants Committee member or appointee knows the alleged violator or the complainant.)

It shall be incumbent upon each member of the Covenants Committee to decide whether he or she is able to function in a disinterested and objective manner in considering a case coming before the Committee. Any member who determines that he or she is incapable of objective consideration of the case shall disclose this fact to the Committee, and shall remove him or herself from the proceedings.

The Respondent or Complainant may challenge any member of the Covenants Committee (including any alternate Committee member) for cause, at any time prior to the taking of evidence at the hearing. Good cause shall be deemed to exist if the party seeking the disqualification can demonstrate to the Committee that specified facts and/or circumstances make it unlikely for a particular member of the Committee to be fair and impartial in hearing the case. Any challenge for cause must therefore include specific information as to why the Respondent feels that a conflict exists, and why the person who is being challenged cannot be fair and impartial.

In the event any member of the Covenants Committee is challenged for cause, the Committee must first consider and rule on the challenge before proceeding with the

hearing. If the Committee determines that a challenge for cause is not meritorious, the hearing shall continue, although the Committee's determination on the issue may later be cited by the Respondent as a basis for appeal (see section 7.2(C), below).

(I) **Procedural Rules for Conduct of Enforcement Hearings.** The following procedural rules shall apply to all hearings conducted by the Covenants Committee:

(1) The hearing shall open with a roll call of those committee members who are present to hear the case. Any conflict of interest issues will then be handled in accordance with subparagraph (H) above. The chairperson of the Committee will then provide a brief summary of the procedural rules and rights of the parties;

(2) An Association staff member will provide an overview of the case. The Complainant (who may or may not be the Association) shall then present whatever evidence (including, without limitation, oral testimony of the Complainant or other witnesses, records, reports, and exhibits), which bear on the elements of the alleged violation;

(3) The Complainant(s) (if other than the Association), or any other interested party, may testify or present written documentation relating to the alleged Violation;

(4) The Respondent shall then be given the opportunity to present any relevant evidence, witnesses, or comments, and to cross-examine any witnesses presented by any other party;

(5) At the hearing, any relevant evidence, including oral testimony, may be presented by any party. The formal rules of evidence, applicable to judicial proceedings, shall not govern. Hearsay evidence may be admitted, except that hearsay for which there is not a recognized exception cannot be the sole basis for a factual finding. The chairperson of the Committee may make such decisions, and take such actions as are necessary to maintain order, and to keep the hearing focused on material and relevant matters;

(6) Each member of the Covenants Committee may question the Respondent or any witness, examine any evidence, or make any relevant comments;

(7) After all testimony and documentary evidence has been presented, the Covenants Committee shall make its determination. The decision may be made at the conclusion of the hearing, or the matter may be taken under submission. A majority of the members present at the hearing must agree on the decision;

(8) One member of the Covenants Committee shall be assigned to take written minutes of the meeting, or to make a tape recording of the proceeding.

(J) **Effect of Respondent's Failure to Appear.** If the Respondent fails to appear at a duly scheduled hearing (without a continuance having been granted), the Covenants Committee may proceed with the hearing, reach a decision on whether a Violation has occurred, and determine the appropriate enforcement action, fine, or penalty which should be imposed. A Respondent's failure to appear shall not, in itself, be grounds for an adverse determination, but the Committee shall be entitled to render a decision in his or her absence.

(K) **Hearing Decision.** The Covenants Committee shall announce its decision no later than fifteen (15) days following conclusion of the hearing. A copy of the Committee's written decision shall be served on the Respondent, the Complainant, the Association (unless the Association is also the Complainant), the president of the Board of Directors, and the Owner of the property being held liable for the actions of the Respondent (when the Respondent is not the Owner).

Disciplinary action, if any, shall become effective fifteen (15) days after the decision is served on the respondent, unless the decision other dictates; otherwise unless the disciplinary action shall be stayed pending completion of an appeal to the Board of Directors pursuant to Section VII, below.

---

Each decision shall be in writing and shall include the following:

(1) A description of the exact nature of the decision, and fine or penalty imposed, if any; and

(2) The opposing opinions of any dissenting member of the Covenants Committee, if requested for inclusion by the dissenting Committee member.

## PART VII.   APPEALS PROCEDURES

7.1. **Time to File Notice of Appeal.** Within fifteen (15) days following service of the hearing decision, either the Complainant or the Respondent may, by written request delivered to the Association at its principal office, appeal the decision of the Covenants Committee to the Board of Directors. The request for an appeals hearing shall be made using the Appeals Petition attached hereto as Appendix H. If a timely and proper appeal is not filed the decision of the Covenants Committee shall be final, and shall conclude the Association hearing process.

7.2. **Grounds for Appeal.** To be valid, an appeal must be based on one or more of the following grounds:

(A) Failure of the Covenants Committee to substantially comply with established procedures, which failure prejudiced the rights of the appellant to a fair and impartial hearing;

(B) Lack of authority of the Committee over the Respondent or the subject matter.

(C) Lack of impartiality of a member of the Committee who participated in the hearing and the decision [Note: this ground may only be used if the appellant previously challenged the Committee member's participation in the hearing in accordance with section 6.2(H), above];

(D) Insufficient facts to support the Committee's decision;

(E) The Committee's decision is arbitrary, capricious or unreasonable; or

(F) The restriction or rule violated is too uncertain or vague to permit a reasonable person to understand and comply with it.

In completing the Association's Appeals Petition form, the appellant must cite one or more of the grounds for appeal listed above and present a brief statement of the facts or circumstances, which support the referenced ground(s) for appeal. It will not be sufficient for an appellant to merely repeat the text of the grounds for appeal listed in paragraphs (A) through (F), above.

7.3. **Review of Notice of Appeal; Dismissal or Setting for Hearing.** Upon receipt of a timely Notice of Appeal, the Association's Board of Directors shall either set the matter for hearing, or determine that the stated grounds for appeal are not meritorious, in which case no hearing is held and the appeal is dismissed. The Board shall inform the appellant in writing of the decision. If no hearing is to be held, the letter shall set forth the reason(s) for the decision to dismiss the appeal. If a hearing is to be held, the letter shall contain the date, time, and place for the appeal hearing. Any such appeal hearing shall be scheduled not less than fifteen (15) days, nor more than forty-five (45) days following service of the letter upon the appellant, unless the appellant agrees to a shorter or longer notice.

7.4. **Avoidance of Conflicts; Challenges for Cause.** If an appellant believes that any member of the Board of Directors has a conflict of interest, as defined in section 6.2(H) above, and therefore cannot hear the Respondent's appeal in a fair and impartial manner, an alternate Association member (who is not a member of the Covenants Committee) shall be appointed to sit on the Appellate Panel in place of the challenged director. The decision of whether Director should be excused on the basis of a conflict shall be determined by majority vote of those directors who are not challenged.

If all members of the Board claim to have a conflict, which would preclude a fair and impartial Appellate Hearing, the matter shall be referred to an independent mediator.

---

7.7. **Conduct of Hear** either hear the on hearing held befo rendered by the C

When hearing th the procedures se Continuance; (D) For Valid Action; Procedural Rules Respondent's Fai

If the Board deci lieu of hearing th

(A) The appella Covenants C allowed to evidence th hearing.

(B) The Board r such testim of the matte

The Board may uphold the amend, modify, or reverse

7.6. **Notice of Decision** appeal on the appellant no l hearing.

7.7. **Effect of Appeal** the Appellate Panel, shall b If compliance is not forthco Owner or Resident has viol all available legal remedies

## PART VIII.   SCHEDUL

The Board of Directors is a schedules of reasonable fin Article XIII, Section 6(s), 6 (e) (i). The following sche Committee for violations to in rules adopted by the Boa may be applied.

(A) Fines for V
1    First V
2    Each i
uncon
levied
3    Vand
repair

## FINE SCHEDULE FO

When a complaint, citation discretion of ALT Manager follows:

Vandalism or deliberate da
First violation:   $500
Each subsequent viol
incrementally by $50(

Case 13-02132    Filed 04/18/13    Doc 1

**7.7.  Conduct of Hearings.** The Board of Directors, in its sole discretion, may either hear the entire matter and issue its own decision based solely on the hearing held before the Board, or may instead choose to review the decision rendered by the Covenants Committee.

When hearing the entire matter, the Board shall conduct the matter utilizing the procedures set forth in the following portions of section 6.2: (C) Hearing Continuance; (D) Representation By Legal Counsel At Hearings; (F) Quorum For Valid Action; (G) Attendance At Hearings By Other Members; (I) Procedural Rules For Conduct of Enforcement Hearings; (J) Effect of Respondent's Failure to Appear; and (K) Hearing Decision.

If the Board decides to review the decision of the Covenants Committee (in lieu of hearing the entire matter), the hearing shall be limited to the following:

**(A)**  The appellant may explain why he or she feels the decision of the Covenants Committee should be modified or overturned.  Unless allowed by the discretion of the Board, the Appellant may not present evidence that was not presented during the Covenants Committee hearing.

**(B)**  The Board members may ask questions of the appellant and may solicit such testimony or other evidence the Board deems relevant to its review of the matter.

The Board may uphold the Covenants Committee's decision in its entirety, or may amend, modify, or reverse such decision.

**7.6.  Notice of Appeals Decision.** The Board shall serve a written decision of the appeal on the appellant no later than thirty (30) days following conclusion of the appeals hearing.

**7.7.  Effect of Appeals Decision.** The decision of the Board of Directors, sitting as the Appellate Panel, shall be final, and shall conclude the Association's hearing process. If compliance is not forthcoming following issuance of a decision concluding that an Owner or Resident has violated the Governing Documents, the Association may pursue all available legal remedies to gain compliance.

## PART VIII.   SCHEDULE OF FINES

The Board of Directors is authorized to impose fines and monetary penalties under schedules of reasonable fines and penalties for common or recurring offenses (CC&R's Article XIII, Section 6(ex, and for delinquent assessments (CC&R's Article IV, Section 9 (c) (i). The following schedule of fines will serve as a guideline for the Covenants Committee for violations to be used unless a more specific fine schedule is provided for in rules adopted by the Board). However, alternative appropriate corrective penalties may be applied.

**(A)**  Fines for Violations of Covenants, Conditions and Restrictions.
1  First Violation: between $25.00 and $300.00.
2  Each month or portion thereof a continuing violation remains in additional fine of up to $100.00 per month may be levied.
3  Vandalism: Fines of up to $500.00 may be levied, in addition to repair and/or replacement costs.

## FINE SCHEDULE FOR COMPLAINTS, CITATIONS AND VIOLATIONS
*Effective December 14, 2011*

When a complaint, citation or violation is filed or issued, a fine may be levied, at the discretion of ALT Management, subject to review by the Covenants Committee, as follows:

Vandalism or deliberate damage to gate entry system:
**First violation:**  $500 fine in addition to repair or replacement costs
**Each subsequent violation of the same rule within one year:**  Fine will increase incrementally by $500 per incident, i.e. $500 for the first offense, $1000 for the

---

second offense, $1,500 for the third offense, etc.  The fine(s) may also include repair or replacement costs associated with the vandalism or damage. Ongoing (recurring) vandalism may be referred to the Covenants Committee.

Intentionally allowing unauthorized vehicles to enter ALT by tailgating or any other means:
**First violation:** A fine of $100 and the deactivation of the opening device for one (1) month. Permanent Guests who violate this rule will have their opening device deactivated for the remainder of the current fiscal year.
**Second violation:** A fine of $250 and the deactivation of the opening device for one (1) month. Permanent Guests who receive a second violation of this rule will have their opening device deactivated permanently.
**Third violation:** A third offense will be referred to the Covenants Committee.

Compliance Violations:
**First violation:** A fine of $25.00 up to a maximum of $100.00
**Second violation:** Each subsequent or continuing violation of the same rule within one (1) year of the preceding one shall be $50.00 up to a maximum of $250.00.
**Third violation:** After two fines have been levied all subsequent or continuing violations of the same rule within one (1) year of the preceding one shall be referred to the Covenants Committee.

Traffic Violations:
**First violation:** A base fine assessed according to the violation speed
Base Fines will be assessed as follows:
Up to 10 mph over speed limit   $25.00
10 to 15 mph over speed limit   $50.00
15 to 20 mph over speed limit   $75.00
More than 20 mph over speed limit   $100.00
**Second violation** :   A fine of $50 in addition to the base fine
**Third violation:** After two fines have been levied all subsequent or continuing violations of the same rule within one (1) year of the preceding one shall be referred to the Covenants Committee.

The Covenants Committee may levy fines in addition to other sanctions as follows:

**First violation:**   $25.00 to a maximum of $300.00
**Second violation within one (1) year:** $100.00 to a maximum of $500.00.
**Third violation within one (1) year:** $100.00 to a maximum of $750.00.
Each month or portion thereof that a continuing violation remains uncorrected: $300.00 per month or up to $50.00 per day.

**Vandalism:** Up to $500.00 in addition to repair or replacement costs.

Other sanctions such as restriction of common facilities use as authorized by the Governing Documents may also be imposed.

The Covenants Committee may refer a violator to the ALT Management for consideration of participation in a public service program for partial or full payment of any fine imposed.

## PART IX.   EFFECT OF FAILURE TO COMPLY WITH DECISION OF THE ASSOCIATION

In any case where an Owner has failed to pay fines (imposed under this Part VIII) for a total of $100.00, the Association may move the collection process to Small Claims Court.  If the amount owing reaches a total of $700.00, the Association shall move the collection process to Small Claims Court.

If a person subject to the Governing Documents fails or refuses to participate in a hearing duly noticed hereunder, and the alleged violation of the Governing Documents continues or if a person who has been adjudged in a hearing conducted by the Association to be in violation of the Governing Documents fails to cease the activity constituting the violation, or to bring his or her property into compliance with the Governing Documents, the Association shall be entitled to pursue all appropriate legal and/or equitable remedies to compel the person's compliance. Property Owners are advised that if legal action is required in order to bring an Owner and/ or his or her property into compliance with the Governing Documents, both the CC&Rs and the California Civil Code provide that the

prevailing party shall be entitled to recover costs of suit, including reasonable attorneys' fees.

In applying this schedule to individual cases, the Covenants Committee may recognize factors in mitigation and aggravation.

**D.   Internal Dispute Resolution Procedure**
*Summary of the Internal Dispute Resolution Process set forth in California Civil Code Sections 1363.810 - 1363.850*

California Civil Code Section 1363.810 – 1363.850 require an Association to provide a fair reasonable and expeditious procedure for resolving certain disputes between the Association and a member. The following procedure, which may be invoked by either party to a dispute, shall apply:

1.   The party may request the other party to meet and confer in an effort to resolve the dispute. The request shall be made in writing.

2.   A member of an Association may refuse a request to meet and confer. The Association may not refuse a request to meet and confer.

3.   The Association's Board of directors shall designate a member of the Board to meet and confer with the other party to the dispute.

4.   The parties shall meet promptly at a mutually convenient time and place, explain their positions to each other, and confer in good faith in an effort to resolve the dispute.

5.   A resolution of the dispute agreed to by the parties shall be memorialized in writing and signed by the parties, including the Board designee on behalf of the Association.

An agreement reached under this section binds the parties and is judicially enforceable if both of the following conditions are satisfied:
(1)   The agreement is not in conflict with law or the governing documents of the common interest development or Association.
(2)   The agreement is either consistent with the authority granted by the Board of directors to its designee or the agreement is ratified by the Board of directors.

A member of the Association may not be charged a fee to participate in the process.

If the parties to the dispute are unable to resolve the matter using this internal dispute resolution procedure, the Association or the members may then serve a Request for Resolution pursuant to California Civil Code Section 1369.530, if applicable.

**E.   Alternative Dispute Resolution Procedure**
*1. Summary of California Civil Code Sections 1369.510 – 1369.590 concerning Alternative Dispute Resolution.*

Alternative Dispute Resolution (ADR) means mediation, arbitration, conciliation, or other non-judicial procedure that involves a neutral party in the decision-making process. The form of ADR chosen pursuant to this article may be binding or non-binding, with the voluntary consent of the parties. (Civil code 1369.5 10)

California Civil Code Section 1369.510 – 1369.590 addresses your rights to sue the Association or another member of the Association regarding the enforcement of the governing documents. The following is a summary of the provisions of the Civil Code Sections 1369.510 – 1369.590:

In general, Civil Code Section 1369.510 – 1369.590 encourages parties to certain disputes involving enforcement of an Association governing documents to submit the dispute to a form of alternative dispute resolution (ADR) such as mediation or arbitration prior to filing a lawsuit. The form of ADR may be binding or non-binding, and the costs of the ADR shall be borne by the parties.

**1369.520, Pre-filing Requirements**

An Association or an owner or a member of a common interest development may not file an enforcement action in the superior court unless the parties have endeavored to submit their dispute to ADR. This section applies only to an enforcement action that is solely for declaratory, injunctive, or for that relief in conjunction with a claim for monetary dam-

ages not in excess of the jurisdictional limits stated in Sections 116.220 and 116.221 of the Code of Civil Procedure.

This section does not apply to small claims actions or assessment dispute. 1369.530. Initiating Process

Any party to a dispute may initiate the process of ADR by serving a Request for Resolution on all other parties to the dispute. A Request of Resolution must contain: (1) a brief description of the dispute between parties, (2) a request for ADR, (3) a notice that the party receiving the Request of Resolution is required to respond within 30 days of receipt or the Request will be deemed rejected, and (4) if sent to the owner of a separate interest, a copy of Civil Code Section 1369.510 – 1369.590.

Service of the Request for Resolution shall be by personal delivery, first-class mail, express mail, facsimile transmission, or other means reasonably calculated to provide the party on whom the request is served actual notice of the request.

A party on whom a Request for Resolution is served has 30 days following service to accept or reject the request. If a party does not accept the request within that period, the request is deemed rejected by the party.

**1369.540 Completion, Conduct and Cost**
(a)   If the party on whom a Request for Resolution is served accepts the request, the parties shall complete the alternative dispute resolution within 90 days after the party initiating the request received the acceptance, unless this period is extended by written stipulation signed by both parties.
(b)   Chapter 2 (commencing with Section 1115) of Division 9 of the Evidence Code applies to any form of alternative dispute resolution initiated by a Request for Resolution under this article, other than arbitration.
(c)   The costs of the alternative dispute resolution shall be borne by the parties.

**1369.590**
"FAILURE OF A MEMBER OF THE ASSOCIATION TO COMPLY WITH THE ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS OF SECTION 1369.520 OF THE CIVIL CODE MAY RESULT IN THE LOSS OF YOUR RIGHT TO SUE THE ASSOCIATION OR ANOTHER MEMBER OF THE ASSOCIATION REGARDING ENFORCEMENT OF THE GOVERNING DOCUMENTS OR THE APPLICABLE LAW."

The law requires the party filing a lawsuit for enforcement of the Association's governing documents to file a certificate with the court stating the (1) ADR had been completed prior to the filing of the suit, or (2) ADR was not undertaken because one of the other parties to the dispute did not accept the terms offered for the ADR, or (3) ADR will not be undertaken because preliminary or temporary injunctive relief is necessary. Failure to file this certificate can be grounds for dismissing the lawsuit.

Furthermore, while the prevailing party in any lawsuit to enforce the governing documents shall be awarded attorney's fees and costs, under Civil Code 1369.580 the court may consider whether a party's refusal to participate in ADR was reasonable when it determines the amount of the award.

**F.   Insurance Disclosure**

Pursuant to California Civil Code Section 1365.9, the Association is required to annually provide certain information regarding insurance coverage. ALT has appointed Hays Companies of Oregon as their insurance broker. The Association purchases insurance to cover the Association's liabilities. The Association's policies do not address nor afford coverage for the individual home, home furnishings or injury and/or damage caused by a negligent act committed by the individual homeowner. The insurance coverage does not extend to the real property improvements to the separate interests.

Property Insurance (01/01/12 to 01/01/13)
Insurer:    Philadelphia Indemnity Insurance Company
Policy Limits:  $3,483,000 real & personal property (common areas) Deductible: $1,000 real & personal property
Commercial General Liability Insurance (01/01/12 to 01/01/13)

Insurer: Philadelphia Indemnity Insurance Company
Policy Limits: $1,000,000 each occurrence/$2,000,000 general aggregate

Automobile Liability Insurance (01/01/12 to 01/01/13)
Insurer: Philadelphia Indemnity Insurance Company
Policy Limits: $1,000,000 combined single limit

Umbrella (01/01/12 to 01/01/13)
Insurer: Philadelphia Indemnity Insurance Company
Policy Limits: $10,000,000 aggregate/each occurrence Deductible: $10,000

Crime (01/01/12 to 01/01/13)
Insurer: Philadelphia Indemnity Insurance Company
Policy Limits: $500,000
Deductible: $5,000

Directors' & Officers' Liability (02/01/12 to 01/01/13)
Insurer: North River Insurance Company
Policy Limits: $1,000,000 each claim/aggregate limit Deductible:
$25,000 Director's & Officer's liability claim
$25,000 Employment Practices liability claim

The Association does not carry earthquake or flood coverage.

This summary of the Association's policies of insurance provides only certain information, as required by subdivision (e) of Section 1365 of the Civil Code, and should not be considered as a "legal interpretation" of the actual insurance policies, nor as a substitute for the complete policy terms and conditions contained in the actual policies of insurance. Any association member may, upon request and provision of reasonable notice, review the Association's insurance policies and, upon request and payment of reasonable duplication charges, obtain copies of these policies. Although the Association maintains these policies of insurance specified in this summary, the Association's policies of insurance does not cover your property, including personal property or real property improvements to or around your dwelling, or personal injuries or other losses that occur within or around your dwelling. Even if a loss is covered, you may nevertheless be responsible for paying all or a portion of any deductible that applies. Association members should consult with their individual insurance broker or agent for appropriate additional coverage.

G. Notice of Right to Receive Minutes
Meetings of the Boards are held on the Association's premises. Notices of the scheduled meeting date and time, including a proposed agenda, are posted at the Association office at least four days prior to the regular meeting. Copies of the minutes of the meetings of the Boards, or unapproved drafts, are available for members at no charge within thirty (30) days of the meeting by written request or by stopping at the Association office during normal business hours. They are also available on the ALTPOA website at www.Auburnlaketrail.org.

I. Security Disclaimer
We hope that Community Services department provides some deterrence to crime. However, no matter what steps we take, the association can never be completely safe and secure. For example, it is possible for someone to enter the property under false pretenses to commit crimes, for residents to commit crimes against their own neighbors, or guests of residents to commit crimes. As a result, the association is not and can never be free of crime and we cannot guarantee your safety or security. Accordingly, you should not rely on the association to protect you from loss or harm. Instead, you should provide for your own security by taking common sense precautions such as carrying insurance against loss; keeping your doors locked; refusing to open your door to strangers; asking workmen for identification; installing a security system; locking your car; etc.

If you have any questions or concerns regarding the above matters, please feel free to contact the Association office at (530) 885-6526 or by email at GM@Auburnlaketrails.org.

For the Board of Directors, *Kevin D. Hubred*

Kevin D. Hubred, AMS, CMCA, CCAM, PCAM
General Manager

**California Assessment and Reserve Funding Disclosure for the Fiscal Year Ending 2012/2013**

(1) The current regular assessment per ownership interest is $169.00 per month.

(2) Additional regular or special assessments that have already been scheduled to be imposed or charged, regardless of the purpose, if they have been approved by the board and/or members:

| Date assessment will be due: | Amount per ownership interest per month or year (if assessments are variable, see note immediately below): | Purpose of Assessment: |
|---|---|---|
| N/A | $0.00 | N/A |
| Total: | $0.00 | |

(3) Based upon the most recent reserve study and other information available to the board of directors, will currently projected reserve account balances be sufficient at the end of each year to meet the association's obligation for repair and/or replacement of major components during the next 30 years

Yes X_____ No_____

(4) If the answer to (3) is no, what additional assessments or other contributions to reserves would be necessary to ensure that sufficient reserve funds will be available each year during the next 30 years that have not yet been approved by the board or the members.

(5) All major components are included in the reserve study and are included in its calculations.

(6) Based on the method of calculation in paragraph (4) of subdivision (b) of Section 1365.2.5, the estimated amount required in the reserve fund as of the current fiscal year is $5,713,574, based in whole or in part on the last reserve study or update prepared by Browning Reserves Group, as of March 2012. The projected reserve fund cash balance at the end of the current fiscal year is $1,093,829, resulting in reserves being 19.1% percent funded at this date. Civil Code sections 1365.2.5(b) (4) does not require the board to fund reserves in accordance to this calculation.

(7) Based on the method of calculation in paragraph (4) of subdivision (b) of Section 1365.2.5 of the Civil Code, the estimated amount required in the reserve fund at the end of each of the next five budget years is presented in column (b) 'Fully Funded Balance' in the table immediately below; and the projected reserve fund cash balance in each of those years, taking into account only assessments already approved and other known revenues, is presented in column (c) 'Reserve Ending Balance', leaving the reserve at percent funding as presented in column (d) 'Percent Funded' in each of the respective years.

| Fiscal Year (a) | Fully Funded Balance (b) | Reserve Ending Balance (c) | Percent Funded (d) |
|---|---|---|---|
| 2012/2013 | $5,940,576 | $1,222,928 | 18.9% |
| 2013/2014 | $6,100,790 | $1,160,065 | 19.0% |
| 2014/2015 | $6,234,581 | $1,135,846 | 18.2% |
| 2015/2016 | $6,272,788 | $1,136,474 | 18.1% |
| 2016/2017 | $6,291,540 | $1,288,494 | 20.5% |

If the reserve funding plan approved by the association is implemented, the projected fund cash balance in each of those years will be the amounts presented in column (c) 'Reserve Ending Balance' in the table immediately above, leaving the reserve at percent funding as presented in column (d) 'Percent Funded' in each of the respective years.

*2012–2013 BUDGET INSERT — Page 12*

NOTE: The financial representations set forth in this summary are based on the best estimates of the preparer at that time. The estimates are subject to change. AT the time of this summary was prepared, the assumed long-term before-tax interest rate earned on reserve funds was 0.05% per year, and the assumed long-term inflation rate to be applied to major component repair and replacements costs was 2.5% per year.

## Additional Disclosures

§1365(a) (2) (D) The current deficiency in reserve funding as of June 30, 2013 is $4,364 per ownership (average).

This is calculated as the current estimate of the amount of cash reserves necessary as of the end of the fiscal year for which the study is prepared, less, the amount of accumulated cash reserves actually (Projected to be) set aside to repair, replace, or maintain the major components.

Deficiency =  2012/2013 Fully Funded Balance – 2012/2013 Reserve Ending Balance
                              Ownership Interest Quantity

§1365(a) (3) (A)    The current board of directors of the association has not deferred or determined to not undertake repairs or replacements over the next 30 years.

| Major Component: | Justification for Deferral: |
|---|---|
| N/A | N/A |

§1365(a) (3) (B)    The board of directors as of the date of the study does not anticipate the levy of a special assessment for the repair, replacement, or restoration of the major components.

### Notice of Right to Submit Secondary Addresses For Collection Notices 1367.1(k)

(k) Upon receipt of a written request by an owner identifying a secondary address for purposes of collection notices, the association shall send additional copies of any notices required by this section to the secondary address provided. The association shall notify owners of their right to submit secondary addresses to the association, at the time the association issues the pro forma operating budget pursuant to Section 1365. The owner's request shall be in writing and shall be mailed to the association in a manner that shall indicate the association has received it. The owner may identify or change a secondary address at any time, provided that, if a secondary address is identified or changed during the collection process, the association shall only be required to send notices to the indicated secondary address from the point the association receives the request.

### DAVIS STIRLING ACT

#### Civil Code '1369.590
Annual Summary of ADR

(a) An association shall annually provide its members a summary of the provisions of this article that specifically references this article. The summary shall include the following language: "Failure of a member of the association to comply with the alternative dispute resolution requirements of Section 1369.520 of the Civil Code may result in the loss of your right to sue the association or another member of the association regarding enforcement of the governing documents or the applicable law."

(b) The summary shall be provided either at the time the pro forma budget required by Section 1365 is distributed or in the manner prescribed in Section 5016 of the Corporations Code. The summary shall include a description of the association's internal dispute resolution process, as required by Section 1363.850.

*THIS SPACE INTENTIONALLY LEFT BLANK*

Auburn Lake Trails Property Owners Association
Consolidated Operating Budget Summary
Fiscal Year 2012/2013

| | 12/13 Proposed | 11/12 Budget | $ Change 11/12 to 12/13 | % Change 11/12 to 12/13 | Lot/Month Total | Change / lot / month |
|---|---|---|---|---|---|---|
| **Monthly Assessment** | 169.00 | 169.00 | 0.00 | Unbudgeted | | |
| **Full Time Equivalent Employees** | 25.4 | 24.6 | 0.8 | 3.10% | | |
| | | | | | | |
| **Revenue Account** | | | | | | |
| 4110 · Regular Assessments (1104 Lots) | 2,238,912 | 2,249,579 | -10,667 | -0.47% | 169.00 | -0.80 |
| 4110 · Regular Assessments (3 Lots) | 1,217 | | | | 33.80 | |
| Total 4200 · Investments | 32,060 | 23,025 | 9,035 | 39.24% | 2.42 | 0.68 |
| Total 4300 · User Fees | 62,400 | 66,000 | -3,600 | -5.45% | 4.71 | -0.27 |
| Total 4400 · Compliance Fees | 49,600 | 57,750 | -8,150 | -14.11% | 3.74 | -0.61 |
| Total 4600 - Grants | 0 | 0 | 0 | Unbudgeted | 0.00 | 0.00 |
| Total 4900 · Other Revenues | 139,000 | 21,900 | 117,100 | 534.70% | 10.49 | 8.83 |
| **Total Revenue** | 2,531,539 | 2,418,254 | 113,285 | 4.68% | | |
| | | | | | | |
| **Expense Account** | | | | | | |
| 5100 · Compensation | | | | | | |
| Total 5100 · Compensation | 1,136,145 | 1,031,928 | 104,217 | 10.10% | 85.71 | 7.86 |
| Total 5200 · Utilities | 142,150 | 127,542 | 14,608 | 11.45% | 10.72 | 1.10 |
| Total 5300 · Supplies | 109,258 | 98,172 | 11,086 | 11.29% | 8.24 | 0.84 |
| Total 5400 · Equipment | 39,650 | 30,250 | 9,400 | 31.07% | 2.99 | 0.71 |
| Total 5500 · Vehicles | 70,950 | 49,089 | 21,861 | 44.53% | 5.35 | 1.65 |
| Total 5600 · Outside Services | 58,700 | 157,100 | -98,400 | -62.64% | 4.43 | -7.42 |
| Total 5700 · General Administration | 165,926 | 141,579 | 24,347 | 17.20% | 12.52 | 1.84 |
| Taxes, Reserve Contribution, Contingency, Loans | | | | | | |
| Total Taxes | 310 | 10,000 | -9,690 | -96.90% | 0.02 | -0.73 |
| Reserve Contribution | 722,293 | 664,015 | 58,278 | 8.78% | 54.49 | 4.40 |
| Reserve Contribution - Restricted Building Fund | 13,248 | 13,248 | 0 | 0.00% | 1.00 | 0.00 |
| Loan Payback for $665k transfer to Trust (20 year/no interest) | 33,252 | 33,250 | 2 | 0.01% | 2.51 | 0.00 |
| Loan Payback for $250k transfer to Trust (20 year/no interest) | 0 | 12,500 | -12,500 | -100.00% | 0.00 | -0.94 |
| Pasture Loans Repayments (65K) (8742 + 1836 Reserves) | 8,742 | 16,740 | -7,998 | -47.78% | 0.66 | -0.60 |
| Short Term Cash Flow Needs | 30,915 | 32,842 | -1,927 | -5.87% | 2.33 | -0.15 |
| | | | | | | 0.00 |
| **Total Expenses** | 2,531,539 | 2,418,254 | 113,285 | 4.68% | | |

Auburn Lake Trails Property Owners Association
Consolidated Operating Budget Summary
Fiscal Year 2012/2013

| | 12/13 Proposed | 11/12 Budget | $ Change 11/12 to 12/13 | % Change 11/12 to 12/13 | Lot/Month Total | Change / lot / month |
|---|---|---|---|---|---|---|
| **Monthly Assessment** | 169.00 | 169.00 | 0.00 | | 169.00 | |
| **Full Time Equivalent Employees** | 25.4 | 24.6 | 0.8 | 3.10% | | |
| | | | | | | |
| **Revenue Account** | | | | | | |
| 4110 · Regular Assessments (1104 Lots) | 2,238,912 | 2,249,579 | -10,667 | -0.47% | 169.00 | -0.80 |
| 4110 · Regular Assessments  (3 Lots) | 1,217 | | | | 33.80 | |
| Total 4200 · Investments | 32,060 | 23,025 | 9,035 | 39.24% | 2.42 | 0.68 |
| Total 4300 · User Fees | 62,400 | 66,000 | -3,600 | -5.45% | 4.71 | -0.27 |
| Total 4400 · Compliance Fees | 49,600 | 57,750 | -8,150 | -14.11% | 3.74 | -0.61 |
| Total 4600 - Grants | 0 | 0 | 0 | Unbudgeted | 0.00 | 0.00 |
| Total 4900 · Other Revenues | 139,000 | 21,900 | 117,100 | 534.70% | 10.49 | 8.83 |
| **Total Revenue** | **2,531,539** | **2,418,254** | **113,285** | **4.68%** | | |
| | | | | | | |
| **Expense Account** | | | | | | |
| 5100 · Compensation | | | | | | |
| Total 5100 · Compensation | 1,136,145 | 1,031,928 | 104,217 | 10.10% | 85.71 | 7.86 |
| Total 5200 · Utilities | 142,150 | 127,542 | 14,608 | 11.45% | 10.72 | 1.10 |
| Total 5300 · Supplies | 109,258 | 98,172 | 11,086 | 11.29% | 8.24 | 0.84 |
| Total 5400 · Equipment | 39,650 | 30,250 | 9,400 | 31.07% | 2.99 | 0.71 |
| Total 5500 · Vehicles | 70,950 | 49,089 | 21,861 | 44.53% | 5.35 | 1.65 |
| Total 5600 · Outside Services | 58,700 | 157,100 | -98,400 | -62.64% | 4.43 | -7.42 |
| Total 5700 · General Administration | 165,926 | 141,579 | 24,347 | 17.20% | 12.52 | 1.84 |
| **Taxes, Reserve Contribution, Contingency, Loans** | | | | | | |
| Total Taxes | 310 | 10,000 | -9,690 | -96.90% | 0.02 | -0.73 |
| Reserve Contribution | 722,293 | 664,015 | 58,278 | 8.78% | 54.49 | 4.40 |
| Reserve Contribution - Restricted Building Fund | 13,248 | 13,248 | 0 | 0.00% | 1.00 | 0.00 |
| Loan Payback for $665k transfer to Trust (20 year/no interest) | 33,252 | 33,250 | 2 | 0.01% | 2.51 | 0.00 |
| Loan Payback for $250k transfer to Trust (20 year/no interest) | 0 | 12,500 | -12,500 | -100.00% | 0.00 | -0.94 |
| Pasture Loans Repayments (65K) (8742 + 1836 Reserves) | 8,742 | 16,740 | -7,998 | -47.78% | 0.66 | -0.60 |
| Short Term Cash Flow Needs | 30,915 | 32,842 | -1,927 | -5.87% | 2.33 | -0.15 |
| | | | | | | 0.00 |
| **Total Expenses** | **2,531,539** | **2,418,254** | **113,285** | **4.68%** | | |

April 09, 2012

This is a summary of the Reserve Study that has been performed for Auburn Lake Trails, (the "Association"). This study was done in compliance with California Civil Code Section 1365 and 1365.5 and is being provided to you, as a member of the Association, as required under these statutes. A full copy is available (through the Association) for review by members of the Association.

The intention of the Reserve Study is to forecast the Association's ability to repair or replace major components as they wear out in future years. This is done utilizing the "Cash Flow Method." This is a method of developing a reserve funding plan where the contributions to the reserve fund are designed to offset the variable annual expenditures from the reserve fund.

Browning Reserve Group prepared this Full Study for the July 1, 2012 - June 30, 2013 fiscal year.

Auburn Lake Trails is a Planned Development with a total of 1,104 Lots.

The Reserve Study is not an engineering report, and no destructive testing was performed. The costs outlined in the study are for budgetary and planning purposes only, and actual bid costs would depend upon the defined scope of work at the time repairs are made. Also, any latent defects are excluded from this report.

**Funding Assessment**

Based on the 30 year cash flow projection, the Association's reserves appear adequately funded as the reserve fund ending balances remain positive throughout the replacement of all major components during the next 30 years.

California statute imposes no reserve funding level requirements nor does it address funding level adequacy, and although one or more of the reserve fund percentages expressed in this report may be less than one hundred percent, those percentages do not necessarily indicate that the Association's reserves are inadequately funded.

Section III-a
Auburn Lake Trails
30 Year Reserve Funding Plan Cash Flow Method - Ending Balances
Final
Prepared for the 2012/2013 Fiscal Year



| Reserve Component | Current Replacement Cost | Useful Life | Remaining Life | 2011/2012 Fully Funded Balance | 2012/2013 Fully Funded Balance | 2012/2013 Line Item Contribution based on Cash Flow Method |
|---|---|---|---|---|---|---|
| 01000 - Paving | 6,283,061 | 7-15 | 1-10 | 3,937,626 | 4,466,815 | 424,319 |
| 02000 - Concrete | 21,855 | 30-30 | 27-27 | 2,188 | 2,987 | 1,245 |
| 04000 - Structural Repairs | 213,493 | 30-60 | 0-49 | 156,479 | 63,306 | 5,534 |
| 04500 - Decking/Balconies | 137,549 | 15-30 | 5-10 | 91,700 | 99,168 | 5,551 |
| 05000 - Roofing | 139,759 | 20-30 | 1-27 | 64,401 | 72,095 | 7,399 |
| 08000 - Rehab | 25,000 | 20-20 | 7-10 | 14,000 | 15,631 | 1,364 |
| 11000 - Gate Equipment | 60,333 | 10-15 | 3-7 | 38,620 | 44,835 | 4,994 |
| 12000 - Pool | 143,875 | 2-30 | 0-28 | 72,345 | 68,403 | 11,260 |
| 17000 - Tennis Court | 134,740 | 6-25 | 1-13 | 78,498 | 88,335 | 8,124 |
| 18000 - Landscaping | 695,630 | 1-30 | 0-30 | 348,648 | 19,452 | 3,878 |
| 18500 - Lakes / Ponds | 38,185 | 10-50 | 2-12 | 27,361 | 29,863 | 1,819 |
| 19000 - Fencing | 83,074 | 20-60 | 9-27 | 42,734 | 46,385 | 3,324 |
| 20000 - Lighting | 26,274 | 20-40 | 9-13 | 14,298 | 15,694 | 1,192 |
| 22000 - Office Equipment | 23,737 | 5-10 | 1-3 | 17,024 | 21,321 | 3,464 |
| 23000 - Mechanical Equipment | 201,120 | 7-30 | 1-15 | 102,422 | 122,359 | 17,261 |
| 25000 - Flooring | 29,573 | 1-20 | 0-15 | 17,979 | 18,923 | 2,596 |
| 26000 - Outdoor Equipment | 196,071 | 15-47 | 1-20 | 96,951 | 106,286 | 8,552 |
| 27000 - Appliances | 5,000 | 20-20 | 17-17 | 750 | 1,025 | 334 |
| 30000 - Miscellaneous | 4,412,483 | 7-40 | 0-37 | 591,555 | 637,694 | 223,332 |
| Totals | $12,870,812 | | | $5,713,574 | $5,940,576 | $735,541 |
| Estimated Ending Balance | | | | $1,093,829 | $1,122,928 | $55.52 |
| Percent Funded | | | | 19.1% | 18.9% | /Lot/month @ 1,104 |

12 04/09/2012 06fx4.4.63-445:wb.
sion 3/22/2012 9:52:35 AM    © Browning Reserve Group 2012



# Browning
RESERVE GROUP

Section III
Aubum Lake Trails
30 Year Reserve Funding Plan Cash Flow Method
Final
Prepared for the 2012/2013 Fiscal Year

| | 2011/12 | 2012/13 | 2013/14 | 2014/15 | 2015/16 | 2016/17 | 2017/18 | 2018/19 | 2019/20 | 2020/21 |
|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance | 921,272 | 1,093,629 | 1,122,928 | 1,160,065 | 1,135,846 | 1,136,474 | 1,288,494 | 1,430,044 | 1,647,659 | 1,803,186 |
| Inflated Expenditures @ 2.6% | 509,736 | 711,971 | 757,791 | 876,794 | 913,707 | 829,029 | 871,432 | 828,460 | 924,707 | 912,730 |
| Reserve Contribution | 677,263 | 735,541 | 789,238 | 846,849 | 908,669 | 975,002 | 1,008,202 | 1,039,400 | 1,071,629 | 1,105,921 |
| Loty/month @ 1,104 | 51.12 | 55.52 | 59.57 | 63.92 | 68.59 | 73.60 | 75.93 | 78.39 | 80.89 | 83.48 |
| Percentage Increase | | 8.6% | 7.3% | 7.3% | 7.3% | 7.3% | 3.2% | 3.2% | 3.2% | 3.2% |
| Special Assessments / Other | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Interest Pre Tax @ 0.50% | 5,025 | 5,529 | 5,693 | 5,725 | 5,667 | 6,047 | 6,779 | 7,875 | 8,606 | 9,499 |
| Ending Balance | 1,093,629 | 1,122,928 | 1,160,065 | 1,135,846 | 1,136,474 | 1,288,494 | 1,430,044 | 1,647,659 | 1,803,186 | 2,005,876 |

a) Per association recommendation.

| | 2021/22 | 2022/23 | 2023/24 | 2024/25 | 2025/26 | 2026/27 | 2027/28 | 2028/29 | 2029/30 | 2030/31 |
|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance | 2,005,876 | 1,848,927 | 2,840,272 | 3,881,443 | 4,877,614 | 6,005,453 | 7,132,846 | 7,610,476 | 7,964,721 | 8,027,885 |
| Inflated Expenditures @ 2.6% | 1,307,872 | 195,181 | 191,114 | 280,092 | 193,863 | 241,357 | 937,875 | 1,107,485 | 1,445,108 | 1,186,242 |
| Reserve Contribution | 1,141,310 | 1,177,832 | 1,215,533 | 1,254,420 | 1,294,561 | 1,335,987 | 1,378,739 | 1,422,889 | 1,468,390 | 1,515,378 |
| Loty/month @ 1,104 | 86.15 | 88.91 | 91.75 | 94.68 | 97.72 | 100.84 | 104.07 | 107.40 | 110.84 | 114.39 |
| Percentage Increase | 3.2% | 3.2% | 3.2% | 3.2% | 3.2% | 3.2% | 3.2% | 3.2% | 3.2% | 3.2% |
| Special Assessments / Other | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Interest Pre Tax @ 0.50% | 9,613 | 11,694 | 16,762 | 21,843 | 27,140 | 32,764 | 36,766 | 38,641 | 39,882 | 40,962 |
| Ending Balance | 1,848,927 | 2,840,272 | 3,881,443 | 4,877,614 | 6,005,453 | 7,132,846 | 7,610,476 | 7,964,721 | 8,027,885 | 8,397,584 |

| | 2031/32 | 2032/33 | 2033/34 | 2034/35 | 2035/36 | 2036/37 | 2037/38 | 2038/39 | 2039/40 | 2040/41 |
|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance | 8,397,584 | 8,724,162 | 9,145,646 | 9,568,673 | 10,089,444 | 10,615,103 | 5,949,883 | 7,638,641 | 9,287,805 | 11,137,036 |
| Inflated Expenditures @ 2.6% | 1,280,391 | 1,238,903 | 1,289,201 | 1,247,109 | 1,299,633 | 6,537,154 | 234,333 | 362,655 | 199,761 | 227,511 |
| Reserve Contribution | 1,563,870 | 1,613,914 | 1,665,559 | 1,718,857 | 1,773,880 | 1,830,634 | 1,889,204 | 1,949,659 | 2,012,048 | 2,076,434 |
| Loty/month @ 1,104 | 118.05 | 121.82 | 125.72 | 129.74 | 133.90 | 138.18 | 142.60 | 147.17 | 151.89 | 156.74 |
| Percentage Increase | 3.2% | 3.2% | 3.2% | 3.2% | 3.2% | 3.2% | 3.2% | 3.2% | 3.2% | 3.2% |
| Special Assessments / Other | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Interest Pre Tax @ 0.50% | 42,699 | 44,553 | 46,669 | 49,023 | 51,632 | 41,309 | 33,887 | 42,161 | 50,885 | 60,307 |
| Ending Balance | 8,724,162 | 9,145,646 | 9,568,673 | 10,089,444 | 10,615,103 | 5,949,883 | 7,638,641 | 9,287,805 | 11,137,036 | 13,046,266 |

1

# **Exhibit 6**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ADVERSARY COMPLAINT

VIA CERTIFIED AND REGULAR MAIL

**Allied Trustee Services**
WORKING TOGETHER TO IMPROVE YOUR COMMUNITY

April 17, 2012

DANIEL MAJOR EDSTROM AND TERI ANNE
EDSTROM
2690 BROWN BEAR TRAIL
COOL, CA 95614

**IMPORTANT NOTICE: IF YOUR SEPARATE
INTEREST IS PLACED IN FORECLOSURE BECAUSE
YOU ARE BEHIND IN YOUR ASSESSMENTS, IT MAY
BE SOLD WITHOUT COURT ACTION.**

| | |
|---|---|
| T.S.#: | **12-11467** |
| Association: | AUBURN LAKE TRAILS PROPERTY OA |
| Owner(s): | DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM |
| Property: | 2690 BROWN BEAR TRAIL AKA |
| | 2690 BROWN BEAR COURT |
| | COOL, CA 95614 |

Dear Owner(s):

Allied Trustee Services (Allied) represents AUBURN LAKE TRAILS PROPERTY OWNERS ASSOCIATION (Association). As set forth in the attached Itemized Statement, you are delinquent on amounts owed to the Association on the above-referenced Property. THE FULL AMOUNT OF **$1,340.54** IS DUE NO LATER THAN **05-17-2012** BEFORE 4:30 PM. IF PAYMENT IS NOT RECEIVED BY THAT DATE, THE ASSOCIATION SHALL PURSUE RECOVERY AGAINST YOU BY CIVIL ACTION IN SMALL CLAIMS COURT, NON-JUDICIAL FORECLOSURE, JUDICIAL FORECLOSURE, AND/OR ANY OTHER AVAILABLE LEGAL REMEDIES, AND YOU WILL BE RESPONSIBLE FOR ANY AND ALL ADDITIONAL FEES AND COSTS.

Payment must be made by cashier's check, money order or personal check **made payable to Allied Trustee Services** and mailed to **990 Reserve Drive, Suite 208, Roseville, CA 95678**. If you use a payment delivery method that requires a signature for receipt, such payment must be delivered to and signed by Allied during office hours, which are between 8:00 a.m. and 4:30 p.m., Monday through Friday, except holidays. Payment can also be made by MasterCard or Visa (additional fees apply) by contacting our **Customer Service Department at (877) 282-4991.** Only Allied is authorized to accept payment until this demand is discharged. Therefore, you should direct all communications relating to this matter to Allied.

The above amount may not include non-assessment charges or penalties, which may be due but are not a part of this collection. If the Association separately assesses utility charges, or if the Property is in escrow, you must contact Allied prior to remittance for the correct payment amount. Generally, assessments are levied on an annual basis and collected at the beginning of the assessment period or as designated by the Board. Delinquent assessments are subject to a late charge and/or interest charges which shall not exceed the legal limit. This pre-lien letter is advising you of the delinquency and impending collection action. Thereafter, if the delinquency is not paid, the Association will authorize the recording of a lien against the property. Thirty days after recording, the lien may be enforced in any lawful manner permitted by the Association's governing documents and collection policy. The owner shall be responsible for all reasonable collection fees and costs. Please review your Association's governing documents and collection policy regarding specific details of the Association's collection and lien enforcement procedures.

You have the right to inspect the Association records pursuant to Civil Code §1365.2. You shall not be liable to pay the charges, interest, and costs of collection if it is determined the assessment was paid on time to the Association. You may submit a written request to meet with the Association to discuss a payment plan, pursuant to Civil Code §1367.1(c)(3), as well as a written request for dispute resolution pursuant to the Association's "meet and confer" program. You also may request alternative dispute resolution with a neutral third party before the Association may initiate foreclosure against you.

Your *immediate* attention to this matter is required.

Sincerely,

*Customer Service Department*

ALLIED TRUSTEE SERVICES MAY BE ACTING AS A DEBT
COLLECTOR TO COLLECT A DEBT. ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE.



# ALLIED TRUSTEE SERVICES
## 990 Reserve Drive, Suite 208
### Roseville, California 95678
## Telephone No. (877) 282-4991 • Facsimile No. (916) 960-0601

TO: OWNER(S)

RE: NOTICE REQUIRED BY THE FAIR DEBT COLLECTION PRACTICES ACT

1. The estimated amount to reinstate your membership account must be requested.  Please call Allied Trustee Services for the most current amount to reinstate your membership account.
2. The creditor is set forth in the enclosed notice and it is the creditor to whom the debt is owed.
3. The owner(s) may dispute the validity of this notice/delinquency within 30 days.  If the owner(s) does not dispute the delinquency within 30 days, then the creditor will assume the same valid.
4. If the owner(s) notifies Allied Trustee Services in writing within 30 days from receipt of this notice, Allied Trustee Services will obtain verification of the delinquency and Allied Trustee Services will mail a copy of the verification to the owner(s).
5. If the named creditor is not the original creditor, and if the owner(s) makes a written request to Allied Trustee Services within 30 days of receipt of this notice, the name and address of the original creditor will be mailed to the owner(s) by Allied Trustee Services.
6. Written request pursuant to this notice should be addressed to the above address.
7. This communication is for the purpose of collecting a debt, and any information obtained from the owner(s) will be used for that purpose.  This notice is required by the provisions of the Fair Debt Collection Practices Act and does not imply that we are attempting to collect money from anyone who has discharged the debt under the Bankruptcy laws of the United States.

## NOTICE REQUIRED UNDER CALIFORNIA CIVIL CODE SECTION 1812.700

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8:00 am or after 9:00 pm.  They may not harass you by using threats of violence or arrest or by using obscene language.  Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work.  For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt.  Collectors may contact another person to confirm your location or enforce a judgment.  For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.



# <u>ITEMIZED STATEMENT AS OF 04/17/2012</u>

**Date:**  4/17/2012

**T.S. Number:**  12-11467

**Account Number:**  0885

**Association:** AUBURN LAKE TRAILS PROPERTY OWNERS ASSOCIATION

**Owner(s):**  DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM

**Property Address:**     2690 BROWN BEAR TRAIL AKA 2690 BROWN BEAR COURT
COOL, CA 95614

## ASSOCIATION ASSESSMENTS, LATE CHARGES, INTEREST AND COSTS OF COLLECTION

|   | DESCRIPTION | AMOUNT | FROM | THRU | RATE | TOTAL |
|---|---|---|---|---|---|---|
| 4 | Monthly Delinquent Assessments @ | $169.00 | 01/01/2012 | 04/17/2012 | 12.00% | $676.00 |
| 3 | Late Charges @ | $10.00 | 01/01/2012 | 04/17/2012 | | $30.00 |

Interest on Assessments from 01/31/2012 to 04/17/2012     $8.18

## COSTS OF COLLECTION AND ADVANCES

|   | DESCRIPTION | AMOUNT | FROM | THRU | RATE | TOTAL |
|---|---|---|---|---|---|---|
| 1 | COLLECTION COST | $75.00 | 04/17/2012 | 04/17/2012 | 0.00% | $75.00 |
| 1 | INTEREST ADJUSTMENT | $5.15 | 03/31/2012 | 03/31/2012 | 0.00% | $5.15 |

Interest on Advances thru 04/17/2012     $0.00

**Total due Association as of 04/17/2012:**     **$794.33**

## TRUSTEE'S FEES, COSTS, AND EXPENSES

| DESCRIPTION | TOTAL |
|---|---|
| SETUP FEE | $50.00 |
| PRELIMINARY MAIL CHARGE | $36.00 |
| PRE-LIEN FEE | $235.00 |
| VESTING VERIFICATION | $40.00 |

**Total due Trustee for Fees and Costs:**     **$361.00**

**Total required to reinstate as of: 04/17/2012**     **$1,155.33**



P.O. Box 23159
San Diego, CA 92193-3159

IMPORTANT INFORMATION
ENCLOSED



11  96900  2484  0172  3118  5

Mailed On:          4/17/2012
Reference Number:   12-11467
Mailing Number:     0086079-01          ClientID:  Allied_T000210  FC

TERI ANNE EDSTROM
2690 BROWN BEAR COURT
COOL, CA 95614

GenericAddressInsert.doc                                          Rev. 07/27/2010

# **Exhibit 7**

ADVERSARY COMPLAINT

Not Negotiable

# Notice Disputing the Validity of Debt

Auburn Lake Trails Property Owners Association
1400 American River Trail
Cool, CA 95614
Lot #885

Date: May 09, 2012

Re: T.S.#: 12-11467
Certified Mail #:

**Notice to Principal is Notice to Agent.  Notice to Agent is Notice to Principal.**

**Notice to Auburn Lake Trails Property OA is Notice to Allied Trustee Services.  Notice to Allied Trustee Services is Notice to Auburn Lake Trails Property OA.**

**This letter is a dispute letter under the Fair Debt Collection Practices Act (15 U.S.C. § 1691-1692 et seq.)**

**This letter is a dispute letter under the Rosenthal Fair Debt Collection Practices Act (California Civil Code § 1788 et seq.)**

**This letter is a dispute under the Fair Credit Billing Act**

To Whom It May Concern:

**Identification of Original Creditor and Address**

You are to identify the original creditor and their address

**Fair Credit Billing Act**

Under the Fair Credit Billing Act, we are giving you notification of billing errors.  As of this date we have not received a correct statement identifying all alleged amounts due including what each amount due is related to.  Additionally we demanding that you identify all amounts and when they accrued or when they will accrue.

Not Negotiable

**Verification**

- (law) an **affidavit** attached to a statement **confirming** the truth of that statement
- The act of verifying; the state of being verified; **confirmation**; **authentication**; **Confirmation** by evidence;
- verified - **proved** to be true; "a verified claim"

Verification is the same as the following:

- Confirmation
  - o additional **proof** that something that was believed is correct
- Proof
  - o any **factual** evidence that helps to establish the **truth** of something
- Validation
  - o the act of validating; finding or testing the **truth** of something
- Substantiation
  - o **evidence, proof**
- Authentication
  - o **attested**: established as genuine
- Attest
  - o The act of **witnessing** the execution of an instrument.
  - o the action of bearing **witness**
- Witness
  - o someone who sees an event and reports what happened
  - o (law) a person who **attests** to the genuineness of a document or signature by adding their own signature
  - o (law) a person who testifies under oath in a court of law
- Certification
  - o documentation: confirmation that some fact or statement is true through the use of documentary evidence

Not Negotiable

Borrowers are disputing the validity of this alleged debt including "any and all assessments, delinquent assessments, principal, interest, late fees, late charges, collection costs, interest adjustments, setup fees, preliminary mail charges, pre-lien fees, vesting verification fees, attorney's fees, any and all other fees that have been imposed, or have been threatened to be imposed or any portion thereof" (hereinafter "Current and Anticipated Debt"). We expect not to hear from you again until you provide a true and complete verification of each and every "Current and Anticipated Debt":

- Verification of debt
    - o Including a copy of all alleged written contracts (all pages front and back)
    - o Including ALL attachments thereto (all modifications, assignments, allonges, endorsements, etc.)
    - o Including ledger entries for each and every line item showing "Current and Anticipated Debt"
    - o An affidavit under oath from a competent witness with first hand knowledge that each alleged written contract is valid and each "Current and Anticipated Debt" is valid. This includes:
        - ▪ A witness of each alleged original contract itself that contains an actual alleged original signature
        - ▪ A witness of each and every alleged attachment, modification, assignment, allonge and/or endorsement
        - ▪ A witness of all payments alleged to be due and owing

Govern yourselves accordingly,

Daniel Edstrom
2690 Brown Bear Court
Cool, CA 95614



DANIEL E. ANGIUS†
PAUL P. TERRY, JR.†
BRADLEY J. EPSTEIN*
JOHN J. STANDER*
JULIE M. MOUSER
MICHAEL HARDY
MELISSA BYBEE‡
KEVIN C. CANTY
SUSANA C. CENDEJAS
ZER IYER
WILLIAM PAUL WRIGHT‡
SAM Y. CHON
TROY R. DICKERSON‡
M. CATHERINE GARCIA
RICHARD V. De GRUCCIO
ASMARA S. TARAR**
JIMMY SANH L. LY

————————

†Also admitted
in Nevada and
Colorado

*Also admitted
in Nevada

‡Admitted in
Nevada

**Admitted in
Nevada & New Jersey

————

1451 River Park Drive
Suite 285
Sacramento
California  95815
Telephone  916 567 1400
Facsimile  916 567 1401
Email  law@angius-terry.com

Las Vegas, NV
Reno, NV
Walnut Creek, CA

May 11, 2012

dmedstrom@hotmail.com

Daniel Edstrom
2690 Brown Bear Court
Cool, CA  95614

Re:     Auburn Lake Trails Property Owners Association
        Request for Records

Dear Mr. Edstrom:

We represent Auburn Lake Trails Property Owners Association and we hereby respond on the Association's behalf to your recent request in your April 30th letter to provide you with copies of particular Association records for the current fiscal year.

The following informs you, in compliance with State law, which record copies the Association will provide to you for a charge of twenty cents ($0.20) per page.  Upon your agreement to pay those costs, then the Association will provide the record copies to you.

1. The Association will provide to you copies of (a) its contract with Allied Trustee Services, and (b) its records, including general ledger entries, regarding your delinquent assessments.

The Association will not make available for you to inspect any records regarding the delinquent assessments of other owners. This is because the records are privileged under the law and will compromise the privacy of the other owners.  (See Civil Code Sections 1365.2(d)(1) (record disclosure law) and 1367.1 (2) ("The decision to initiate foreclosure of a lien for delinquent assessments that has been validly recorded shall be made only by the board of directors of the association and may not be delegated to an agent of the association. The board shall approve the decision by a majority vote of the board members in an executive session. . . The board shall maintain the confidentiality of the owner or owners of the separate interest by identifying the matter in the minutes by the parcel number of the property, rather than the name of the owner or owners. . . .")



ANGIUS
& TERRY
L L P
ATTORNEYS

Daniel Edstrom
Re:    Auburn Lake Trails Property Owners Association
May 11, 2012
Page 2

The tax documents that you request do not exist.

2. The Association will provide you a copy of its Lot file for your home, which consists of all of the Association's records regarding you and your home.

3. The Association has not contracted with any collection service other than Allied Trustee Service this current fiscal year. As a consequence, the collection records that you request do not exist.

4. The Association will not provide you with copies of any records regarding the delinquent assessments of other owners. This is because the records are privileged under the law and will compromise the privacy of the other owners. (See Civil Code Sections 1365.2(d)(1) (record disclosure law) and 1367.1 (2) ("The decision to initiate foreclosure of a lien for delinquent assessments that has been validly recorded shall be made only by the board of directors of the association and may not be delegated to an agent of the association. The board shall approve the decision by a majority vote of the board members in an executive session. . . The board shall maintain the confidentiality of the owner or owners of the separate interest by identifying the matter in the minutes by the parcel number of the property, rather than the name of the owner or owners. . . .")

5. During this current fiscal year, the Association has only been a party to small claims lawsuits. Neither State law nor the Association's governing documents require it to provide you with copies of its records regarding the lawsuits. Also, you are able to obtain records regarding the lawsuits by visiting the El Dorado County Superior Court in person or at its website.

6. The Association has not been a party to a Federal court lawsuit during the current fiscal year.

7. Neither State law nor the Association's governing documents require it to inform you of all non-judicial foreclosures that it has initiated. Also, you are able to obtain records regarding the foreclosures by visiting the El Dorado County Recorder in person or at its website.

8. Neither State law nor the Association's governing documents require it to inform you



of bankruptcies for which it has filed pleadings. Also, you are able to obtain records regarding the bankruptcies by visiting the bankruptcy courts.

9. No "written board approvals of vendor or contractor proposals or invoices from Allied Trustee Services (and/or any entities related to or working with Allied Trustee Services as known by ALTOA)" for the current fiscal year exist.

10. The Association has made no payments from its reserve accounts related to debt collection or Allied Trustee Services.

11. The Association will provide you with copies of all open board and committee meeting minutes for the current fiscal year.

12. No check register entries exist related to "Allied Trustee Services (and/or any person or entity related to or working with Allied Trustee Services as known by ALTOA)."

13. No "enhanced association records" exist with respect to Allied Trustee Services except for owners other than you. The Association will not provide you with copies of any of those records since they concern the delinquent assessments of other owners. This is because the records are privileged under the law and will compromise the privacy of the other owners. (See Civil Code Sections 1365.2(d)(1) (record disclosure law) and 1367.1 (2) ("The decision to initiate foreclosure of a lien for delinquent assessments that has been validly recorded shall be made only by the board of directors of the association and may not be delegated to an agent of the association. The board shall approve the decision by a majority vote of the board members in an executive session. . . The board shall maintain the confidentiality of the owner or owners of the separate interest by identifying the matter in the minutes by the parcel number of the property, rather than the name of the owner or owners. . . .")

Very truly yours,
ANGIUS & TERRY LLP

Bradley J. Epstein

cc: Board of Directors

Not Negotiable

# Notice Disputing the Validity of Debt

Auburn Lake Trails Property Owners Association
1400 American River Trail
Cool, CA 95614
Lot #885


Date: May 15, 2012

Re: T.S.#: 12-11467
Certified Mail #:


**Notice to Principal is Notice to Agent.  Notice to Agent is Notice to Principal.**

**Notice to Auburn Lake Trails Property OA is Notice to Allied Trustee Services.  Notice to Allied Trustee Services is Notice to Auburn Lake Trails Property OA.**

**This letter is a dispute letter under the Fair Debt Collection Practices Act (15 U.S.C. § 1691-1692 et seq.)**

**This letter is a dispute letter under the Rosenthal Fair Debt Collection Practices Act (California Civil Code § 1788 et seq.)**

**This letter is a dispute under the Fair Credit Billing Act**

**This letter is a dispute under the Fair Credit Reporting Act**

Kevin Hubred, the association, and the board:
Thank you for meeting with me yesterday, I appreciate Kevin's time.   My initial investigation into this matter has revealed the following facts:

1. The ALT collection policy engages Allied Trustee Services, Inc., however the contract fails to comport with California Civil Code 1558.  Although Allied Trustee Services, Inc. may have existed in 1997, currently they fail to exist in California or to be registered with the Secretary of State.
2. ALT has sent my personally identifiable information to a company in which they have no viable contract with (specifically G&P Enterprises, Inc. dba Allied Trustee Services).
3. Attached is a copy of one of the eight (8) letters my wife and I have received from "Allied Trustee Services" (presumably G&P Enterprises, Inc. dba Allied Trustee Services). These letters are all substantially similar and appear to be in direct conflict with the following codes and statutes (this is not all inclusive):
    a. FDCPA – 15 U.S.C. sections:
        i. 1692(d)(1)

---

Not Negotiable

        ii.  1692(e)(2)(A)
      iii.  1692(e)(2)(B)
      iv.  1692(e)(4)
      v.  1692(e)(5)
      vi.  1692(e)(9)
     vii.  1692(e)(10)
    viii.  1692(e)(11)
      ix.  1692(e)(14)
      x.  1692(f)(1)
      xi.  1692(f)(6)(A)
     xii.  1692(f)(6)(B)
    xiii.  1692(f)(8)
    xiv.  1692(g)(3)
     xv.  1692(g)(4)
    xvi.  1692(g)(5)

b.  RFDCPA

    i.  The RFDCPA (California Civil Code section 1788.17) provides, in relevant part, "Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of Title 15 of the United States Code."

According to Irwin v. Mascott, 112 F. Supp. 2d 937, 958 (N.D. Cal. 2000): (i) "The FDCPA is a strict liability statute and thus does not require a showing of intentional conduct on the part of the debt collector"; (ii) "Validation requirements are strictly construed under the least sophisticated consumer standard".

The association has incurred substantial liability based on the uncontrolled actions of Allied Trustee Services, Inc. and/or G&P Enterprises, Inc. dba Allied Trustee Services. Further, based on the notice I have given you, future actions to enforce a defective collections policy would be, among many other things, unfair and deceptive.

The above conduct appears to be a standard and practice of both ALT and your 3rd party debt collector going back to at least 1997. I request that you immediately notify your insurance carrier(s), or at least within 30 days of this communication. Further I am requesting a copy of all relevant insurance policies held by ALT that cover this matter.

**Cease and Desist**
You are to immediately Cease and Desist from the following actions:
- Attempting to collect a debt while you or your alleged agents are in violation of Federal and State laws

Not Negotiable

- Giving my personal identifying information and other confidential financial information to one or more entities that do not exist, you have no contract with, or that as a standard and practice violate Federal and State laws
- Allowing your agent(s) to use my personal identifying information
- Allowing your agent(s) to keep my personal identifying information
- Allowing your agent(s) to utter or publish any document containing my personal identifying information and/or financial information
- Allowing your agent(s) to slander or cause disparagement of title to my property
- Allowing your agent(s) to intentionally intrude upon my solitude and/or seclusion
- Reporting derogatory information to any credit reporting agency
- Blocking access to ALT resources, such as the pool and the use of the automatic 1st, 2nd and 3rd gates

While this is a serious matter, my intention is to work directly with ALT and the Board to rectify the collections policy so they are in compliance with Federal and State laws. That being said, I am not an attorney and this is not legal advice, this information only pertains to my situation as an individual in pro per. You are advised to seek competent counsel.

Please begin remediating this issue immediately. The Chinese proverb that the best time to plant a tree was 20 years ago, and the next best time is now, provides guidance in compliance with statutory schemes. To the extent that an error occurred in the handling of these matters (having not done it correctly in the past), the time to correct it is now.

While I anticipate it will take time to review this matter, I demand that you turn on gate access immediately and allow my family full access to ALT resources. You must also refrain from reporting derogatory information to any credit reporting agency.

Please contact me at your earliest convenience so we can correct the deficiencies in the ALT collections policy.

Respectfully,

Daniel Edstrom
2690 Brown Bear Court
Cool, CA 95614

**Not Negotiable**

Auburn Lake Trails Property Owners Association

1400 American River Trail

Cool, CA 95614

Daniel Edstrom

2690 Brown Bear Court

Cool, CA 95614

April 30, 2012

RE: Letter from Allied Trustee Services and California Civil Code section 1365.2

**Notice to Principal is Notice to Agent.  Notice to Agent is Notice to Principal.**

## Request for any related "association record" or "enhanced association record" for  the Current Fiscal Year as of the date of this communication.

I would like to take advantage of my right to inspect the Auburn Lake Trails Property Owners Association (hereinafter "ALTOA") records pursuant to California Civil Code section 1365.2.

Accordingly, note the following from California Civil Code 1365.2(a):

**(1) "Association records" means all of the following:**

**(A) Any financial document required to be provided to a member in Section 1365.**

**(B) Any financial document or statement required to be provided in Section 1368.**

**(C) Interim financial statements, periodic or as compiled, containing any of the following:**

**(i) Balance sheet.**

**(ii) Income and expense statement.**

**(iii) Budget comparison.**

**(iv) General ledger. A "general ledger" is a report that shows all transactions that occurred in an association account over a specified period of time.**

**The records described in this subparagraph shall be prepared in accordance with an accrual or modified accrual basis of accounting.**

**(D) Executed contracts not otherwise privileged under law.**

**(E) Written board approval of vendor or contractor proposals or invoices.**

**(F) State and federal tax returns.**

**Not Negotiable**

(G) Reserve account balances and records of payments made from reserve accounts.

(H) Agendas and minutes of meetings of the members, the board of directors and any committees appointed by the board of directors pursuant to Section 7212 of the Corporations Code; excluding, however, minutes and other information from executive sessions of the board of directors as described in Section 1363.05.

(J) Check registers.

(2) "Enhanced association records" means invoices, receipts and canceled checks for payments made by the association, purchase orders approved by the association, credit card statements for credit cards issued in the name of the association, statements for services rendered, and reimbursement requests submitted to the association, provided that the person submitting the reimbursement request shall be solely responsible for removing all personal identification information from the request.

According to California Civil Code 1365.2(c)(3):

... if the requesting member submits a written request directly to the association for copies of specifically identified records, the association may satisfy the requirement to make the association records available for inspection and copying by mailing copies of the specifically identified records to the member by first-class mail within the timeframes set forth in subdivision (j).

I am requesting specific ALTOA "association records" and "enhanced association records", as follows:

1. All contracts, communications, writings, ledger entries, emails and tax documents, relating to ALTOA and Allied Trustee Services (and/or any person or entity related to or working with Allied Trustee Services as known by ALTOA). Tax documents would be any 1099, 1098, W-9, or other tax form sent from ALTOA to Allied Trustee Services, or any ALTOA tax filing containing information regarding Allied Trustee Services.
   o Ledger entries requested are line item ledger entries, not subtotals or items in aggregate. Specifically I am looking for each individual dollar amount and its corresponding description, including a listing of any codes or abbreviations.
   o Communications would include any information relating to Daniel and Teri Edstrom and your attempt to collect amounts from us by entering information on any Allied Trustee Services terminal, webpages, application, or interface through any telecommunications system  (in otherwords, did ALTOA open a webpage, application or terminal and enter our information through that system).
2. All contracts, communications, writings, ledger entries, and tax documents relating to ALTOA and Daniel and Teri Edstrom.
3. All contracts, communications, writing, ledger entries, and tax documents relating to any other 3rd party vendor involved in the collection of assessments, or involved in debt collection on behalf of ALTOA that is not Allied Trustee Services

**Not Negotiable**

4. Copies of any debt collection letters, pre-lien letters, lien documents, Notice of Default documents, Notice of Trustee Sale documents, Notice of Substitution of Trustee documents or Trustee Deed Upon Sale documents ALTOA is in possession of in relation to any member, redacted of the members personal identifying information, including lot location (and/or any other redaction authorized by law).

5. Identify all lawsuits naming ALTOA (or by Allied Trustee Services on behalf of ALTOA) as a party (Plaintiff or Defendant) that are a matter of public record with the El Dorado County Superior Court (including small claims court)

6. Identify all lawsuits related to ALTOA that are a matter of public record within any Federal District Court

7. Identify all non-judicial foreclosures initiated by ALTOA and/or Allied Trustee Services that are a matter of public record (they have been advertised in a newspaper or publication of general circulation)

8. Identify all bankruptcies to which ALTOA (or by Allied Trustee Services on behalf of ALTOA) has entered a Proof of Claim, Motion for Relief from Stay, or otherwise filed a pleading, that are a matter of public record

9. Copies of all Written board approval of vendor or contractor proposals or invoices from Allied Trustee Services (and/or any entities related to or working with Allied Trustee Services as known by ALTOA)

10. Reserve account balances and records of payments made from reserve accounts if they relate to collection of a debt or relate to Allied Trustee Services (and/or any person or entity related to or working with Allied Trustee Services as known by ALTOA)

11. Agendas and minutes of meetings of the members, the board of directors and any committees appointed by the board of directors pursuant to Section 7212 of the Corporations Code if they relate to collection of a debt or relate to Allied Trustee Services (and/or any person or entity related to or working with Allied Trustee Services as known by ALTOA)

12. Check register entries related to Allied Trustee Services (and/or any person or entity related to or working with Allied Trustee Services as known by ALTOA)

13. Any other "enhanced association record" not specified above that relates to Allied Trustee Services (and/or any person or entity related to or working with Allied Trustee Services as known by ALTOA)

For purposes of clarity, I am looking for the following for the above 13 items:

A. Any "association record" or "enhanced association record" relating to Allied Trustee Services or any person or entity related to Allied Trustee Services

B. Any "association record" or "enhanced association record" relating to the associations attempt to collect a debt from Daniel and Teri Edstrom

C. Disclosure of any "association record" or "enhanced association record" relating to any non-judicial or judicial action taken in Small Claims Court, Superior Court, Federal Court or Bankruptcy Court as they relate to the collection of a debt

**Not Negotiable**

According to California Civil Code section 1365.2(c):

> **(4) The association may bill the requesting member for the direct and actual cost of copying and mailing requested documents. The association shall inform the member of the amount of the copying and mailing costs, and the member shall agree to pay those costs, before copying and sending the requested documents.**

> **(5) In addition to the direct and actual costs of copying and mailing, the association may bill the requesting member an amount not in excess of ten dollars ($10) per hour, and not to exceed two hundred dollars ($200) total per written request, for the time actually and reasonably involved in redacting the enhanced association records as provided in paragraph (2) of subdivision (a). The association shall inform the member of the estimated costs, and the member shall agree to pay those costs, before retrieving the requested documents.**

According to California Civil Code section 1365.2(b)(2):

> **A member of the association may designate another person to inspect and copy the specified association records on the member's behalf. The member shall make this designation in writing.**

Daniel and Teri designate ALTOA employees, contractors or agents to provide this information in good faith and in conjunction with California Civil Code section 1365.2(c)(3), which states:

> **... if the requesting member submits a written request directly to the association for copies of specifically identified records, the association may satisfy the requirement to make the association records available for inspection and copying by mailing copies of the specifically identified records to the member by first-class mail within the timeframes set forth in subdivision (j).**

All records are to be submitted within the timeframes required by California Civil Code 1365.2 subdivision (j) and covering the time period **for the current fiscal year**.

Respectfully,

Daniel  Edstrom
Lot 885
2690 Brown Bear Court
Cool, CA 95614

**Not Negotiable**

Auburn Lake Trails Property Owners Association

1400 American River Trail

Cool, CA 95614

Daniel Edstrom

2690 Brown Bear Court

Cool, CA 95614

April 30, 2012

RE: Letter from Allied Trustee Services and California Civil Code section 1365.2

**Notice to Principal is Notice to Agent.  Notice to Agent is Notice to Principal.**

## Request for any related "association record" or "enhanced association record" for the Previous Two Fiscal Years as of the date of this communication.

I would like to take advantage of my right to inspect the Auburn Lake Trails Property Owners Association (hereinafter "ALTOA") records pursuant to California Civil Code section 1365.2.

Accordingly, note the following from California Civil Code 1365.2(a):

> **(1) "Association records" means all of the following:**
>
> **(A) Any financial document required to be provided to a member in Section 1365.**
>
> **(B) Any financial document or statement required to be provided in Section 1368.**
>
> **(C) Interim financial statements, periodic or as compiled, containing any of the following:**
>
> **(i) Balance sheet.**
>
> **(ii) Income and expense statement.**
>
> **(iii) Budget comparison.**
>
> **(iv) General ledger. A "general ledger" is a report that shows all transactions that occurred in an association account over a specified period of time.**
>
> **The records described in this subparagraph shall be prepared in accordance with an accrual or modified accrual basis of accounting.**
>
> **(D) Executed contracts not otherwise privileged under law.**
>
> **(E) Written board approval of vendor or contractor proposals or invoices.**
>
> **(F) State and federal tax returns.**

(G) Reserve account balances and records of payments made from reserve accounts.

(H) Agendas and minutes of meetings of the members, the board of directors and any committees appointed by the board of directors pursuant to Section 7212 of the Corporations Code; excluding, however, minutes and other information from executive sessions of the board of directors as described in Section 1363.05.

(J) Check registers.

(2) "Enhanced association records" means invoices, receipts and canceled checks for payments made by the association, purchase orders approved by the association, credit card statements for credit cards issued in the name of the association, statements for services rendered, and reimbursement requests submitted to the association, provided that the person submitting the reimbursement request shall be solely responsible for removing all personal identification information from the request.

According to California Civil Code 1365.2(c)(3):

... if the requesting member submits a written request directly to the association for copies of specifically identified records, the association may satisfy the requirement to make the association records available for inspection and copying by mailing copies of the specifically identified records to the member by first-class mail within the timeframes set forth in subdivision (j).

I am requesting specific ALTOA "association records" and "enhanced association records", as follows:

1. All contracts, communications, writings, ledger entries, emails and tax documents, relating to ALTOA and Allied Trustee Services (and/or any person or entity related to or working with Allied Trustee Services as known by ALTOA).  Tax documents would be any 1099, 1098, W-9, or other tax form sent from ALTOA to Allied Trustee Services, or any ALTOA tax filing containing information regarding Allied Trustee Services.
   o Ledger entries requested are line item ledger entries, not subtotals or items in aggregate.  Specifically I am looking for each individual dollar amount and its corresponding description, including a listing of any codes or abbreviations.
   o Communications would include any information relating to Daniel and Teri Edstrom and your attempt to collect amounts from us by entering information on any Allied Trustee Services terminal, webpages, application, or interface through any telecommunications system  (in otherwords, did ALTOA open a webpage, application or terminal and enter our information through that system).
2. All contracts, communications, writings, ledger entries, and tax documents relating to ALTOA and Daniel and Teri Edstrom.
3. All contracts, communications, writing, ledger entries, and tax documents relating to any other 3rd party vendor involved in the collection of assessments, or involved in debt collection on behalf of ALTOA that is not Allied Trustee Services

**Not Negotiable**

4. Copies of any debt collection letters, pre-lien letters, lien documents, Notice of Default documents, Notice of Trustee Sale documents, Notice of Substitution of Trustee documents or Trustee Deed Upon Sale documents ALTOA is in possession of in relation to any member, redacted of the members personal identifying information, including lot location (and/or any other redaction authorized by law).

5. Identify all lawsuits naming ALTOA (or by Allied Trustee Services on behalf of ALTOA) as a party (Plaintiff or Defendant) that are a matter of public record with the El Dorado County Superior Court (including small claims court)

6. Identify all lawsuits related to ALTOA that are a matter of public record within any Federal District Court

7. Identify all non-judicial foreclosures initiated by ALTOA and/or Allied Trustee Services that are a matter of public record (they have been advertised in a newspaper or publication of general circulation)

8. Identify all bankruptcies to which ALTOA (or by Allied Trustee Services on behalf of ALTOA) has entered a Proof of Claim, Motion for Relief from Stay, or otherwise filed a pleading, that are a matter of public record

9. Copies of all Written board approval of vendor or contractor proposals or invoices from Allied Trustee Services (and/or any entities related to or working with Allied Trustee Services as known by ALTOA)

10. Reserve account balances and records of payments made from reserve accounts if they relate to collection of a debt or relate to Allied Trustee Services (and/or any person or entity related to or working with Allied Trustee Services as known by ALTOA)

11. Agendas and minutes of meetings of the members, the board of directors and any committees appointed by the board of directors pursuant to Section 7212 of the Corporations Code if they relate to collection of a debt or relate to Allied Trustee Services (and/or any person or entity related to or working with Allied Trustee Services as known by ALTOA)

12. Check register entries related to Allied Trustee Services (and/or any person or entity related to or working with Allied Trustee Services as known by ALTOA)

13. Any other "enhanced association record" not specified above that relates to Allied Trustee Services (and/or any person or entity related to or working with Allied Trustee Services as known by ALTOA)

For purposes of clarity, I am looking for the following for the above 13 items:

A. Any "association record" or "enhanced association record" relating to Allied Trustee Services or any person or entity related to Allied Trustee Services

B. Any "association record" or "enhanced association record" relating to the associations attempt to collect a debt from Daniel and Teri Edstrom

C. Disclosure of any "association record" or "enhanced association record" relating to any non-judicial or judicial action taken in Small Claims Court, Superior Court, Federal Court or Bankruptcy Court as they relate to the collection of a debt

**Not Negotiable**

D. I am specifically requesting review of any contracts with Allied Trustee Services that exist and are still in use even if they are dated before the requested time period, because they are still in use today.

According to California Civil Code section 1365.2(c):

**(4) The association may bill the requesting member for the direct and actual cost of copying and mailing requested documents. The association shall inform the member of the amount of the copying and mailing costs, and the member shall agree to pay those costs, before copying and sending the requested documents.**

**(5) In addition to the direct and actual costs of copying and mailing, the association may bill the requesting member an amount not in excess of ten dollars ($10) per hour, and not to exceed two hundred dollars ($200) total per written request, for the time actually and reasonably involved in redacting the enhanced association records as provided in paragraph (2) of subdivision (a). The association shall inform the member of the estimated costs, and the member shall agree to pay those costs, before retrieving the requested documents.**

According to California Civil Code section 1365.2(b)(2):

**A member of the association may designate another person to inspect and copy the specified association records on the member's behalf. The member shall make this designation in writing.**

Daniel and Teri designate ALTOA employees, contractors or agents to provide this information in good faith and in conjunction with California Civil Code section 1365.2(c)(3), which states:

**... if the requesting member submits a written request directly to the association for copies of specifically identified records, the association may satisfy the requirement to make the association records available for inspection and copying by mailing copies of the specifically identified records to the member by first-class mail within the timeframes set forth in subdivision (j).**

All records are to be submitted within the timeframes required by California Civil Code 1365.2 subdivision (j) and covering the time period **for the previous two fiscal years**.

Respectfully,

Daniel Edstrom
Lot 885
2690 Brown Bear Court
Cool, CA 95614

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit 8

ADVERSARY COMPLAINT

Not Negotiable

# Notice Disputing the Validity of Debt

Allied Trustee Services
990 Reserve Drive, Suite 208
Roseville, CA 95678

Date: May 10, 2012

Re: T.S.#: 12-11467
Certified Mail #:

**Notice to Principal is Notice to Agent.  Notice to Agent is Notice to Principal.**

**Notice to Allied Trustee Services is Notice to Auburn Lake Trails Property OA.  Notice to Auburn Lake Trails Property OA is Notice to Allied Trustee Services**

**This letter is a dispute letter under the Fair Debt Collection Practices Act (15 U.S.C. § 1691-1692 et seq.)**

**This letter is a dispute letter under the Rosenthal Fair Debt Collection Practices Act (California Civil Code § 1788 et seq.)**

**This letter is a dispute under the Fair Credit Billing Act**

To Whom It May Concern:

While this letter is written in part for purposes of settlement and compromise it is already a demand letter which can and will be used as necessary.  It is therefore not a confidential communication.

**Cease and Desist**

We do not wish to communicate with you or to engage in commerce with you.  You are to cease and desist from using our personal identifying information, including all personal and financial information in your possession.  You are ordered to refrain from taking any action to interfere with the title to our house.  You apparently have processes and controls in place which allow you to violate the law as a standard and practice.  Your actions are unsafe and unsound and against public policy.  Every employee, consultant, agent, lawyer, nominee or person representing your company is to cease and desist any and all use of our names, persona, financial information, affairs, papers, recordings, publications, recorded documents, and any and all other information that contains our personal information.  You may not alter, change sell, exchange, transfer, give away or otherwise acquire any physical, electronic or other personal identifying information, credit, address, location, association or membership.

---

Debt Dispute Letter                                                                      Page 1

Not Negotiable

**Identification of Original Creditor and Address**

You are to identify the original creditor and their address

**Identification of Current Creditor and Address**

You are to identify the current creditor and their address

**Fair Credit Billing Act**

Under the Fair Credit Billing Act, we are giving you notification of billing errors.  As of this date we have not received a statement.  However, it appears that you are attempting to bill us for an incorrect amount as we owe you no money.

**Trustee Services**

Your information is incorrect and you are hereby noticed of such.  We demand that you disavow any previous communications with us.  Any action you take in violation of Federal or State law renders any alleged notice as void and a nullity, in otherwords, as no notice at all.

Not Negotiable

**Verification**

- (law) an **affidavit** attached to a statement **confirming** the truth of that statement
- The act of verifying; the state of being verified; **confirmation**; **authentication**; **Confirmation** by evidence;
- verified - **proved** to be true; "a verified claim"

Verification is the same as the following:

- Confirmation
  - ○ additional **proof** that something that was believed is correct
- Proof
  - ○ any **factual** evidence that helps to establish the **truth** of something
- Validation
  - ○ the act of validating; finding or testing the **truth** of something
- Substantiation
  - ○ **evidence, proof**
- Authentication
  - ○ **attested**: established as genuine
- Attest
  - ○ The act of **witnessing** the execution of an instrument.
  - ○ the action of bearing **witness**
- Witness
  - ○ someone who sees an event and reports what happened
  - ○ (law) a person who **attests** to the genuineness of a document or signature by adding their own signature
  - ○ (law) a person who testifies under oath in a court of law
- Certification
  - ○ documentation: confirmation that some fact or statement is true through the use of documentary evidence

Not Negotiable

Borrowers are disputing the validity of this alleged debt including "any and all assessments, delinquent assessments, principal, interest, late fees, late charges, collection costs, interest adjustments, setup fees, preliminary mail charges, pre-lien fees, vesting verification fees, attorney's fees, any and all other fees that have been imposed, or have been threatened to be imposed or any portion thereof" (hereinafter "Current and Anticipated Debt").  We expect not to hear from you again until you provide a true and complete verification of each and every "Current and Anticipated Debt" and by what authority you claim for each and every item (including when and how the item accrued):

- Verification of debt
    - Including a copy of all alleged written contracts (all pages front and back)
    - Including ALL attachments thereto (all modifications, assignments, allonges, endorsements, etc.)
    - Including ledger entries for each and every line item showing "Current and Anticipated Debt"
    - An affidavit under oath from a competent witness with first hand knowledge that each alleged written contract is valid and each "Current and Anticipated Debt" is valid.  This includes:
        - A witness of each alleged original contract itself that contains an actual alleged original signature
        - A witness of each and every alleged attachment, modification, assignment, allonge and/or endorsement
        - A witness of all payments alleged to be due and owing

Govern yourselves accordingly,

Daniel and Teri Edstrom
2690 Brown Bear Court
Cool, CA 95614

Not Negotiable

# Notice Disputing the Validity of Debt

Allied Trustee Services
990 Reserve Drive, Suite 208
Roseville, CA 95678

Date: May 09, 2012

Re: T.S.#: 12-11467
Certified Mail #:

**Notice to Principal is Notice to Agent.  Notice to Agent is Notice to Principal.**

**Notice to Allied Trustee Services is Notice to Auburn Lake Trails Property OA.  Notice to Auburn Lake Trails Property OA is Notice to Allied Trustee Services**

**This letter is a dispute letter under the Fair Debt Collection Practices Act (15 U.S.C. § 1691-1692 et seq.)**

**This letter is a dispute letter under the Rosenthal Fair Debt Collection Practices Act (California Civil Code § 1788 et seq.)**

**This letter is a dispute under the Fair Credit Billing Act**

To Whom It May Concern:

### Identification of Original Creditor and Address

You are to identify the original creditor and their address

### Fair Credit Billing Act

Under the Fair Credit Billing Act, we are giving you notification of billing errors.  As of this date we have not received a correct statement identifying all alleged amounts due including what each amount due is related to.  Additionally we demanding that you identify all amounts and when they accrued or when they will accrue.

---

Debt Dispute Letter                                                                 Page 1

Not Negotiable

**Verification**

- (law) an **affidavit** attached to a statement **confirming** the truth of that statement
- The act of verifying; the state of being verified; **confirmation**; **authentication**; **Confirmation** by evidence;
- verified - **proved** to be true; "a verified claim"

Verification is the same as the following:

- Confirmation
    - o   additional **proof** that something that was believed is correct
- Proof
    - o   any **factual** evidence that helps to establish the **truth** of something
- Validation
    - o   the act of validating; finding or testing the **truth** of something
- Substantiation
    - o   **evidence, proof**
- Authentication
    - o   **attested**: established as genuine
- Attest
    - o   The act of **witnessing** the execution of an instrument.
    - o   the action of bearing **witness**
- Witness
    - o   someone who sees an event and reports what happened
    - o   (law) a person who **attests** to the genuineness of a document or signature by adding their own signature
    - o   (law) a person who testifies under oath in a court of law
- Certification
    - o   documentation: confirmation that some fact or statement is true through the use of documentary evidence

Not Negotiable

Borrowers are disputing the validity of this alleged debt including "any and all assessments, delinquent assessments, principal, interest, late fees, late charges, collection costs, interest adjustments, setup fees, preliminary mail charges, pre-lien fees, vesting verification fees, attorney's fees,  any and all other fees that have been imposed, or have been threatened to be imposed or any portion thereof" (hereinafter "Current and Anticipated Debt").  We expect not to hear from you again until you provide a true and complete verification of each and every "Current and Anticipated Debt":

- Verification of debt
    - Including a copy of all alleged written contracts (all pages front and back)
    - Including ALL attachments thereto (all modifications, assignments, allonges, endorsements, etc.)
    - Including ledger entries for each and every line item showing "Current and Anticipated Debt"
    - An affidavit under oath from a competent witness with first hand knowledge that each alleged written contract is valid and each "Current and Anticipated Debt" is valid.  This includes:
        - A witness of each alleged original contract itself that contains an actual alleged original signature
        - A witness of each and every alleged attachment, modification, assignment, allonge and/or endorsement
        - A witness of all payments alleged to be due and owing

Govern yourselves accordingly,

Daniel Edstrom
2690 Brown Bear Court
Cool, CA 95614

# Exhibit 9

**United States Bankruptcy Court**
**Eastern District of California**

**Voluntary Petition**

| Name of Debtor (if individual, enter Last, First, Middle) | Name of Joint Debtor (Spouse) (Last, First, Middle) |
|---|---|
| Edstrom, Daniel, Major | n/a |

| All Other Names used by the Debtor in the last 8 years (include married, maiden, and trade names) | All Other Names used by the Joint Debtor in the last 8 years (include married, maiden, and trade names) |
|---|---|
| DTC Systems, DTC-Systems | n/a |

| Last four digits of Soc Sec or Individual Taxpayer I D (ITIN) No /Complete EIN (if more than one, state all) | Last four digits of Soc Sec or Individual Taxpayer I D (ITIN) No /Complete EIN (if more than one, state all) |
|---|---|
| xxx-xx-1674 | n/a |

| Street Address of Debtor (No and Street, City, and State) | Street Address of Joint Debtor (No and Street, City, and State) |
|---|---|
| 2690 Brown Bear Court Cool, CA 95614 ZIP CODE 95614 | n/a ZIP CODE n/a |

| County of Residence or of the Principal Place of Business | County of Residence or of the Principal Place of Business |
|---|---|
| El Dorado | n/a |

| Mailing Address of Debtor (if different from street address) | Mailing Address of Joint Debtor (if different from street address) |
|---|---|
| n/a ZIP CODE n/a | n/a ZIP CODE n/a |

| Location of Principal Assets of Business Debtor (if different from street address above) |
|---|
| n/a ZIP CODE n/a |

| Type of Debtor (Form of Organization) (Check one box) | Nature of Business (Check one box) | Chapter of Bankruptcy Code Under Which the Petition is Filed (Check one box) |
|---|---|---|
| ☒ Individual (includes Joint Debtors) See Exhibit D on page 2 of this form | ☐ Health Care Business | ☐ Chapter 7 ☐ Chapter 15 Petition for |
| ☐ Corporation (includes LLC and LLP) | ☐ Single Asset Real Estate as defined in 11 U S C § 101(51B) | ☐ Chapter 9 Recognition of a Foreign |
| ☐ Partnership | ☐ Railroad | ☒ Chapter 11 Main Proceeding |
| ☐ Other (If debtor is not one of the above entities, check this box and state type of entity below) | ☐ Stockbroker | ☐ Chapter 12 ☐ Chapter 15 Petition for |
| | ☐ Commodity Broker | ☐ Chapter 13 Recognition of a Foreign |
| | ☐ Clearing Bank | Nonmain Proceeding |
| _____ | ☒ Other | |

| | Tax-Exempt Entity (Check box, if applicable) | Nature of Debts (Check one box) |
|---|---|---|
| | ☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code) | ☒ Debts are primarily consumer debts, defined in 11 U S C § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose" ☐ Debts are primarily business debts |

| Filing Fee (Check one box) | Chapter 11 Debtors |
|---|---|
| ☐ Full Filing Fee attached | Check one box: |
| ☒ Filing Fee to be paid in installments (applicable to individuals only) Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments Rule 1006(b) See Official Form 3A | ☒ Debtor is a small business debtor as defined in 11 U S C § 101(51D) ☐ Debtor is not a small business debtor as defined in 11 U S C § 101(51D) |
| ☐ Filing Fee waiver requested (applicable to chapter 7 individuals only) Must attach signed application for the court's consideration See Official Form 3B | Check if: ☒ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,343,300 (amount subject to adjustment on 4/01/13 and every three years thereafter) |
| | Check all applicable boxes: ☐ A plan is being filed with this petition ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance |

| Statistical/Administrative Information |
|---|
| ☒ Debtor estimates that funds will be available for distribution to unsecured creditors |
| ☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no distribution to unsecured creditors. |

Estimated Number of Creditors
| ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | |
|---|---|---|---|---|---|---|---|---|
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 5 |

Estimated Assets
| ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | |
|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,000 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | |

Estimated Liabilities
| ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | |
|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,000 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | |

12-29353

12-29353-D-11

DEBTOR: DANIEL EDSTROM
DEBTOR IS PRO SE
JUDGE HON T HOLMAN
CHAPTER 11 COUNTY EL DORADO-CA

FILED 5/15/12
Rec'd Counter 05/15/12-1 17PM
RELIEF ORDERED
CLERK, U S BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
RECEIPT NO 2-12-13254 $296 00 m9rs

B 1 (Official Form 1) (4/10)                                                                                    Page 2

| Voluntary Petition *(This page must be completed and filed in every case.)* | Name of Debtor(s) Daniel Major Edstrom |
|---|---|

**All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet.)

| Location Where Filed  United States Bankruptcy Court Eastern District | Case Number 09-26891 | Date Filed 4/13/2009 |
|---|---|---|
| Location Where Filed  United States Bankruptcy Court Eastern District | Case Number 09-36647 | Date Filed 8/6/2009 |

**Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet.)

| Name of Debtor N/A | Case Number N/A | Date Filed N/A |
|---|---|---|
| District N/A | Relationship N/A | Judge N/A |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)  ☐  Exhibit A is attached and made a part of this petition. | (To be completed if debtor is an individual whose debts are primarily consumer debts.)  I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b).  X _____ Signature of Attorney for Debtor(s)      (Date) |

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐  Yes, and Exhibit C is attached and made a part of this petition.

☑  No

---

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☑  Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐  Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

---

**Information Regarding the Debtor - Venue**
(Check any applicable box.)

☑  Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐  There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐  Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

---

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐  Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
Name of landlord that obtained judgment)

_____
Address of landlord)

☐  Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐  Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐  Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

| B 1 (Official Form) 1 (4/10) | Page 3 |
|---|---|

| Voluntary Petition *(This page must be completed and filed in every case.)* | Name of Debtor(s) Daniel Major Edstrom |
|---|---|

| Signatures | |
|---|---|

### Signature(s) of Debtor(s) (Individual/Joint)

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U S C § 342(b)

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition

X **Daniel Major Edstrom**
   Signature of Debtor

X _Daniel Major Edstrom_
   Signature of Joint Debtor
   **(916) 207-6706**
   Telephone Number (if not represented by attorney)
   _5-14-2012_
   Date

### Signature of a Foreign Representative

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition

(Check only one box )

☐ I request relief in accordance with chapter 15 of title 11, United States Code Certified copies of the documents required by 11 U S C § 1515 are attached

☐ Pursuant to 11 U S C § 1511, I request relief in accordance with the chapter of title 11 specified in this petition A certified copy of the order granting recognition of the foreign main proceeding is attached

X _____
   (Signature of Foreign Representative)

   _____
   (Printed Name of Foreign Representative)

   _____
   Date

### Signature of Attorney*

X _____
   Signature of Attorney for Debtor(s)

   _____
   Printed Name of Attorney for Debtor(s)

   _____
   Firm Name

   _____
   Address

   _____
   Telephone Number

   _____
   Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

### Signature of Non-Attorney Bankruptcy Petition Preparer

I declare under penalty of perjury that (1) I am a bankruptcy petition preparer as defined in 11 U S C § 110, (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U S C §§ 110(b), 110(h), and 342(b), and, (3) if rules or guidelines have been promulgated pursuant to 11 U S C § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section Official Form 19 is attached

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer ) (Required by 11 U S C § 110 )

_____
Address

X _____

   _____
   Date

Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above

### Signature of Debtor (Corporation/Partnership)

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor

The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition

X _____
   Signature of Authorized Individual

   _____
   Printed Name of Authorized Individual

   _____
   Title of Authorized Individual

   _____
   Date

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both  11 U S C § 110, 18 U.S.C. § 156.*

B 1D (Official Form 1, Exhibit D) (12/09)   UNITED STATES BANKRUPTCY COURT -- EASTERN DISTRICT OF CALIFORNIA

| Debtor(s): **Daniel Major Edstrom** | Case No.:<br>(if known) |
|---|---|

## EXHIBIT D - INDIVIDUAL DEBTOR'S STATEMENT OF COMPLIANCE WITH CREDIT COUNSELING REQUIREMENT

**Warning: You must be able to check truthfully one of the five statements regarding credit counseling listed below. If you cannot do so, you are not eligible to file a bankruptcy case, and the court can dismiss any case you do file. If that happens, you will lose whatever filing fee you paid, and your creditors will be able to resume collection activities against you. If your case is dismissed and you file another bankruptcy case later, you may be required to pay a second filing fee and you may have to take extra steps to stop creditors' collection activities.**

*Every individual debtor must file this Exhibit D. If a joint petition is filed, each spouse must complete and file a separate Exhibit D. Check one of the five statements below and attach any documents as directed.*

☒ **1.** Within the 180 days **before the filing of my bankruptcy case,** I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, and I have a certificate from the agency describing the services provided to me.

*Attach a copy of the certificate and a copy of any debt repayment plan developed through the agency.*

☐ **2.** Within the 180 days **before the filing of my bankruptcy case,** I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, but I do not have a certificate from the agency describing the services provided to me.

*You must file a copy of a certificate from the agency describing the services provided to you and a copy of any debt repayment plan developed through the agency no later than 14 days after your bankruptcy case is filed.*

B 1D (Official Form 1, Exh  D) (12/09) – Cont'd

☐ **3.** I certify that I requested credit counseling services from an approved agency but was unable to obtain the services during the seven days from the time I made my request, and the following exigent circumstances merit a temporary waiver of the credit counseling requirement so I can file my bankruptcy case now.

*[Summarize exigent circumstances here.]*

　　　　**If your certification is satisfactory to the court, you must still obtain the credit counseling briefing within the first 30 days after you file your bankruptcy petition and promptly file a certificate from the agency that provided the counseling, together with a copy of any debt management plan developed through the agency. Failure to fulfill these requirements may result in dismissal of your case. Any extension of the 30-day deadline can be granted only for cause and is limited to a maximum of 15 days. Your case may also be dismissed if the court is not satisfied with your reasons for filing your bankruptcy case without first receiving a credit counseling briefing.**

☐ **4.** I am not required to receive a credit counseling briefing because of:
*[Check the applicable statement.] [Must be accompanied by a motion for determination by the court.]*

　　☐ Incapacity. (Defined in 11 U.S.C. § 109(h)(4) as impaired by reason of mental illness or mental deficiency so as to be incapable of realizing and making rational decisions with respect to financial responsibilities.);

　　☐ Disability. (Defined in 11 U.S.C. § 109(h)(4) as physically impaired to the extent of being unable, after reasonable effort, to participate in a credit counseling briefing in person, by telephone, or through the Internet.);

　　☐ Active military duty in a military combat zone.

☐ **5.** The United States trustee or bankruptcy administrator has determined that the credit counseling requirement of 11 U.S.C. § 109(h) does not apply in this district.

**I certify under penalty of perjury that the information provided above is true and correct.**

Signature of Debtor: _Raul Major Edson_

Date: _5-15-2012_

Certificate Number: 05375-CAE-CC-018181417



05375-CAE-CC-018181417

# CERTIFICATE OF COUNSELING

I CERTIFY that on <u>May 14, 2012</u>, at <u>11:58</u> o'clock <u>PM PDT</u>, <u>Daniel M Edstrom</u> received from <u>1$t Choice Credit Counseling & Financial Education a/k/a DBSM, Inc.</u>, an agency approved pursuant to 11 U.S.C. § 111 to provide credit counseling in the <u>Eastern District of California</u>, an individual [or group] briefing that complied with the provisions of 11 U.S.C. §§ 109(h) and 111.

A debt repayment plan <u>was not prepared</u>. If a debt repayment plan was prepared, a copy of the debt repayment plan is attached to this certificate.

This counseling session was conducted <u>by internet</u>.

Date: <u>May 15, 2012</u>  By: <u>/s/Adela Camarena</u>

        Name: <u>Adela Camarena</u>

        Title: <u>Credit Counselor</u>

* Individuals who wish to file a bankruptcy case under title 11 of the United States Bankruptcy Code are required to file with the United States Bankruptcy Court a completed certificate of counseling from the nonprofit budget and credit counseling agency that provided the individual the counseling services and a copy of the debt repayment plan, if any, developed through the credit counseling agency. *See* 11 U.S.C. §§ 109(h) and 521(b).

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA

In re:   Daniel Major Edstrom                              Case No.:

_____   Debtor(s)_____ /

### Small Business Financial Documents

I, Daniel Major Edstrom, declare that no balance sheet, statement of operations, or cash-flow statement has been prepared and no Federal tax return has been filed.

I declare under the penalty of perjury under the Laws of the State of California that the foregoing is true and correct and that this declaration was executed on May 15, 2012, at Placer County, Auburn, California.

_____
Daniel Major Edstrom Pro Per Debtor

B4 (Official Form 4) (12/07)

UNITED STATES BANKRUPTCY COURT – EASTERN DISTRICT OF CALIFORNIA

| Debtor: | **Daniel Major Edstrom** | Case No. (if known). |
|---|---|---|
| | | Chapter 11 |

### LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| | (1)<br>*Name of creditor and complete mailing address including zip code* | (2)<br>*Name, telephone number and complete mailing address, including zip code. of employee, agent, or department of creditor familiar with claim who may be contacted* | (3)<br>*Nature of claim (trade debt, bank loan, government contract, etc)* | (4)<br>*Indicate if claim is contingent, unliquidated, disputed or subject to setoff* | (5)<br>*Amount of claim [if secured also state value of security]* |
|---|---|---|---|---|---|
| 1 | Auburn Lake Trails POA<br>1400 American River Trail<br>Cool, CA 95614 | Auburn Lake Trails POA<br>1400 American River Trail<br>Cool, CA 95614<br>Kevin Hubred - 530 885 6526 | Homeowners Monthly Assessments | Contingent, unliquidated, disputed and subject to setoff | 977 63 |
| 2 | American Express<br>PO Box 981537<br>El Paso, TX 79998-1537 | American Express<br>PO Box 981537<br>El Paso, TX 79998-1537<br>Unknown contact and phone # | Credit Card | Contingent, unliquidated, disputed and subject to setoff | 932.00 |
| 3 | Macy's/DSNB<br>PO Box 8218<br>Mason, OH 45040-8218 | Macy's/DSNB<br>PO Box 8218<br>Mason, OH 45040-8218<br>Unknown contact and phone # | Credit Card | Contingent, unliquidated, disputed and subject to setoff | 515 00 |
| 4 | Allied Trustee Services<br>990 Reserve Drive, Suite 208<br>Roseville, CA 95678 | Allied Trustee Services<br>990 Reserve Drive, Suite 208<br>Roseville, CA 95678<br>Unknown Contact 916 960.0600 | OA 3rd party debt collector | Contingent, unliquidated, disputed and subject to setoff | 361 00 |
| 5 | AT&T<br>Business Service<br>14575 Presidio Square, Room CR,<br>Houston, TX 77083AT&T | AT&T Business Service<br>14575 Presidio Square, Room CR,<br>Houston, TX 77083AT&T<br>Plans & Services 800-750-2355 | Telephone and DSL | | 215 43 |
| 6 | Clark Pest Control<br>James F Clark, JR<br>530 California Ave<br>Bakersfield, CA 93304 | Clark Pest Control<br>James F Clark, JR<br>530 California Ave.<br>Bakersfield, CA 93304 | Pest Control Services | Contingent, unliquidated, disputed and subject to setoff | 137.00 |
| 7 | Comcast<br>818 W. Seventh Street<br>Los Angeles, CA 90017 | Comcast<br>818 W Seventh Street<br>Los Angeles, CA 90017<br>Unknown contact and phone # | Cable Television | Contingent, unliquidated, disputed and subject to setoff | 12.00 |
| 8 | | | | | |
| 9 | | | | | |
| 10 | | | | | |

B 4 (Official Form 4) (12/07)

UNITED STATES BANKRUPTCY COURT – EASTERN DISTRICT OF CALIFORNIA

Page 2

| Debtor: **Daniel Major Edstrom** | Case No. (if known). |
| | Chapter 11 |

| (1)<br>Name of creditor and complete mailing address including zip code | (2)<br>Name, telephone number and complete mailing address, including zip code, of employee. agent, or department of creditor familiar with claim who may be contacted | (3)<br>Nature of claim (trade debt, bank loan, government contract, etc.) | (4)<br>Indicate if claim is contingent, unliquidated, disputed or subject to setoff | (5)<br>Amount of claim [if secured also state value of security] |
|---|---|---|---|---|
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |

I declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date: 5/14/2012

Signature

Daniel Major Edstrom, Debtor

Print Name and Title

# Exhibit 10

Not Negotiable

# Notice of Payment

Auburn Lake Trails Property Owners Association
1400 American River Trail
Cool, CA 95614
Lot #885

Date: June 8, 2012

RE: Monthly post-petition payments for association dues
Certified Mail #:

**Notice to Principal is Notice to Agent.  Notice to Agent is Notice to Principal.**

Kevin Hubred, the association, and the board:
As part of my Chp. 11 individual bankruptcy, I have established a debtor-in-possession
savings account into which the monthly post-petition homeowner's association dues will
be deposited.  I have notified the United States Trustees Office of this account.  Because
of our continuing dispute, and your refusal to take the appropriate actions towards
resolution of this matter, the monthly homeowner's association dues will be deposited
into this account until further instructions from the court.  Of course you are free to
take any action or inaction you choose.  As a reminder, you have been noticed of your
failure under the First Material Breach Doctrine and that I am still ready willing and able
to help the association as it is in our mutual best interest.  Your silence and refusal to
provide my family with full access to association benefits is evidence of the association,
and each board member as wittingly and willingly ratifying (among other things):

1. The ALT collection policy that engages Allied Trustee Services, Inc., thus failing to
   comport with California Civil Code 1558.  Although Allied Trustee Services, Inc. may have
   existed in 1997, currently they fail to exist in California or to be registered with the
   Secretary of State.
2. ALT has sent my personally identifiable information to a company in which they have no
   viable contract with (specifically G&P Enterprises, Inc. dba Allied Trustee Services).
3. Previously sent to ALT are the eight (8) letters my wife and I have received from "Allied
   Trustee Services" (presumably G&P Enterprises, Inc. dba Allied Trustee Services).  These
   letters are all substantially similar and appear to be in direct conflict with the following
   codes and statutes (this is not all inclusive):
   a. FDCPA – 15 U.S.C. sections:
      i. 1692(d)(1)
      ii. 1692(e)(2)(A)
      iii. 1692(e)(2)(B)
      iv. 1692(e)(4)
      v. 1692(e)(5)

Not Negotiable

              vi.  1692(e)(9)
             vii.  1692(e)(10)
           viii.  1692(e)(11)
             ix.  1692(e)(14)
              x.  1692(f)(1)
             xi.  1692(f)(6)(A)
            xii.  1692(f)(6)(B)
           xiii.  1692(f)(8)
           xiv.  1692(g)(3)
            xv.  1692(g)(4)
           xvi.  1692(g)(5)

b.  RFDCPA

      i.  The RFDCPA (California Civil Code section 1788.17) provides, in relevant part, "Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of Title 15 of the United States Code."

According to Irwin v. Mascott, 112 F. Supp. 2d 937, 958 (N.D. Cal. 2000): (i) "The FDCPA is a strict liability statute and thus does not require a showing of intentional conduct on the part of the debt collector"; (ii) "Validation requirements are strictly construed under the least sophisticated consumer standard".

The association has incurred substantial liability based on the uncontrolled actions of themselves, Allied Trustee Services, Inc. and/or G&P Enterprises, Inc. dba Allied Trustee Services.  Further, based on the notice I have given you, future actions to enforce a defective collections policy would be, among many other things, unfair and deceptive, as well as wanton.

You are once again urged to contact me at your earliest convenience so we can correct the deficiencies in the ALT collections policy.


Respectfully,


Daniel Edstrom
Debtor-in-Possession (Chp. 11 BKR #12-29353)
2690 Brown Bear Court
Cool, CA 95614

 **AUBURN LAKE TRAILS**

PROPERTY OWNERS ASSOCIATION

June 12, 2012

Daniel Edstrom
2690 Brown Bear Court
Cool, CA 95614

Re:    Auburn Lake Trails Property Owners Association
       Certified Mail #7012 0470 0000 2042 0948
       Notice of Post-Petition

Dear Mr. Edstrom:

This letter is in response to your correspondence we received on June 11, 2012 regarding the above referenced.

On May 23, 2012, Auburn Lake Trails Property Owners Association (ALT) received notice that you filed bankruptcy (BK), chapter 11, case number 12-29353 – B – 11. The BK filing has resulted in an "automatic stay" which immediately suspends all proceedings against you and the property.

In the first paragraph of your letter, 3rd sentence, you stated: "that we have refused to take appropriate actions towards resolution to this matter"; and, 4th sentence, "Of course you are free to take any action or inaction you choose". The ALT cannot currently take action - we can neither contact you (which could be construed as harassment in lieu of your pending BK) nor move forward with collections efforts until the BK case is closed – or, we would be in violation of the U.S. Bankruptcy Code.

We will monitor the bankruptcy and will not move forward until we receive the courts decision and the BK is closed.

Sincerely,
*For the Board of Directors,*

Kevin D. Hubred
Kevin D. Hubred, CCAM, PCAM

cc:  Board of Directors
     Unit File

1

# Exhibit 11

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ADVERSARY COMPLAINT

# ALT Trail Views

*Auburn Lake Trails, Cool, California*

Published by the ALT Property Owners' Association

**February 2013**   **Vol. XXXIX**   **No. 8**



## WIFFS

## BUNCO NIGHT

Mark the date: February 2

Join us at 6 pm in the ALT Barnloft.

The cost is $10.

Space is limited so the first 60 people to reserve are the lucky participants.

Munchies will be served.

RSVP to Tricia 888- 9668



*Happy Valentines Day*

## UPCOMING ACTIVITIES

### ALT & CLUB EVENTS

Feb. 2 (Sa)      WIFFS Bunco Night
Feb. 9-23 (Sa)   Digital Photography Class
Feb. 13 (We)     BOARD MEETING
Feb. 15 (Fr)     Trail Views Deadline

### HOLIDAYS

Feb. 13 (We)     Ash Wednesday
Feb. 14 (Th)     Valentine's Day
Feb. 18 (Mo)     President's Day

Trail Views: alttrailviews@gmail.com
Website: auburnlaketrails.org

PRSRT STD
US Postage
PAID
Permit No. #9
GEORGETOWN
CA 95634

Case 13-02132    Filed 04/18/13    Doc 1

# From the President's Pen

# Manager



**Jody Gray**
*President, ALT*
*Board of Directors*

Last month, I was asked to write a letter of recommendation for our General Manager, Kevin, as he was nominated to the top 100 Homeowner Association Managers in the country. That is a great accomplishment for Kevin and I was honored to write the letter. I was only allowed one page to tell them why he should be selected as the "best" General Manager in our country. It was difficult, but I wanted to share with you some of the things that I did say:

*"Since Kevin has taken the job, he has more than met our expectations. Not only is he honest, has integrity, knows his job, rules, legislation regarding HOA's, saves us a great deal of money, collects on bad debt, he handles complaints superbly.*

*Kevin is quick to take care of any concerns brought to his attention by the Board, the members and the staff.*

*He is a great listener and problem solver. Kevin has completed maintenance and improvements that have been ignored for years. Since Kevin became manager, he has completed one phase of a seven year road resurfacing plan. He has had two of our community buildings structurally updated, another one for aesthetics, completed the golf course irrigation system replacement and upgrade, added lights to the clubhouse parking lot for safety, new roofs on two buildings and striped the streets with fog lines for safety. These are only a few of the items that he has initiated because of a great need.*

*Kevin has also spent a great deal of time saving the association money and stream lining many administrative jobs. We have eliminated outside contracts and accounting personnel because of his expertise in getting the job done effectively and efficiently with trained staff and quality programs. Kevin's knowledge in fund balancing, collections, computer programs, legal issues and even our Reserve account and how it should be funded and used has saved our association so much money, we have been in the black both years that Kevin has been here.*

*Kevin has shopped and gotten the POA better and complete insurance coverage and at a better rate, shopped for and retained a better lawyer with excellent POA/HOA knowledge, has decreased the use of our lawyer, as he himself is well versed in HOA rules and legislation.*

*Kevin was instrumental in updating our rules to be complete, accurate and not contradictory. I could continue on with all of the great things that Kevin has done for our community, however, my space is limited. I would like to sum up that Kevin has been the best thing that could happen to our community.*

*Since Kevin has been General Manager, our collections have increased, accounts receivable decreased, morale, reputation and the bottom line has never been better. Kevin is an amazing manager and the members and staff could not be happier."*

I hope that Kevin is named the Best Manager of the Year, however, if he isn't, we should all be very proud of our manager for making it to the top 100.

Sincerely, Jody Gray

**New Residents:** There has been a lot of real estate market lately, and we've n residents moving into ALT – Welcome hood! We hope you find your new home everything that you've expected it to be. I if there is anything we can do to be of Although we make every effort to se packets to new residents, if you haven't or have any questions, please stop by the located near the front gate entrance a River Trail. The Administrative office h through Friday, 8:00 am to 5:00 pm. W meeting you!

**Clubs:** Have you heard about the Clubs Residents to join, based on your own pe such as Camera, Equestrian, Dancing, C (COTA), White Hats, Knitters, Bridge, V pages 10 and 11 in the Trail Views or information and Club contacts.

**E-Bulletin:** Were you aware that Aubur website? It can be seen at *www.AuburnL* Log In services, you will automatically The Association frequently sends out e-m important information such as: EDCO Special Meetings; Meeting Reminders: I to ALT; Friendly Reminders; etc. Thi information to the Residents in an effici you that are already use this service, ple event that you change your e-mail addre ALT Email Bulletins.

**Water Pipes:** Recently, the weather has to the below freezing temperatures, many them to rupture. This can be very costly measures to deter this from happening I can be purchased from your local hardw known by many as the "Arctic Tundra", areas where pipes have more exposure to under the house and/or in a crawl space contact the office or simply do a Google

**Board/Committee Meeting Notices:** ments, all Board Meeting and Committ bulletin board at the ALT administrative posted at least four days prior to the m location and agenda/topic of the meetin website for those of you that frequent t email bulletins. Association notices woul well as the following Committees: Co Committee; Design Committee; Eques Greens Committee; Interior Design; L mittee; and. Pool Committee.

**1e POA Office**

*Executive Assistant*



ent are beginning
s, and members are
ved with this impor-
e of the upcoming

**dget Timeline**



M provides budget guidance to Depart-
ings. Also considered are Committee

**Meeting with Finance Committee**
littee Meeting. GM provides first draft
ts.

**e Committee Follow up Meeting**
nance Committee Meetings are to be
ow up drafts of Operating and Reserve

**rd/Finance Committee Meeting**
: Work Session with Board, Finance
serve Budget finalization.

**vn Meeting (Barnloft, 7:00 pm):**
Membership prior to approval at the

**ing (Lakeside Clubhouse, 7:00pm):**

---

## NOMINATING COMMITTEE APPOINTED

In accordance with the ALT By-Laws, the Board of Directors has appointed a Nominating Committee, **Mary Buck and John Plymyer,** to identify qualified candidates for election to the Board of Directors. There are **three (3) Board positions open** for election at the Annual Meeting on May 11, 2013.

To serve as a Board Member, one must be a property owner in good standing, preferably with previous experience in community association activities. A Board Member must be available for scheduled meetings, must demonstrate fiduciary responsibility to the membership, and should have practical experience in one or more of the following areas: finance, maintenance, facilities, security, legal matters and administration.

If you are interested in becoming a candidate for election to the ALT Board of Directors, please contact **Mary Buck at 210-4691** or **John Plymyer at 889-8036** before the March 13, 2013 Board meeting deadline.



# YOUR BOARD IN ACTION



*Complete reports and draft minutes of the Board meeting will be posted on the back wall of the Boardroom for review by POA members during office hours.*

Board Meeting Highlights ~ January 9, 2013
<u>Regular Monthly Board Meeting</u>

**Roll Call:** A quorum was established. Board members present:  Jody Gray, President; Lon Milka, V. President; Michael Nutt, Secretary; Ralph Elliot, Treasurer; and Margo Seabourn, Member-at-Large.

**Consent Calendar:**
- Regular Board Meeting Minutes of December 12, 2012.
- Operations Manager Report.
- Community Services Reports.
- Acceptance of October 2012 Financials.
- Seven (7) Notices of Delinquent Assessments.

**Committees & Organizations**
- Appointed Nominating Committee: Mary Buck and John Plymyer. One additional member/chairperson may be appointed.
- Received Fire Safety & Improvement Council report.
- Received GDPUD report.

**Old Business**
- Authorized the Board Liaison to review proposed information on the pros and cons of the CC&R amendment/ballot measure regarding chickens. prior to dissemination to the membership.
- Approved an initial 60-day balloting time period for the CC&R amendment/ballot measure regarding chickens, with the Board reserving the right to extend the response date in 30-day increments, not to exceed 90 days.
- Approved sending out the CC&R amendment/ballot measure regarding chickens along with the Board of Directors ballot mailing.

**New Business**
- Referred the Association's FDIC insured non-interest bearing bank accounts to the Finance Committee for review.
- Approved the purchase of a backpack blower, and a hedge trimmer for the Maintenance Department.
- Approved Directors & Officers Insurance policy.
- Approved Sierra Pacific Endurance Run guest access through ALT to an aid station located on Auburn State Recreation Area property.

*The next Regular Monthly Board Meeting is scheduled Wednesday, February 20, 2013 at 7:00 pm*



President's Day
Monday February 18



Serving Foothil and Sierra

2390 Profession

GO
Afforda
Brush Chi
& Stump Gr

Also Offering
- Hazardous Tree Remo
- Trimming
- Thinning
- Mobile Lo Splitting
- Land Clea
- Trenching
- Post Hole Digging

SCL#967924
Licensed & Insure

Call fo
(916
god
Currently wor



SmellI
DRAIN CLEANING
SEPTIC INSTALL
BACKHOE
PLU
PUM

SERVING THE DIVIDE F
333-0

# Exhibit 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ADVERSARY COMPLAINT

# Recorder's Index - Query by Name

AUBURN LAKE TRAILS      Last  First  Middle  - no commas

Date range 2007 ▾ through 2013 ▾

Sort by Date ▾

Return 500 ▾ records at a time

☐ Translate the Document Titles

General Information: The last document online is number **19434** recorded on **Wednesday.**

Years 1911-1937 are not yet online.

## Names like AUBURN LAKE TRAILS*
### in years 2007 - 2013

| Name<br>Document Title | Date | Book<br>Page<br>Document | Cross Reference<br>Names |
|---|---|---|---|
| **AUBURN LAKE TRAILS 3 L546** et al<br>**REC SURVEY** | 01/02/2007 | 2007-0000121<br>2 pages | BOOK 29 PAGE 126<br>REC SURVEY<br>Record of Survey 029-126 |
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al (grantees)<br>**NT ASMT** | 01/02/2007 | 2007-0000181<br>2 pages | DUFFEY MARSHA FALK<br>DUFFEY MICHAEL |
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al (grantees)<br>**NT ASMT** | 03/07/2007 | 2007-0015703<br>2 pages | SWINNEY CRAIG |
| **AUBURN LAKE TRAILS PROP OWN**<br>et al (grantees)<br>**NT ASMT** | 05/16/2007 | 2007-0033126<br>2 pages | JILES DONALD<br>JILES TONYA |
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al<br>**REL LIEN** | 06/18/2007 | 2007-0040176<br>1 page | JILES DONALD<br>JILES TONYA |
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al (grantees)<br>**NT ASMT** | 09/04/2007 | 2007-0057124<br>2 pages | GABRIELSON KATHY A<br>GABRIELSON MICHAEL J |
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al (grantees)<br>**NT ASMT** | 10/29/2007 | 2007-0067411<br>2 pages | JORDAN PATRICK |
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al (grantees)<br>**NT ASMT** | 10/29/2007 | 2007-0067412<br>2 pages | TAYLOR GAIL |
| **AUBURN LAKE TRAILS PROP OWN**<br>et al (grantees)<br>**NT ASMT** | 03/05/2008 | 2008-0010047<br>2 pages | CURRY DARLA A<br>CURRY RAYMOND GLEN |
| **AUBURN LAKE TRAILS L297** et al<br>**REC SURVEY** | 03/25/2008 | 2008-0013724<br>2 pages | BOOK 30 PAGE 131<br>REC SURVEY<br>Record of Survey 030-131 |

4/17/2013

| | | | |
|---|---|---|---|
| **AUBURN LAKE TRAILS** et al<br>**REL JUDG** | 04/23/2008 | 2008-0018879<br>2 pages | JOHNSON DARRYL |
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al (grantees)<br>**NT ASMT** | 05/02/2008 | 2008-0020761<br>2 pages | BUSS ROBERT |
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al<br>**REL ASMT LIEN** | 05/02/2008 | 2008-0020768<br>1 page | JOHNSON DARRYL B<br>JOHNSON DONNA L<br>JOHNSON JULIAN D |
| **AUBURN LAKE TRAILS PROP OWN**<br>et al (grantees)<br>**NT ASMT** | 05/21/2008 | 2008-0024357<br>2 pages | WELLAND CHRISTOPHER JOHN<br>WELLAND ETHEL MAE |
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al (grantees)<br>**NT ASMT** | 06/30/2008 | 2008-0031678<br>2 pages | DRURY KENNETH C |
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al (grantees)<br>**NT ASMT** | 06/30/2008 | 2008-0031679<br>2 pages | AMARAL DANIEL R<br>AMARAL SUSAN M |
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al (grantees)<br>**NT ASMT** | 06/30/2008 | 2008-0031680<br>2 pages | STRINGFELLOW IDA F |
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al (grantees)<br>**NT ASMT** | 07/02/2008 | 2008-0032143<br>2 pages | CAL ST VET AFF<br>WEED GEORGE<br>WEED PAIGE |
| **AUBURN LAKE TRAILS PROP OWN**<br>et al (grantees)<br>**NT ASMT** | 07/28/2008 | 2008-0036639<br>2 pages | MARTINEZ HUGO |
| **AUBURN LAKE TRAILS PROP OWN**<br>et al (grantees)<br>**NT ASMT** | 07/28/2008 | 2008-0036640<br>2 pages | KRAZYNSKI KIM |
| **AUBURN LAKE TRAILS PROP OWN**<br>et al (grantees)<br>**NT ASMT** | 07/31/2008 | 2008-0037269<br>2 pages | NOWLIN ROBERT W<br>STRINGFELLOW IDA F |
| **AUBURN LAKE TRAILS 1 L308** et al<br>**REC SURVEY** | 07/31/2008 | 2008-0037463<br>2 pages | BOOK 31 PAGE 22<br>REC SURVEY<br>Record of Survey 031-022 |
| **AUBURN LAKE TRAILS PROP OWN**<br>et al (grantees)<br>**NT ASMT** | 08/06/2008 | 2008-0038306<br>2 pages | ADAMS CHRISTOPHER SCOTT<br>ADAMS DONNA CARLENE |
| **AUBURN LAKE TRAILS PROP OWN**<br>et al (grantees)<br>**NT ASMT** | 08/11/2008 | 2008-0038897<br>3 pages | FEDDERSON PATRICIA<br>FEDDERSON |

Case 13-02132    Filed 04/18/13    Doc 1

| | | | |
|---|---|---|---|
| | | | WILLIAM PAXTON BRIAN PAXTON JENNIFIR |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 08/29/2008 | 2008-0042516 3 pages | RARICK JERMEY L |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 08/29/2008 | 2008-0042517 3 pages | BROWNE CHRISTINE M |
| **AUBURN LAKE TRAILS PROP OWN** et al (grantees) **NT ASMT** | 09/25/2008 | 2008-0047007 3 pages | PAXTON BRIAN PAXTON JENNIFIR |
| **AUBURN LAKE TRAILS PROP OWN** et al (grantees) **NT ASMT** | 09/29/2008 | 2008-0047402 3 pages | PAIVANAS LISA |
| **AUBURN LAKE TRAILS OWN ASSN** et al **REL ASMT LIEN** | 10/20/2008 | 2008-0050655 1 page | FEDDERSON PATRICIA FEDDERSON WILLIAM PAXTON BRIAN PAXTON JENNIFIR |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 10/23/2008 | 2008-0051164 3 pages | SMOLYUK DANIIL |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 10/31/2008 | 2008-0052220 2 pages | DEKLE CAROL |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 11/04/2008 | 2008-0052676 2 pages | KELLEY SHANA L KELLEY TED F |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 11/04/2008 | 2008-0052681 2 pages | JOY JOSEPH S JOY REBECCA J |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 11/12/2008 | 2008-0053940 2 pages | FED NATL MTG ASSN |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 11/13/2008 | 2008-0053987 2 pages | SCHENDEL COLLEEN SCHENDEL MATTHEW |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 11/18/2008 | 2008-0054518 2 pages | POLLOCK PATRICIA POLLOCK RANDALL |
| **AUBURN LAKE TRAILS OWN ASSN** et al **NT ASMT** | 11/18/2008 | 2008-0054519 2 pages | |
| | 11/19/2008 | | GALE STEVEN LOYD |

<span style="color:red">Case 13-02132   Filed 04/18/13   Doc 1</span>

| | | | |
|---|---|---|---|
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | | 2008-0054776 2 pages | |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 12/22/2008 | 2008-0060414 2 pages | POLLOCK PATRICIA POLLOCK RANDALL |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 01/14/2009 | 2009-0001383 2 pages | ROSSCUP GINGER ROSSCUP JOSEPH |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 01/14/2009 | 2009-0001385 2 pages | GOOCHER WILLIAM EUGENE |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 01/14/2009 | 2009-0001386 2 pages | SCHLAGEL LAWRENCE A II |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 01/14/2009 | 2009-0001387 2 pages | WAAGE KATHY WAAGE LANCE |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 01/14/2009 | 2009-0001388 2 pages | SCHUBERT KAREN MARIE SCHUBERT ZYFRYD BERTAIN |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 01/14/2009 | 2009-0001389 2 pages | SCHUBERT KAREN MARIE SCHUBERT ZYDRYD BERTAN |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 01/29/2009 | 2009-0003738 2 pages | SCHUBERT KAREN MARIE SCHUBERT ZYFRYD BERTAN |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 01/29/2009 | 2009-0003739 2 pages | SCHUBERT KAREN MARIE SCHUBERT ZYFRYD BERTAN |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 01/29/2009 | 2009-0003740 2 pages | SCHUBERT KAREN MARIE SCHUBERT ZYFRYD BERTAN |
| **AUBURN LAKE TRAILS PROP OWN** et al (grantees) **NT ASMT** | 02/12/2009 | 2009-0006158 2 pages | SCHUBERT KAREN MARIE SCHUBERT ZYFRYD BERTAN |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 03/19/2009 | 2009-0012500 2 pages | BACKMAN LYNDA SANDS SHERRI L |
| | 03/20/2009 | 2009-0012764 2 pages | YOUNG MICHELLE YOUNG SCOTT |

Case 13-02132    Filed 04/18/13    Doc 1

**AUBURN LAKE TRAILS OWN ASSN**
et al (grantees)
   **NT ASMT**

| | | | |
|---|---|---|---|
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al (grantees)<br>  **NT ASMT** | 04/02/2009 | 2009-0015075<br>2 pages | SCHUBERT KAREN MARIE<br>SCHUBERT ZYFRYD BERTAN |
| **AUBURN LAKE TRAILS PROP OWN**<br>et al<br>  **REL ASMT LIEN** | 04/09/2009 | 2009-0016358<br>1 page | FEDERAL NATL MTG ASSN |
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al (grantees)<br>  **NT ASMT** | 05/01/2009 | 2009-0020008<br>2 pages | KRAZYNSKI KIM |
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al (grantees)<br>  **NT ASMT** | 05/13/2009 | 2009-0022157<br>2 pages | CONROY JOHN<br>CONROY TERRI |
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al<br>  **REL ASMT LIEN** | 05/13/2009 | 2009-0022158<br>1 page | NOWLIN ROBERT W<br>STRINGFELLOW IDA F |
| **AUBURN LAKE TRAILS PROP OWN**<br>et al (grantees)<br>  **REL ASMT LIEN** | 05/13/2009 | 2009-0022159<br>1 page | NOWLIN ROBERT W<br>STRINGFELLOW IDA F |
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al<br>  **REL ASMT LIEN** | 05/22/2009 | 2009-0024365<br>1 page | JOY JOSEPH S<br>JOY REBECCA J |
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al (grantees)<br>  **NT ASMT** | 06/18/2009 | 2009-0029757<br>2 pages | GALE STEVEN LOYD |
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al<br>  **REL ASMT LIEN** | 06/23/2009 | 2009-0030470<br>1 page | LITTLE MYRA M |
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al (grantees)<br>  **NT ASMT** | 07/01/2009 | 2009-0032386<br>2 pages | MOORE ROBERT<br>ROMINE SUSAN |
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al (grantees)<br>  **NT ASMT** | 07/02/2009 | 2009-0032748<br>2 pages | HORTON PATIENCE<br>HORTON TY |
| **AUBURN LAKE TRAILS PROP OWN**<br>et al<br>  **NT ASMT** | 07/16/2009 | 2009-0035362<br>1 page | HORTON PATIENCE<br>HORTON TY |
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al (grantees)<br>  **NT ASMT** | 07/30/2009 | 2009-0038397<br>2 pages | SCHABER JOHN R |
| **AUBURN LAKE TRAILS PROP OWN**<br>et al<br>  **REL ASMT LIEN** | 08/05/2009 | 2009-0039380<br>1 page | POLLOCK PATRICIA<br>POLLOCK RANDALL |
| | 08/05/2009 | | POLLOCK RANDALL |

| | | | |
|---|---|---|---|
| **AUBURN LAKE TRAILS PROP OWN** et al | | 2009-0039381 1 page | |
| **REL ASMT LIEN** | | | |
| **AUBURN LAKE TRAILS OWN ASSN** et al | 08/12/2009 | 2009-0041118 1 page | POLLOCK PATRICIA POLLOCK RANDALL |
| **REL ASMT LIEN** | | | |
| **AUBURN LAKE TRAILS PROP OWN** et al (grantees) | 08/26/2009 | 2009-0043497 3 pages | SCHLAGEL LAWRENCE A II |
| **NT ASMT** | | | |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) | 08/28/2009 | 2009-0044003 2 pages | SUNDLIE OWEN |
| **NT ASMT** | | | |
| **AUBURN LAKE TRAILS OWN ASSN** et al | 10/06/2009 | 2009-0050252 1 page | SCHUBERT KAREN MARIE SCHUBERT ZYFRYD BERTAN |
| **REL ASMT LIEN** | | | |
| **AUBURN LAKE TRAILS OWN ASSN** et al | 10/06/2009 | 2009-0050253 1 page | SCHUBERT KAREN MARIE SCHUBERT ZYFRYD BERTAN |
| **REL ASMT LIEN** | | | |
| **AUBURN LAKE TRAILS OWN ASSN** et al | 10/06/2009 | 2009-0050254 1 page | SCHUBERT KAREN MARIE SCHUBERT ZYFRYD BERTAN |
| **REL ASMT LIEN** | | | |
| **AUBURN LAKE TRAILS OWN ASSN** et al | 10/06/2009 | 2009-0050255 1 page | SCHUBERT KAREN MARIE SCHUBERT ZYFRYD BERTAN |
| **REL ASMT LIEN** | | | |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) | 10/13/2009 | 2009-0051409 2 pages | QUARTIERI JOHN |
| **NT ASMT** | | | |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) | 10/15/2009 | 2009-0051964 2 pages | RICHEY CHRISTINE RICHEY DANIEL |
| **NT ASMT** | | | |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) | 12/01/2009 | 2009-0060501 2 pages | RAFTER PATRICIA RAFTER STANLEY G |
| **NT ASMT** | | | |
| **AUBURN LAKE TRAILS OWN ASSN** et al | 01/05/2010 | 2010-0000360 1 page | SCHUBERT KAREN MARIE SCHUBERT ZYFRYD BERTAN |
| **REL ASMT LIEN** | | | |
| **AUBURN LAKE TRAILS HOA** et al | 01/14/2010 | 2010-0001956 1 page | RJ INTERNATIONAL INC |
| **MECH LIEN** | | | |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) | 01/27/2010 | 2010-0003977 2 pages | DELGADO MARIA THERESA |
| **NT ASMT** | | | |
| | 02/08/2010 | | |

| | | | |
|---|---|---|---|
| **AUBURN LAKE TRAILS OWN ASSN** et al **MECH LIEN** | | 2010-0005875 1 page | MORSE ARCHIE WAYNE |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 02/09/2010 | 2010-0006002 2 pages | STEPHEN FRANK J |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 02/10/2010 | 2010-0006304 2 pages | US BANK NA TR |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 02/19/2010 | 2010-0007655 2 pages | HAMPTON IVY E HAMPTON THOMAS D |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 02/19/2010 | 2010-0007656 2 pages | ARTHUR THERESE M CALFAS ARISTEDES A |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 02/24/2010 | 2010-0008300 2 pages | SCHUBERT KAREN MARIE SCHUBERT ZYFRYD BERTAN |
| **AUBURN LAKE TRAILS OWN ASSN** et al **REL ASMT LIEN** | 03/03/2010 | 2010-0009439 1 page | SCHUBERT KAREN MARIE SCHUBERT ZYFRYD BERTAN |
| **AUBURN LAKE TRAILS POA** et al **MECH LIEN** | 03/04/2010 | 2010-0009604 2 pages | NELSON & OREGLIA CONCRETE CO |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 03/11/2010 | 2010-0010943 2 pages | MAESTAS CHRISTINA O MAESTAS ROBERT D |
| **AUBURN LAKE TRAILS PROP OWN** et al **REL ASMT LIEN** | 03/24/2010 | 2010-0012825 1 page | DELGADO MARIA THERESA |
| **AUBURN LAKE TRAILS OWN ASSN** et al **REL ASMT LIEN** | 04/07/2010 | 2010-0015289 1 page | MAESTAS CHRISTINA O MAESTAS ROBERT D |
| **AUBURN LAKE TRAILS POA** et al **NT COMPL** | 04/15/2010 | 2010-0016485 2 pages | REI BUILDERS CONTR RIDGLEY ENGINEERING INC DBA |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **REL ASMT LIEN** | 04/16/2010 | 2010-0016857 2 pages | VANDERLINDEN LAURA VANDERLINDEN MARTYN |
| **AUBURN LAKE TRAILS OWN ASSN** et al **REL ASMT LIEN** | 04/19/2010 | 2010-0016949 1 page | US BANK NA TR |

4/17/2013

| | | | |
|---|---|---|---|
| **AUBURN LAKE TRAILS OWN ASSN** et al **REL ASMT LIEN** | 04/23/2010 | 2010-0017771 1 page | RAFTER PATRICIA RAFTER STANLEY G |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 04/29/2010 | 2010-0018654 2 pages | ELLIOTT JEFFREY N |
| **AUBURN LAKE TRAILS OWN ASSN** et al **REL ASMT LIEN** | 05/17/2010 | 2010-0021514 1 page | WAAGE KATHY WAAGE LANCE |
| **AUBURN LAKE TRAILS PROP OWN** et al (grantees) **CERT SALE** | 07/06/2010 | 2010-0029491 2 pages | ALLIED TR SERVICES TR STRINGFELLOW IDA F |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 07/09/2010 | 2010-0030174 2 pages | DURANT KERRY DURANT VICTORIA A |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 07/12/2010 | 2010-0030328 2 pages | EVERETT LANCE |
| **AUBURN LAKE TRAILS OWN ASSN** et al **MECH LIEN** | 07/13/2010 | 2010-0030538 2 pages | RIDGLEY ENGINEERING INC |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 07/16/2010 | 2010-0031285 2 pages | SPRADLING COLIN A SPRALDING CARRIE L |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 07/16/2010 | 2010-0031286 2 pages | SCHUBERT PHILLIP EDWARD |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 07/19/2010 | 2010-0031506 2 pages | RUDOLPH SANDRA LEE |
| **AUBURN LAKE TRAILS OWN ASSN** et al **REL ASMT LIEN** | 07/21/2010 | 2010-0032015 1 page | SPRADLING CARRIE L SPRADLING COLIN A |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 08/18/2010 | 2010-0037985 3 pages | BURTON CHERRI WOOD DUB M |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 09/10/2010 | 2010-0042305 2 pages | SINGER LANCE DAVID |
| **AUBURN LAKE TRAILS POA** et al (grantees) **NT ASMT** | 09/16/2010 | 2010-0043277 2 pages | WAISLEY CARRIE A |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **TRUSTEE DEED** | 09/30/2010 | 2010-0046088 2 pages | ALLIED TRUSTEE SERV TR STRINGFELOW IDA F |

| | | | |
|---|---|---|---|
| **AUBURN LAKE TRAILS POA**<br>et al (grantees)<br>**NT ASMT** | 10/13/2010 | 2010-0048497<br>2 pages | VANBUSKIRK ROCKNE<br>VANBUSKIRK SHELLEY |
| **AUBURN LAKE TRAILS POA**<br>et al (grantees)<br>**NT ASMT** | 10/28/2010 | 2010-0051044<br>2 pages | BRINTLE MICHELE<br>BRINTLE MICHELE R |
| **AUBURN LAKE TRAILS POA**<br>et al (grantees)<br>**REL LIEN** | 11/15/2010 | 2010-0054208<br>1 page | MORSE ARCHIE WAYNE INC |
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al (grantees)<br>**NT ASMT** | 12/27/2010 | 2010-0063060<br>2 pages | ATTEBERY ROBERT H TR<br>ATTEBERY ROBERT H TRUST |
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al (grantees)<br>**NT ASMT** | 12/27/2010 | 2010-0063222<br>2 pages | KNIGHT CHRISTINE P<br>KNIGHT MARK |
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al (grantees)<br>**NT ASMT** | 12/27/2010 | 2010-0063223<br>2 pages | SCHAUER JOSEPH BRUCE TR<br>SCHAUER MARCIA RAE TR<br>SCHAUER TRUST |
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al<br>**ESMT** | 12/29/2010 | 2010-0063966<br>5 pages | LITTLEJOHN LORRAINE<br>LITTLEJOHN ROGER |
| **AUBURN LAKE TRAILS POA**<br>et al (grantees)<br>**CERT SALE** | 03/02/2011 | 2011-0009837<br>2 pages | ALLIED TRUSTEE SERVICES TR<br>QUARTIERI JOHN |
| **AUBURN LAKE TRAILS POA**<br>et al (grantees)<br>**NT ASMT** | 04/01/2011 | 2011-0015166<br>2 pages | MCKINZIE ALANA K |
| **AUBURN LAKE TRAILS POA** et al<br>**REL ASMT LIEN** | 04/15/2011 | 2011-0017346<br>1 page | BROWNE CHRISTINE M |
| **AUBURN LAKE TRAILS POA**<br>et al (grantees)<br>**NT ASMT** | 04/19/2011 | 2011-0018011<br>2 pages | BENEFICIAL CA INC<br>BENEFICIAL FINANCIAL 1 INC |
| **AUBURN LAKE TRAILS POA**<br>et al (grantees)<br>**NT ASMT** | 04/19/2011 | 2011-0018014<br>2 pages | OLMSTED HEATHER<br>OLMSTED PATRICK G |
| **AUBURN LAKE TRAILS POA** et al<br>**REL ASMT LIEN** | 04/28/2011 | 2011-0019620<br>2 pages | RUDOLPH SANDRA LEE |
| **AUBURN LAKE TRAILS POA**<br>et al (grantees)<br>**NT ASMT** | 05/02/2011 | 2011-0020086<br>2 pages | FURGASON WENDY S<br>ROUSCH ROBERT S |
| **AUBURN LAKE TRAILS POA**<br>et al (grantees)<br>**NT ASMT** | 05/02/2011 | 2011-0020087<br>2 pages | JANTZER GINAMARY |

Case 13-02132    Filed 04/18/13    Doc 1

| | | | SAVITZ AMANDA LEA |
|---|---|---|---|
| **AUBURN LAKE TRAILS POA** <br> et al (grantees) <br> **TRUSTEE DEED** | 06/02/2011 | 2011-0025649 <br> 2 pages | ALLIED TR SERVICES TR <br> QUARTIERI JOHN |
| **AUBURN LAKE TRAILS POA** <br> et al (grantees) <br> **CERT SALE** | 06/21/2011 | 2011-0028424 <br> 2 pages | ALLIED TRUSTEE SERVICES TR <br> SCHUBERT PHILLIP EDWARD |
| **AUBURN LAKE TRAILS OWN ASSN** <br> et al (grantees) <br> **NT ASMT** | 07/21/2011 | 2011-0033965 <br> 2 pages | GREGG JOHN R TR <br> GREGG RICHARD E TR <br> GREGG RICHARD E TRUST |
| **AUBURN LAKE TRAILS POA** et al <br> **REL ASMT LIEN** | 07/28/2011 | 2011-0035226 <br> 2 pages | DRURY KENNETH C |
| **AUBURN LAKE TRAILS OWN ASSN** <br> et al (grantees) <br> **NT ASMT** | 09/07/2011 | 2011-0041676 <br> 2 pages | SCHUBERT ANGELA M <br> SCHUBERT MATTHEW D |
| **AUBURN LAKE TRAILS OWN ASSN** <br> et al (grantees) <br> **TRUSTEE DEED** | 09/22/2011 | 2011-0044265 <br> 2 pages | ALLIED TRUSTEE SERVICES TR <br> SCHUBERT PHILLIP EDWARD |
| **AUBURN LAKE TRAILS OWN ASSN** <br> et al <br> **REL ASMT LIEN** | 09/30/2011 | 2011-0045699 <br> 1 page | AMARAL DANIEL R <br> AMARAL SUSAN M |
| **AUBURN LAKE TRAILS OWN ASSN** <br> et al <br> **NT DEF** | 10/05/2011 | 2011-0046387 <br> 2 pages | |
| **AUBURN LAKE TRAILS POA** et al <br> **REQUEST FOR NO** | 10/27/2011 | 2011-0049999 <br> 46 pages | |
| **AUBURN LAKE TRAILS OWN ASSN** <br> et al <br> **REL ASMT LIEN** | 10/27/2011 | 2011-0050038 <br> 2 pages | SCHUBERT ANGELA M <br> SCHUBERT MATTHEW D |
| **AUBURN LAKE TRAILS OWN ASSN** <br> et al (grantees) <br> **NT ASMT** | 10/28/2011 | 2011-0050264 <br> 2 pages | HANLEY ELIZABETH |
| **AUBURN LAKE TRAILS POA** <br> et al (grantees) <br> **CERT SALE** | 11/01/2011 | 2011-0050716 <br> 2 pages | ALLIED TRUSTEE SERVICES TR <br> SCHABER JOHN R |
| **AUBURN LAKE TRAILS POA** et al <br> **REL ASMT LIEN** | 11/14/2011 | 2011-0053066 <br> 1 page | ATTEBERY ROBERT H TR <br> ATTEBERY ROBERT H TRUST |
| | 12/06/2011 | | |

Case 13-02132    Filed 04/18/13    Doc 1

| | | | |
|---|---|---|---|
| **AUBURN LAKE TRAILS POA** et al (grantees) **DEED** | | 2011-0058101 3 pages | NORTHSIDE FIRE PROT DIST |
| **AUBURN LAKE TRAILS POA** et al (grantees) **DEED** | 12/06/2011 | 2011-0058102 3 pages | NORTHSIDE FIRE PROT DIST |
| **AUBURN LAKE TRAILS POA** et al (grantees) **NT ASMT** | 12/22/2011 | 2011-0061222 3 pages | ERWIN AMY M ERWIN MICHAEL S |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 12/27/2011 | 2011-0061731 2 pages | RONNER ALEXANDRA RONNER ROBERT |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 12/29/2011 | 2011-0062311 3 pages | RIOS JESSICA RIOS TEMOC |
| **AUBURN LAKE TRAILS POA** et al (grantees) **NT ASMT** | 01/04/2012 | 2012-0000280 3 pages | GOGNA JEANETTE M GOGNA NATHAN J |
| **AUBURN LAKE TRAILS POA** et al (grantees) **NT ASMT** | 01/09/2012 | 2012-0000926 3 pages | TUCKER MELANIE TR YAKSICK MELANIE TR |
| **AUBURN LAKE TRAILS POA** et al (grantees) **NT ASMT** | 01/27/2012 | 2012-0004448 3 pages | MILLER MARGARET L MILLER RICHARD G |
| **AUBURN LAKE TRAILS POA** et al (grantees) **TRUSTEE DEED** | 02/02/2012 | 2012-0005597 2 pages | ALLIED TR SERVICES TR SCHABER JOHN R |
| **AUBURN LAKE TRAILS POA** et al **REL ASMT LIEN** | 02/15/2012 | 2012-0007865 1 page | BURTON CHERRI WOOD DUB M |
| **AUBURN LAKE TRAILS POA** et al **REL ASMT LIEN** | 02/16/2012 | 2012-0008092 1 page | SCHUBERT KAREN MARIE SCHUBERT ZYFRYD BERTAN |
| **AUBURN LAKE TRAILS POA** et al (grantees) **NT ASMT** | 02/21/2012 | 2012-0008497 3 pages | FIRST HORIZON HOME LOANS DIV FIRST TN BANK NATL ASSN FIRST |
| **AUBURN LAKE TRAILS PROP OWN** et al **REL ASMT LIEN** | 03/23/2012 | 2012-0014168 1 page | FIRST HORIZON HOME LNS DIV FIRST TN BANK NATL ASSN FIRST |
| **AUBURN LAKE TRAILS POA** et al **REL ASMT LIEN** | 03/26/2012 | 2012-0014336 1 page | SINGER LANCE DAVID |
| **AUBURN LAKE TRAILS POA** et al **REL ASMT LIEN** | 03/26/2012 | 2012-0014337 1 page | DURANT KERRY DURANT VICTORIA A |
| | 03/26/2012 | | |

4/17/2013

Case 13-02132    Filed 04/18/13    Doc 1

| | | | |
|---|---|---|---|
| **AUBURN LAKE TRAILS POA** et al (grantees) **NT ASMT** | | 2012-0014338 2 pages | ANDERSEN AARON MATTHEW FABIAN ROSE E |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 03/27/2012 | 2012-0014576 2 pages | JORDAN VERONICA |
| **AUBURN LAKE TRAILS POA** et al **REL ASMT LIEN** | 04/11/2012 | 2012-0017403 1 page | SMOLYUK DANIIL |
| **AUBURN LAKE TRAILS POA** et al **REL ASMT LIEN** | 06/28/2012 | 2012-0031756 1 page | MOORE ROBERT ROMINE SUSAN |
| **AUBURN LAKE TRAILS OWN ASSN** et al **REL ASMT LIEN** | 08/14/2012 | 2012-0040248 1 page | RONNER ALEXANDRA RONNER ROBERT |
| **AUBURN LAKE TRAILS POA** et al **REL ASMT LIEN** | 08/21/2012 | 2012-0041613 1 page | RIOS JESSICA RIOS TEMOC |
| **AUBURN LAKE TRAILS OWN ASSN** et al **REL ASMT LIEN** | 10/03/2012 | 2012-0050286 1 page | WAISLEY CARRIE A |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 10/03/2012 | 2012-0050290 2 pages | BROOKS TODD M |
| **AUBURN LAKE TRAILS OWN ASSN** et al (grantees) **NT ASMT** | 10/10/2012 | 2012-0051680 2 pages | ELASSALI DRISS |
| **AUBURN LAKE TRAILS OWN ASSN** et al **REL ASMT LIEN** | 11/07/2012 | 2012-0057218 1 page | HAMPTON IVY E HAMPTON THOMAS D |
| **AUBURN LAKE TRAILS POA** et al (grantees) **NT ASMT** | 12/13/2012 | 2012-0065787 2 pages | WILLIAMS MARK |
| **AUBURN LAKE TRAILS POA** et al **REL ASMT LIEN** | 12/20/2012 | 2012-0067057 1 page | GOGNA JEANETTE M GOGNA NATHAN J |
| **AUBURN LAKE TRAILS POA** et al **REL ASMT LIEN** | 12/31/2012 | 2012-0069268 1 page | ERWIN AMY M ERWIN MICHAEL S |
| **AUBURN LAKE TRAILS POA** et al (grantees) **NT ASMT** | 01/25/2013 | 2013-0003693 2 pages | RONNER ALEXANDRA RONNER ROBERT |
| **AUBURN LAKE TRAILS POA** et al (grantees) **NT ASMT** | 01/25/2013 | 2013-0003694 2 pages | ROWEN DANIEL MJ |
| **AUBURN LAKE TRAILS POA** et al (grantees) **NT ASMT** | 01/25/2013 | 2013-0003695 2 pages | CAMPBELL JAMES |
| **AUBURN LAKE TRAILS POA** et al (grantees) **NT ASMT** | 01/28/2013 | 2013-0004070 2 pages | AMARAL DANIEL R AMARAL SUSAN M |
| | 02/01/2013 | 2013-0005745 3 pages | RAMIREZVILLA JOSE FRANCISCO |

4/17/2013

**AUBURN LAKE TRAILS POA**
et al (grantees)
    **NT ASMT**

| | | | |
|---|---|---|---|
| **AUBURN LAKE TRAILS OWN ASSN** et al<br>    **NT ASMT** | 02/11/2013 | 2013-0007159<br>2 pages | EDELMAN TANYA M<br>EDOLMAN TANYA M<br>STAMBORSKY PHIL<br>A |
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al (grantees)<br>    **NT ASMT** | 03/01/2013 | 2013-0010942<br>2 pages | KNOWLES GLORIA B<br>TR<br>KNOWLES TRUST |
| **AUBURN LAKE TRAILS POA** et al<br>    **REL ASMT LIEN** | 03/01/2013 | 2013-0010944<br>1 page | EDELMAN TANYA M<br>EDOLMAN TANYA M<br>STAMBORSKY PHIL<br>A |
| **AUBURN LAKE TRAILS OWN ASSN**<br>et al (grantees)<br>    **NT ASMT** | 03/07/2013 | 2013-0011908<br>2 pages | COLE LISA K<br>COLE MICHAEL G |
| **AUBURN LAKE TRAILS OWN ASSN** et al<br>    **ESMT** | 03/21/2013 | 2013-0014174<br>6 pages | EL DORADO CO |

Record Count = 291

Document Count = 174

Please Note that upkeep, backup, and repairs to this site are normally done on weekends. Sorry for the inconvenience.
DISCLAIMER: The El Dorado County Recorder-Clerk's Office presents the information on this Web site as a service to the public. We have tried to ensure that the information in this electronic document is accurate. The Recorder's Office makes no warranty or guarantee concerning the accuracy or reliability of the content at this site or at other sites to which we link. Assessing accuracy and reliability of information is the responsibility of the user. The Recorder's Office shall not be liable for errors contained herein or for any damages in connection with the use of the information contained herein. THIS INFORMATION IS FOR REFERENCE ONLY.

Generated Wednesday April 17, 2013 18:19:34 PDT for PUBLIC at 75.20.190.226
e-mail the Recorder/Clerk Recorder/Clerk recorderclerk@edcgov.us

4/17/2013

# Exhibit 13

ADVERSARY COMPLAINT

Case 13-02132    Filed 04/18/13    Doc 1

# Recorder's Index - Query by Name

ALLIED TRUSTEE SERVICE Last First Middle - no commas

Date range 2007 ▾ through 2013 ▾

Sort by Date ▾

Return 500 ▾ records at a time

☐ Translate the Document Titles

General Information: The last document online is number **19434** recorded on **Wednesday.**

Years 1911-1937 are not yet online.

## Names like ALLIED TRUSTEE SERVICES*
### in years 2007 - 2013

| Name<br>Document Title | Date | Book<br>Page<br>Document | Cross Reference Names |
|---|---|---|---|
| **ALLIED TRUSTEE SERVICES TR**<br>et al<br>**CERT SALE** | 12/22/2009 | 2009-0063903<br>2 pages | TAHOE KEYS PROPERTY<br>OWN ASSN |
| **ALLIED TRUSTEE SERVICES TR**<br>et al<br>**CERT REDEMP BD** | 01/20/2010 | 2010-0002699<br>2 pages | TAHOE KEYS PROPERTY<br>OWN ASSN |
| **ALLIED TRUSTEE SERVICES TR**<br>et al<br>**NT TSTEE SALE** | 05/21/2010 | 2010-0022526<br>1 page | |
| **ALLIED TRUSTEE SERVICES TR**<br>et al<br>**NT TSTEE SALE** | 01/20/2011 | 2011-0003166<br>1 page | |
| **ALLIED TRUSTEE SERVICES TR**<br>et al<br>**NT TSTEE SALE** | 01/27/2011 | 2011-0004494<br>1 page | |
| **ALLIED TRUSTEE SERVICES TR**<br>et al<br>**NT TSTEE SALE** | 02/14/2011 | 2011-0007296<br>1 page | |
| **ALLIED TRUSTEE SERVICES TR**<br>et al<br>**CERT SALE** | 03/02/2011 | 2011-0009837<br>2 pages | AUBURN LAKE TRAILS<br>POA |
| **ALLIED TRUSTEE SERVICES TR**<br>et al<br>**NT TSTEE SALE** | 03/03/2011 | 2011-0010111<br>1 page | |
| **ALLIED TRUSTEE SERVICES TR**<br>et al<br>**NT TSTEE SALE** | 03/04/2011 | 2011-0010342<br>1 page | |
| **ALLIED TRUSTEE SERVICES TR**<br>et al<br>**NT TSTEE SALE** | 03/04/2011 | 2011-0010343<br>1 page | |
| **ALLIED TRUSTEE SERVICES TR**<br>et al<br>**NT TSTEE SALE** | 05/16/2011 | 2011-0022563<br>1 page | |

4/17/2013

| | | | |
|---|---|---|---|
| **ALLIED TRUSTEE SERVICES** et al<br>**CERT SALE** | 05/18/2011 | 2011-0022957<br>3 pages | SERRANO EL DORADO<br>OWN ASSN |
| **ALLIED TRUSTEE SERVICES TR**<br>et al<br>**CERT SALE** | 06/21/2011 | 2011-0028424<br>2 pages | AUBURN LAKE TRAILS<br>POA |
| **ALLIED TRUSTEE SERVICES TR**<br>et al<br>**NT TSTEE SALE** | 07/15/2011 | 2011-0032655<br>1 page | |
| **ALLIED TRUSTEE SERVICES TR**<br>et al<br>**NT TSTEE SALE** | 08/17/2011 | 2011-0038436<br>1 page | |
| **ALLIED TRUSTEE SERVICES TR**<br>et al<br>**TRUSTEE DEED** | 08/19/2011 | 2011-0038811<br>2 pages | SERRANO EL DORADO<br>OWN ASSN |
| **ALLIED TRUSTEE SERVICES TR**<br>et al<br>**TRUSTEE DEED** | 09/22/2011 | 2011-0044265<br>2 pages | AUBURN LAKE TRAILS<br>OWN ASSN |
| **ALLIED TRUSTEE SERVICES TR**<br>et al<br>**NT TSTEE SALE** | 09/28/2011 | 2011-0045045<br>1 page | |
| **ALLIED TRUSTEE SERVICES TR**<br>et al<br>**CERT SALE** | 11/01/2011 | 2011-0050716<br>2 pages | AUBURN LAKE TRAILS<br>POA |
| **ALLIED TRUSTEE SERVICES TR**<br>et al<br>**TRUSTEE DEED** | 11/16/2011 | 2011-0053750<br>2 pages | SERRANO EL DORADO<br>OWN ASSN |
| **ALLIED TRUSTEE SERVICES TR**<br>et al<br>**TRUSTEE DEED** | 11/16/2011 | 2011-0053751<br>2 pages | LAKELAND VILLAGE<br>OWN ASSN |
| **ALLIED TRUSTEE SERVICES TR**<br>et al<br>**NT TSTEE SALE** | 12/08/2011 | 2011-0058488<br>1 page | |
| **ALLIED TRUSTEE SERVICES TR**<br>et al<br>**NT TSTEE SALE** | 12/12/2011 | 2011-0059146<br>1 page | |
| **ALLIED TRUSTEE SERVICES TR**<br>et al<br>**TRUSTEE DEED** | 12/21/2011 | 2011-0061043<br>3 pages | SERRANO EL DORADO<br>OWN ASSN |
| **ALLIED TRUSTEE SERVICES TR**<br>et al<br>**NT TSTEE SALE** | 12/22/2011 | 2011-0061223<br>1 page | |
| **ALLIED TRUSTEE SERVICES TR**<br>et al<br>**NT TSTEE SALE** | 01/30/2012 | 2012-0004611<br>1 page | |
| **ALLIED TRUSTEE SERVICES TR**<br>et al<br>**NT TSTEE SALE** | 03/02/2012 | 2012-0010460<br>1 page | |

4/17/2013

Case 13-02132    Filed 04/18/13    Doc 1

| | | |
|---|---|---|
| **ALLIED TRUSTEE SERVICES TR** | 09/04/2012 2012-0044134 | GOSS N TR |
| et al | 2 pages | PINE TREE CIRCLE |
| **CERT REDEMP BD** | | TRUST 40809 |
| **ALLIED TRUSTEE SERVICES TR** | 11/26/2012 2012-0061059 | |
| et al | 2 pages | |
| **NT TSTEE SALE** | | |

Record Count = 30

Document Count = 29

Please Note that upkeep, backup, and repairs to this site are normally done on weekends. Sorry for the inconvenience.

DISCLAIMER: The El Dorado County Recorder-Clerk's Office presents the information on this Web site as a service to the public. We have tried to ensure that the information in this electronic document is accurate. The Recorder's Office makes no warranty or guarantee concerning the accuracy or reliability of the content at this site or at other sites to which we link. Assessing accuracy and reliability of information is the responsibility of the user. The Recorder's Office shall not be liable for errors contained herein or for any damages in connection with the use of the information contained herein. THIS INFORMATION IS FOR REFERENCE ONLY.

4/17/2013